**Westlaw.**

Not Reported in F.Supp.                                                                                              Page 1

Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

▷
Hourahan v. Ecuadorian Line, Inc.
S.D.N.Y.,1997.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Nonilon S. HOURAHAN, Plaintiff,
v.
ECUADORIAN LINE, INC. and Pacific Fruit, Inc.,
Defendants.
No. 95 Civ. 10698 (AGS).

Jan. 3, 1997.

*OPINION AND ORDER*
SCHWARTZ, District Judge.
*1 Plaintiff brings this civil rights action under the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* (" Title VII") and the New York State Human Rights Law, N.Y.Exec.L. §§ 290 *et seq.* ("NYSHRL"), alleging employment discrimination based on race, sex and national origin, as well as retaliatory discharge. This matter is before the Court upon defendants' motion for summary judgment. For the reasons stated below, defendants' motion is granted.

*BACKGROUND*

The following facts are undisputed or otherwise reflected in the record.

Plaintiff Nonilon Hourahan is an Asian female of Filipino national origin, who was employed by defendant Ecuadorian Line, Inc. ("Ecuadorian") from September 16, 1985 until February 14, 1990, when she was terminated. Plaintiff was never employed by defendant Pacific Fruit, Inc. ("Pacific Fruit"). February 14, 1990 is the date of the last act of discrimination alleged in the Verified Complaint plaintiff filed with the New York City Commission on Human Rights (the "City Commission"). The Verified Complaint was signed and dated by plaintiff on January 8, 1991 and received and file-stamped by the City Commission on January 28, 1991.

The parties disagree as to when plaintiff first approached the City Commission. Plaintiff claims that she went to the City Commission on or about September 11, 1990 and requested the City Commission to file a complaint against Ecuadorian. In support of this claim, plaintiff has submitted the affidavit of Alvin N. Lindsay, dated September 28, 1993 ("Lindsay Aff."), formerly a Human Rights Specialist with the City Commission and the person who drafted the Verified Complaint. Lindsay states that his personal records reflect that he " commenced work on [Hourahan's] complaint no later than September 11, 1990" and that "Hourahan appeared and validly requested the [City Commission] to file a complaint against Ecuadorian Line, Inc ... no later than the September 11, 1990 date as mentioned." Lindsay Aff. ¶ 8.

Defendants claim that plaintiff first appeared at the City Commission on October 16, 1990. Defendants have submitted the City Commission's Primary Case Tracking Form for plaintiff's case, which indicates that plaintiff underwent an intake interview with Alvin Lindsay on October 16, 1990. In addition, an Intake Form was filled out for plaintiff's case, which form is also dated October 16, 1990.

In the Verified Complaint, Hourahan states that in 1987, she "began to notice the use of racial and sexually derrogatory [sic] language by supervisors regarding minority workers," and she describes several such incidents. Affidavit of Jeffrey C. Slade, dated April 2, 1996 ("Slade Aff."), Ex. A ¶ ¶ 9, 10-16. The Verified Complaint charges that defendants violated Section 8-107(1)(a) of the Administrative Code of the City of New York, as well as Title VII, on the basis of plaintiff's race and national origin.[FN1] The Verified Complaint ends with the following statement: "I hereby authorize the City Commission on Human Rights to accept

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                          Page 2
Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

this verified complaint on behalf of the Equal Employment Opportunity Commission, subject to the statutory limitations [sic] contained in Title VII and in ADEA." *Id.* ¶ 28.

> FN1. The Verified Complaint also charges that defendants violated the Age Discrimination in Employment Act (" ADEA") by discriminating against plaintiff on the basis of her age; however, the Complaint in this action contains no ADEA claim.

*2 The City Commission did not file a Title VII charge with the Equal Employment Opportunity Commission ("EEOC") on Hourahan's behalf because the City Commission's staff concluded that by October 16, 1990, the statutory time within which she could have filed an EEOC charge of employment discrimination, sexual harassment and hostile work environment had already expired. The City Commission did not inform plaintiff of this determination.

Following an investigation, the Verified Complaint was dismissed on April 19, 1993 because the City Commission's law Enforcement Bureau determined that there was no probable cause to believe that defendants had engaged in an unlawful discriminatory practice. Specifically, the City Commission found that its investigation had revealed no connection between the termination of plaintiff and any discrimination on the basis of age, race or national origin.

Thereafter, plaintiff, represented by counsel, sought review of the City Commission's dismissal. In a Determination and Order After Review dated August 31, 1993, the Commissioner of the City Commission affirmed the initial finding of no probable cause with respect to plaintiff's claim of unlawful termination and remanded the case for further investigation as to the harassment and hostile work environment charges. Neither the Determination and Order After Investigation nor the Determination and Order After Review resolved the issue of retaliatory discharge.

In November 1993, plaintiff requested that the City Commission dismiss her Complaint for " administrative convenience" so that she could pursue her cause of action under the NYSHRL in federal court. On December 27, 1993, the City Commission issued an Order of Administrative Closure to plaintiff, closing plaintiff's case at the City Commission.

By letter dated September 11, 1995, plaintiff contacted the EEOC, stating that she had filed a complaint of discrimination with the City Commission on January 28, 1991 and that, according to normal City Commission procedure, the complaint would have been "double filed" with the EEOC shortly after the January 28, 1991 filing date. Plaintiff's letter requested a Right-to-Sue letter so that plaintiff could file an action in federal court. On October 30, 1995, an EEOC officer responded that the agency's records showed no charge pending on behalf of Hourahan. The EEOC did not issue a Right-to-Sue letter to plaintiff before she commenced this action.

The Complaint in this action alleges that defendants subjected plaintiff to racial and sexual harassment, discrimination on the basis of her sex, race and national origin, and retaliation for her having opposed defendants' unlawful discriminatory practices. Defendants move for summary judgment on the grounds that (i) plaintiff's Title VII claim is time-barred and the doctrine of equitable tolling should not be applied, and (ii) plaintiff's NYSHRL claim is barred under the election of remedies doctrine.

*DISCUSSION*

*3 Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The plain language of Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). To defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). Rather, the opposing party must produce concrete evidence from which a reasonable juror could return a verdict in its favor. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986).

At the outset, the Court notes that plaintiff's claims against defendant Pacific Fruit cannot stand because it is undisputed that plaintiff was only employed by Ecuadorian, not Pacific Fruit. *See* Declaration of Edward Hickey, dated March 29, 1996, ¶ 2.

### I. *Title VII Claim*

It is well established that "when a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred." *Butts v. City of New York Dep't of Housing Preservation & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). Title VII provides that in states, such as New York, that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days. 42 U.S.C. § 2000e-5(e)(1). The statute further provides that, "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b).

In this case, a complaint was filed only with the local agency, the City Commission, and no charges were ever filed with the EEOC. Where a plaintiff has presented a charge to the local agency and requested that the charge be presented to the EEOC, as in the instant action, the EEOC's regulations provide that

the charge will be deemed to be filed with the Commission upon expiration of 60 ... days after *a written and signed statement of facts upon which the charge is based was sent to the FEP agency* FN2 by registered mail or was otherwise received by the FEP agency, or upon the termination of FEP agency proceedings, or upon waiver of the FEP agency's right to exclusively process the charge, whichever is earliest. Such filing is timely if effected within 300 days from the date of the alleged violation.

FN2. Fair Employment Practices agency.

*4 29 C.F.R. 1601.13(b)(1) (emphasis added).

Plaintiff claims that she first visited the City Commission on September 11, 1990 and argues that an EEOC charge should be deemed filed on her behalf 60 days from the date of her first visit. As noted above, the EEOC officer who drafted plaintiff's Verified Complaint, Alvin Lindsay, has submitted an affidavit in support of plaintiff's claim that she went to the City Commission no later than September 11, 1990.

However, neither plaintiff nor Lindsay state that plaintiff submitted to the City Commission, on or about September 11, 1990, a written and signed statement of the facts upon which plaintiff's claim is based; and no such document, or any allusion thereto, is found in the record. Plaintiff's mere appearance and interview with Lindsay at the City Commission does not constitute the filing of a charge under Title VII. *See Park v. Howard Univ.,* 71 F.3d 904, 908-09 (D.C.Cir.1995), *cert. denied,* 117 S.Ct. 57 (1996) (Title VII charge not filed when plaintiff completed unsworn pre-complaint questionnaire at local Department of Human Rights, despite attachment of plaintiff's typed statement detailing specifics of alleged discrimination); *see also Hodges v. Northwest Airlines, Inc.,* 990 F.2d 1030, 1032 (8th Cir.1993) (intake questionnaire was not taken under oath and therefore was not valid charge under Title VII for purposes of the statute of limitations until signed under oath two months later); *Equal Employment Opportunity Comm'n v. Appalachian Power Co., Inc.,* 568 F.2d 354, 355 (4th Cir.1978) (timely charge filed directly with EEOC was not valid because it was not under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://web2.westlaw.com/print/printstream.aspx?prft=HTMLE&destination=atp&sv=Split... 8/28/2007

Not Reported in F.Supp.                                                                                   Page 4
Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

oath or affirmation). Nor does plaintiff's appearance and interview with Lindsay provide the Court with a basis upon which to deem plaintiff's charge filed with the EEOC 60 days thereafter, since plaintiff did not submit a written and signed statement of the facts underlying her charge during her first visit to the City Commission. Thus, even if the Court resolves this ambiguity in favor of plaintiff, as it must on a summary judgment motion, and accepts as true plaintiff's claim that she first visited the City Commission on September 11, 1990, an EEOC charge on her behalf may not be deemed filed 60 days thereafter.

Rather, applying the relevant EEOC regulation to this case, plaintiff's Title VII EEOC charge may be deemed to have been filed on March 27, 1991, 60 days after the date she filed her Verified Complaint with the City Commission (January 28, 1991). But since there is no dispute that the last act of alleged discrimination occurred on February 14, 1990, the EEOC charge should have been filed by December 9, 1990, more than three months before the date on which it may be deemed filed. Therefore, plaintiff's Title VII claim is clearly time-barred.

Plaintiff argues that her time to file a charge with the EEOC should be equitably tolled from September 11, 1990 because she
approached the [City Commission] well within the statutory period for the filing of an EEOC charge, and it is only through the dereliction of the [City Commission] that a timely charge was never forwarded to the EEOC. Further, the [City Commission] concealed this fact from Ms. Hourahan for over four years, from January 1991 to October 1995.

*5 Plaintiff's Mem. of L. at 10-11. In short, plaintiff submits that she did everything that she could do to file a timely EEOC charge, including going to the City Commission within 240 days of her termination date, and she should not be penalized for the failure of the City Commission.

The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132 (1982). Likewise, the possession of a right to sue letter is no longer considered a jurisdictional prerequisite to federal suit but is, instead, a statutory prerequisite subject to equitable modification by the court when appropriate. *Hladki v. Jeffrey's Consol., Ltd.,* 652 F.Supp. 388, 392 (E.D.N.Y.1987). However, plaintiff "bear[s] a heavy burden in establishing that equitable principles should permit the procedural requirements in question to be bypassed, as courts in this circuit are generally reluctant to hear claims that were not originally filed with the EEOC." *Crossman v. Crosson,* 905 F.Supp. 90, 93 (E.D.N.Y.1995).

Courts have allowed equitable modification of the procedural requirements of Title VII when (1) a claimant has received inadequate notice; (2) a motion for appointment of counsel is pending; (3) a court or agency has led a plaintiff to believe that he or she has done everything required; (4) affirmative misconduct by a defendant has lulled a plaintiff into inaction; (5) a plaintiff has in some extraordinary way been prevented from asserting his or her rights; (6) a plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum; (7) a right to sue letter has been received subsequent to commencement of a Title VII action and while the action is still pending; and (8) the EEOC or Attorney General has incorrectly refused to issue a right to sue letter. *Hladki v. Jeffrey's Consolidated, Ltd.,* 652 F.Supp. at 393 and cases cited therein; *see also South v. Saab Cars USA, Inc.,* 28 F.3d 9, 11 (2d Cir.1994). However, a plaintiff's failure to act diligently does not support the invocation of equitable tolling. *South v. Saab Cars USA, Inc.,* 28 F.3d at 12.

In the instant action, the Court finds that plaintiff has failed to satisfy her burden of showing that equitable tolling should be applied. Plaintiff does not allege that anyone at the City Commission made any statement that led her to believe she had done all that was required to file a timely EEOC charge. When she first visited the City Commission, whether this visit occurred on September 11 or October 16, 1990, plaintiff was not told that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

agency would ensure the timely filing of an EEOC charge. Rather, she merely "understood" that an EEOC complaint would be filed on her behalf. Affidavit of Nonilon S. Hourahan, dated April 18, 1996, ¶ 3. Nor did the City Commission make any procedural error such as the one made by the local agency in *Brown v. Crowe,* 963 F.2d 895 (6th Cir.1992), a case relied upon by plaintiff.

*6 Rather, plaintiff failed to act diligently, which clearly "is not a reason to invoke equitable tolling." *South v. Saab Cars USA, Inc., supra.* From the affidavits of plaintiff and Lindsay, it appears that for approximately four months following her September 11, 1990 visit to the City Commission, plaintiff did not contact Lindsay to inquire about her charge with the City Commission or with the EEOC. Nor did she contact the EEOC to determine whether any charge had been filed on her behalf. In fact, plaintiff made no effort to contact the EEOC until September of 1995, five years after she first appeared before the City Commission and nearly two years after the administrative proceedings were terminated. In short, the Court finds that the facts of this case do not support the application of equitable tolling.

II. *New York State Human Rights Law Claim*

Defendants argue that plaintiff's claim under the NYSHRL is barred because she elected to pursue her remedies through administrative proceedings.

Section 297 of the New York Executive Law provides in relevant part:
[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights ..., provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.

N.Y.Exec.L. § 297(9) (McKinney's 1993). Thus, under the so-called election of remedies doctrine, " an aggrieved individual has the choice of instituting either judicial or administrative proceedings. [She] may not, however, resort to both forums; having invoked one procedure, [she] has elected [her] remedies." *Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1196 (S.D.N.Y.1985). The " single exception to the *mutually exclusive nature of the elective remedies* arises when a complaint is dismissed by the Division for 'administrative convenience.' " *Moodie v. Federal Reserve Bank of New York,* 58 F.3d 879, 883 (2d Cir.1995) (emphasis in original).

In *Emil v. Dewey,* 49 N.Y.2d 968, 428 N.Y.S.2d 887 (1990), the New York Court of Appeals held that when a party files a complaint with the Division of Human Rights regarding alleged discrimination, that party is thereafter barred from commencing an action in court regarding that discrimination, even after withdrawing the administrative complaint. The Court stated:
[t]he record indicates, and it is conceded, that prior to commencing this action the plaintiff had filed a complaint with the State Division of Human Rights. Although the plaintiff withdrew that complaint prior to any determination by the division; there is no showing this was done for administrative convenience. Under these circumstances [§ 297(9) ] precludes the plaintiff from commencing an action in court based on the same incident.

*7 *Id.,* 49 N.Y.2d at 969, 428 N.Y.S.2d at 887; *see also Koster,* 609 F.Supp. at 1196-97.

In the instant action, plaintiff requested the City Commission to dismiss her Complaint for " administrative convenience" so that she could pursue her NYSHRL claim in federal court. In response, the City Commission issued a document entitled "Administrative Closure," which states the following grounds for the closure of plaintiff's case: "[t]he public interest will not be served by further prosecution of the complaint because Complainant has decided to pursue the case in Federal Court." Affirmation of Randolph E. Wills, dated April 1, 1996, Ex. F. The Administrative Closure order gives no indication that the dismissal of plaintiff's complaint was for "administrative convenience."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Plaintiff, however, urges the Court to deem the closure order a dismissal for administrative convenience so that the election of remedies doctrine will not apply.[FN3]

> FN3. Plaintiff concedes that the Administrative Closure applies only to her retaliatory discharge claim under the NYSHRL, and that the City Commission's Determination After Investigation bars her from bringing a claim of discrimination based on age, race or sex under the NYSHRL in federal court. See Plaintiff's Mem. of L. at 21-22.

In *Koster, supra,* the court noted that "it is unclear whether a complainant who is rightly dissatisfied with the administrative non-handling of his case has it open to him to request that the Commission dismiss his complaint for administrative convenience so that he can pursue his remedies in court." 609 F.Supp. at 1196; *see also Meschino v. Int'l Tel. & Tel. Corp.,* 563 F.Supp. 1066, 1074 (S.D.N.Y.1983) ("plaintiff has apparently requested that the HRD dismiss his claim 'for administrative convenience'.... [I]t is not clear that a dismissal in response to such a request would qualify as a dismissal for administrative convenience ..."). Indeed, if a complainant before the City Commission or the State Human Rights Division could, at any time, request a dismissal for administrative convenience and obtain a closure order deemed to be such a dismissal for purposes of § 297(9), regardless of whether the order closed the case on the ground of "administrative convenience," then the "mutually exclusive nature of the elective remedies," *Moodie,* 58 F.3d at 883, established by § 297(9) would be easily avoidable. It is doubtful that this was the intent of the state legislature in fashioning § 297.

Given that the Administrative Closure issued to plaintiff by the City Commission does not state that plaintiff's complaint was dismissed for administrative convenience, and that it is unclear whether plaintiff has a right to request a dismissal for administrative convenience to begin with, the Court finds that the Administrative Closure obtained by plaintiff does not qualify as a dismissal for administrative convenience for purposes of § 297(9). Accordingly, plaintiff's NYSHRL claim must be dismissed under the election of remedies doctrine.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

S.D.N.Y.,1997.
Hourahan v. Ecuadorian Line, Inc.
Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.