Cliff Fonstein
Joanne Seltzer
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants
Deutsche Bank AG, New York branch

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GINA ESPOSITO,

                    Plaintiff,

          - against -

DEUTSCHE BANK AG

                  Defendant.

07 Civ. 6722 (RJS)(AJP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT**

SIDLEY AUSTIN LLP

ATTORNEYS FOR Defendant
                Deutsche Bank AG, New York branch

787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
(212) 839-5300

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

THE COMPLAINT ............................................................................................................. 2

ARGUMENT ....................................................................................................................... 5

    I.      STANDARD OF REVIEW ................................................................................ 5

    II.     ESPOSITO'S STATE AND CITY CLAIMS ARE TIME-BARRED. ................... 6

            1.      The WSA Does Not Address the Administrative
                   Requirements of the NYSHRL and the NYCHRL. ......................... 7

            2.      Under New York State and City Law, an Action Is Deemed
                   Commenced with the State Agency When the EEOC
                   Forwards the Complaint to the State Agency. ................................ 12

    III.    ESPOSITO'S CLAIMS OF DISCRIMINATORY AND RETALIATORY
        PAY AND FAILURE TO PROMOTE UNDER THE ADEA AND TITLE
        VII ARE TIME-BARRED. .................................................................................. 15

CONCLUSION .................................................................................................................. 19

## TABLE OF AUTHORITIES

### CASES

Alter v. Bogoricin,
    No. 97 Civ. 0662, 1997 U.S. Dist. LEXIS 17369 (S.D.N.Y. Nov. 6, 1997) ............................ 2

Bell Atlantic Corporation v. Twombly,
    127 S. Ct. 1955 (2007) ...................................................................................................... 5

Benjamin v. Brookhaven Science Associates, LLC,
    387 F. Supp. 2d 146 (E.D.N.Y. 2005) ............................................................................... 16

Butts v. N.Y.C. Department of Housing Preservation & Development,
    No. 00 Civ. 6307, 2007 U.S. Dist. LEXIS 6534 (S.D.N.Y. Jan. 29, 2007) ........................... 16

Conley v. Gibson,
    355 U.S. 41 (1957) ........................................................................................................... 5

Delaware State College v. Ricks,
    449 U.S. 250 (1980) ........................................................................................................ 17

EEOC v. Commercial Office Products Co.,
    486 U.S. 107 (1988) ......................................................................................................... 8

Farage v. Johnson McClean Tech.,
    No. 01 Civ. 4856, 2002 WL. 1067824 (S.D.N.Y. May 29, 2002) ........................................ 6

Fausto v. Reno,
    955 F. Supp. 286 (S.D.N.Y. 1997) ................................................................................... 18

Grasso v. Chase Manhattan Bank,
    No. 01 Civ. 4371, 2002 WL. 575667 (S.D.N.Y. Apr. 17, 2002) ................................... 15, 17

Greene v. Trustees of Columbia University,
    234 F. Supp. 2d 368 (S.D.N.Y. 2002) ............................................................................... 6

Hourahan v. Ecuadorian Line, Inc.,
    No. 95 Civ. 10698, 1997 WL. 2518 (S.D.N.Y. Jan. 3, 1997) ............................................ 15

Idrees v. City of N.Y. Department of Parks & Recreation,
    No. 04 Civ. 2197, 2005 U.S. Dist. LEXIS 7643 (S.D.N.Y. May 3, 2005) ............................ 16

Jackson v. Lyons Falls Pulp & Paper, Inc.,
    865 F. Supp. 87 (N.D.N.Y. 1994) .................................................................................... 13

Kearney v. ABN Amro, Inc.,
    No. 04 Civ. 06885, 2006 U.S. Dist. LEXIS 56705 (S.D.N.Y. Aug. 10, 2006) ...................... 14

Ledbetter v. Goodyear Tire and Rubber Co.,
    127 S. Ct. 2162 (2007) .................................................................................................... 16

Lee v. Overseas Shipholding Group,
    No. 00 Civ. 9682, 2001 U.S. Dist. LEXIS 10622 (S.D.N.Y. July 30, 2001) ......................... 14

Love v. Pullman Co.,
   404 U.S. 522 (1972) ..................................................................................................... 7

Martinez-Tolentino v. Buffalo State College,
   277 A.D.2d 899 (N.Y. App. Div. 2000) .................................................................... 14

Mason v. America Tobacco Co.,
   346 F.3d 36 (2d Cir. 2003) ........................................................................................... 3

Mayo v. Securities Industry Association,
   No. 95 Civ. 4350, 1995 U.S. Dist. LEXIS 15200 (S.D.N.Y. Oct. 17, 1995) ........... 8

Mazurek v. Cook County,
   No. 02 Civ. 4897, 2003 U.S. Dist. LEXIS 9100 (N.D. Ill. May 29, 2003) ............. 11

Melincoff v. E. Norriton Physical Serv., Inc.,
   No. 97-4554, 198 U.S. Dist. LEXIS 5416 (E.D. Pa. Apr. 20, 1998) ....................... 11

Miller v. International Telegraph & Telegraph Corp.,
   755 F.2d 20 (2d Cir. 1985) ........................................................................................ 17

National Railroad Passenger Corporation v. Morgan,
   536 U.S. 101 (2002) ................................................................................................... 16

Petrelle v. Weirton Steel Corp.,
   953 F.2d 148 (4th Cir. 1991) ..................................................................................... 11

Poteat v. Mack Trucks, Inc.,
   No. 96-1437, 1997 U.S. App. LEXIS 1413 (4th Cir. Jan. 28, 1997) ....................... 11

Putkowski v. Warwick Valley Central School District,
   363 F. Supp. 2d 649 (S.D.N.Y. 2005) ...................................................................... 17

Quinn v. Green Tree Credit Corp.,
   159 F.3d 759 (2d Cir. 1998) ........................................................................................ 6

Richetts v. Ashcroft,
   No. 00 Civ. 1557, 2003 U.S. Dist. LEXIS 3878 (S.D.N.Y. Mar. 7, 2003) ............. 17

Sharpe v. America Express Co.,
   689 F. Supp. 294 (S.D.N.Y. 1988) ...................................................................... 7, 13

Solon v. Kaplan,
   No. 00 Civ. 2888, 2001 U.S. Dist. LEXIS 1384 (N.D. Ill. Feb. 9, 2001) ........ 8, 10-11

Stamelman v. Fleishman-Hillard, Inc.,
   No. 02 Civ. 8318, 2003 WL. 21782645 (S.D.N.Y. July 31, 2003) ........................... 2

Sundaram v. Brookhaven National Laboratoriess,
   424 F. Supp. 2d 545 (E.D.N.Y. 2006) ...................................................................... 14

Sunshine v. Long Island University,
   826 F. Supp. 26 (E.D.N.Y. 1994) ............................................................................. 14

## STATUTES

42 U.S.C. § 12117(a) ........................................................................................................... 7

42 U.S.C. § 2000e-5 ........................................................................................................ 7, 15

29 C.F.R. § 1601-13(a)(4)(i)(B) ........................................................................................ 13

29 U.S.C. § 626(d) ............................................................................................................ 15

N.Y. City Admin. Code § 8-109(e) .................................................................................... 13

N.Y. City Admin. Code § 8-502 ........................................................................................ 13

N.Y. Exec. Law § 297 ....................................................................................................... 13

## MISCELLANEOUS

C. Wright & A. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004) ............................. 5

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 1

110 Cong. Rec. 12609 ........................................................................................................ 7

## PRELIMINARY STATEMENT

In the present motion, Defendant, Deutsche Bank AG, New York branch ("DB" or the "Bank"), asks the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the time-barred allegations in Plaintiff Gina Esposito's Complaint for failure to state a claim upon which relief may be granted. In her Complaint, Esposito, a former DB employee, argues that DB discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), as the result of a series of allegedly discriminatory acts dating back to her hire in 1999. Esposito also argues that DB retaliated against her in violation of Title VII, the NYSHRL and the NYCHRL for reporting her suspicion that a female employee was sexually harassing her male counterparts. However, as more fully explained below, the majority of the purportedly discriminatory acts that Esposito points to are time-barred under federal, state and city law.

First, claims brought under the NYSHRL and the NYCHRL are governed by a three-year statute of limitations, measured from the filing of the action in court. Esposito did not file the present Complaint until July 26, 2007. Accordingly, any claims that arose before July 26, 2004, three years before Esposito filed her Complaint, are time-barred under both state and city laws. As the last fact alleged to give rise to her Complaint occurred on May 3, 2001, the date she resigned, all of Esposito's state and city claims are time-barred. Esposito's attempt, set forth in her pre-motion letter of September 20, 2007, to argue that the statutes of limitations on her state and city claims were tolled during the pendency of her claim with the Equal Employment Opportunity Commission ("EEOC") is unavailing. The applicable statutes, case law and Workshare Agreement ("WSA") entered into between the EEOC and the New York State Division of Human Rights (the "State Division") establish that the commencement of

1

proceedings with the State Division for the administrative processing of charges under the NYSHRL or the NYCHRL is on the date that the EEOC forwards the charge to the State Division. Esposito does not allege that either she or her lawyers filed a charge with the State Division or City Commission or that the EEOC forwarded the charge to the State Division for processing, or that there was any disposition by the State Division of her claims. As such, she cannot take advantage of the tolling provisions provided to individuals who elect to initially process their claim through the state and city agencies.

Second, under the ADEA and Title VII, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the allegedly discriminatory act. Esposito filed her charge on February 8, 2002, and, therefore, any act that occurred before April 14, 2001 – 300 days before she filed her charge – is time-barred.[1] Put another way, since Esposito filed her charge 281 days after her resignation, only those acts that occurred within the last nineteen days of her employment can be used as the basis of her claims of discrimination and retaliation. As such, the discrete discriminatory and retaliatory acts that Esposito describes in her Complaint, namely, DB's compensation and promotion decisions arising prior to April 14, 2001, are also time-barred because they arose over 300 days before she filed her EEOC charge.[2]

## THE COMPLAINT

For purposes of this motion only, DB will assume (as it must) the truth of the allegations contained in the Complaint, except to the extent that they are contradicted by, or

---

[1] A copy of Esposito's EEOC Charge is attached to the Affirmation of Joanne Seltzer in Support of DB's Partial Motion to Dismiss (the "Seltzer Aff.") as Exhibit "A." While Esposito did not attach her EEOC Charge to her Complaint, she states in her Complaint that she filed a Charge on February 6, 2002. (Complaint, ¶ 85.) (Her charge, however, indicates a filing date of February 8, 2002.) When a plaintiff fails to attach or to incorporate by reference a document that is integral to the Complaint, the Court may take that document into account in deciding a motion to dismiss. See Stamelman v. Fleishman-Hillard, Inc., No. 02 Civ. 8318, 2003 WL 21782645, at *2 (S.D.N.Y. July 31, 2003); Alter v. Bogoricin, No. 97 Civ. 0662, 1997 U.S. Dist. LEXIS 17369, at *10 (S.D.N.Y. Nov. 6, 1997).
[2] The only claims in Esposito's Complaint that may be marginally timely are her hostile environment claims under the ADEA and Title VII.

inconsistent with, the documents referenced in the Complaint, or consist of legal conclusions couched as factual allegations. Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003).

Esposito alleges that she began working for DB as an outside consultant in 1998 and was hired as an employee on June 7, 1999, when she was 44 years old. (Complaint, ¶¶ 3, 20.)[3] The Complaint alleges that, within a few days of her hire, Esposito's supervisor, John Dall, began a campaign of discriminatory treatment against her on the basis of her age. (Complaint, ¶¶ 34-44.) Additionally, Esposito alleges that, after she complained to Human Resources ("HR") about a sexual harassment issue involving another employee, Dall intensified his efforts to create a hostile work environment for her. (Complaint, ¶ 66.) Esposito further claims that, in November 2000, she complained again to HR about Dall's berating her for having reported the purported sexual harassment and voiced her concern that he would retaliate against her for her complaints in considering her for bonuses and raises. (Complaint, ¶ 64.) Thus, according to her own Complaint, almost from the beginning of her employment with DB and well before she resigned, Esposito suspected that Dall was discriminating against her because of her age and retaliating against her. The Complaint concludes that Dall's actions and behavior eventually compelled Esposito to resign from DB effective May 3, 2001. (Complaint, ¶ 82.)

Esposito claims that Dall took the following discrete actions against her as a result of her age and in retaliation for her complaint to HR:

---

[3] A copy of Plaintiff's Complaint, filed on July 26, 2007, is attached to the Seltzer Aff. as Exhibit "B."

| Date | Alleged Act |
|------|-------------|
| By January 2001 | Esposito's co-workers, Joanne Passiatore and Dan Richards received bonuses of $55,000 each, whereas Esposito received a bonus of $30,000. (Complaint, ¶ 71.) |
| In 2001[4] | Passiatore and Richards received salary increases of $20,000 each in 2001, whereas Esposito received a salary increase of $3,000 for that same year. (Complaint, ¶ 71.) |
| April 2001[5] | Esposito discussed the promotions of Passiatore and Richards with John Dall. Based on his comments, she understood him to mean that younger workers had a better future at DB than did older workers. He "confirmed" Esposito's belief that she would "never" be given any opportunity for advancement within DB. (Complaint, ¶¶ 75 & 78.) |

On February 8, 2002, Esposito filed a Charge of Discrimination with the EEOC,
which issued a Notice of Right to Sue on April 30, 2007.  (Complaint, ¶¶ 85-86.)  Esposito
makes no mention of filing a charge with either the State Division or the City Commission or of
the dismissal of such charge for administrative convenience, a prerequisite to bringing her claim
to federal court. As explained more fully below, when bringing claims under the NYSHRL and
the NYCHRL, a plaintiff must "elect remedies" by choosing either to bring her claim initially

---

[4] Plaintiff is purposely vague about the date on which she was notified of her salary increase.  In light of the strict chronology Plaintiff maintains in her Complaint, placing the communication of the salary increase between paragraphs that describe her receipt of her bonus in January 2001 and her discussion with Dall regarding promotions in April 2001 (Complaint, ¶¶ 70-75), it can be assumed that her salary increase was communicated to her in early 2001, most likely at the time her bonus amount was communicated to her in January 2001. Moreover, as the salary increase was for 2001, she presumably had notice of this increase when she received her first 2001 paycheck, which, logically, would have been before April 2001.

[5] Again, Esposito's Complaint purposely omits the exact date on which this exchange between Esposito and Dall occurred.  Esposito states that "[i]n April 2001" she discussed the promotions of her younger coworkers with Dall and this conversation "confirmed [her] belief that she would *never* be given any opportunity for advancement" within DB. (Complaint, ¶¶ 75 & 78.) Since the facts in Esposito's Complaint are set forth in chronological order, the meeting with Dall should have occurred, based on that chronology, in early April.  This meeting is described in Paragraph 75 of the Complaint, and, in subsequent paragraphs, Esposito describes events that occurred later, on April 5, 2001 (Complaint, ¶ 80) and events that began on the week of April 11, 2001. (Complaint, ¶ 81.)  Instead, in her pre-motion letter, Esposito stresses that, on April 18, 2001, "it was noticed" that her younger colleagues had been promoted. (Complaint, ¶ 81.)  However, as explained below, for statute of limitation purposes, this date is

with the state or city human rights agencies or to go directly to court. Thus, since Esposito failed
to specify that she filed her claim either with the State Division or the City Commission, she
elected to bring her case directly to this Court and is, therefore, subject to the three-year statute
of limitations provided by state and city law.

## ARGUMENT

### I.    STANDARD OF REVIEW

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court
recently announced a new standard for determining Rule 12(b)(6) motions. Reversing the
Second Circuit's denial of a Rule 12(b)(6) motion, the Court rejected its previous formulation of
the standard for evaluating a Rule 12(b)(6) motion, set forth in Conley v. Gibson, 355 U.S. 41
(1957), that dismissal of a complaint under Rule 12(b)(6) is warranted if "it appears beyond
doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him
to relief." Id. at 45-46. Instead, the Court stressed that, to survive a Rule 12(b)(6) motion, a
plaintiff must set forth factual allegations sufficient to "raise a right to relief above a speculative
level." Bell Atlantic, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, *Federal Practice and
Procedure* § 1216, pp. 235-36 (3d ed. 2004)). The Court concluded:

> [W]hen the allegations in a complaint, however true, could not raise a
> claim of entitlement to relief, 'this basic deficiency should . . . be exposed
> at a point of minimum expenditure of time and money by the parties and
> the court'.

Id. at 1966 (citations omitted). Accordingly, Esposito must demonstrate that her Complaint sets
forth factual allegations that not only sufficiently state all the elements of each of her causes of
action, but also that it does so in a way that makes her right to relief more than just speculation –
a burden Esposito cannot meet here.

completely irrelevant. What matters is when she understood she had no chance for advancement, which, according

5

## II.  ESPOSITO'S STATE AND CITY CLAIMS ARE TIME-BARRED.

All of Esposito's claims under the NYSHRL and NYCHRL should be dismissed as time-barred.  Claims arising under the NYSHRL and the NYCHRL are governed by a three-year statute of limitations, measured from the filing of the action in court.  See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998); Greene v. Trs. of Columbia Univ., 234 F. Supp. 2d 368, 377 (S.D.N.Y. 2002); Farage v. Johnson McClean Tech., No. 01 Civ. 4856, 2002 WL 1067824, at *5 (S.D.N.Y. May 29, 2002).[6]  Esposito filed her Complaint on July 26, 2007 and, thus, any state and city claim based on alleged acts occurring before July 26, 2004 are time-barred.  Since all of the purportedly discriminatory and retaliatory actions that Esposito sets forth in her Complaint arose on or before her resignation on May 3, 2001, all of her claims under the NYSHRL and the NYCHRL should be dismissed as untimely.

In her pre-motion letter, Esposito argues that the three-year statute of limitations on her state and city claims was tolled during the pendency of her charge with the EEOC. (Pre-motion Letter, pp. 2-3.)[7]  Her argument relies on the existence of a WSA between the EEOC and the State Division at the time she filed her charge, which provides that, for the purposes of the administrative prerequisites under Section 706(c) and (e) of Title VII, charges filed with the EEOC are deemed to be "dually filed" with the State Division.  As explained below, Esposito applies language in the WSA intended to allow charging parties to comply with the jurisdictional prerequisites of Section 706(c) and (e) to something entirely different – her obligation under state and city law to initiate timely charges with the respective state and local agencies.  Indeed, it is well-established that, where a charge of discrimination is initially filed with the EEOC, it commences proceedings with the state agency only when the EEOC forwards the complaint to

---

to Esposito, occurred during her meeting with Dall.
[6] Copies of unpublished decisions are attached hereto as Exhibit A.

6

the state agency for the charging party so that the state agency can pursue state claims on the charging party's behalf. <u>Sharpe v. Am. Express Co.</u>, 689 F. Supp. 294, 302 (S.D.N.Y. 1988). Since Esposito has set forth no evidence in her Complaint that either she or the EEOC filed a charge with the State Division or the City Commission, her state and city claims could not possibly have been tolled. This deficiency cannot be cured by the WSA which, on its face and as interpreted by the courts, is only applicable to the filing requirements of Section 706(c) and (e) of Title VII, and does not govern the timeliness of claims under either the NYSHRL or the NYCHRL.

### 1. The WSA Does Not Address the Administrative Requirements of the NYSHRL and the NYCHRL.

Esposito relies on the provisions of the WSA to support her argument that filing a claim with the EEOC serves to toll the statute of limitations under the NYSHRL and the NYCHRL. (Pre-motion Letter, p. 3.) In fact, the relevant WSA concerns itself only with the satisfaction of filing requirements under Section 706(c) and (e) of Title VII and purposely avoids making any provision for the initiation of claims under the NYSHRL or the NYCHRL.

Section 706(c) of Title VII requires that a plaintiff exhaust her administrative remedies before instituting a judicial action. 42 U.S.C. § 2000e-5(c).[8] <u>See also</u> 42 U.S.C. § 12117(a) (providing that the procedures set forth in Section 706 apply to claims arising under the ADEA). Specifically, Section 706(c) provides that, where a state has a local or state law prohibiting discrimination, a Title VII charge cannot be filed with the EEOC until 60 days after the proceedings have been commenced under state or local law. 42 U.S.C. § 2000e-5(c). The purpose of Section 706(c) is to provide states with an opportunity to investigate discrimination

---

[7] A copy of Esposito's pre-motion letter is attached to the Seltzer Aff. as Exh. C.
[8] Section 706(e) provides for a longer filing period of 300 days (instead of 180 days) in states that have state or local human rights agencies with jurisdiction over discrimination claims. 42 U.S.C. § 2000e-5(e)(1).

claims without interference from the federal government. See 110 Cong. Rec. 12609; Love v. Pullman Co., 404 U.S. 522, 526 (1972); Mayo v. Sec. Indus. Ass'n, No. 95 Civ. 4350, 1995 U.S. Dist. LEXIS 15200, at *4 (S.D.N.Y. Oct. 17, 1995). "Since principles of comity and efficiency underlie the 60-day period of exclusive state agency jurisdiction, state agencies have been permitted to waive it." Mayo, 1995 U.S. Dist. LEXIS 15200, at *4 (quoting EEOC v. Commercial Office Prods., 486 U.S. 107, 112-14 (1998)). This waiver by the state agencies of the strict filing prerequisites of Title VII and the ADEA is brought about, in specific instances, by WSAs, flexible agreements entered into between the EEOC and state and local agencies. See EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 117-118 (1988). WSAs are agreements individually negotiated between state and federal human rights agencies setting forth procedures for the satisfaction of the administrative prerequisites of Title VII. See id. They, in effect, allow a charging party who has filed a charge under Title VII with the EEOC to say (through the fiction of "dual filing") that she has satisfied the prerequisite of filing with the state agency first, as required under Sections 706(c) and (e). See Solon v. Kaplan, No. 00 Civ. 2888, 2001 U.S. Dist. LEXIS 1384, at *11-14 (N.D. Ill. Feb. 9, 2001). Thus, under the terms of a WSA, a charging party could file a charge with the EEOC and, for the purposes of Sections 706(c) and (e), such a charge would be considered "dual-filed" to comply with the Title VII's statutory directive on initial filing with the state agency, whether the charge was physically sent to the state agency or not. Because the purpose of WSAs is to facilitate the filing of federal claims, most often WSAs do not address what constitutes a proper filing under state or local law and do not discuss or contemplate the tolling of statutes of limitations under state or city law. Id.

For example, the provisions of the WSA at issue here, operating from October 1, 2001 to September 30, 2002, address the administrative prerequisites of Title VII and purposely

8

do not address administrative procedures under state or city human rights laws. This is apparent from the express language of the controlling WSA and the fair reading of the document as a whole, which clearly presumes that filing a charge with the EEOC, though it may satisfy the fictional dual-filing prerequisites of Title VII, does not automatically initiate the administrative procedures under the NYSHRL and the NYCHRL. First, the WSA clearly states that the designation by the EEOC and the State Division of each other as agents for the purpose of receiving and drafting charges is "for the purposes of Section 706(c) and (e)," i.e., so that a charging party can satisfy Title VII's administrative prerequisite that a charge first be filed with the state agency. The WSA goes on to emphasize that this designation does not operate to satisfy the jurisdictional requirements under state and city law by stating that the WSA "does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge." WSA § II(A).[9] Second, the WSA makes it clear that dual-filing a charge with the EEOC for the purposes of Rule 706(c) and (e) does not automatically satisfy the filing prerequisites and requirements under state law. The WSA expressly states:

> Each agency will inform individuals of their right to file charges directly with the other agency and/or assist any person alleging employment discrimination to draft a charge in a manner that will satisfy the requirements of both agencies . . . .

WSA § II(C). If the purpose of the WSA were to satisfy the filing requirements under both state and federal statutes, it would not be necessary for the EEOC to inform individuals of their right to "file charges directly" with the state agency. Clearly, this provision acts as a cautionary directive that, although the dual-filing provision of the WSA satisfies the administrative prerequisite for Title VII and the ADEA, it does not operate to satisfy the requirements for

---

[9] A copy of the WSA in place at the time Esposito filed her EEOC charge is attached to the Seltzer Aff. as Exh. D. Since, in her pre-motion letter and at the pre-motion conference, Esposito's counsel expressed his intent to rely on the WSA in opposing DB's motion to dismiss, DB attaches it for the Court's reference.

commencing an action under the NYSHRL. Finally, further undermining the contention that charges filed with the EEOC would also automatically commence the State Division process, the WSA clearly sets forth the requirements of adequate notice to the parties should the EEOC decide to send the charge to the NYSHRL for processing under state or city law. Specifically, the WSA provides that, should the EEOC forward the charge to the State Division for processing under the NYSHRL, the EEOC will be responsible for notifying both the charging party and the respondent of this decision to do so. WSA § II(E). If the WSA contemplated that the dual-filing fiction satisfied the processing requirements for both federal and state law, there would be no need for providing a distinct notice requirement when the EEOC decides to send the charge to the State Division to trigger processing under state law. All of these provisions in the applicable WSA indicate that filing a charge solely with the EEOC may satisfy the Section 706(c) and (e) procedures under federal law, but it is only the forwarding of the charge by the EEOC to the state agency that initiates a proceeding under the NYSHRL or the NYCHRL.

Courts considering WSAs, with wording similar to the one in question, have recognized that a charging party's filing of a charge solely with the EEOC satisfies the filing requirements of federal law but that it does not serve to commence proceedings under the parallel state anti-discrimination statute.[10]

Solon v. Kaplan, No. 00 Civ. 2888, 2001 U.S. Dist. LEXIS 1384 (N.D. Ill. Feb. 9, 2001), is instructive. In Solon, the plaintiff, alleging violations of Title VII, the ADEA and the Illinois Human Rights Act, asserted that he had exhausted his administrative remedies as to both federal and state anti-discrimination laws by filing a charge with the EEOC. See id. at *4 & 11-

---

[10] While DB has been unable to find a case in the Second Circuit that analyzes the application of WSAs to the filing requirements of the NYSHRL or the NYCHRL, the cases cited from other jurisdictions all concern the exact same WSA language as is in the one at issue.

12.    The plaintiff argued that he could proceed from the EEOC to federal court, without commencing a proceeding with the Illinois Human Rights Commission, due to a WSA existing between the EEOC and the State Commission. Id. at *12. The court acknowledged the primary purpose of the WSA to "allow the state to waive its exclusive right under Title VII to initially process certain claims and categorically defer first rights to the EEOC." Id. With respect to the plaintiff's claims under the state law, however, the court concluded:

> [T]he workshare agreement allows litigants seeking relief under Title VII to skip the Illinois Human Rights Commission and proceed directly to the EEOC. It does not affect the Illinois Human Rights Commission's exclusive jurisdiction over requests for relief under Illinois Human Rights Act. This means that the court cannot exercise jurisdiction over Count III (Solon's request for relief under the Illinois Human Rights Act).

Id. at *13-14. The court dismissed the plaintiff's state law claims for failure to exhaust administrative remedies. Id. at *14. See also Petrelle v. Weirton Steel Corp., 953 F.2d 148, 152 (4th Cir. 1991) (holding that, because the WSA did not expressly state that the EEOC's "receiving charges" commenced proceedings before the state agency, filing a charge with the EEOC failed to commence proceedings under the state human rights law); Poteat v. Mack Trucks, Inc., No. 96-1437, 1997 U.S. App. LEXIS 1413, at *9 (4th Cir. Jan. 28, 1997) (holding that language in the WSA delegating authority to receive charges did not include the right of one agency to determine the jurisdiction of the other agency over the charge and noting that the language charging each agency to inform the claimant of their rights under the other indicated that the satisfaction of filing requirements for the federal law did not necessarily satisfy the requirements for the state law); Melincoff v. E. Norriton Physical Serv., Inc., No. 97-4554, 198 U.S. Dist. LEXIS 5416, at *31 (E.D. Pa. Apr. 20, 1998) (finding that language in the WSA instructing each participating agency to inform individuals of their right to file charges with the

11

other agency and to assist a person in drafting a charge that would satisfy the requirements of both agencies indicated that charges filed with the EEOC were not sufficient to begin proceedings under state law); Mazurek v. Cook County, No. 02 Civ. 4897, 2003 U.S. Dist. LEXIS 9100, at *6 n.1 (N.D. Ill. May 29, 2003) (finding that the WSA between the EEOC and the Illinois Human Rights Commission did not alter the Commission's exclusive jurisdiction under the state human rights law).

Esposito's administrative filing perfectly demonstrates the mechanics of the WSA. On February 8, 2002, Esposito filed a charge with the EEOC. She did not, at that time, or at any subsequent time, file her charge with either the State Division or the City Commission. Under the provisions of the WSA, her EEOC filing served to satisfy the requirements of Section 706(c) and (e) and, upon receipt of a Notice of Right to Sue, she was subsequently able to file her federal claims in this Court. However, possibly because Esposito gave no indication in her charge that she was seeking relief under the NYSHRL or the NYCHRL (although she specifically mentions Title VII and the ADEA), the EEOC did not forward her charge to the State Division. As a result, DB (and presumably Esposito) never received notice either from the EEOC or the State Division of a commencement of proceedings by the agency under the state or city statutes. Esposito's failure to independently file a claim with the State Division or the City Commission and her failure to ensure that the EEOC did so resulted in no commencement of agency proceedings under state or city law.

### 2. Under New York State and City Law, an Action Is Deemed Commenced with the State Agency When the EEOC Forwards the Complaint to the State Agency.

An examination of the administrative processes established by state and city law, as well as case law interpreting these processes, demonstrates that, for the purpose of the city and

12

state statutes, an administrative action cannot commence until a complaint is actually filed with the local agencies. Under both the NYSHRL and the NYCHRL, a claimant has two options for filing a claim under the state and city human rights laws. The claimant may go directly to Court, bypassing the agency process, in which case the statute of limitations for filing a claim is three years from the alleged discriminatory practice. See supra, Section I. Alternatively, a claimant can file a verified complaint with the State Division or the City Commission, in which case the statute of limitations is one year from the alleged discriminatory practice. N.Y. City Admin. Code § 8-109(e); N.Y. Exec. Law § 297(5). If the State Commission or the City Division dismiss the claim for administrative convenience, the claimant can then bring his state and city claims to federal court, and the three-year statute of limitations is tolled during the claims' pendency with the local administrative agencies. N.Y. City Admin. Code § 8-502; N.Y. Exec. Law § 297(9). If, however, the claim is dismissed on its merits, the claimant is barred from relitigating the matter in Court under the election of remedies provision of the NYSHRL. N.Y. Exec Law § 297(9).

When a charging party files a complaint only with the EEOC, an action is commenced with the state agency only if and when the EEOC forwards the complaint to the state agency. 29 C.F.R. § 1601-13(a)(4)(i)(B). See also Sharpe v. Am. Express Co., 689 F. Supp. 294, 302 (S.D.N.Y. 1988); Jackson v. Lyons Falls Pulp & Paper, Inc., 865 F. Supp. 87, 93 (N.D.N.Y. 1994) ("filing a charge with the EEOC, *which is forwarded to [the State Division], is sufficient to commence a state proceeding.*") (emphasis added). The state agency's receipt of the complaint is the critical event needed to effectuate a tolling of the time to file state law claims. The mere filing of an EEOC charge, in short, does not toll the time for state law claims arising from the same events. Osorio v. Source Enters., No. 05 Civ. 10029, 2006 U.S. Dist. LEXIS

63032, at *8 (S.D.N.Y. Sept. 1, 2006); Gilani v. Nat'l Ass'n of Sec. Dealers, Inc., No. 96 Civ. 8070, 1997 U.S. Dist. LEXIS 12287, at *31 n.5 (S.D.N.Y. Aug. 18, 1997).

Kearney v. ABN Amro, Inc., No. 04 Civ. 06885, 2006 U.S. Dist. LEXIS 56705 (S.D.N.Y. Aug. 10, 2006), is directly on point. In Kearney, the plaintiff, bringing claims under both federal and state laws, filed a charge with the EEOC, which the EEOC failed to file with either the State Division or the City Commission. Id. at 13. The defendant moved to have her claims under the NYSHRL dismissed as time-barred under the three-year statute of limitations. Id. The plaintiff argued that, regardless of the fact that the State Division had never received a copy of the charge, her state law claims should still be tolled during the time her charge was pending with the EEOC. Id. Citing the general rule that "an action is deemed commenced with the state agency when the EEOC forwards the complaint to the state agency" the court concluded that the actual filing of the charge with the NYSHRL was determinative to the question of whether the plaintiff's state law claims were timely filed. Id. at 14-15.[11]

The illogic and unfairness of a contrary rule – allowing tolling on state or city claims where there has been no filing of a charge with the state or city agencies – are amply demonstrated by the facts here. Esposito's EEOC charge, filed on February 8, 2002, makes absolutely no mention of a cause of action under either the NYCHRL or the NYSHRL, even

---

[11] The cases relied upon by Esposito in her pre-motion letter are inapposite. They either concern cases where a claim was (unlike here) filed with a state or city agency or ignore the purpose of the "dual-filing" fiction – to confer Title VII jurisdiction on the EEOC. For example, in Lee v. Overseas Shipholding Group, No. 00 Civ. 9682, 2001 U.S. Dist. LEXIS 10622 (S.D.N.Y. July 30, 2001), the plaintiff filed a claim with both the EEOC and the City Commission, a procedure Esposito bypassed. See id. at *15. Another case cited by Esposito, Martinez-Tolentino v. Buffalo State College, 277 A.D.2d 899 (N.Y. App. Div. 2000), does not even discuss the statutory and policy issues pivotal to the issue of the tolling of the plaintiff's state law claims, but, rather, limits itself to citing, as support for the proposition that tolling was proper, CPLR 204(a), which merely provides that "[w]here the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced" and another decision, Sunshine v. Long Island Univ., 826 F. Supp. 26, 30 (E.D.N.Y. 1994), in which there is absolutely no discussion of tolling at all and where the court decided the timeliness of the state claims under the continuing violation doctrine. See Martinez-Tolentino, 277 A.D.2d at 899. Without any analysis, Sundaram v. Brookhaven Nat'l Labs., 424 F. Supp. 2d 545 (E.D.N.Y. 2006) relies on Martinez-Tolentino.

14

though it expressly refers to both Title VII and the ADEA. If she had at the time complied with the state and city rules and filed a claim with the State Division or the City Commission, DB would have received notice of such filing. However, because Esposito never ensured that her NYSHRL and NYCHRL claims were properly filed with the state and local agencies, DB received no notice of her assertion of these claims and was consequently deprived of the opportunity to argue that Esposito's bonus and salary claims were untimely and otherwise meritless.[12] DB, therefore, lost any opportunity to have the local agencies dismiss Esposito's state and city claims and end the litigation under the NYSHRL and the NYCHRL in the administrative process. Allowing Esposito's state and city claims to be tolled during the five-year pendency of her Charge with the EEOC – five years during which, although represented by counsel, she did absolutely nothing to preserve her rights under the NYSHRL and the NYCHRL – would give Esposito the benefit of doing something she never did – filing with the state and city agencies, while at the same time precluding DB from arguing that her claims were meritless.

## III.   ESPOSITO'S CLAIMS OF DISCRIMINATORY AND RETALIATORY PAY AND FAILURE TO PROMOTE UNDER THE ADEA AND TITLE VII ARE TIME-BARRED.

Esposito claims that DB discriminated and retaliated against her when it made its compensation decisions regarding her salary and bonus, in or about January 2001, and when it decided not to promote her, in or about April 2001. These claims should be dismissed under both Title VII and the ADEA because Esposito did not file a timely charge with the EEOC with respect to these claims.

Under the ADEA and Title VII, a charge must be filed within 180 days of the alleged unlawful employment practice, or, if the charge was initially filed with a state or local

---

[12] As noted below, Esposito's salary and bonus claims arose in January 2001, over a year before she filed her EEOC Charge in February 2002.

agency, within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e);

29 U.S.C. § 626(d). See also Grasso v. Chase Manhattan Bank, No. 01 Civ. 4371, 2002 WL

575667, at *3 (S.D.N.Y. Apr. 17, 2002). Filing a timely charge is a prerequisite to commencing

an action in federal court. Hourahan v. Ecuadorian Line, Inc., No. 95 Civ. 10698, 1997 WL

2518, at *3 (S.D.N.Y. Jan. 3, 1997); Butts v. N.Y.C. Dept. of Hous. Pres. & Dev., No. 00 Civ.

6307, 2007 U.S. Dist. LEXIS 6534, at *20 (S.D.N.Y. Jan. 29, 2007) (citations omitted).

Esposito filed a charge with the EEOC on February 8, 2002. Accordingly, all allegedly

discriminatory incidents that occurred prior to April 14, 2001, 300 days before she filed her

EEOC Charge, are time-barred.

      The Supreme Court expressly held in National Railroad Passenger Corporation v.

Morgan, 536 U.S. 101 (2002), and, most recently, in Ledbetter v. Goodyear Tire and Rubber Co.,

127 S. Ct. 2162 (2007), that discriminatory and retaliatory acts such as "termination, *failure to*

*promote*, denial of transfer, or refusal to hire" constitute discrete actions that are not actionable if

not filed within the 300-day charge filing period, even when they are related to acts alleged in

timely filed charges. Morgan, 536 U.S. at 114 (emphasis added); Ledbetter, 127 S. Ct. at 2175.

Ledbetter further clarified that discriminatory pay decisions are similarly discrete actions, each

of which is "independently identifiable and actionable." Ledbetter, 127 S. Ct. at 2175. As such,

the time for filing a claim of discrimination or retaliation with respect to such pay and promotion

decisions begins when the employee learns of them. Id. at 2175-76. See also Benjamin v.

Brookhaven Science Assocs., LLC, 387 F. Supp. 2d 146, 154 (E.D.N.Y. 2005) ("[I]t is well

settled in the Second Circuit that alleged failures to compensate adequately, transfers, job

assignments and promotions are discrete acts and, if untimely, cannot form the basis of a

continuing violation claim."); Idrees v. City of N.Y. Dep't of Parks & Recreation, No. 04 Civ.

2197, 2005 U.S. Dist. LEXIS 7643, at *16 (S.D.N.Y. May 3, 2005) ("[U]ntimely failure to promote claims cannot be brought within the ambit of the continuing violation doctrine and must be dismissed."). The statute of limitations period in the case of employment discrimination begins when the allegedly discriminatory decision "was made and communicated" to the employee. Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980). See also Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 22-23 (2d Cir. 1985); Grasso, 2002 WL 575667, at *3. Under that case law, both Esposito's promotion and compensation claims are time-barred.

   Although Esposito concedes that the statute of limitations on her failure to promote claim began to run when she understood she was not going to be promoted, she confuses the issue in her Complaint and pre-motion letter. In her pre-motion letter, instead of clarifying the date on which she first knew that she was not going to be promoted, she focuses on the August 18, 2001 date – the date on which she learned that her two co-workers were promoted. (Pre-motion Letter, p. 2.) This date, however, has absolutely no relevance to Esposito's promotion claim. It is well-settled in this Circuit that the limitations period on a claim of discrimination or retaliation begins to run when the plaintiff learned of the discriminatory act and not when additional facts, such as the employer's treatment of comparators, make clear to the plaintiff the discriminatory nature of the act. In Richetts v. Ashcroft, No. 00 Civ. 1557, 2003 U.S. Dist. LEXIS 3878 (S.D.N.Y. Mar. 7, 2003), for example, the plaintiff claimed that she had been given an unfavorable performance evaluation, and thereafter denied a promotion on the basis of that evaluation, because of her race. See id. at *8. She maintained that the statute of limitations on her Title VII claim began to run when she later reviewed the favorable performance evaluations of her white co-workers. See id. at *10-11. The court disagreed and held that her discovery of the co-workers evaluations was irrelevant to the running of the statute

17

of limitations but, rather, that the statute of limitations began to accrue when she became aware of the allegedly discriminatory action – i.e. when she received her performance evaluation.  See id. at *11-12.  See also Putkowski v. Warwick Valley Central Sch. Dist., 363 F. Supp. 2d 649, 655 (S.D.N.Y. 2005) (stating that the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision and requiring the complaint to allege when the plaintiff first became aware of the decision to demote him); Fausto v. Reno, 955 F. Supp. 286, 292 (S.D.N.Y. 1997) (holding that the statute of limitations began to run when the plaintiff was aware of the adverse employment action taken against him not when he became aware, at a later time, of the discriminatory animus that motivated the action).

       Here, Esposito claims that "[i]n April 2001," she discussed with Dall the promotions of her two co-workers and "understood it to mean" that "younger workers had a better future at Deutsche Bank than did older workers."  (Complaint, ¶ 75.)  During this discussion, Esposito claims that Dall's representations "confirmed [her] belief that she would *never* be given any opportunity for advancement within Deutsche Bank."  (Complaint, ¶ 78. Emphasis in the original.)  Although Esposito does not specify the actual date of the alleged meeting with Dall during which she became aware that she would never be given an opportunity for advancement because of her age, the Complaint's strict chronology indicates that the meeting occurred some time before April 5, 2001 since a subsequent paragraph in the Complaint describes an incident that occurred on that date.  (Complaint, ¶ 80.)  For her promotion claim to be actionable, Esposito would have had to have learned of the decision to deny her a promotion on or after April 14, 2001 (300 days before the filing of her EEOC charge on February 6, 2002). Accordingly, Esposito's promotion claim is time-barred.

Esposito's compensation claims are likewise time-barred.  Esposito claims that, "[b]y January 2001," her two younger co-workers received bonuses of $55,000 each, while Esposito received a bonus of $30,000.  (Complaint, ¶ 70.)[13]  Even if the communication had been made on the last day of January, Esposito's February 8, 2002 charge, filed 373 days after January 31, 2001, is still 73 days too late.  Similarly, Esposito's claim that the "younger co-workers" received salary increases for 2001 of $20,000 each, while Esposito received a salary increase of $3,000, which, most likely, would have similarly been communicated in January 2001, when Esposito was informed of her incentive compensation, is similarly untimely.  (Complaint, ¶¶ 71-73.)  Tellingly, Esposito's pre-motion letter makes no mention of the timeliness of her disparate salary allegations.  This is presumably because she cannot argue that she was unaware of her 2001 salary after receiving paychecks in January, February and March of 2001.

Accordingly, Esposito's ADEA and Title VII claims of discrimination and retaliation with respect to compensation and promotion are discrete actions, and because she became aware of these claims before April 14, 2001, these claims should be dismissed as time-barred.

## CONCLUSION

For the foregoing reasons, DB respectfully requests that the Court grant its motion for partial dismissal of Esposito's Complaint and dismiss all claims brought by Esposito under the NYSHRL and the NYCHRL as well as her claims for discriminatory compensation and promotion practices under both the ADEA and Title VII.

---

[13] In her pre-motion letter, Esposito now claims that she is unable to state with certainty when she became aware of the bonus decisions , "but it seems it was on or about April 2001." (Pre-motion Letter, p. 2.) This convenient amnesia, occurring since the filing of her Complaint and contradicting its express language, was clearly triggered by DB's pre-motion submission.

Dated: New York, New York
      October 12, 2007

                                    SIDLEY AUSTIN LLP


                                    By: _____
                                        Cliff Fonstein
                                        Joanne Seltzer
                                        787 Seventh Avenue
                                        New York, New York 10019
                                        (212) 839-5300

                                    Attorneys for Defendant
                                    Deutsche Bank AG New York branch

20

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and
not a party to this action, state under penalty of perjury that on October 12, 2007, I caused a true
and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion For
Partial Dismissal of Plaintiff's Complaint to be served by Federal Express overnight delivery
upon the following:

>       J. Patrick DeLince, Esq.
>       DELINCE LAW PLLC
>       44 Wall Street, 10th Floor
>       New York, New York 10005

_____
Joanne Seltzer

NY1 6367920v.1

21