Westlaw.

Slip Copy                                                                                          Page 1

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
(Cite as: Slip Copy)

C
Butts v. New York City Dept. Of Housing
Preservation And Development
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Geneva BUTTS, Plaintiff,
v.
NEW YORK CITY DEPARTMENT OF
HOUSING PRESERVATION AND
DEVELOPMENT, Defendant.
No. 00-CV-6307 (KMK).

Jan. 29, 2007.

Geneva Butts, New York, NY, Pro Se.
Holly R. Winefsky, Esq., Zoe Lynn Davidson, Esq.,
Corporation Counsel of the City of New York, New
York, NY, for Defendant.

KENNETH M. KARAS, District Judge.
*1 Plaintiff Geneva Butts filed this action alleging
discrimination by the New York City Department of
Housing Preservation and Development. The
Complaint alleges several causes of action,
including: (1) retaliation against Plaintiff for filing
discrimination claims, in violation of Title VII of
the Civil Rights Act of 1964 ("Title VII"), 42
U.S.C. § 2000e*et seq.,* and the Age Discrimination
in Employment Act ("ADEA"), 29 U.S.C. § 629*et
seq.;* (2) failure to promote, in violation of Title VII
and the ADEA; and (3) constructive termination, in
violation of Title VII and the ADEA.[FN1]In her
First Amended Complaint, Plaintiff also alleged that
Defendant's conduct violated other federal, state,
and local anti-discrimination statutes, notably 42
U.S.C. §§ 1981, 1983, and 1985, the New York
State Human Rights Law, and the New York City
Human Rights Law. At the conclusion of discovery,
Defendant moved for summary judgment on all
counts. For the reasons stated in this Opinion,
Defendant's motion for summary judgment is

GRANTED.

FN1. Plaintiff filed two amended
complaints, both titled "Amended
Complaint and Jury Demand." The Court
will refer to Plaintiff's first "Amended
Complaint and Jury Demand" as the "First
Amended Complaint," and the Court will
refer to Plaintiff's most recent submission
as the "Second Amended Complaint."
Plaintiff's First Amended Complaint is
attached as Exhibit D to the Second
Amended Complaint.

*I. Background*

*A. The Parties*

Plaintiff is an African-American female who was
employed by Defendant, the New York City
Department of Housing Preservation and
Development ("HPD"),[FN2] from 1972 until she
retired in December 2000, at the age of 62. (Def.'s
Amended Local Civil Rule 56.1 Statement of
Undisputed Facts ¶ 1 ("Def.'s Am. 56.1").)
Initially, Plaintiff was hired as a Level 2 Computer
Systems Manager ("CSM"). (Second Am. Compl.
Ex. C at 1.[FN3]) In 1981, Plaintiff was promoted to
a Level 3 CSM.

FN2. New York City agencies may not be
sued in their capacity as agencies. *See* New
York City Charter § 396. Thus, for the
purposes of this motion, the Court, as did
Defendant's counsel, will construe
Plaintiff's action as one against the City
itself, rather than HPD. The Court does
this in recognition of its duty to construe a
*pro se* Plaintiff's papers to raise the
strongest arguments they suggest. *See
Burgos v. Hopkins,* 14 F.3d 787, 790 (2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
(Cite as: Slip Copy)

Cir.1994).

FN3. Plaintiff has done an able job as a *pro se* plaintiff in compiling an extensive documentary record of her claims. Many of the facts she alleges, however, are not specifically contained within the Amended Complaint or her Rule 56.1 Statement. Mindful of the Court's obligation to construe her papers to raise the strongest arguments they suggest, many of the facts here are drawn from a variety of Plaintiff's submissions, including the fact section of her memorandum of law in opposition to Defendant's motion.

### B. Alleged Discriminatory Conduct

In March 1996, Plaintiff worked in the Information Systems Development ("ISD") division at HPD, where she was the Director of Technology and Application Development Services and responsible for oversight of the agency's mainframe computer, one of three computer systems at HPD. (Def.'s Am. 56.1 ¶¶ 2-3.) At that time, Plaintiff supervised over 40 people. (*Id.* ¶ 3.) By October 1996, Plaintiff's title had changed. She was made the Director of Mainframe Application Development Services ("MADS"), where she supervised nine other employees, including Paget Mack ("Mack"), a programmer who was later promoted to become her deputy. (*Id.* ¶¶ 5-6.)

In May 1998, the Chief Information Officer/Assistant Commissioner of ISD was terminated. (*Id.* ¶ 8.) In June 1998, Hector Batista, HPD's Chief of Staff and Deputy Commissioner, sent an email to Plaintiff and the other two director-level employees in ISD indicating that they would have to assume additional responsibilities until a replacement for the Chief Information Officer was found. He asked the three employees to review their vacation plans given the increased demands that would be placed on them (*Id.* ¶ 11), and stated that he would review and approve any vacation plans for that summer. (Def.'s Mot. for Summ. J. Ex. S 01672 ("Def.'s Mot.").) Plaintiff submitted her upcoming vacation schedule, in which she stated that she intended to take thirty-one

(31) vacation days between June and September 1998. Plaintiff subsequently took thirty-five (35) days of paid leave and nine (9) days of sick leave during that period, nearly triple that of the other two director-level employees. (Def.'s Am. 56.1 ¶¶ 13-15.)

\*2 Plaintiff expressed interest in the vacancy created by the departure of the Associate Commissioner in an email to Hector Batista dated June 3, 1998. It stated, "if you are going to post this vacancy I am very interested in applying for the position."(Pl.'s Schedule A Docs. Ex. 2.) Plaintiff alleges no notice of vacancy was posted for this position, in violation of the City of New York's rules on filling employment vacancies described in the City's Personnel Services Bulletin 200-9 ("PSB 200-9").FN4 (Pl.'s Am. Aff. in Opp'n to Mot. to Dismiss 5 ("Pl.'s Opp'n Mem.") .) In July 1998, Nissim Baruch ("Baruch"), a white male younger than Plaintiff, was "given responsibility" for mainframe applications (Second Am. Compl. Ex. B at 2), and received a pay increase (Pl.'s Bate [sic] Stamped Docs. at 01602). Plaintiff alleges that the failure to place her in this position was discriminatory. (*Id.*) In August 1998, Kamal Bherwani ("Bherwani"), an Asian male approximately 32 years of age, was hired to fill the Chief Information Officer/Associate Commissioner position. Bherwani had previously worked at HPD from 1989 to 1994 and had 11 years of experience in the relevant field. (Def.'s Am. 56 .1 ¶ 16.)

FN4. PSB 200-9 requires that after a city agency receives authorization to fulfill a vacant position, it must post a vacancy notice. (Def.'s Mot. Ex. A.) If the agency decides to fulfill the position from within the agency, it must post the notice for a period of 10 days within the agency. (*Id.*) If it decides to fulfill the position from outside the agency, it must follow additional procedures for posting the notice at other relevant city agencies.

One of the primary reasons Bherwani was hired was to prepare HPD for "Y2K," the name which came to describe the set of problems computer experts

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 3

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
(Cite as: Slip Copy)

thought would occur when the internal clocks in older computer systems reached January 1, 2000. (*Id.* ¶¶ 17-18.)New York City had determined that HPD was behind other City agencies in Y2K preparation. (*Id.* ¶ 17.)As a result, Bherwani was given more direct access to senior leadership than his predecessor. For example, he reported directly to the Commissioner, as opposed to the Division of Administration, and, unlike his predecessor, he was invited to attend senior staff meetings. (*Id.* ¶ 20.)In one of Bherwani's first acts as Associate Commissioner, ISD was reorganized and renamed the "Division of Technology and Strategic Development" ("TSD").(*Id.* ¶ 19.)

The reorganization of TSD in preparation for Y2K was significant. Mack, then Deputy Director of MADS under Plaintiff's supervision, became the Deputy Director of Network and Systems Management, under the Director of that section, Nissim Baruch. (*Id.* ¶ 21.)Later, Mack's title was changed to Y2K Contingency Deputy Director under Baruch, where he supervised Y2K preparation.(*Id.* ¶ 23.)Plaintiff alleges that this reassignment was meant to undermine the effectiveness of her staff and discriminatorily reassign Y2K preparation duties to Barcuh. (Pl.'s Opp'n Mem. 5.) Many of Mack's duties as Y2K Contingency Deputy Director overlapped with duties formerly performed by Plaintiff's staff. (Pl.'s 56.1 ¶ 23.) Other staff was reorganized at this time as well. Darilynn Lewis ("Lewis"), another director, was given responsibility for Y2K-related procurement. (Def.'s Am. 56.1 ¶ 24 .) Mainframe support employees, formerly under Plaintiff's supervision, were transferred to Baruch's division. (Def.'s Mot. Ex. L at 01575.) After the reorganization, Plaintiff supervised only two employees. (Def.'s Am. 56.1 ¶ 25.)

*3 In October 1998, Plaintiff alleges that in a meeting with Bherwani, he mentioned that he had been informed that Plaintiff's prior discrimination suit had been resolved. (Second Am. Compl. Ex. C at 1.) She also alleges that he implied that if she had further management complaints she should leave her job rather than file additional discrimination complaints. (*Id.*)

In November 1998, Bherwani reorganized the division again. He created a new position within the Division, "Director of Legacy Systems." (Def.'s Am. 56.1 ¶ 28.) The position was posted (*id.* ¶ 29), and later filled by Michael Hirst ("Hirst"), a 42-year-old white male who had been working in TSD "on loan" from another city department under the direct supervision of Bherwani. (*Id.* ¶ 27-28.)The position required skills with the "Wang" system, which Hirst possessed. (*Id.*) Plaintiff alleges that she was more qualified than Hirst but was not considered for the Director of Legacy Systems position. (Pl.'s Opp'n Mem. 6.) In addition to creating a new director position, Bherwani also decided to re-consolidate Mack's Y2K Contingency group with Plaintiff's Mainframe Applications group.

Bherwani stated in his declaration that the lack of coordination between Mack, as Deputy Director of Y2K Contingency Planning, and Plaintiff, as Director of Mainframe Applications, had caused both groups to miss deadlines. (Def.'s Am. 56.1 ¶ 32.) Bherwani gave the reconsolidated group a new title, "Y2K Mainframe Applications," and appointed Mack, a 53-year-old African-American male, as its director. (*Id.* ¶¶ 33-34.)He stated Mack was given this position based on "his proven leadership abilities, technical expertise, knowledge and experience as a programmer, historical knowledge and willingness to be a team player." (Decl. of Kamal Bherwani in Supp. of Def.'s Mot. for Summ. J. ¶ 19 ("Bherwani Decl.").) Subsequently, Plaintiff was demoted from a director position to a deputy director position (Def.'s Am. 56.1. ¶¶ 36-37), and received a 20% pay cut. (*Id.* ¶ 36.)Bherwani stated that he chose to demote Plaintiff because there was no need for two directors to supervise the mainframe, as its importance to HPD was declining, and that her performance was not "deserving of a Director position." (Bherwani Decl. ¶ 20.) This was because she failed to attend scheduled meetings and did not adjust her personal schedule to meet critical needs of the agency. (*Id.*) This demotion was approved by the Office of the Mayor on November 12, 1998, and went into effect on November 16, 1998. (Pl.'s Bate [sic] Stamped Docs. at 1585; Pl.'s Am. Schedule A Docs. Ex. 36.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 4

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

In June 1999, a vacancy notice was posted for the position of Director of Client Server Application Development. (Pl.'s Opp'n Mem. 7.) Plaintiff expressed interest in the position to Lewis and Bherwani. (*Id.*) The position was filled by Daniel Moliterno, a white male approximately 50 years old.(*Id.*) At the time, Plaintiff had 38 years of experience, while Moliterno had 25 years of experience. (*Id.*)

*4 In August 1999, Bherwani left HPD. (Def.'s Am. 56.1 ¶ 40.) The vacancy in the position of Chief Information Officer/Associate Commissioner was posted from September 13, 1999 to September 24, 1999. (Def.'s Mot. Ex. C.) HPD sought pre-approval to place Cary Peskin ("Peskin"), a white male, in the position on September 13, 1999. (Pl.'s Bate [sic] Stamped Docs. at 1598.) Plaintiff did not apply for the position. (Def.'s Am. 56.1 ¶ 42; Feb. 5, 2002 Deposition of Geneva Butts 133 (" Pl.'s Dep.").) Peskin was hired to fill the vacancy. (Def.'s Am. 56.1 ¶ 41.)

After the appointment of the new Associate Commissioner, Plaintiff claims she was subjected to mistreatment in the office. She claims she was excluded from management, that she was "harassed" about giving up her office to a new director after her demotion, that she was not allowed to work on a problem even though she knew the solution, and that she was denied a discretionary pay increase in late 1999. (Pl.'s Opp'n Mem. 9.)

In May 2000, the department was reorganized again. The Y2K Mainframe Applications section, directed by Mack with Plaintiff as deputy director, and the Planning/Client Support Services/Y2K Technical Procurement sections were combined. (Def.'s Mot. Ex. L 0000028, 0000031.) The new section was titled Mainframe/Planning/QA Support/Technical Procurement and was led by Lewis, as a Director. Plaintiff claims that this position was not posted, and that she was not allowed to apply for it. (Pl.'s Opp'n Mem. 9.) Both Mack and Plaintiff were no longer directors or deputy directors, and both worked under Carl Abraham, who supervised Mainframe Quality and Assurance in the new division. (Def.'s Mot. Ex. L at 0000031.)

In December 2000, Plaintiff took an early retirement incentive. (Def.'s Am. 56.1 ¶ 48.) Under the incentive, Plaintiff would receive a lump sum payout of her accrued leave. (*Id.* ¶ 68.)Plaintiff was informed at that time that her past leave would be subject to an audit. (*Id.*) HPD's initial calculations estimated that Plaintiff was owed $58,509.79. (*Id.* ¶ 69.)These calculations were reviewed by the Comptroller's office and adjusted. (*Id.* ¶ 71.)Based on the adjusted calculations of the Comptroller's office, Plaintiff was only owed $28,327.43, which was the sum approved for disbursement. (*Id.* ¶¶ 71-74, 77.)Plaintiff alleges that this adjustment was in retaliation for an Article 78 proceeding, an administrative claim under New York State law, that she brought against HPD in 1999.[FN5](First Am. Compl. 1 .)

> FN5. On December 15, 2006, after oral argument, Plaintiff submitted an additional set of papers entitled "Facts Related to Article 78 Proceeding."The Court has considered Plaintiff's additional papers, but they are not relevant to the outcome of the present motion.

Prior to her retirement, Plaintiff requested that some of the leave time she had charged to annual leave in 1998 be switched to compensatory time. (First Am. Compl. 3.) According to Defendant, such a request was unusual. (Def.'s Am. 56.1 ¶ 82.) Plaintiff's supervisor, Lewis, stated that Plaintiff was required to obtain the approval of Bernard Schwarz (" Schwarz"), the Assistant Commissioner for Human Resources. (First Am. Compl. 3.) The request was not approved. (*Id.*)

*5 Plaintiff did not receive her lump payment for accrued leave time until July 2001, when the audit of her accrued leave was completed. (Def.'s 56.1 ¶ 77.) She alleges that she was supposed to receive the payment within two months of her retirement, in approximately January 2001. (First Am. Compl. 1.)
FN6

> FN6. Plaintiff's Second Amended Complaint includes allegations of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

discriminatory conduct that were not included in the charge of discrimination she filed with the Equal Employment Opportunity Commission ("EEOC"). Exhaustion is an essential element of a Title VII claim; therefore, conduct not included in a claim of discrimination filed with the EEOC is not actionable unless it is "reasonably related" to the conduct included in the claim. *Williams v. N.Y. City Housing Auth.,* 458 F.3d 67, 70 (2d Cir.2006) (per curiam).

Plaintiff's EEOC complaint includes a three page description of Defendant's allegedly discriminatory conduct. As described in that document, Defendant's discriminatory conduct began in approximately November 1998, with Plaintiff's demotion from a Level 3 CSM to a Level 2. Plaintiff's Second Amended Complaint includes numerous additional allegations of discriminatory conduct, including a failure to promote allegation from 1994 and a disparate treatment allegation from a failure to receive a salary increase while assuming additional responsibility in 1995. These pre-1996 allegations of discrimination are not " reasonably" related to the allegations in Plaintiff's EEOC complaint, which all concern events surrounding the reorganization of Plaintiff's department and the hiring of new division heads. Thus, the pre-1995 allegations are not actionable. *See id.* The remaining allegations in Plaintiff's Second Amended Complaint concern failure to promote and retaliation claims that arise out of the same facts that Plaintiff alleged in her EEOC complaint. Thus, they are reasonably related to the allegations included in Plaintiff's EEOC complaint. *See id.* ("This Circuit has recognized that [a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."(internal citations and quotation marks omitted)).

Plaintiff's state and local law claims, however, are not subject to Title VII's exhaustion requirement. *See Waterman v. Register.com, Inc.,* No. 05 Civ. 2191, 2005 WL 2759825, at *1 (S.D.N.Y. Oct. 19, 2005). The pre-1996 claims, however, fall outside those statutes' limitations on the filing of claims, which require a discrimination claim be filed within three years of the discriminatory conduct. *See infra.*

### C. Procedural History

Plaintiff filed an administrative appeal of her demotion with HPD on December 30, 1998. (Def.'s Mot. Ex. P.) This appeal was denied, and Plaintiff continued to appeal her demotion to higher authorities. (*Id.*) Her final appeal was denied by William J. Diamond, Commissioner of the New York City Department of Citywide Administrative Services, on August 23, 1999.[FN7] On September 14, 1999, Plaintiff filed a charge of discrimination with the EEOC, alleging racial, gender, and age discrimination by HPD. The EEOC issued a right-to-sue letter on April 12, 2000. Plaintiff filed the Complaint in the instant action on August 23, 2000. Defendant answered on January 2, 2001. Plaintiff amended her Complaint on March 14, 2001, and again on November 15, 2002. On September 27, 2004, this case was reassigned to the undersigned.

> FN7. At some point in late 1999, Plaintiff filed a state law claim under Article 78 of the New York Civil Practice Law and Rules. Oral argument was heard in December 1999, and in January 2001, the Supreme Court for the State of New York found for Plaintiff. As a result of that action, the reduction in Plaintiff's salary and benefits was lessened. (Def.'s Mot. Ex. X.)

### II. Discussion

### A. Standard of Review

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 6

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Summary judgment may be granted when it is shown that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The Court must view all evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-movant's favor. *See Tufariello v. Long Island R.R.,* 458 F.3d 80, 85 (2d Cir.2006). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Segal v. City of New York,* 459 F.3d 207, 211 (2d Cir.2006)."Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor."*Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995)."The motion 'will not be defeated merely ... on the basis of conjecture or surmise.' " *Id.* (quoting *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991)); *see also McPherson v. N.Y. City Dep't of Educ.,* 457 F.3d 211, 215 n. 4 (2d Cir.2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) ("[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." (internal quotations omitted)).

The materiality of the facts considered by the Court will be governed by substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). At summary judgment, the Court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See Castro v. Met. Transp. Auth.,* No. 04 Civ. 1445, 2006 WL 1418585, at *4 (S.D.N.Y. May 23, 2006); *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.,* 735 F.Supp. 1205, 1212 (S.D.N.Y.1990). A court's goal should be to "isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323-24.

*6 While courts are to be "particularly cautious"

about granting summary judgement to employers in cases where the discriminatory intent of the employer is contested, *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997), "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases,"*Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001). Though district courts must pay careful attention to affidavits and depositions which may reveal circumstantial proof of discrimination, *see Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994), courts are not to "treat discrimination differently from other ultimate questions of fact."*Abdu-Brisson,* 239 F.3d at 466 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000)).

*Pro se* parties are entitled to "extra consideration" and "special latitude" on summary judgment motions. *Salahuddin v. Coughlin,* 999 F. Supp 526, 535 (S.D.N.Y.1998). Therefore, this Court must read a *pro se* litigant's supporting papers liberally, interpreting them "to raise the strongest arguments that they suggest."*Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (internal quotations and citations omitted); *see also Burgos,* 14 F.3d at 790. This does not, however, "relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment."*Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (internal quotations and citations omitted). In particular, "a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."*Lyerly v. Koenigsmann,* No. 04 Civ. 3904, 2006 WL 1997709, at *2 (S.D.N.Y. July 17, 2006) (internal quotation marks omitted).

### B. Procedural Requirements

#### 1. Federal Claims

Both Title VII and the ADEA require that a plaintiff file a charge with the EEOC prior to filing a federal court action. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                      Page 7

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

(per curiam) ("Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-use letter."). In cases such as this one, where a plaintiff has initially instituted state or local proceedings challenging the allegedly discriminatory conduct, that charge must be filed no more than 300 days from the date of the alleged discriminatory conduct. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); *see also Hill v. Citibank Corp.*, 312 F.Supp.2d 464, 472 (S.D.N.Y.2004).[FN8] The filling deadlines for a charge of discrimination act as a "statute of limitations" and a failure to timely file a charge acts as a bar to a plaintiff's action. *See Hill*, 312 F.Supp.2d at 472. This "statute of limitations" begins to run when each discrete discriminatory act occurs. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Hill*, 312 F.Supp.2d at 472.

> FN8.42 U.S.C. § 2000e-5(e)(1) reads in full:
> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be

> filed by the Commission with the State or local agency.
> 29 U.S.C. § 626(d) reads in full:
> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed-
> (1) within 180 days after the alleged unlawful practice occurred; or
> (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.
> Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

*7 Here, Plaintiff filed her charge of discrimination with the EEOC on September 14, 1999. As a result, the statute of limitations had already run on any discriminatory acts that occurred prior to November 18, 1998, 300 days prior to the filing of Plaintiff's charge of discrimination. Thus, the statute of limitation for federal Title VII and ADEA claims has run on three of Plaintiff's claims, namely those regarding her failure to be considered for the positions filled by Nissim Baruch in June 1998 and Kamal Bherwani in August 1998, and, potentially, her demotion during the 1998 reorganization, which occurred on November 16, 1998 (Pl.'s Am. Schedule. A Docs. Ex. 36).

Plaintiff gives two justifications for why these claims are timely. First, she claims that these acts were part of a continuing pattern of discrimination that began in the mid-1990s and continued until the filing of her charge in September 1999. Second, she argues that she was required to exhaust her administrative appeals prior to filing her federal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 8

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

claim, which is correct, and that her appeal was not exhausted until August 23, 1999. The September 13, 1999 filing date for her charge of discrimination is therefore, she argues, timely, as it is within 30 days from when she received notice that her state proceedings were terminated.

When a claim is based on a continuous pattern or practice of discrimination that occurs over time, the statute of limitations period does not begin until the final act of discrimination in the pattern. *See Washington v. County of Rockland,* 373 F.3d 310, 317 (2d Cir.2004). This is known as the "continuing violation" doctrine. *Id.* However, as the Supreme Court noted in *Morgan,* this doctrine does not apply to discrete discriminatory acts: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan,* 536 U.S. at 113. Failure to promote, demotion, retaliation, and termination claims are all viewed as "discrete" incidents of discrimination. *See id.* at 114;*see also Petrosino v. Bell Atlantic,* 385 F.3d 210, 220 (2d Cir.2004) ("The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period."). Thus, Plaintiff's claims do not fall within the "continuing violation" doctrine and her allegations that her timely claims were part of a pattern of discrimination will not save her untimely claims from dismissal.

Plaintiff's second argument fares a little better. Under both the ADEA and Title VII, a plaintiff has 30 days from the receipt of notice that the state or local claim has been terminated to file a charge of discrimination.[FN9]*See*42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). Here, Plaintiff filed an administrative appeal related only to her demotion, not her failure to be promoted to the positions filled by Baruch and Bherwani). Thus, the tolling period for state or local law claims related to her demotion does not save her untimely federal failure to promote claims, as they were not included in the state or local proceeding. Plaintiff's administrative appeal did challenge her demotion, however. Therefore, the Court considers Plaintiff's November 1998 demotion claim to be timely.[FN10]

FN9. Whether an intra-agency administrative appeal is a claim under local law that tolls the statute of limitations period for Title VII and the ADEA was not briefed by the parties and is not at issue in the Court's decision. As the parties did not contest the point, the Court assumes without deciding that Plaintiff's internal HPD appeal is sufficient to invoke the 30-day notice of termination exception in the relevant sections of the ADEA and Title VII.

FN10. The statute of limitations for federal claims filed under 42 U.S.C. §§ 1981, 1983, and 1985 is three years. Although the statute of limitations for these claims differs from that of Title VII and the ADEA, the substantive framework for evaluating them is identical to claims raised under those statutes and the relevant state and local anti-discrimination statutes, the New York State Human Rights Law and New York City Human Rights Law. *See Martinez v. Sulner,* No. 04 Civ. 2728, 2006 WL 737137, at *4 (S.D.N.Y. Mar. 23, 2006) ("Discrimination claims under [ Sections 1981, 1983, and 1985]... are assessed pursuant to standards similar to those applicable to Title VII claims."). Plaintiff's federal claims under 42 U.S.C. § § 1981, 1983, and 1985 are discussed *infra.*

*2. State and Local Claims*

**\*8** Section 296 of the New York State Human Rights Law ("NYSHRL") gives complainants three years from the date of any allegedly discriminatory acts to file suit. *See Forsyth v. Fed'n Employment & Guidance Serv.,* 409 F.3d 565, 572 (2d Cir.2005). Section 8-502 of the New York City Human Rights Law ("NYCHRL") does the same. *See* N.Y. City Admin. Code § 8-502(d). As a result, any conduct that occurred between September 14, 1996, and the filing of her charge of discrimination on September 14, 1999, is not time barred under the NYSHRL and the NYCHRL. Thus, Plaintiff's failure to promote claims relating to the hiring of Baruch and Bherwani are timely under the NYSHRL and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                   Page 9

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

NYCHRL. FN11

> FN11. Defendant asks the Court to decline
> to exercise pendant jurisdiction over
> Plaintiff's state law claims pursuant to 28
> U.S.C. § 1367(c)(3). However, this
> provision is discretionary, and a district
> court may exercise pendant jurisdiction
> over state law claims arising out of facts
> similar to those that form the basis of
> federal claims over which the court has
> original jurisdiction, even if all federal
> claims have been dismissed. *See Purgess
> v. Sharrock,* 33 F.3d 134, 139 (2d
> Cir.1994). Although it is true, as
> Defendant notes, that it is not an abuse of
> discretion for a federal court to dismiss
> pendant state law claims if all federal
> claims have been dismissed prior to trial,
> *see Castellano v. City of New York,* 142
> F.3d 58, 74 (2d Cir.1998), requiring the
> parties to engage in exactly the same
> discovery as has already occurred in this
> case is a waste of scarce judicial resources.
> Thus, the Court will consider Plaintiff's
> state law claims.

### C. Intentional Discrimination Claims

#### 1. Analytical Framework

Title VII and ADEA claims are subject to the
burden shifting framework outlined by the Supreme
Court in *McDonnell Douglas Corp. v. Green,* 411
U.S. 792 (1973). Plaintiff must first establish a
prima facie case of discrimination. *See id.* at 802
(Title VII); *Graves v. Finch Pruyn & Co., Inc.,* 457
F.3d 181, 187 (2d Cir.2006) (ADEA). To establish
a prima facie case, the *McDonnell Douglas* test
requires that a plaintiff show: "(1) she is a member
of a protected class; (2) she was qualified for her
position; (3) she suffered an adverse employment
action; and (4) the action occurred under
circumstances giving rise to an inference of
discrimination."*Norville v. Staten Island Univ.
Hosp.,* 196 F.3d 89, 95 (2d Cir.1999) (Title VII);
*see also Fagan v. N.Y. State Elec. & Gas Corp.,*

186 F.3d 127, 132 (2d Cir.1999) (ADEA).
Plaintiff's burden in establishing a prima facie case
is "de minimis." *Douglas v. Dist. Council 37 Mun.
Employees' Educ. Fund Trust,* 207 F.Supp.2d 282,
289 (S.D.N.Y.2002).

If the plaintiff satisfies this initial burden, the
burden of production (but not persuasion) shifts to
the employer to articulate a legitimate,
non-discriminatory reason for the action. *See
Patterson v. County of Oneida,* 375 F.3d 206, 221
(2d Cir.2004). If the employer carries this burden,
the burden of production shifts back to the plaintiff
to demonstrate that the legitimate reasons offered
are pretextual. *Id.* The ultimate burden of
persuading the trier of fact that the defendant
intentionally discriminated against the plaintiff
remains at all times with the plaintiff, and if the
plaintiff has failed to show that there is evidence
that would permit a rational factfinder to infer that
the employer's proffered rationale is pretext,
summary judgment dismissing the claim is
appropriate. *Id.* This analysis is the same for claims
under the NYSHRL and NYCHRL. *See Dawson v.
Bumble & Bumble,* 398 F.3d 211, 217 (2d Cir.2005)
; *Farias v. Instructional Sys., Inc.,* 259 F.3d 91, 98
(2d Cir.2001); *Weinstock v. Columbia Univ.,* 224
F.3d 33, 42 n. 1 (2d Cir.2000); *Torres v. Pisano,*
116 F.3d 625, 629 n. 1 (2d Cir.1997); *Ferrante v.
Am. Lung Assoc.,* 687 N.E.2d 1308, 1312
(N.Y.1997).FN12 It is undisputed in this case that
Plaintiff was a member of the relevant protected
classes and that she had the qualifications listed for
the positions at issue. Thus, the only questions in
dispute are whether Plaintiff suffered an adverse
employment action, and whether that action
occurred under circumstances giving rise to an
inference of discrimination.

> FN12. Where, as here, parties in a
> discrimination action do not distinguish the
> applicable levels of proof for federal, state,
> and local claims, the Second Circuit has
> treated them as identical. *See Mandell v.
> County of Suffolk,* 316 F.3d 368, 377 (2d
> Cir.2003). Therefore, for all purposes
> other than the relevant statutes of
> limitations, discussed *infra,* the Court's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 10

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

analysis of Plaintiff's discrimination claims under Title VII and the ADEA applies equally to her state and local law claims. *See Gonzalez v.. City of New York,* 354 F.Supp.2d 327, 331 n. 2 (S.D.N.Y.2005) (citing cases and granting summary judgment in favor of defendants on Title VII and NYSHRL claims).

*2. Reorganization and Demotion Claim*[FN13]

FN13. In her papers, Plaintiff classified this cause of action as a failure to promote claim. However, it is better argued as a reorganization or restructuring claim. As the Court must read Plaintiff's papers to raise the strongest arguments they suggest, the Court will evaluate it as a reorganization claim. Additionally, as this claim is outside the scope of the Title VII and ADEA statute of limitations' periods, Plaintiff's claim is only cognizable under 42 U.S.C. §§ 1981, 1983, 1985, the NYSHRL, and the NYCHRL. However, as discussed *supra,* the analytic framework for evaluating these claims is identical to that of Title VII and ADEA claims.

**\*9** Plaintiff alleges that she was discriminated against when, during the reorganization of TSD in November 1998,[FN14] HPD promoted Mack, a 53-year-old African American male, to Director of the newly created Y2K Mainframe Applications group. The group that Plaintiff had directed was eliminated and she was demoted to Deputy Director. It is well settled that a demotion is an adverse employment action. *See Kessler v. Westchester County Dep't of Soc. Serv.,* 461 F.3d 199, 205-06 (2d Cir.2006).

FN14. It is impossible to establish, based on the current record, whether this reorganization was complete, or even announced, prior to November 18, 1998. Bherwani stated that it occurred in November 1998. The organizational chart that reflects these changes is dated

November 16, 1998 (Def.'s Mot. Ex. L at 01585), and the administrative record of Plaintiff's demotion, which occurred during this reorganization, is dated November 12, 1998 (Pl.'s Am. Schedule. A Docs. Ex. 36). Events prior to November 18, 1998, as discussed *supra,* fall outside the statute of limitations. As the exact date of the reorganization is unclear, however, the Court will construe Plaintiff's claims liberally to fall within the statute of limitations period.

Thus, the only question remaining is whether Plaintiff's demotion occurred under circumstances giving rise to an inference of discrimination. Plaintiff alleges this reorganization was discriminatory. Her allegation is based on the fact that (1) she was replaced by a person, not of her protected class, who had fewer qualifications and less experience than Plaintiff,[FN15] and (2) other white managers in similar reorganizations were notified of the demotion and given opportunity to find new positions, courtesies that Plaintiff alleges were denied to her.[FN16]An employer's choice of a less qualified employee not from Plaintiff's protected class raises an inference of discrimination sufficient to establish a prima facie case of discrimination, *see Terry v. Ashcroft,* 336 F.3d 128, 139 (2d Cir.2003), as does treating similarly-situated employees not in a plaintiff's protected class differently, *see Abdu-Brisson,* 239 F.3d at 467-68.

FN15. Because Mack was also African-American, this allegation only raises an inference of gender and age discrimination. The eight-year difference in age between Plaintiff and Mack is sufficient to raise an inference of age discrimination. *See Tarsis v. Riese Org.,* 211 F.3d 30, 38 (2d Cir.2000)*abrogated on other grounds by Swierkiewicz v. Sorema N. A.,* 534 U.S. 506 (2002); *Ranieri v. Highland Falls-Fort Montgomery Sch. Dist.,* 198 F.Supp.2d 542, 544 (S.D.N.Y.2002).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 11

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
(Cite as: Slip Copy)

FN16. Plaintiff specifically names three managers who allegedly received different treatment: Robert Sousa, Dean Plummer, and Harvey Blum. As Plaintiff does not provide the age of these employees, this allegation is insufficient to raise an inference of age discrimination. In addition, Plaintiff has provided no evidence to substantiate her allegations of differential treatment other than a reference to the employees' names. Finally, these events occurred at least four years prior to Plaintiff's alleged demotion, which makes it difficult, if not impossible, to determine if these employees were in fact similarly situated to Plaintiff. (Second Am. Compl. Ex. B at 2.)

That does not end the inquiry. It simply shifts the burden of production to Defendant to come forth with a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant produced the declaration of Bherwani, who stated that the reorganization was necessary to prepare the division for Y2K. (Bherwani Decl. ¶ 17.) He also stated that the current separation of responsibilities between Mack's Y2K Contingency group and Plaintiff's Mainframe Applications group was inefficient and ineffective. (*Id.* ¶ 17-18.)He justified Mack's promotion over Plaintiff by saying that Mack was chosen to lead the consolidated group because he was well qualified for the position.(*Id.* ¶ 18.)Bherwani noted that Mack had " proven leadership abilities, technical expertise, knowledge and experience as a programmer, historical knowledge and willingness to be a team player ."(*Id.*) He also stated that Plaintiff was demoted because Plaintiff's skills, which focused on mainframe computers, were no longer as relevant to HPD, which was shifting to networked computers. (*Id.* ¶ 21.)In addition, Bherwani stated that Plaintiff's performance was not deserving of a Director position, based on her failure to attend scheduled meetings and her refusal to make accommodations for her vacation schedule. (*Id.* ¶¶ 18-20.)Bherwani explained that the reduction in Plaintiff's salary brought her compensation in line with that of Mack's, which he felt was fair. (*Id.* ¶ 19.)In addition to Bherwani's statements, Defendant

produced a memo from Batista which stated, " Geneva Butts ... is one of the most unproductive employees and must be monitored closely ."(Pl.'s Bate [sic] Stamped Docs. at 01725.) Defendant, however, has produced no documentary evidence of any non-performance. Defendant did, however, provide statistical evidence regarding Bherwani's hiring practices. During Bherwani's tenure as Associate Commissioner, he promoted thirty-two people. Of those thirty-two, seventeen were African-American, eleven were female, and all eleven females were African-American. Eight were over the age of forty. (Bherwani Decl. ¶ 22.)

*10 In response to Plaintiff's allegation that white male managers were treated differently than she was during reorganizations, Defendant produced a declaration from Bernard Schwarz ("Schwarz"), Deputy Commissioner of the Office of Administration of HPD. (Decl. of Bernard F. Schwarz in Supp. of Def.'s Mot. for Summ. J. ¶¶ 14-18 ("Schwarz Decl.").) Schwarz provided three examples of white HPD managers, two male and one female, who received reductions in salary when they were demoted. (*Id.* ¶ 16-18.)Schwarz also specifically rebutted Plaintiff's allegations concerning Sylvia Maraia, a white female manager, who Plaintiff alleged was allowed to keep her salary during a reorganization. Schwarz stated that Maraia did not receive a demotion in that reorganization, thus, she kept her salary. (*Id.* ¶ 15.)

Plaintiff alleges that these justifications are merely a pretext for discrimination, but no support for this claim is found in Plaintiff's papers. When asked at oral argument what evidence she bases that allegation upon, she pointed to little else than her own lack of advancement within the ranks of HPD and a general allegation that HPD has, over the past 20 years, sought to remove African Americans from management positions and that her previous positions were generally filled by persons not of her protected classes. Defendant has produced much evidence that rebuts this allegation, however, namely: (1) that HPD, during Plaintiff's tenure, promoted large numbers of African-Americans, females, African-American females, and older employees; (2) that Plaintiff was not treated differently than similarly situated employees not of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 12

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Plaintiff's protected class; and (3) that HPD had a detailed, legitimate business reason for Plaintiff's demotion. In light of this evidence, Plaintiff's general and speculative allegations of discrimination are insufficient to allow a rational juror to find that Plaintiff's demotion was the result of unlawful discrimination. As a result, summary judgment in favor of Defendant on Plaintiff's demotion claim is granted. *See Phillips v. Chertoff*, No. 03 Civ. 4266, 2005 WL 3466033, at *12 (S.D.N.Y. Dec. 16, 2005) (granting summary judgment, in part, because overall promotion record of defendant refuted any claim of race or gender discrimination).

### 3. Failure to Promote Claims

#### a. Analytical Framework

In the context of failure to promote cases, the Second Circuit has developed a specific application of the *McDonnell Douglas* test. A plaintiff satisfies the *McDonnell Douglas* test in a Title VII failure to promote case when the plaintiff "demonstrate[s] that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino*, 385 F.3d at 226 (internal quotation marks and citation omitted). The same framework applies to ADEA cases. *See Mauro v. S. New Eng. Telecomms., Inc.*, 208 F.3d 384, 386 (2d Cir.2000) (per curiam). There is a parallel line of cases that holds that a plaintiff may also raise an inference of discrimination, thereby satisfying the fourth prong of the *McDonnell Douglas* test, by demonstrating that a person, not of the plaintiff's class, was given the position. *See de la Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996) (Title VII); *Owens v. N.Y. City Housing Auth.*, 934 F.2d 405, 408-09 (2d Cir.1991) (ADEA); *Gomez v. Pellicone*, 986 F.Supp. 220, 228 (S.D.N.Y.1997).

*11 The application requirement is not satisfied by

a general request to be considered for the position. *See Petrosino*, 385 F.3d at 227. A "specific application" for a given position is required. *Id.* However, there is a "narrow" exception to the specific application requirement. *Id.* An employee may be excused from the specific application requirement if he or she demonstrates "that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer."*Id.* The Second Circuit also uses this same framework to evaluate state and local law claims that arise under the NYSHRL and NYCHRL. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709-10 (2d Cir.1998) (upholding dismissal of NYSHRL and NYCHRL claims for failure to show a specific application); *Storms v. Elec. Data Sys. Corp.*, No. 01 Civ. 665A, 2004 WL 2480857, at *1 n. 1 (W.D.N.Y. Nov. 3, 2004) (" [C]laims under the [New York State] Human Rights Law are analyzed under the same standards as Title VII claims.").

For all of Plaintiff's claims, it is undisputed that she meets the first and third requirements of her prima facie case. Plaintiff is an African American female over the age of 40. This makes her a member of the relevant protected classes. It is also undisputed that Plaintiff did not receive any of the promotions in question.

#### b. Unspecified Mainframe Applications Vacancy in July 1998[FN17]

> FN17. As this claim is outside the scope of the Title VII and ADEA statute of limitations' periods, Plaintiff's claim is only cognizable under 42 U.S.C. §§ 1981, 1983 , 1985, the NYSHRL, and the NYCHRL.

Plaintiff alleges that the failure of HPD to place her in the unspecified position filled by Nissim Baruch in July 1998 was discriminatory. (Second Am. Compl. Ex. B at 2.) However, Plaintiff has failed to meet her prima facie burden to establish a failure to promote claim regarding this position. There is no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                  Page 13

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

evidence that Plaintiff applied for this position, either formally or informally; nor is there evidence in the record of any vacancy. HPD's organizational charts in the record show that Baruch held the same position, "Director of Network and Systems Management," from at least March 1996 until August 2000. Plaintiff has also failed to show, or even allege, that she applied for the position. Moreover, Plaintiff has not alleged that the vacancy was not posted or that HPD engaged in an improper job search. Therefore, Plaintiff cannot establish a prima facie case for this claim, and summary judgment in favor of Defendant on this claim is granted. *See Petrosino,* 385 F.3d at 227;*Butts v. City of New York Dep't of Pres. & Devel.,* No. 91 Civ. 5325, 1998 WL 13851, at \*4-5 (S.D.N.Y. Jan. 15, 1998) (dismissing plaintiff's Title VII claims for failure to produce any evidence plaintiff was actually excluded from promotion opportunities).

### c. CIO/Associate Commissioner Vacancy in 1998
#### FN18

> FN18. As this claim is outside the scope of the Title VII and ADEA statute of limitations' periods, Plaintiff's claim is only cognizable under 42 U.S.C. §§ 1981, 1983, 1985, the NYSHRL, and the NYCHRL.

Plaintiff also claims that she requested consideration for the Associate Commissioner Vacancy filled by Bherwani in 1998, but that she was never considered. (Second Am. Compl. Ex. B at 1.) After former Associate Commissioner Gonzalez left HPD in 1998, Plaintiff sent an email to Deputy Commissioner Batista that stated "if you are going to post this vacancy I am very interested in applying for the position."(Pl.'s Am. Schedule. A Docs. Ex. 2.) There is no evidence in the record that Plaintiff followed up this email with an application. A specific application for a promotion is required to establish a prima facie case of discrimination due to a failure to promote. *See Petrosino,* 385 F.3d at 227. As the Second Circuit observed in *Petrosino,*
\*12 [T]he requirement ensures that the fact finder is not left to speculate as to the qualifications of the competing candidates, the damages to be derived

from the salary of unknown jobs, the availability of alternative positions, the plaintiff's willingness to serve in them (e.g., in other locales or on other shifts), etc. The requirement also protects employers from the unfair burden of having "to keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply."

*Id.* at 227 (quoting *Brown,* 163 F.3d at 710).

Plaintiff alleges, and Defendant offers no evidence to dispute the allegation, that this position was not posted. That alone, however, is insufficient to meet her prima facie burden.[FN19]Plaintiff must also show that she had no knowledge of the vacancy or that she attempted to apply through informal procedures endorsed by the employer. *See Petrosino,* 385 F.3d at 227.[FN20]

> FN19. Inconsistent posting practices are insufficient as a matter of law to waive the specific application requirement. In *Brown,* the Second Circuit rejected the plaintiff's argument that the lack of posting alone was enough to make her prima facie case:
> As to the posting practices of [defendant], [plaintiff's] complaint impliedly concedes that some positions not requiring a college degree were posted, albeit infrequently. There is no allegation in the complaint that [plaintiff] was not aware of positions, posted or not, as they came open. [Plaintiff] does not charge, for example, that [defendant] refused to accept applications for positions or hand-picked individuals for promotion to a position without considering applicants. In fact, the complaint asserts that "dozens to hundreds" of positions were "open" for which she was qualified. Thus, we see no reason that the posting practices as alleged should exempt [plaintiff] from having to avow that she made some specific effort to apply for a particular position or positions.
> 163 F.3d at 710. There is no reason that inconsistent posting practices by HPD,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                  Page 14

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

though potentially in violation of Personnel Services Bulletin 200-9, command a different result here.

FN20. In *Mauro,* the Second Circuit held that a generally expressed interest in a specific class of positions was sufficient to meet the application requirement. *See Mauro,* 208 F.3d at 387. *Mauro,* however, does not conflict with the Court's decision here. In that case, the defendant had promised plaintiff a specific promotion to a particular class of jobs when one came open. After the plaintiff was not promoted despite two consecutive openings in the preferred class, the Second Circuit found that a jury could infer that the defendant had improperly refused to notify the plaintiff of job opportunities. Although the Court did not discuss the "informal procedures" requirement later announced in *Petrosino,* a promise from a supervisor that a person would not just be considered for the next available promotion, but would in fact receive it, is similar to the informal procedures discussed by the Second Circuit in *Petrosino.* This case is different on the facts, as no such promise to promote was made, and no such informal promotion procedures existed, *see infra.*

Plaintiff cannot show that she was unaware of the vacancy. In fact, her email to Deputy Commissioner Batista is concrete evidence of her awareness that there was a vacancy and that she was interested in applying. (Pl.'s Schedule. A. Docs. Ex. 2.) Plaintiff must, therefore, show that her email to the Deputy Commissioner constitutes an informal way of applying for jobs that was endorsed by her employer or that she was discriminatorily excluded from whatever informal hiring procedures existed.

The only evidence in the record regarding HPD's official hiring policies comes from Schwarz. He has described two different procedures, one for "vacancies," which occur when an incumbent separates from service and his or her position needs to be filled or when a newly created position needs

to be filled, and another for "reorganizations," which occur when HPD reorganizes and current employees are simply assigned different responsibilities. (Schwarz Decl. ¶¶ 4-9.) Although the line between the two is somewhat fuzzy at best, there is no dispute that the Associate Commissioner position, created by the departure of an incumbent, Associate Commissioner Gonzalez, was a vacancy. When a vacancy is created and an agency receives approval to hire a replacement, PSB 200-9 requires that the agency post the position and invite qualified employees to apply. (*Id.* ¶ 4.) All postings contain a contact person to whom resumes and cover letters are to be directed. (*Id.* ¶ 6.) There is no allowance for an informal email to a supervisor, like Plaintiff's.

Plaintiff alleges in her Rule 56.1 Statement that an informal promotion system existed, and she points to a deposition of Deputy Commissioner Schwarz to support this claim. (Pl.'s 56.1 ¶ 42.) [FN21] In the deposition, Schwarz discussed his own promotion and stated that he does not recall whether the position was posted or whether he was required to submit a resume and cover letter. (Pl.'s Schedule A Docs. Ex. 28 at 47.) He simply stated that he engaged in discussions with the then-Commissioner, and that, during a reorganization, he was moved to become Deputy Commissioner. At best, this evidence shows that reorganization promotions occur differently than vacancy promotions, a fact conceded by Defendant and not applicable to Plaintiff's claim here, which concerns a vacancy. Also, there is no evidence that this was a general practice at HPD, or that such practice was endorsed by HPD in the summer of 1998, when the conduct that forms the basis for this claim of discrimination occurred.

FN21. This deposition was taken on February 15, 1996, more than two years prior to the filing of this action. The questions asked concern HPD's practices in the late 1980s and early 1990s, which were the subject of a previous discrimination claim against HPD filed by Plaintiff in 1991.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 15

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**\*13** Plaintiff also states in her Rule 56.1 Statement that not all positions required the submission of resumes. She bases this statement on another portion of Schwarz's deposition, which discussed internal hiring practices in 1990. (*Id.*) This testimony concerned the hiring practices of HPD at least seven years prior to the passage of Personnel Services Bulletin 200-9, which went into effect on June 30, 1998. (Def.'s Mot. Ex. A.) That Bulletin, which establishes the procedures described by Schwarz as the then-current practices of HPD, requires a posting of vacancies. (*Id.*) The posting form attached to that Bulletin includes a form box which states, "TO APPLY, PLEASE SUBMIT RESUME TO:" and then a blank space where a contact person's information may be entered. In addition, all the posting forms included in the record require applicants to "indicate their transmittal number on [the applicant's] resume or cover letter when responding."(Def.'s Mot. Exs. C, D.)

The record does not suggest a dispute over a material fact. Both Plaintiff's and Defendant's evidence comes from the same source, Schwarz. Defendant's evidence, however, concerns HPD's practices at the time of the alleged discrimination, while Plaintiff's evidence covers practices in place at least seven years prior. Even if the process involved in Deputy Commissioner Schwarz's hiring, which also occurred more than seven years before the events at issue here, was probative evidence, it is insufficient to create a question of material fact on whether there was an endorsed informal application procedure at HPD. In *Petrosino,* the Second Circuit held that informal procedures must be "endorsed" by the employer in question. 385 F.3d at 227. Here, there is no evidence that the process that resulted in Deputy Commissioner Schwarz's hiring was "endorsed" by HPD or the City of New York. Indeed, Personnel Services Bulletin 200-9 explicitly states otherwise, as it delineates the formal requirements for job posting and filling vacancies in city employment. In those cases where courts have found that an informal hiring practice was endorsed, it has been part of an ongoing policy or practice-not in direct contravention of posted regulations, as Plaintiff alleges occurred here. *See, e.g., EEOC v. Metal*

*Serv. Co.,* 892 F.2d 341, 349 (3d Cir.1990) (finding that company in question had specific procedures that potential applicants were required to go through, including the use of a specific job service, and the plaintiff had met the requirements). Here, the specific procedures require an application and there is no proof Plaintiff submitted one. Therefore, Plaintiff has failed to raise a question of material fact regarding the existence of an informal hiring procedure that would excuse her failure to apply for the position. Thus, summary judgment in favor of Defendant on Plaintiff's state law claims for a failure to promote her to the Associate Commissioner position is granted.

*d. Director of Legacy Systems Vacancy*

**\*14** Plaintiff next alleges that she was not considered for the newly-created position of Director of Legacy Systems in November 1998. Plaintiff claims that she was never considered for the position, and that this lack of consideration was discriminatory. (Second Am. Compl. Ex. B.) However, there is no evidence in the record that she applied for the position.

As Plaintiff's own evidence shows, this position was posted. (Pl .'s Bate [sic] Stamped Docs. at 1604.) Plaintiff alleges that the posting was "not serious" because she received a "draft copy" of an organizational chart which listed Michael Hirst as Director of Legacy Systems on December 15, 1998. The record does not contain this "draft copy." It does contain a copy of the HPD organizational chart dated November 16, 1998, which lists Hirst as Director of the "Wang Legacy Applications" group within HPD. (Def .'s Mot. Ex. L at 01585.) The position was supposed to be posted, and thus applications were to be solicited, from November 23, 1998, to December 15, 1998, which corroborates Plaintiff's account. Plaintiff's argument that this should excuse the application requirement is also supported by dicta in *Brown,* where the Second Circuit implied that a plaintiff who alleged that a posting was in fact illusory because an employer had already hand-picked an employee to promote would not need to meet the specific application requirement. *See Brown,* 163 F.3d at 710

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 16

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

. The Second Circuit, however, foreclosed this line of argument in *Petrosino.* Although the Court recognized that the specific application requirement could sometimes be "quixotic," it specifically limited the exception to those instances where there was no posting. *See Petrosino,* 385 F.3d at 227. As this vacancy was posted, Plaintiff cannot establish a prima facie case for a failure to promote claim and therefore summary judgment in favor of Defendant on this claim is granted. *See id.*

### e. Associate Commissioner Vacancy in 1999

Plaintiff next alleges that she was denied a promotion to Associate Commissioner in 1999, after Bherwani's departure. This vacancy was posted from September 13, 1999 until September 24, 1999. (Def.'s Mot. Ex. C.) Plaintiff admitted in her deposition that she did not remember seeing the posting and that she did not formally apply for this position. (Def.'s Mot. Ex. Q at 133.) Thus, Plaintiff cannot establish a prima facie case for failure to promote her to this position and summary judgment in favor of Defendant on this claim is granted. *See Petrosino,* 385 F.3d at 227.

### f. Director of Mainframe/Planning/QA Support/Technical Procurement *Reorganization*

Plaintiff also challenges the appointment of Lynn Lewis in May 2000 as Director of Mainframe/Planning/QA Support Technical Procurement. Lewis's previous title was Director of TSD Planning/Client Support, Y2K Technical Procurement. Lewis is an African-American female, who was 49 years of age at the time she was promoted in May 2000.[FN22] It is undisputed that this position was not posted. Defendant claims that this position was not required to be posted and that Lewis, who was already a director, was not given a promotion, but simply received a title more in line with her responsibilities at the time. (Def.'s Am. 56.1 ¶ 62.)

FN22. Because the person who filled the position has the same gender and race as

the Plaintiff, the only potential inference of discrimination that can be drawn from this incident is of age discrimination.

**\*15** Plaintiff has not plead sufficient allegations to survive summary judgment on this claim. First, there is no evidence in the record regarding Plaintiff's awareness of the vacancy. Second, there is no evidence that Plaintiff informally applied for the position. Thus, Plaintiff has failed to meet her prima facie burden to establish a failure to promote claim based on this reorganization. *See Petrosino,* 385 F.3d at 227; *Lyerly,* 2006 WL 1997709, at \*5. FN23

FN23. Plaintiff alleged for the first time in her opposition papers to Defendant's motion that she was also discriminated against when she was not considered for a Director of Client Server Applications Development position that was created in 1999. (Pl.'s Opp'n Mem. 7.) Even though the Court has liberally construed Plaintiff's papers, a plaintiff may not raise new issues or arguments when they were not included within the Complaint. *See Kearney v. County of Rockland,* 373 F.Supp.2d 434, 441 (S.D.N.Y.2005) (citing cases). Plaintiff has submitted two amended complaints and has had ample time to assert her claims. A new claim, for which Defendant has had no opportunity to respond, is inappropriate.
Even if the Court were to consider the claim, however, it would not survive summary judgment. The position was posted (Pl.'s Bate [sic] Stamped Docs. at 01605-06), and Plaintiff's only evidence that she applied for the position is an email to Lynn Lewis, the designated contact person, expressing interest in the position and asking for more information. (Pl.'s Schedule A Docs. Ex. 10.) As previously noted, an expression of general interest does not satisfy the specific application requirement for failure to promote claims. *See Petrosino,* 385 F.3d at 227.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

*D. Retaliation Claims*

Plaintiff alleges that numerous events that occurred during her tenure at HPD, including her demotion, all of the alleged failures to promote discussed above, the failure to receive a discretionary salary increase in September 1999, and the readjustment of her lump sum benefits calculation post-retirement, were in retaliation for discrimination lawsuits she had filed against HPD. To establish a prima facie case of retaliation, Plaintiff must show that: (1) she was engaged in protected activity; (2) Defendant knew of this activity; (3) Defendant took an adverse action against Plaintiff; and (4) there is a causal connection between the adverse actions and the protected activity, i.e., that the Defendant had a retaliatory motive. *See Kessler,* 461 F.3d at 205-06 (both ADEA and Title VII); *Hawana v. City of New York,* 230 F.Supp.2d 518, 529 (S.D.N.Y.2002). Proof of causation can be shown either: (1) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant; or (2) indirectly, by showing that the protected activity was followed closely by discriminatory treatment or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct. *See Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000); *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990); *Gilford v. City of New York,* No. 03 Civ. 0091, 2004 WL 1574695, at *7 (S.D.N.Y. July 14, 2004)."Title VII is violated if a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause, and if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the discharge."*See Sumner,* 899 F.2d at 209 (internal citations omitted). Plaintiff must make these showings by a preponderance of the evidence. *See Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1038 (2d Cir.1993). However, even if Plaintiff states a prima facie case, retaliation claims are still subject to *McDonnell Douglas* burden shifting. *See Sumner,* 899 F.2d at 209.

Plaintiff cites two instances of her own protected activity. First, Plaintiff filed a lawsuit alleging discrimination by HPD on August 5, 1991. That litigation was protracted, and it concluded on March 25, 1999, when the Second Circuit upheld summary judgment in favor of HPD. *See Butts v. City of New York, Dep't of Housing Pres. & Devel.,* No. 98-7209, 1999 WL 187912 (2d Cir.1999) (unpublished disposition).[FN24] A discrimination lawsuit is protected activity. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). Second, Plaintiff brought an action in New York state court under Article 78 of the Civil Practice Law and Rules of the State of New York. In that proceeding, Plaintiff apparently challenged her demotion.[FN25] The Parties have produced little evidence regarding that proceeding, however. The only evidence in the record about when the proceeding commenced came from Plaintiff's deposition testimony, where she stated that her claim was filed soon before this case, in approximately September 1999. (Def.'s Mot. Ex. Y at 39-40.) The Article 78 proceeding concluded on April 11, 2001. (First Am. Compl. 1; Def.'s Mot. Ex. X.) Defendant does not challenge that filing an anti-discrimination lawsuit constitutes protected activity. Thus, for the purposes of this Motion only, the Court will assume that Plaintiff's Article 78 suit constitutes protected activity.[FN26]

> FN24. Judge Stein granted summary judgment in favor of HPD on January 15, 1998. *See Butts,* 1998 WL 13851, at *7.
>
> FN25. It is unclear from the record what the basis of Plaintiff's Article 78 action actually was. The State Justice's opinion, however, ordered that Plaintiff's salary and benefits be restored to their pre-demotion levels. (Def.'s Mot. Ex. X.) According to that court, Plaintiff's salary had been reduced in violation of City Personnel Services Bulletin 230-1R. (*Id.*)
>
> FN26. Article 78 of the New York Civil Practice Law and Rules allows a New York citizen to challenge state and local government decisions that are arbitrary, capricious, or abuses of lawful discretion. N.Y. C.P.L.R. § 78. Title VII and the ADEA, on the other hand, only prohibit retaliation for engaging in activity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 18

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

protected by those statutes, namely challenges to unlawful discrimination. Whether Plaintiff's Article 78 proceeding constitutes protected activity, therefore, depends upon the extent to which she argued that HPD's decision was the product of discrimination. Again, for the purposes of this motion, the Court assumes that Plaintiff's Article 78 action constitutes protected activity.

**\*16** Regarding the second element, Plaintiff has produced evidence that Defendant knew of her protected activity. General knowledge of Plaintiff's protected activity is sufficient to make out a prima facie case. *See Kessler,* 461 F.3d at 210 (" 'Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.' " (quoting *Gordon,* 232 F.3d at 116)). In both instances, Plaintiff's suits were against HPD. Thus, Plaintiff has satisfied the second element of her prima facie case.

Next, Plaintiff must show that she suffered an adverse action. To constitute an adverse action for a retaliation claim, the allegedly retaliatory action must be "materially adverse;" in other words, it must be the type of action that would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination."*Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. ----, 126 S.Ct. 2405, 2415 (2006); *accord Kessler,* 461 F.3d at 207 (quoting *White,* 126 S.Ct. at 2415). The actions Plaintiff alleges are adverse actions are: (1) her demotion from Director to Deputy Director in November 1998, with concomitant decrease in salary and responsibility in November 1998; (2) the numerous allegations of a discriminatory failure to promote from July 1998 to May 2000 described above; (3) her failure to receive a discretionary salary increase in 1999; (4) HPD's refusal to convert some of the time she charged in 1998 from annual leave to compensatory time in December 2000; and (5) the recalculation of her lump-sum retirement benefits in December 2000. Demotion, failure to promote, and a reduction of benefits are materially adverse actions. *See Joseph,* 465 F.3d at

90 (" 'Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits [or] significantly diminished material responsibilities.' " (quoting *Terry,* 336 F.3d at 136)). The failure to receive a discretionary salary increase can also constitute an adverse action.

At this stage, all facts must be construed and all inferences drawn in favor of Plaintiff. Plaintiff alleges that persons not of her protected class received the salary increase, but she did not. This type of activity could dissuade a reasonable worker from engaging in protected activity, and thus constitutes an adverse action. *See White,* 126 S.Ct. at 2420. The refusal to recalculate Plaintiff's charged time, however, does not constitute an adverse action. There is no evidence that any employee was ever allowed to re-allocate charged time prior to retirement, and Schwarz testified that the request was denied because it was untimely. (Schwarz Decl. ¶ 27.) Plaintiff does not suggest that her request was timely. Thus, the denial of an untimely request is not the type of action that would dissuade a reasonable person from engaging in protected activity. *See White,* 126 S.Ct. at 2420.

**\*17** The final element of Plaintiff's prima facie case is proof of causation-namely, evidence of a discriminatory animus that links the adverse actions to unlawful discrimination. Plaintiff has tendered two pieces of evidence of retaliatory animus. First, in October 1998, Plaintiff alleges that she was told by Bherwani that he had been informed her previous discrimination complaint had been recently resolved, and that he "questioned why [Plaintiff] would even bring a charge of discrimination."(Second Am. Compl. Ex. C at 1.) She also stated that Bherwani asked why an employee in that situation would not just leave her job. (*Id.*) Second, Plaintiff alleges that Lewis told her that she "doesn't care about lawsuits." (Pl.'s Am. Schedule A Docs. Ex. 27.) Plaintiff's evidence of this statement is a handwritten note Plaintiff took, allegedly documenting a meeting that occurred on July 27, 2000. Aside from this evidence, the temporal proximity between Plaintiff's protected activity and the allegedly retaliatory acts of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 19

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Defendant can constitute indirect evidence of discriminatory animus. *See Gilford,* 2004 WL 1574695, at *7.

Plaintiff's evidence of retaliatory animus is thin, at best. First, Bherwani's alleged statements questioning why Plaintiff would bring a lawsuit, as described by Plaintiff at oral argument, were not the of the kind meant to intimidate or cow an employee engaged in protected activity. Indeed, at that time, Plaintiff's prior lawsuit was more than six years old, and Bherwani was not involved in it in any way. From the way Plaintiff described the conversation to the Court at oral argument, there is little evidence that Bherwani's statements were meant to affect Plaintiff's behavior at all, nor is there evidence that any of Bherwani's decisions regarding Plaintiff's employment, such as her demotion, were related to the lawsuit. Second, these statements were not linked to the numerous adverse actions Plaintiff alleges were retaliatory. Plaintiff has not alleged that Bherwani was involved in the failure to provide her with a discretionary raise, the refusal to convert her charged leave, or the recalculation of her lump-sum retirement benefits. Only two of the alleged adverse actions occurred during Bherwani's tenure, Plaintiff's failure to be promoted to the Director of Legacy Systems position and her demotion. At this stage, however, the Court must draw all reasonable inferences in favor of Plaintiff. Although drawing an inference that Bherwani's employment decisions were motivated by retaliatory animus for a lawsuit that did not involve him from his statements regarding what he would do if faced with discrimination stretches the boundary of reasonability, Bherwani's statements are sufficient to meet Plaintiff's prima facie burden on her demotion claim and her failure to promote claim related to the Director of Legacy Systems vacancy, if only for their temporal proximity.

Second, Lewis's statement that she "doesn't care about lawsuits" is not evidence of retaliatory animus.[FN27]Plaintiff has never alleged that she was retaliated against by Lewis, nor has she alleged that Lewis played any part in HPD's allegedly retaliatory acts. A single statement by a co-worker, unrelated to any particularly activity or adverse action, does not raise an inference of retaliation. *See Riley v.*

*N.Y. State Office of Alcoholism & Substance Abuse,* No. 1:01-CV-1803, 2006 WL 266537, at *3 (N.D.N.Y. Feb. 1, 2006).

> FN27. Although the note itself is hearsay, and therefore cannot be considered on summary judgment, *see LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 205 (2d Cir.2005), Plaintiff stated at oral argument that Lewis made these statements directly to her. Thus, they could be admitted at trial and may be considered on summary judgment.

*18 Finally, few of the allegedly retaliatory adverse actions were actually proximate to Plaintiff's protected activity. The longer the time between a plaintiff's protected activity and the adverse employment action, the weaker the inference of discriminatory retaliation. In general, a time differential of greater than three months, without additional direct evidence of discrimination, is insufficient to survive summary judgment. *See Gilford,* 2004 WL 1574695, at *7 (citing cases). Here, Plaintiff's protected activity occurred when she filed a discrimination case against HPD in 1991, when summary judgment was granted in March 1999,[FN28] and when Plaintiff filed an Article 78 proceeding against New York City in September 1999.[FN29]As all of the adverse employment actions in this case took place more than six years after her initial suit was filed in 1991, a reasonable inference of retaliation cannot be drawn regarding the *filing* of her 1991 suit. The Article 78 proceeding occurred in the spring and fall of 1999. However, most of the alleged adverse actions occurred in 1998, including (1) her demotion (November 1998), (2) the failure to promote her to the unspecified mainframe applications position filled by Nissim Baruch (July 1998), (3) the failure to promote her to the Associate Commissioner vacancy left by the departure of Bherwani (August 1998), and (4) the failure to promote her to the newly created Director of Legacy Systems position (November 1998). Actions taken prior to Plaintiff's protected activity cannot be retaliatory, as the protected activity had not yet occurred. *See McFadden v. Memorial*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 20

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

*Sloan-Kettering Cancer Ctr.*, No. 04 Civ. 9629, 2006 WL 2930200, at *6 (S.D.N.Y. Oct. 11, 2006) ( "[A]ny hiring decision made *before* McFadden had ever filed her charge with the EEOC cannot sustain a prima facie case of retaliation.").

> FN28. Retaliation need not be proximate to the filing of a case. Proximity to the conclusion of a case is also actionable. *See Bennett v. Goord*, 343 F.3d 133, 137-38 (2d Cir.2003); *Hill v. Rayboy-Brauestein*, No. 02 Civ. 3770, --- F.Supp. ----, 2006 WL 3298383, at *17 (S.D.N.Y. Nov. 9, 2006).

> FN29. Oral argument on Plaintiff's Article 78 claim occurred in state court in December 1999. (Def.'s Mot. Ex. X.)

Many of the remaining adverse employment actions took place too long after Plaintiff's protected activity to raise an inference of discrimination. Plaintiff was allegedly passed over for the Director position filled by Lewis in May 2000, more than five months after her last protected activity. Plaintiff's lump sum retirement benefit was calculated in December 2000, more than one year after Plaintiff's last protected activity. These gaps between protected activity and alleged discrimination are too great to raise any inference of discrimination. *See Gifford*, 2004 WL 1574695, at *7 (holding that four month gap too attenuated to raise inference of discrimination); *Hill*, 312 F.Supp.2d at 480-81 (granting summary judgment where only evidence of causation is temporal proximity of two months); *Allen v. St. Cabrini Nursing Home, Inc.*, 198 F.Supp.2d 442, 450 (S.D.N.Y.2002) (noting that three months is considered too attenuated and finding that sixteen month gap did not raise inference of discrimination).

However, Plaintiff has established her prima facie case as to four adverse actions: (1) her November 1998 demotion, based on Bherwani's October 1998 statements; (2) her failure to be promoted to Director of Legacy Systems in November 1998, also based on Bherwani's October 1998 statements; (3) the failure to promote Plaintiff to the Associate

Commissioner vacancy filled by Peskin in August 1999, based on its temporal proximity to Plaintiff's protected activity; and (4) her failure to receive a discretionary salary increase in September 1999, also based on temporal proximity. Thus, the burden of production shifts to Defendant to show that these two actions were not based on any retaliatory animus.

**\*19** Defendant has offered legitimate business reasons for all of these events, which were described in detail *supra.* Plaintiff was not considered for the Director of Legacy Systems position because she did not apply for it. Plaintiff was demoted because her skills were becoming outdated, there was no need for two directors in her division, and her supervisor felt that Plaintiff had not demonstrated leadership qualities. Plaintiff was not considered for the Associate Commissioner vacancy because, as she admitted, she did not apply for it either. (Def.'s Mot. Ex. Q at 133.) Defendant has also provided a legitimate business reason for Plaintiff's failure to receive a discretionary pay increase. Defendant argues that (1) Plaintiff was an " unproductive employee" based on the Batista memo described *supra,* and (2) that Plaintiff's excessive use of vacation at a time of agency need justified the agency decision to give Plaintiff no raise. (Def.'s Mem. 13.) Defendant also argues that the decision to deny Plaintiff a raise was approved by an African-American supervisor.

Thus, the burden shifts back to the Plaintiff to show that these legitimate business reasons were merely pretexts for discrimination. As discussed above, Plaintiff has not produced any evidence that the legitimate business reasons provided by HPD for her demotion were pretexts for discrimination or retaliation. In addition, her failure to be promoted to the Director of Legacy Systems and Associate Commissioner positions were due to her failure to apply, and there is no evidence this failure was the result of any type of retaliation by HPD. As no rational jury could find that these actions were motivated by retaliatory animus for Plaintiff's protected activity, summary judgment on these claims in favor of Defendant is granted. *See Hill*, 312 F.Supp.2d at 482 (granting summary judgment where plaintiff failed to adduce evidence of a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 21

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

connection between adverse employment action and discriminatory animus).

Plaintiff argues that her failure to receive the discretionary raise was retaliatory because a white male manager received a raise (Second Am. Compl. Ex. B at 3) and an article from *New York City Manager* reported that many managers were unhappy with the arbitrary manner in which raises were granted (Pl.'s Am. Schedule A Docs. Ex. 15). This evidence is also insufficient to show that Defendant's legitimate business reason was a pretext for retaliation. Plaintiff's own evidence shows that, whatever the motivation for HPD's refusal to grant Plaintiff the discretionary raise, it was not discrimination. Roughly 85% of the managers in HPD received some type of raise. (*Id.*) Thus, the fact that a single white male received a raise is not an atypical event, nor is it any proof of discrimination on the part of HPD. In addition, twenty managers besides Plaintiff received no raise. There is no evidence that the distribution of raises was based on Plaintiff's protected activity, as the raise was discretionary and numerous other managers were also denied the raise. Although Plaintiff disagrees with her superiors' evaluation of her work, there is simply no evidence that their decision was based on retaliatory animus. Plaintiff's own statements that this refusal must have been the result of discrimination are insufficient. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."); *Rayboy-Brauestein,* 2006 WL 3298383, at *18 (dismissing claim where plaintiff's allegations of pretext were conclusory and speculative). Thus, summary judgment in favor of Defendant on Plaintiff's retaliation claim related to the discretionary raise is also granted.

### E. Constructive Discharge

**\*20** Plaintiff's final claim is that the conduct of HPD described above, including her demotion and HPD's failure to promote Plaintiff, constituted a constructive discharge that forced her to resign. Not every slight in the workplace, nor even every adverse employment action, can form the basis of a constructive discharge claim under Title VII or the ADEA. "To establish a prima facie case of unlawful termination under the ADEA, like Title VII, plaintiff must show: (1) that she was qualified for the job, (2) that she was within the protected group, (3) that she was either actually or constructively discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination."*See Nakis v. Potter,* 422 F.Supp.2d 398, 413 (S.D.N.Y.2006).

Here, the first two elements of Plaintiff's prima facie case are not in question. As Plaintiff voluntarily retired, her claim relies on a showing of constructive discharge. "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily."*See Terry,* 336 F.3d at 151-52. A work atmosphere is intolerable when working conditions, viewed as a whole, are " 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Id.* at 152 (quoting *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 89 (2d Cir.1996)). As with a retaliation claim, the fourth element of the prima facie case can be shown directly through evidence of a retaliatory animus, or indirectly through evidence of disparate treatment or temporal proximity to activity protected by Title VII or the ADEA. *Id.*

Plaintiff alleges that all of the conditions described above were part of a scheme to force her to retire. She also includes a number of minor incidents, including refusal to accept her help on certain projects and the relocation of her office. To prevail, Plaintiff must show (1) that this conduct was intentional, and (2) that it was designed to create a workplace that a reasonable person would find intolerable. She can do neither. In the context of a constructive discharge claim, "intentional" means something beyond negligence or recklessness. *See Whidbee v. Garazelli Food Specialities, Inc.,* 223 F.3d 62, 74 (2d Cir.2000); *Wright v. Goldman, Sachs & Co.,* 387 F.Supp.2d 314, 325

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 22

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

(S.D.N.Y.2005). There is no evidence that any of the actions by HPD were intended to create intolerable working conditions. The demotion and promotion decisions of which Plaintiff complains were made by a number of different supervisors, some of whom were members of the same protected classes as Plaintiff. Plaintiff has provided no evidence that any of these supervisors intended to create a work atmosphere that was intolerable, rather, they merely promoted other employees.

Even if Plaintiff had produced some evidence of a deliberate intent on the part of HPD, she has not shown that her working conditions were such that a reasonable person would find the conditions intolerable. A single reduction in pay, without additional evidence of malicious intent, is insufficient to establish a claim of constructive discharge. *See Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 360 (2d Cir.1993) (holding that plaintiff's allegation that he did not receive sufficient pay increases did not constitute constructive discharge); *Muller v. U.S. Steel Corp.,* 509 F.2d 923, 929 (10th Cir.1975) (holding that discriminatory failure to promote and demotion were insufficient to demonstrate intent to make workplace intolerable); *see also Mathurin v. Skrivaneck,* No. 00 Civ. 1762, 2003 WL 23744279, at *14 (S.D.N.Y. June 10, 2003) (Report and Recommendation) (holding that intense scrutiny of plaintiff, even if coupled with " economic consequences," was insufficient to show workplace was intolerable); *Rodriguez v. Graham-Windham Servs. to Families & Children,* No. 99 Civ. 10447, 2001 WL 46985, at *6 (S.D.N.Y. Jan. 18, 2001) (finding no constructive discharge when employer demoted employee instead of terminating her); *Phillips v. General Dynamics Corp.,* 811 F.Supp. 788, 794 (N.D.N.Y.1993) ("Lower pay resulting from gender discrimination is not sufficient."). Indeed, as the record shows, demotions were relatively commonplace in HPD, where Director positions were limited and there were numerous qualified applicants. (Schwarz Decl. ¶¶ 15-18.) In addition, when a plaintiff remains in a position after conduct which is allegedly designed to force him or her to resign, it undermines any claim of intolerable working conditions. *See Petrosino,* 385 F.3d at 230; *Flaherty v. Metromail Corp.,* No. 98 Civ. 8611,

2001 WL 868011, at *5 (S.D.N.Y. July 31, 2001). Here, Plaintiff continued working at HPD for more than two years after her demotion. Thus, the demotion is insufficient to meet Plaintiff's prima facie burden.

**\*21** A failure to promote alone also is insufficient to establish a claim of constructive discharge. *See Petrosino,* 385 F.3d at 231 ("Because the law is clear that a constructive discharge claim cannot be proved by demonstrating that an employee is dissatisfied with the work assignments she receives within her job title, or even with the failure to receive an anticipated raise, or a bonus after having received one in previous years, it is doubtful that a constructive discharge claim can be established by an employee dissatisfied with reduced promotion opportunities."(internal citations omitted)); *Loucar v. Boston Market Corp.,* 294 F.Supp.2d 472, 482 (S.D.N.Y.2003) ("A denial of promotion does not constitute an intolerable work atmosphere amounting to a constructive discharge."(internal quotations and citations omitted)). This is especially true in this case, where Plaintiff cannot establish that she applied for the vast majority of positions for which she claims she was overlooked for promotion. Additionally, approximately six months passed between the last alleged failure to promote and Plaintiff's acceptance of HPD's voluntary retirement plan. A six month passage of time is sufficient to undermine a claim that working conditions were intolerable. *See Flaherty,* 2001 WL 868011, at *5.

Even when all of the incidents Plaintiff alleges are combined, they fall short of the mark. Numerous courts in this district have refused to find constructive discharge in situations much more egregious than those alleged here. *See Spence v. Maryland Cas. Co .,* 995 F.2d 1147, 1149-52 (2d Cir.1993) (no constructive discharge despite ridicule, threats of termination, constant harassment, and improper discipline); *Nakis,* 422 F.Supp.2d at 415-16 (citing cases); *Katz v. Beth Israel Medical Ctr.,* No. 95 Civ. 7183, 2001 WL 11064 at *12 (S.D.N.Y. Jan. 4, 2001) (finding no constructive discharge where a plaintiff alleged that she was told to retire, unfairly disciplined, and threatened with termination). In addition, much of the behavior

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 23

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Plaintiff complains of occurred long before her retirement (and under different supervisors). Thus, Plaintiff has failed to establish a prima facie case of constructive discharge.

Even if these actions did constitute constructive discharge, Plaintiff cannot show that her discharge occurred under circumstances that give rise to an inference of discrimination. The retirement incentive that Plaintiff accepted was offered to all employees with her title. (Pl.'s Schedule A Docs. Ex. 41.) Plaintiff chose to accept it. There is no evidence that this offer arose under any discriminatory circumstances. Plaintiff alleges she received her notice of the offer later than Mack, whose notice letter was dated more than one month prior to Plaintiff's. At best, however, this evidence raises a non-discriminatory inference, as it implies that HPD did not want Plaintiff to retire. Therefore, there is no evidence, direct or otherwise, that raises an inference of discrimination regarding Plaintiff's retirement from HPD. *See Ferraro v. Kellwood Co.,* No. 03 Civ. 8492, 2004 WL 2646619, at *7-8 (S.D.N.Y. Nov. 18, 2004) (holding that plaintiff failed to raise an inference of discrimination because, though plaintiff had been demoted, other allegedly similarly situated managers not of plaintiff's protected class were fired); *Buchanan v. Conn. Transit, Inc.,* No. 3:98cv1145, 2000 WL 435546, at *6-7 (D.Conn. Mar. 10, 2000) (dismissing constructive discharge claim where plaintiff failed to show that demotion and change in work assignments were intended to force resignation). As Plaintiff has failed to make a prima facie case of constructive discharge, summary judgment in favor of Defendant on Plaintiff's claim of constructive discharge is granted.

### F. Sections 1981, 1983, and 1985 Claims

*22 Plaintiff's First Amended Complaint, based on a standard form, stated that Defendant's actions were in violation of 42 U.S.C. §§ 1981, 1983 and 1985. Neither Plaintiff nor Defendant specifically argued these claims in their papers. However, they are governed by the same standards as those under Title VII and the ADEA. *See Martinez,* 2006 WL 737137, at *4 ("Discrimination claims under [

Sections 1981, 1983, and 1985]... are assessed pursuant to standards similar to those applicable to Title VII claims.").

### 1. Sections 1981 and 1983

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens ...." 42 U.S.C. § 1981(a). Section 1981 thus protects a plaintiff's right to enjoy "all of the benefits, privileges, terms and conditions" of his or her employment contracts. 42 U.S.C. § 1981(b).Section 1983 provides a federal remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983.

To establish liability against a municipal agency for a violation of section 1981 or section 1983, a plaintiff must show "that the challenged acts were performed pursuant to a municipal policy or custom. "*See Patterson,* 375 F.3d at 226;*Hayes v. Kerik,* 414 F.Supp.2d 193, 209 (E.D.N.Y.2006). A plaintiff need not show the existence of an expressly discriminatory rule or regulation, but can make a claim by demonstrating that a discriminatory practice of municipal officials was so "persistent or widespread as to constitute a custom or usage with the force of law."*Patterson,* 375 F.3d at 226 (internal quotation marks omitted). Here, Plaintiff has not alleged that any policy or practice was discriminatory, or that any of the discriminatory actions taken against her, e.g., the demotion, the failure to promote, or any of the retaliatory acts, was done pursuant to any policy or practice of the City of New York or HPW.[FN30] Therefore, summary judgment in favor of Defendant on any claim arising under section 1981 or section 1983 is granted. *See Hayes,* 414 F.Supp.2d at 209 (dismissing section 1981 claim for failure to allege that discriminatory actions were performed pursuant to a municipal policy or custom).

> FN30. At argument, Plaintiff suggested that there was a policy of eliminating African-American managers at HPD dating

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

back to 1987. However, this conclusory allegation, made for the first time at oral argument, is insufficient to resuscitate this cause of action.

### 2. Section 1985

Section 1985 prohibits conspiracies to deprive individuals of the equal protection of the laws. *See* 42 U.S.C. § 1985(3)."In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.' " *Webb v. Goord,* 340 F.3d 105, 110-11 (2d Cir.2003) (quoting *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000)). Conclusory allegations of conspiracies cannot withstand a motion to dismiss, let alone a motion for summary judgment. *See Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir.1999) (per curiam). Here, Plaintiff has made no allegations of a conspiracy at all, nor has she adduced any evidence that there was any agreement between any of the defendants to violate her rights. Thus, summary judgment in favor of Defendant on any claim arising under section 1985 is granted. *See Sylla v. City of New York,* No. 04 Civ. 5692, 2005 WL 3336460, at *7 (E.D.N.Y. Dec. 8, 2005) (granting summary judgment in favor of defendants when plaintiff failed to make any allegations regarding an agreement).

### III. Conclusion

**\*23** In conclusion, Defendant's Motion for Summary Judgment is GRANTED. The Clerk of the Court is directed to grant judgment in favor of Defendant and to close this case.

SO ORDERED.

S.D.N.Y.,2007.
Butts v. New York City Dept. Of Housing Preservation And Development
Slip Copy, 2007 WL 259937 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.