LEXSEE 2001 US DIST LEXIS 10622

Caution
As of: Oct 11, 2007

JONG-FWU (JACK) LEE, Plaintiff, -v- OVERSEAS SHIPHOLDING GROUP,
INC., et al., Defendants.

00 CIV. 9682 (DLC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2001 U.S. Dist. LEXIS 10622

July 30, 2001, Decided
July 30, 2001, Filed

**DISPOSITION:** [*1] Defendants' motion to dismiss granted in part and denied in part.

**COUNSEL:** For Plaintiff: Hanbin (Henry) Wang, Law Offices of Raymond H. Wong, P.C., New York, NY.

For Defendants: Aaron J. Schindel, Charlotte L. Behrendt, Proskauer Rose LLP, New York, NY.

**JUDGES:** DENISE COTE, United States District Judge.

**OPINION BY:** DENISE COTE

**OPINION**

*OPINION & ORDER*

DENISE COTE, District Judge:

Following the termination of his seventeen year employment with the defendant as an accountant, plaintiff Jong-Fwu (Jack) Lee ("Lee") filed this action on December 21, 2000, alleging discrimination based on race and national origin in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), and *42 U.S.C. § 1981* ("Section 1981"), as well as New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). Lee also brings a claim of negligent supervision or retention of employees. In February 2001, defendants filed a motion to dismiss. Lee filed an amended complaint on March 16, 2001. Defendants have now renewed their motion to dismiss. The defendants' motion is granted in part -- [*2] largely based on the application of the relevant statutes of limitation -- and denied in part.

**BACKGROUND**

Lee brings this action against Overseas Shipholding Group, Inc. ("OSG")[1] as well as five individually named OSG officers, employees or former employees ("Individual Defendants"). The Individual Defendants are not named in the Title VII and negligence claims. The allegations in the Amended Verified Complaint ("Amended Complaint") include the following.

  1   It appears that the other two corporate defendants, Maritime Overseas Corporation and O.S.G. Ship Management, Inc. are or were wholly-owned subsidiaries of OSG. For purposes of this motion, the three corporate entities shall be referred to as "OSG."

Lee is a naturalized American citizen of Chinese descent, born in China on December 23, 1943. He received his Bachelor's Degree of Commerce in Taiwan in 1967, and his MBA from Illinois State University in 1973. He has been a Certified Public Accountant since 1981. He was hired by OSG in 1982, and remained [*3] in the position of Manager of Accounting Review in the Accounting Section until May 1999, when his employment was terminated.

Lee maintains that he was the only foreign-born, non-Jewish, and non-white manager in the Accounting Section during the entirety of his employment. Lee alleges that as a result of his race and national origin, he was denied promotion -- or any opportunity leading toward promotion -- during his 17 years with OSG, was denied equal pay for equal work, was subjected to a hostile work environment by virtue of verbal abuse, humiliation, and sabotage, and was retaliated against or threatened with retaliation for his complaints of discrimination, including a retaliatory termination. Lee also alleges that OSG deliberately retained and failed to supervise unfit supervisors and employees who caused him harm. The Amended Complaint is a mixture of specific events occurring between 1982 and 1999, and sweeping generalized references to mistreatment and behavior during that same period.

*1. Failure to Promote*

In support of the failure to promote claim, Lee alleges several unfairly denied promotions beginning in 1982. In July 1982, defendant Alan Carus [2] ("Carus") denied [*4] Lee the officer position of Assistant Comptroller, despite the fact that Lee had greater management experience than defendant Andy Polchinski ("Polchinski") who was hired. He was denied the position again in December 1982, when Polchinski became Comptroller, as well as in 1988 and 1992. [3] Between 1982 and May 1999, Lee's work was not reviewed by Polchinski who, as Comptroller, was the designated reviewer but rather he was "maliciously forced" to report to employees who were either American-born Jews, non-CPAs, or both. Lee alleges that because Polchinski did not review his job performance, Polchinski based performance evaluations of Lee on "hearsay" from those to whom Lee did report, although Lee did receive "good and satisfactory" evaluations. In October 1991, Lee was passed over by Carus for a newly created officer position which was not advertised. Lee alleges that the American-born white employee who received that promotion did so through "personal connection" with Carus.

   2   The Amended Complaint describes Carus' position during this period as "Senior Vice President in the Accounting Section and the Treasurer."

[*5]
   3   The Amended Complaint does not state who became Assistant Comptroller in December 1982, but alleges that "an American-born white, who did not even have a college education" became Assistant Comptroller in December 1988. Lee further alleges that the position remained open between 1992 and 1999, despite the fact that he assumed the duties of Assistant Comptroller in practice.

*2. Unequal Pay*

Plaintiff alleges that although he performed functions of an OSG officer between 1982 and May 1999, he was not "paid or treated" as an officer because of his race and/or national origin. Lee complains that OSG pays its non-officers a "drastically lower" salary than its officers. Plaintiff further alleges that he was not compensated for his overtime work while those in departments with fewer non-Jewish, non-white employees were compensated. Specifically, he alleges that between 1982 and 1999, he had to stay overtime two hours per day, which amounted to six weeks per quarter or six months per year. [4]

   4   The Amended Complaint's mathematical analysis appears to be faulty. At two hours of overtime per day, Lee would work 10 extra hours per week, or 40 extra hours per month. If a quarter is 3 months, Lee would work not six extra weeks per quarter but three extra weeks per quarter and therefore 3 months per year.

[*6] *3. Hostile Work Environment*

Lee alleges that during the period between 1982 and May 1999, despite the fact that no other managers had performed as he did, the defendants subjected him to a hostile work environment in order to "conceal and/or justify their discriminatory denial of the Assistant Comptroller" position and to "force [Lee] to shut up and/or to voluntarily terminate his employment." The defendants are also alleged to have "conspired and

orchestrated numerous malicious situations where non-Jewish and non-white employees . . . were pitted against [Lee] based on false accusations." In support of these claims, Lee alleges a number of events between 1982 and November 6, 1997, including Polchinski "intentionally and maliciously orchestrating" insubordination against Lee by one of Lee's staff (1986), Polchinski, Carus and defendant Jerry Miller [5] ("Miller") yelling at Lee (1986, 1994, 1995, 1996), Polchinski and Miller falsely promising Lee help in order to "set him up" for the untimely performance of his work (1995, 1996), and Polchinski laughing at Lee when he reported that Miller had called security after a heated exchange with Lee (1996). Lee also alleges several [*7] discriminatory statements, including Miller's assistant telling Lee in August 1996, in front of Lee's staff, that "we should call the FBI and have the FBI check your green card," Miller telling Lee in December 1996, that he had to be "born in this country" in order to qualify for the medical plan, and a non-employee friend of Polchinksi's telling Lee in March 1995: "This is not your country. Go back to your country. Nobody likes you here." [6] On November 6, 1997, Carus "intentionally humiliated" Lee in the dining room and claimed that Lee was trying to "screw" Miller, who subsequently yelled at Lee "It's all wrong. F*** you, Jack Lee!" Finally, Lee alleges that Polchinski witnessed this event but remained silent and also did not grant Lee a hearing in November 1997, when Lee made a complaint about Miller's profanity and requested a hearing.

> 5  The Amended Complaint identifies Miller's position as Assistant Vice President in the Accounting Section and Director of Internal Auditing.
>
> 6  Lee makes two other allegations of discriminatory statements by Polchinski and Miller but does not state when they occurred.

[*8] *4. Retaliation*

Finally, Lee alleges that he was retaliated against -- or threatened with retaliation -- for his complaints of discrimination. Specifically, in 1982, Polchniski "intentionally, maliciously and falsely" accused Lee of sexually and racially harassing a female Filipino employee. In 1991, another female staff employee falsely accused Lee of sexual harassment with Polchinski's encouragement. In response, defendant Carl Brown ("Brown"), then Director of Human Resources, threatened to take Lee's manager title away and stated: "You Chinese just don't know how to handle women!" On December 15, 1997, Lee received a written warning from defendant Carol Witschieben ("Witschieben"), Director of Human Resources and Assistant Vice President, on another matter. When Witschieben asked Lee to sign the warning, he refused and instead demanded a hearing in front of the Compliance Committee. [7] He made the same demand in writing on January 7, 1998, as part of his answer to the warning, in which he reported "years of discriminatory treatment and indifference to complaints" on the part of the Individual Defendants. Lee alleges that no hearing occurred. On November 23, 1998, Lee received [*9] a "written conclusory denial of any discrimination."

> 7  The Amended Complaint does not explain the nature of this committee. The Court assumes it is an internal OSG entity.

There are no allegations in the Amended Complaint about activity between November 1998, and May 27, 1999, when Lee's employment was terminated. Lee alleges that when Miller fired him, Miller offered the false explanation that Lee's position had been eliminated when, in reality, Lee's position was filled by "two less experienced American-born whites." Lee also alleges that the defendants had decided to terminate his employment "well before October 1998" when a floor plan of the corporate offices left out Lee's name. Lee alleges that the defendants used a May 1999 work force reduction as an excuse to "get rid of" him. [8]

> 8  In addition to the retaliatory termination, the Amended Complaint delineates several other incidents of alleged retaliation occurring between 1982 and 1997. For example, Lee complains of an altercation between Lee and Polchinski in 1987, in which Polchinski falsely reported to Lee that his staff members had complained about him as well as a 1991 "interrogation" by Polchinski and Brown concerning false accusations by Lee's staff members which Lee reported to Carus without result. In addition, there are several allegations that Lee was left out of manager meetings. For example, he alleges that in 1986, he was the only department manager in the Accounting Section not to attend computer training in Boston because Polchinski removed him from the attendance list. When he requested in-house training, it was "deliberately conducted" on one of Lee's vacation

Case 1:07-cv-06722-RJS    Document 14-9    Filed 10/12/2007    Page 4 of 10

Page 4
2001 U.S. Dist. LEXIS 10622, *9

days without warning. Lee further alleges that he was the only manager or supervisor in the Accounting Section in 1995, not included on a software review team. Despite this, Lee alleges that he "prevented a disaster of missing [a] deadline" in October 1997, by making the first report of unreliable software.

[*10] Lee filed a complaint with the Equal Employment Opportunity Commission ("EEOC") as well as with the New York Commission on Human Rights on October 8, 1999. The EEOC issued a right to sue letter on September 27, 2000. Lee filed this action on December 20, 2000.

## DISCUSSION

A court may dismiss an action pursuant to *Rule 12(b)(6)* only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)* (citation omitted). The court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.* The court is generally prohibited from considering matters outside the pleadings. *Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325 n.1 (2d Cir. 1999).*

Defendants argue primarily that Lee's allegations of discrimination and retaliation are time-barred, that these allegations fail to state a claim for relief, and that Lee's other state law claims should be dismissed for failure to state a claim or, [*11] alternatively, that the Court should decline to exercise supplemental jurisdiction over them. Defendants also argue that the claims of discrimination and retaliation should be dismissed as against the Individual Defendants. Finally, the defendants ask that the Court impose sanctions for plaintiff's inclusion of defendant Carl Brown in the Amended Complaint.

## I. Title VII

To claim a violation of Title VII in New York, a complaint must be filed with the EEOC within 300 days of the alleged discriminatory act. *See 42 U.S.C. § 2000e-5(e)*; *Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000).* The 300-day period effectively acts as a statute of limitations. *Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).* For purposes of the statute of limitations, a claim of employment discrimination accrues "on the date the employee learns of the employer's discriminatory conduct." *Flaherty, 235 F.3d at 137.* Title VII permits states such as New York with their own antidiscrimination agency 60 days to conduct proceedings and does not consider a complaint received by the state agency [*12] to be "filed" with the EEOC until either the 60-day period has passed; the state agency's proceedings have been terminated; or the state agency has waived its right to exclusively process the charge. *Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 308-09 (2d Cir. 1996)*; *see also Tewksbury, 192 F.3d at 327* (charges initially filed with EEOC are deemed filed with the deferral-state agency). Consequently, in such a state, "the cautious complainant must file a [Title VII] claim with the state agency within 240 days of the alleged discrimination to ensure timely filing with the EEOC." *81 F.3d at 308 n.7*; *see also EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 111, 100 L. Ed. 2d 96, 108 S. Ct. 1666 (1988).*

The continuing violation exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination." *Quinn, 159 F.3d at 765.* That is, if a plaintiff files a charge of discrimination that is timely as to any incident forming part of an ongoing discriminatory policy, his claims of other discriminatory acts under that policy are timely even if, standing alone, [*13] they would be untimely. *Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)* (citing *Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993)).*

The continuing violation doctrine exception generally "applies to cases involving specific discriminatory policies or mechanisms," such as discriminatory seniority lists, *Lambert, 10 F.3d at 53,* or employment tests, *Alleyne v. Four Seasons Hotel-New York, 2001 U.S. Dist. LEXIS 1503, *19-20, No. 99 Civ. 3432 (JGK), 2001 WL 135770, at *7 (S.D.N.Y. Feb. 15, 2001).* A continuing violation may also exist in the face of "specific and related instances of discrimination" where those instances are "related closely enough," "sufficiently repetitious," and "permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Fitzgerald, 251 F.3d at 359, 362* (citation omitted). The exception will not apply, however, where those acts are "so 'isolated in time from each other or from the timely allegations as to break

Case 1:07-cv-06722-RJS   Document 14-9   Filed 10/12/2007   Page 5 of 10

Page 5
2001 U.S. Dist. LEXIS 10622, *13

the asserted continuum of discrimination.'" *Id. at 359* (citation omitted). Acts that are "completed" or "discrete," such as [*14] termination, discontinuance of a particular assignment, or job transfers, *Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997)*, or repeated failures to promote, *Meckenberg v. New York City Off-Track Betting, 42 F. Supp. 2d 359, 371-72 (S.D.N.Y. 1999)*, are not acts of a continuing nature. *See Pauling v. Secretary of the Interior, 960 F. Supp. 793, 801-02 (S.D.N.Y. 1997)* (DLC). [9]

> 9 Lee points to a three-part test developed by the Fifth Circuit and used by some other courts in analyzing the continuing violation doctrine. These decisions pre-date the Second Circuit decision in *Fitzgerald*, which articulates a standard that does not specifically adopt the Fifth Circuit test.

To allege a continuing violation, "the claimant must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999)*. A claim cannot [*15] be rendered timely by "the mere continuation of the claimant's employment" nor where the plaintiff "continues to feel the effects of a time-barred discriminatory act." *Id.*

As discussed above, Lee filed a complaint with the EEOC and the New York Commission on Human Rights on October 8, 1999. Consequently, absent an exception, those events alleged to have occurred prior to December 12, 1998 are time-barred under Title VII. The only specific event alleged to have occurred after December 12, 1998, is the termination of Lee's employment on May 27, 1999. The Amended Complaint, read liberally, also alleges that Lee was not compensated for his quarterly over-time work --including one quarter occurring after December 12, 1998 -- unlike other non-minority members of the accounting department.

### A. Failure to Promote

To state a claim for an allegedly discriminatory failure to promote, a plaintiff must allege that (1) he is a member of a protected class; (2) he is qualified for the position; (3) he applied for and was denied promotion to the position; and (4) the position remained open and the employer continued to seek applicants. *Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 91 (2d Cir. 2001)*; [*16] *Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 (2d Cir. 2000)*.

The five alleged failures to promote to officer-level positions cited in the Amended Complaint occurred in 1982, 1988, 1991, and 1992. Failures to promote are "discrete acts" which do not give rise to a continuing violation. Lee's attempts to escape this well-established law are unsuccessful.

Here, Lee alleges that the only application he ever made for such a position was in 1982. He relies for the later periods on the fact that the employer had no formal application process and that the employer always understood that Lee wished to have the position and indeed impliedly promised that Lee would have it when Lee was qualified for it. Even if these allegations were sufficient to address the failure to apply for the position within the period encompassed by the statute of limitations, they are insufficient to plead adequately that the position remained open and that the employer continued to seek applications for a position that has indisputably remained vacant since 1992. Lee has therefore failed to allege any acts within the 300-day EEOC period relating to failure to promote, and this Title VII claim is [*17] dismissed.

### B. Hostile Work Environment

A hostile work environment exists where the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)* (citation omitted). To state a claim under Title VII for discriminatory harassment based on a hostile work environment under Title VII, a plaintiff must demonstrate "(1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 249 (2d Cir. 1995)* (citation omitted); *see also Boise v. Boufford, 127 F. Supp. 2d 467, 474 (S.D.N.Y. 2001)*.

While the Amended Complaint alleges several examples of race-based intimidation or insult, no specific event occurred on or [*18] after December 12, 1998, and

Case 1:07-cv-06722-RJS    Document 14-9    Filed 10/12/2007    Page 6 of 10

Page 6
2001 U.S. Dist. LEXIS 10622, *18

therefore the continuing violation doctrine does not apply. Lee cannot salvage the lack of a specific event after December 12, with a sweeping and generalized reference to "events" that occurred "between 1982 and 1999." Accordingly, Lee's claim of hostile work environment under Title VII is time-barred.

### C. Denial of Equal Pay

To state a claim for unequal pay under Title VII, a plaintiff must allege that he is (1) a member of a protected class; and (2) that he was "paid less than non-members of [his] class for work requiring substantially the same responsibility." *Belfi v. Prendergast, 191 F.3d 129, 139 (2d Cir. 1999)*.

Lee appears to make two separate claims. First, he claims that he was not paid as an officer because of his race and/or national origin although he was, in effect, performing the work of an officer. He admits, however, that he was not an officer, and his primary complaint appears to be that OSG "paid non-officer managers drastically lower than officer managers." Title VII does not address, however, how private companies elect to set the pay scale for different positions. To the extent this is a reiteration of the [*19] failure to promote claim, it has already been analyzed. *See supra*.

Second, Lee argues that he was not paid for his overtime work unlike workers in other Accounting Section departments with fewer non-Jewish, non-white workers. Title VII covers allegations of discriminatory denial of overtime pay. *Austin v. Ford Models, Inc., 149 F.3d 148, 153 (2d Cir. 1998)*. "The practice of discriminating against an employee by paying that employee unequal wages violates Title VII when the wage is first established and each time the employee is paid an unequal amount. Therefore, it constitutes a continuing violation." *Brodrick v. City of New York, 942 F. Supp. 196, 199 (S.D.N.Y. 1996)*. Lee's discriminatory overtime pay claim is timely because he filed his EEOC complaint within 300 days of an allegedly discriminatory denial of overtime. He has adequately met his burden on a motion to dismiss.

### D. Retaliation

To state a claim for retaliation under Title VII, a plaintiff must demonstrate "'participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between [*20] the protected activity and the adverse employment action.'" *Cruz, 202 F.3d at 566* (citation omitted). A "protected activity" is an action "taken to protest or oppose statutorily prohibited discrimination." *Id.* An adverse employment action is a "'materially adverse change' in the terms and conditions of employment," including employment termination. *Galabya v. New York City Bd. of Education, 202 F.3d 636, 640 (2d Cir. 2000)* (citation omitted).

The only timely event alleged in the Amended Complaint supporting a claim of retaliation is the termination of Lee's employment in May 1999, when Lee alleges he was replaced by two less experienced "American-born whites." The Amended Complaint alleges that the reason provided by Miller for Lee's discharge -- that his position had been eliminated -- was merely an excuse to "get rid of him" in retaliation for his complaints of discrimination. Defendants appear to concede that Lee has pled the first three prongs of the test but argue that no causal connection has been pled. The Amended Complaint alleges that Lee complained in writing to senior management about "years of discriminatory treatment" in January 1998, [*21] and requested a hearing. He was fired in May 1999. There are no allegations of any instances of protected activity in the intervening sixteen months, except that Lee received a "written conclusory denial of any discrimination" in November 1998, and did not get the hearing he had requested. Defendants argue that the intervening time is too long to establish a causal connection, citing cases which dismiss claims where the intervals were even shorter. Without exception, these dismissals were at the summary judgment phase. *See, e.g., Hollander v. American Cyanamid Co., 895 F.2d 80 (2d Cir. 1990)* (summary judgment); *Griffin v. Ambika Corp., 103 F. Supp. 2d 297 (S.D.N.Y. 2000)* (same); *Gallo v. Eaton, 122 F. Supp. 2d 293 (D. Conn. 2000)* (same); *Terry v. United States, 2000 U.S. Dist. LEXIS 1748, No. 98 Civ. 8249 (NRB), 2000 WL 204522 (S.D.N.Y. Feb. 18, 2000)* (same); *Burke v. Royal Ins. Co., 39 F. Supp. 2d 251, 263 (E.D.N.Y. 1999)* (summary judgment and denial of motion to amend); [10] *see also Slattery, 248 F.3d at 95* (summary judgment). As the Supreme Court recently observed, "cases that accept mere temporal proximity [*22] between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very

close.'" *Clark County School Dist. v. Breeden, 532 U.S. 268, 149 L. Ed. 2d 509, 121 S. Ct. 1508, 1511 (2001)* (citation omitted). Nonetheless, the standard is liberal at the pleading phase and, taken in the light most favorable to Lee, the Amended Complaint has pled sufficient facts to claim that Lee's termination resulted from his earlier complaint of discriminatory treatment.

> 10   While the Court in *Johnson v. Palma, 931 F.2d 203 (2d Cir. 1991)*, makes reference to "dismissing" the retaliation claim, the Opinion is on appeal from two decisions. The retaliation claim had been "dismissed" on summary judgment. *Id. at 205.*

While Lee has sufficiently stated his claim of retaliatory termination, he cannot save the untimely retaliation allegations through the continuing violation [*23] doctrine. As discussed above, Lee alleged roughly seven incidents of alleged retaliation which are time-barred. These events involved a variety of supervisors and occurred in 1982, 1986, 1991, 1995, 1997, and 1998. They range in nature from false accusations of sexual harassment against Lee by other employees at the alleged instigation of the defendants, to false complaints made by staff members, to being left out of a computer training session, to being left off a floor plan of corporate offices. Seven events over the course of sixteen years are not "sufficiently repetitious" or "related closely enough" as to represent a continuum of discrimination. Nor can Lee invoke the exception by a generalized reference in the Amended Complaint to alleged warnings to keep quiet about discrimination between 1982 and 1999. In addition, the earliest example pled in the Complaint of Lee complaining of discrimination -- that is, engaging in "protected activity," -- occurred in October 1991, when Lee complained to Carus that, because of his race, Polchinski and Brown had "interrogated" him concerning false accusations by Lee's staff members. Therefore, events prior to 1991 could not possibly have been [*24] taken in retaliation. Accordingly, Lee's claim for retaliation outside retaliatory termination is dismissed.

### E. Individual Defendants

While defendants move to dismiss the Title VII claims against the Individual Defendants, the plaintiff does not name these defendants in his Title VII cause of action and concedes in his motion papers that there is no individual liability under Title VII. *See Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000)*. To the extent that there is uncertainty with respect to whether the Individual Defendants are named in this claim, the Title VII claims are dismissed as to them.

### II. Section 1981

Claims under *Section 1981* are governed by a three year statute of limitations. *See Wilson v. Fairchild Republic Co., 143 F.3d 733, 738 n.5 (2d Cir. 1998)* (*Section 1981*). Accordingly, only those events which happened after December 21, 1997 are timely. The statute of limitations may be tolled, however, if the continuing violation exception applies. *See Kim v. Dial Service Int'l, Inc., 1997 U.S. Dist. LEXIS 66, No. 96 Civ. 3327 (DLC), 1997 WL 5902, at *5 (S.D.N.Y. Jan. 8, 1997)* (*Section 1981*).

Because claims under *Section 1981* [*25] are subject to the same standards as those under Title VII, the Court relies on its analysis of the Title VII claim here. *See Patterson v. McLean Credit Union, 491 U.S. 164, 186, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989)* (applying Title VII analysis to *Section 1981* claim); *see also Kim*, 1997 WL 5902, at *5 (same). There are only three additional factual allegations in the Amended Complaint that are timely under the *Section 1981* claim but that were not timely for the Title VII claim. The first is that Lee complained in writing of discriminatory treatment and made a demand for a hearing in January 1998. The second is that Lee was left off the floor plan of the corporate offices in October 1998. The last is that Lee received a "written conclusory denial of any discrimination" in November 1998, and refused to resign.

The addition of these three allegations does not change the analysis of plaintiff's claims already undertaken in connection with Title VII. None of these allegations concerns a failure to promote Lee to an open position. None of these events created a hostile work environment or is sufficiently egregious to permit the use of the continuing [*26] violation doctrine to bring time-barred acts within the purview of the hostile work environment claim. None of these events creates a basis for an additional retaliation claim since neither the failure to include Lee on the floor plan nor the conclusory denial of his January 1998 complaint constitutes an "adverse employment action." *See Galabya, 202 F.3d at 640.* Accordingly, those claims under *Section 1981* are dismissed. The claims for unpaid overtime and retaliatory termination survive under *Section 1981*.

Case 1:07-cv-06722-RJS Document 14-9 Filed 10/12/2007 Page 8 of 10

Page 8
2001 U.S. Dist. LEXIS 10622, *26

*A. Individual Liability under Section 1981*

Individual liability exists under *Section 1981*, but the plaintiff must show "'some affirmative link to causally connect the actor with the discriminatory action.'" *Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000)* (citation omitted). The claim must be "'predicated on the actor's personal involvement.'" *Id.* (citation omitted).

The claim of unequal overtime pay against the Individual Defendants is dismissed, as the Amended Complaint does not allege that any of them was involved in or even knew of Lee's alleged denial of equal pay. The claim of retaliatory termination [*27] against the Individual Defendants is dismissed for failure to allege any causal connection, except as to Miller, who is alleged to have fired Lee. [11]

> 11 No other defendant was alleged to have been involved in the termination with the exception of Witschieben who was present at the time Lee was informed of the decision. While Lee has alleged that Witchieben is an "Assistant Vice President" and "Director of Human Resources" and issued a warning letter to him in 1997, he has not alleged that she was a supervisor, a decision-maker regarding the termination, or responsible in the way required by *Whidbee, 223 F.3d at 75*.

### III. NYSHRL and HYCHRL

NYSHRL and NYCHRL are each governed by a three year statute of limitations. *Bonner v. Guccione, 178 F.3d 581, 601 (2d Cir. 1999)* (NYSHRL); *Alexander v. Turner Corp., 2001 U.S. Dist. LEXIS 30, No. 00 Civ. 4677 (HB), 2001 WL 11062, at *4 n.4 (S.D.N.Y. Jan. 4, 2001)* (NYCHRL). The statute of limitations is tolled during the period in which a [*28] complaint is filed with the New York State Division of Human Rights or with the EEOC. *Martinez-Tolentino v. Buffalo State College, 277 A.D.2d 899, 715 N.Y.S.2d 554, 555 (4th Dept. 2000)*. Because Lee filed his complaint with the EEOC on October 8, 1999, and received his right to sue letter on September 27, 2000, the events alleged to have occurred on or after January 2, 1997 are timely. [12]

> 12 Lee filed his Complaint on December 21, 2000, making all events after December 21, 1997 timely under a statute of limitations. Because the statute of limitations is tolled for the period between October 8, 1999 and September 27, 2000, the clock is set back 354 days (taking into account the leap year in 2000) to make the new effective date January 2, 1997.

The continuing violation exception may also apply to claims under NYSHRL and NYCHRL. *Abdallah v. City of New York, 2001 U.S. Dist. LEXIS 2616, No. 95 Civ. 9247 (MGC), 2001 WL 262709, at *4 (S.D.N.Y. Mar. 16, 2001)* (NYSHRL); *Alexander, 2001 WL 11062, [*29] at *4 n.4 (NYCHRL)* (citing *Walsh v. Covenant House, 244 A.D.2d 214, 664 N.Y.S.2d 282, 283 (1st Dept. 1997)).* Because NYSHRL and NYCHRL are subject to the same standards as Title VII claims, *see Cruz, 202 F.3d at 565 n.1* (applying "parallel analysis" for claims under NYSHRL and NYCHRL as for Title VII), the Court relies on the analysis discussed above.

The extension of the statute of limitations to January 2, 1997, allows Lee to include one set of allegations beyond those already discussed. Specifically, Lee alleges that on November 6, 1997, Carus, Senior Vice President in Accounting, "intentionally humiliated" him in the dining room by claiming that Lee was trying to "screw" Miller, Assistant Vice President in Accounting, and declaring that "something must be done after review, I can't take it any more." Later that day, Miller yelled at Lee: "It's all wrong. F*** you, Jack Lee!" While Polchinski, the employee who became Comptroller in 1982 and was also an Assistant Vice President in Accounting, saw the incident, he remained silent. Subsequently, Lee renewed his request for a hearing to Polchinski, but the hearing did not occur.

The addition of these [*30] facts to the others that fall within the statutory period does not add to the list of claims that survive this motion. While the events of November 6, 1997, are alleged by the plaintiff to form part of his hostile work environment claim, a hostile work environment exists where the workplace is "permeated with '*discriminatory* intimidation, ridicule, and insult.'" *Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)* (citation omitted) (emphasis added). A single incident of discrimination may be sufficient if it is "'extraordinarily severe.'" *Raniola v. Bratton, 243 F.3d 610, 620 (2d Cir. 2001)* (citation omitted). The November 6 events do not include any discriminatory comments, nor does the plaintiff specifically allege that the events of that day were motivated by race-based or national origin-based

Case 1:07-cv-06722-RJS    Document 14-9    Filed 10/12/2007    Page 9 of 10

Page 9
2001 U.S. Dist. LEXIS 10622, *30

discrimination. Even if the plaintiff had alleged a basis to infer discriminatory intent, the events of November 6 are neither so severe that they create a hostile work environment by themselves nor sufficiently connected to prior events to allow use of the continuing violation doctrine. The last incident described [*31] in the complaint that preceded the events of November 6, 1997, occurred almost one year earlier -- in December 1996 -- when Miller is alleged to have told Lee that he had to be born in the United States to qualify for the medical plan. The acts of which plaintiff complains are too fragmented, episodic, and diverse to permit use of the doctrine to circumvent the statute of limitations. Accordingly, the plaintiff's claims of failure to promote and hostile work environment under NYCHRL and NYSHRL are dismissed. The claims based on the termination of his employment and the unequal overtime pay survive.

*A. Individual Liability under NYSHRL and NYCHRL*

NYSHRL and NYCHRL each provide for individual liability. First, the NYSHRL creates liability where the individual defendant is an "employer," that is, where he is shown to have "'ownership interest'" or the "'power to do more than carry out personnel decisions made by others.'" *Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)* (citing *Patrowich v. Chemical Bank, 63 N.Y.2d 541, 473 N.E.2d 11, 12, 483 N.Y.S.2d 659 (N.Y. 1984))* (NYSHRL). Specifically, a defendant must have "some form of control over [*32] the plaintiff's employment status." *Smith v. AVSC Int'l, Inc., 148 F. Supp. 2d 302, 2001 U.S. Dist. LEXIS 8646, *15, 2001 WL 725279, at *5 (S.D.N.Y. 2001)*. Second, under both NYSHRL and NYCHRL there is individual liability where the individual defendant "actually participates in the conduct giving rise to a discrimination claim." *Tomka, 66 F.3d at 1317* (NYSHRL); *see also Smith*, 2001 WL 725279, at *5 (both statutes).

As noted, the plaintiff has adequately alleged unlawful termination of his employment and a discriminatory refusal to pay for overtime work. While Lee has not pled that any of the Individual Defendants had ownership interest in OSG or sufficient control over plaintiff's employment status to do more than carry out personnel decisions made by others, he has adequately pled individual liability under both statutes for Miller on the unlawful termination claim based on Miller's participation in the termination. Accordingly, the Human Rights Law claims brought against the Individual Defendants not already dismissed as time-barred are dismissed as to all Individual Defendants with one exception. Plaintiff may proceed on the NYSHRL and NYSCHRL claims [*33] against Miller based on the termination of his employment.

### IV. Negligent Hiring, Retention and/or Supervision

Plaintiff brings a claim for negligent hiring, retention, and supervision against OSG only. Defendants argue that these claims are barred by the statute of limitations, or alternatively, by the exclusive remedy provisions of the New York Workers Compensation Law. Defendants also argue that Lee fails to state a claim. Lee's only response is to argue that the workers compensation law is inapplicable in this case.

The statute of limitations for negligence in New York is three years. *Green v. Emmanuel African Methodist Episcopal Church, 278 A.D.2d 132, 718 N.Y.S.2d 324, 324 (1st Dept. 2000)*. Accordingly, any events occurring before December 21, 1997, are time-barred. The timely events consist only of Lee's written complaint of discriminatory treatment and demand for a hearing in January 1998, Lee's absence from an office floor plan in October 1998, Lee's receipt of a denial of discrimination in November 1998, and the termination of Lee's employment in May 1999.

Stating a claim for negligent hiring, retention or supervision requires that the plaintiff [*34] plead that his "employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (2d Dept. 1997)*. Lee alleges that in January 1998, he "reported to the senior management of the corporate defendants years of discriminatory treatment and indifference to complaints by the individual defendants." This allegation is sufficient to state a claim for negligence.

Lee's claim, however, is barred by the workers compensation law. Where recovery under the workers compensation law is available in New York, it is the plaintiff's "exclusive remedy against the employer and other common law tort claims are prohibited." *Salvatore v. KLM Royal Dutch Airlines, 1999 U.S. Dist. LEXIS 15551, *17, No. 98 Civ. 2450 (LAP), 1999 WL 786172, at *6 (S.D.N.Y. Sept. 30, 1999); see also Pellei v. International Planned Parenthood Federation/Western Hemisphere Region, Inc., 1999 U.S. Dist. LEXIS 15338*,

No. 96 Civ. 7014 (WHP), 1999 WL 787753, at *13 (S.D.N.Y. Sept. 30, 1999). Exceptions to this rule exist for "tortious acts which the employer committed intentionally or which were 'perpetrated at the employer's [*35] direction or instigation.'" *Salvatore*, 1999 WL 786172, at *6 (citation omitted). To use this exception, the plaintiff must allege that "'the employer engaged in conduct to bring about the consequences of the act. Mere knowledge or appreciation of the risk is insufficient to invoke the exception.'" *Id.* (citation omitted). Mere allegations of reckless conduct or gross negligence are insufficient. *Id.*

Lee has alleged that OSG failed to follow its own procedure of conducting a hearing in response to his January 1998 complaint of discrimination and demand for a hearing, that its supervisory employees intentionally left his name out of the floor plan in October 1998, and that Miller purposefully fired Lee. Such allegations are insufficient to permit Lee to avoid the workers compensation law as his exclusive remedy. They plead purposeful conduct of individual employees but only negligence by the employer.

**V. Sanctions**

Defendants have requested that sanctions be imposed on plaintiff's counsel for naming Brown as a defendant. *Rule 11(c)(1)(A), Fed. R. Civ. P.*, provides that

> A motion for sanctions under this rule shall be made separately from other [*36] motions or requests . . . . It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

(emphasis supplied). *See also Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1327 (2d Cir. 1995)*. A "failure to comply with the proper procedure is fatal to [defendant's] motion." *Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 413 (S.D.N.Y. 2000)*.

Defendants have not indicated that they served their *Rule 11* motion on plaintiff prior to bringing it to the Court's attention, and they have made their request for sanctions in a footnote of their memorandum of law for the motion to dismiss. Accordingly, the Court declines to impose sanctions.

**CONCLUSION**

For the reasons discussed above, plaintiff's claims against the Individual Defendants are dismissed, except for the claim of retaliatory termination under *Section 1981*, NYSHRL and NYCHRL against Miller. All of plaintiff's claims against OSG brought under Title VII, *Section 1981*, NYSHRL, and NYCHRL [*37] are dismissed except for the claims based on retaliatory termination and unequal overtime pay. Plaintiff's claim for negligent hiring, retention, and supervision is dismissed. The Court declines to impose *Rule 11* sanctions on plaintiff's counsel.

SO ORDERED:

Dated: New York, New York

July 30, 2001

DENISE COTE

United States District Judge