LEXSEE 1998 US DIST LEXIS 5416

Caution
As of: Oct 11, 2007

MARC MELINCOFF, D.O., Plaintiff, v. EAST NORRITON PHYSICIAN SERVICE, INC., SUBURBAN GENERAL HEALTH CARE SYSTEM, Defendants.

CIVIL ACTION NO. 97-4554

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1998 U.S. Dist. LEXIS 5416; 8 Am. Disabilities Cas. (BNA) 1642

April 20, 1998, Decided
April 20, 1998, Filed

**DISPOSITION:** [*1] Defendants' Motion to Dismiss Plaintiff's Complaint DENIED.

**COUNSEL:** For MARC MELINCOFF, D.O., PLAINTIFF: STEVEN K. LUDWIG, FOX, ROTHSCHILD, OBRIEN & FRANKEL, LLP, PHILA, PA USA.

For EAST NORRITON PHYSICIAN SERVICES, INC., SUBURBAN GENERAL CORPORATION, DEFENDANTS: H. THOMAS FELIX, II, MONTGOMERY, MC CRACKEN, WALKER & RHOADS, PHILADELPHIA, PA USA.

**JUDGES:** CLIFFORD SCOTT GREEN, S.J.

**OPINION BY:** CLIFFORD SCOTT GREEN

**OPINION**

*MEMORANDUM-ORDER*

Presently before the Court is the Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to *Fed.R.Civ.P. 12(b)(1)* for lack of subject matter jurisdiction, the plaintiff's response thereto, and defendants' subsequent surreply. For the following reasons, the defendants' motion will be denied.

Facts [1] and Procedural History

1 These facts are not in dispute. Nor does either party dispute the authenticity of the other's exhibits submitted in support of their respective motions.

Plaintiff, Marc Melincoff, D.O., was employed for a term of two years by the defendants [2] [*2] pursuant to a written employment contract which became effective in July of 1995. The employment contract included hospital benefits provided through the defendant employer. (Compl. at 3, P 12.) In September and October, 1995, Dr. Melincoff, who suffers from a disability, was hospitalized on several different occasions as a result of the disability. (*Id.* at 3-4, PP 14-16.) He alleges that his employment was terminated on January 18, 1996 in violation of the Americans with Disabilities Act ("ADA"), *42 U.S.C. § 12102(2)(C)*. (*Id.* at 5, P 24.) By at least February 7, 1996, Dr. Melincoff had retained private counsel to represent him with respect to his termination. (Pl.'s Mot. In Opp. To Defs.' Mot. To Dismiss, Ex. "C.") On November 7, 1996, 294 days after the alleged discriminatory termination, Melincoff, through his attorney, filed a charge of discrimination with the Equal

Page 2

1998 U.S. Dist. LEXIS 5416, *2; 8 Am. Disabilities Cas. (BNA) 1642

Employment Opportunity Commission ("EEOC"). (Compl. at 4, P 21.) Melincoff, however, did not file, and has not ever personally filed, a separate discrimination charge with the Pennsylvania Human Relations Commission ("PHRC"), apparently choosing to waive any rights he may have had under the Pennsylvania Human [*3] Relations Act ("PHRA"). In order to preserve his federal rights under the ADA, Melincoff relies upon on the worksharing agreement between the EEOC and the PHRC to obviate the need to file a claim separately with the PHRC. (Pl.'s Mot. In Opp. To Defs.' Mot. To Dismiss at 2, 4-5.)

> 2 Defendant East Norriton Physician Services, Inc. is a non-profit subsidiary of defendant Suburban General Corp. Both are named as defendants in this action. (Compl. at 2, PP 3 & 4.)

On January 9, 1997, the EEOC wrote to Melincoff, via his attorney, informing them that it needed additional information to process his claim. (Defs.' Mot. To Dismiss, Ex. "C.") The EEOC letter stated that it required a response from Melincoff by February 11, 1997. (*Id.*) The letter also urged and cautioned Melincoff to cross file, or dual file a separate charge with the PHRC in order to preserve his state law rights. (*Id.*) The letter enclosed a questionnaire soliciting the desired information which the EEOC instructed Melincoff to return within [*4] 33 days. (*Id.*) Also enclosed was a form to request that the EEOC dual file Melincoff's charge, on his behalf, with the PHRC. (*Id.*)

On April 11, 1997, after not receiving any response or the requested forms from the plaintiff, the EEOC closed its file and issued a letter to plaintiff entitled, "Dismissal and Notice of Rights." (*Id.*, Ex. "A.") The letter stated that the EEOC was closing its file on Melincoff's charge because, by not responding within the 33 days, he had failed to cooperate to the extent that it was not possible to resolve his charge. (*Id.*) The letter also provided instructions on plaintiff's right to sue in federal court within 90 days of the receipt of the letter. (*Id.*) On July 11, 1997, just before the 90 days expired, plaintiff filed the present lawsuit. (Compl. at 6.) The two-count complaint alleges in count I a claim under the ADA and alleges in count II a state breach of contract claim. (Compl. at 4-6, PP 23-29.) Melincoff, however, has not alleged a claim pursuant to the PHRA.

**Discussion**

Presently, defendants seek the dismissal of count I of plaintiff's complaint alleging disability discrimination under the ADA. Specifically, defendants [*5] argue that 1) the plaintiff's failure to cooperate in the EEOC investigation, resulting in the dismissal of the claim, and closing of the file, constitutes a failure to exhaust administrative remedies, and 2) even if the plaintiff's lack of cooperation does not constitute a failure to exhaust, the plaintiff's initial discrimination charge with the EEOC was not timely filed. Moreover, defendants argue that since count II of the complaint asserts a state law claim for breach of contract, over which the Court has no independent subject matter jurisdiction, it should be dismissed as well.

In response, plaintiff argues that he has properly brought the present suit after both timely filing a charge with the EEOC, and fully exhausting his administrative remedies. He argues first that his receipt of the April 11, 1997 "right-to-sue" letter from the EEOC signifies the conclusion of agency action and satisfies the prerequisites for the present lawsuit. He argues second that his complaint was timely brought with the EEOC because it was brought within the extended 300-day federal filing deadline applicable to this case in Pennsylvania, a deferral state with a worksharing agreement between the [*6] PHRC and the EEOC. The Court now addresses the first issue; whether plaintiff exhausted his administrative remedies.

**I Exhaustion of Administrative Remedies**

Defendants argue that plaintiff's ADA claim should be dismissed pursuant to *Fed.R.Civ.P. 12(b)(1)* for lack of subject matter jurisdiction because plaintiff failed to exhaust his administrative remedies. The Court notes initially that in deciding a motion pursuant to *Rule 12(b)(1)*, the burden of proving the existence of subject matter jurisdiction always rests with the plaintiff. *Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).* Where jurisdiction is based on a federal question, the plaintiff must show that he has alleged a non-frivolous claim under federal law. *Bartholomew v. Librandi, 737 F. Supp. 22, 22 (E.D. Pa.), aff'd. 919 F.2d 133 (3d Cir. 1990).* Moreover, the Court notes that a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is the proper motion for challenging jurisdiction where it is alleged that the plaintiff failed to exhaust his administrative remedies. *Oshiver v. Levin, Fishbein, Sedran & Berman, 818 F. Supp. 104, 107 (E.D.*

Case 1:07-cv-06722-RJS    Document 14-12    Filed 10/12/2007    Page 3 of 12

1998 U.S. Dist. LEXIS 5416, *6; 8 Am. Disabilities Cas. (BNA) 1642

Page 3

Pa. 1993), rev'd on other [*7] grounds, 38 F.3d 1380 (3d Cir. 1994).

The proposition that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief is a well-accepted tenet of administrative law. *Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997)* (citing *McKart v. United States, 395 U.S. 185, 193, 89 S. Ct. 1657, 1662, 23 L. Ed. 2d 194 (1969)); Ettinger v. Johnson, 518 F.2d 648, 651 (3d Cir. 1975)*. The exhaustion requirement "is designed to provide sufficient notice to the defendant concerning the charges and obtain voluntary compliance without resort to litigation." *Fucci v. Graduate Hospital, 969 F. Supp. 310, 315 (E.D. Pa. 1997)*. The administrative prerequisites to filing employment discrimination claims under the ADA are no exception. The ADA claimant must follow the same administrative procedures set forth in Title VII, *42 U.S.C. § 2000e-5. Bishop v. Okidata, Inc., 864 F. Supp. 416, 424 (D. N.J. 1994); see also 42 U.S.C. § 12117(a)* (stating that powers, remedies, and procedures of ADA shall be same as those of *42 U.S.C. § 2000e-5*).

Title VII explicitly requires a complainant to file a timely discrimination charge with the EEOC [*8] as a prerequisite to a federal lawsuit. [3] *EEOC v. Commercial Office Prods., 486 U.S. 107, 110, 108 S. Ct. 1666, 1668, 100 L. Ed. 2d 96 (1988). See also Woodson v. Scott Paper Co., 109 F.3d 913, 926 (3d Cir. 1997)* (stating that federal courts lack jurisdiction to hear Title VII claim where plaintiff has failed to file charge with EEOC). Moreover, prior to bringing suit in federal court, the complainant must wait until the EEOC issues a right-to-sue letter signifying the conclusion of the agency's action. *See Parsons v. City of Philadelphia Coordinating Office of Drug and Abuse Programs, 822 F. Supp. 1181, 1183 (E.D. Pa. 1993)* (as prerequisite to suit under Title VII, plaintiff must first file claim with Equal Employment Opportunity Commission (EEOC) and receive "right-to-sue" letter from Commission). Finally, upon receipt of his right-to-sue letter, the plaintiff has a statutory period of 90 days in which to file suit in federal court. *42 U.S.C. § 2000e-5(f)(1); see also Mosel v. Hills Dept. Store, 789 F.2d 251, 252 (3d Cir. 1986) (per curiam)* (dismissal of untimely Title VII claim filed 91 days after receipt of right-to-sue letter). These remedies must be exhausted [*9] before a party may sue in federal court. *Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398, 102 S. Ct. 1127, 1135, 71 L. Ed. 2d 234 (1982)*.

[3] The specific issue of timeliness of the EEOC filing, its nonjurisdictional nature, and exceptions to the requirement, will be discussed in greater detail in the next section.

In the present case, it is undisputed that the plaintiff filed a claim with the EEOC. [4] It is also uncontested that on January 9, 1997, the EEOC wrote to the plaintiff, via his attorney, and requested "additional information." (*See* Defs.' Mot. To Dismiss, Ex. "C.") Nor is it disputed that the EEOC terminated its investigation of Melincoff's charge, and issued a letter on April 11, 1997 with the caption, "Dismissal and Notice of Rights." (See Defs.' Mot. To Dismiss, Ex. "A.") Moreover, it is not disputed that the plaintiff subsequently filed a timely federal suit within the 90-day statutory limit.

[4] However, as discussed in the next section, it is disputed whether the EEOC filing was timely.

[*10] The parties, however, materially disagree as to the meaning and effect of the April 11, 1997 letter. The April 11, 1997 form letter, more precisely, "EEOC form 161 (10/96)," is addressed to plaintiff Melincoff, and sent from the EEOC. (Defs.' Mot. To Dismiss, Ex. "A.") Below the caption, the form states, "**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**" (*Id.* (emphasis in original).) Of the ten possible pre-listed reasons, the fifth is indicated as the reason applicable to Melincoff's claim. It states, "having been given thirty days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge." (*Id.*)

Accordingly, defendants argue that Melincoff failed to cooperate with the EEOC investigation. They assert that Melincoff's failure to comply with the EEOC's January 9, 1997 request for additional information prevented the EEOC from completing its investigation and caused them to dismiss his charge. Thus, defendants argue that, due to Melincoff's lack of cooperation in the EEOC investigation, he has failed [*11] to exhaust his administrative remedies and his claim should be dismissed for lack of subject matter jurisdiction.

In support of their argument, the defendants cite to the case law of the Seventh, Eighth, and Tenth Circuits. [5]

Page 4

1998 U.S. Dist. LEXIS 5416, *11; 8 Am. Disabilities Cas. (BNA) 1642

However, the facts of the instant case do not fall within the penumbra of the other Circuits' reasoning. In the cases cited by the defendants, federal employee plaintiffs failed to comply with extra administrative procedures required only of federal employees and designed to afford federal agencies the first attempt at correcting their own internal discrimination problems. [6] Such requirements are totally inapplicable to the instant case, where both plaintiff and defendants are private parties. *See Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997)* (stating that one of purposes of exhaustion of administrative remedies requirement as applied specifically to federal employees is to "respect [] executive autonomy by allowing an agency the opportunity to correct its own errors").

> 5 In *Khader v. Les Aspin, 1 F.3d 968 (10th Cir. 1993)*, the Court affirmed the district court's holding that it lacked subject matter jurisdiction because the plaintiff federal employee had failed to exhaust her administrative remedies prior to bringing suit. *Id. at 971*. The Court found that the plaintiff's angry, expletive-filled refusal to re-submit copies of relevant documents after the internal EEO counselor had lost them constituted "failure to comply with reasonable requests for additional information." *Id.* In *Pack v. Marsh, 986 F.2d 1155 (7th Cir. 1993) (per curiam)*, the Court affirmed the dismissal of plaintiff's claims for failure to exhaust her administrative remedies after her failure to cooperate with the army's internal EEO counselor in developing those claims resulted in the cancellation of her claims for failure to prosecute. *Id. at 1157*. In *Edwards v. Department of Army, 708 F.2d 1344 (8th Cir. 1983) (per curiam)*, the Court affirmed the district court's granting of summary judgment for defendants due to the plaintiff's failure to exhaust his administrative remedies. *Id. at 1347*. In *Edwards*, the plaintiff, a federal employee, failed to provide the internal EEO counselor with the information it needed in order to take any meaningful action on his complaint. *Id.*

[*12]

> 6 A federal employee claiming discrimination against a federal agency must first consult with one of that agency's own EEO counselors within 30 days of the alleged discriminatory act. *Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997)*; 29 C.F.R. § 1613.214(a)(1)(I) (1990). The EEO counselor will attempt to resolve the matter, and if necessary, advise the complainant of her right to file a formal complaint. *Pack, 986 F.2d at 1156*; 29 C.F.R. § 1613.204. Such a formal complaint must be filed within 15 calendar days after the date of receipt of the notice of the right to file a complaint. *Robinson, 107 F.3d at 1021*; 29 C.F.R. § 1613.214(a)(1)(ii). The complaint, if filed, is then accepted or rejected by the agency. *Pack, 986 F.2d at 1156*; 29 C.F.R. §§ 1613.201, 1613.231. Upon receipt of notice of final agency action, a dissatisfied complainant may then appeal to the EEOC, or file suit in District Court within 30 days (or within 180 days from the date of filing the complaint if the agency has not reached a decision). *Robinson, 107 F.3d at 1021*; 29 C.F.R. § 1613.281. Thus, in *Edwards* and *Pack*, it was the plaintiffs' failure to provide more information to the internal army EEO counselors that resulted in the dismissal of their respective claims. *Edwards, 708 F.2d at 1345-46; Pack, 986 F.2d at 1158*. Similarly, in *Khader*, it was the plaintiff's angry lack of cooperation with the Army and Air Force Exchange Service's internal EEO counselors that resulted in the dismissal of her claim. *Khader, 1 F.3d at 969-70*. In each case, a respondent federal agency was deprived of its opportunity to address and correct its own internal discrimination problems. *See* 29 C.F.R. § 1613.214 (regulation granting agencies initial opportunity to resolve their own federal employees' discrimination allegations, before aggrieved employee may resort to other remedies). *See also Ettinger v. Johnson, 518 F.2d 648 (3d Cir. 1975)* (remanding for hearing *de novo* on question of whether plaintiff's charges were timely brought to agency's EEO counselor and whether equitable principles applied).

[*13] By way of contrast, in the instant case, Melincoff did not need to, nor was he required, pursuant to any regulation, to resort to an internal EEO counselor in the defendant corporation in order to provide the employer with an opportunity to correct its own discrimination problems. [7] Moreover, the defendants received notice of Melincoff's EEOC discrimination charge on January 9, 1997 and again on April 11, 1997, and, thus, may not credibly argue that they lacked notice or were surprised by the lawsuit subsequently filed in July, 1997. (Defs.' Mot. To Dismiss, Exs. "B" & "A.")

Case 1:07-cv-06722-RJS   Document 14-12   Filed 10/12/2007   Page 5 of 12

Page 5
1998 U.S. Dist. LEXIS 5416, *13; 8 Am. Disabilities Cas. (BNA) 1642

Accordingly, the Court declines to extend the reasoning of the extra-Circuit cases cited by the defendants to the instant case, whereby Melincoff's failure to provide additionally requested information would constitute a "failure to exhaust administrative remedies" to the extent that this Court has no jurisdiction over plaintiff's claim.

> 7   Defendants also cite two District Court cases from the Seventh Circuit where the plaintiffs were not federal employees, but rather, as in the instant case, private employees of private employers. *See Dates v. Phelps Dodge Magnet Wire Co., 604 F. Supp. 22, 27 (N.D. Ind. 1984)* (stating that plaintiff who failed to cooperate in agency investigation cannot invoke court's jurisdiction solely on basis of his receipt of his right to sue from EEOC); *Duncan v. Consolidated Freightways Corp. of Del., 1995 U.S. Dist. LEXIS 12964, at *8-10 (N.D. Ill. Sept. 7, 1995)* (granting summary judgment for defendant after holding that EEOC right-to-sue letter does not preclude dismissal of action for failure to exhaust administrative remedies where plaintiff failed to cooperate in EEOC investigation). However, in reaching their respective conclusions, the *Dates* and *Duncan* courts expressly rely on the Circuit Court cases involving federal employee plaintiffs, which this Court has rejected as distinguishable from the instant case. See *supra* notes 5 & 6.

[*14] Rather, the EEOC regulations regarding both the dismissal of an EEOC charge and the issuance of the right-to-sue letter anticipate the plaintiff's actions and support the plaintiff's argument that he has fully exhausted his administrative remedies. The relevant portion of *§ 1601.18* states:

> (b) Where the person claiming to be aggrieved fails to provide requested necessary information, fails or refuses to appear or to be available for interviews or conferences as necessary, fails or refuses to provide information requested by the Commission pursuant to § 1601.15(b), or otherwise refuses to cooperate to the extent that the Commission is unable to resolve the charge, and after due notice, the charging party has had 30 days in which to respond, the Commission may dismiss the charge.

*29 C.F.R. § 1601.18(b) (1991)*. The relevant portion of *§ 1601.28* then states, "(b) Issuance of notice of right to sue following Commission disposition of charge. . . . (3) Where the Commission has dismissed a charge pursuant to *§ 1601.18*, it shall issue a notice of right to sue as described in *§ 1601.28(e)* to: (I) The person claiming to be aggrieved . . . . " *29 C.F.R. § 1601.28(b)(3)*.

[*15] In the EEOC's April 11, 1997 letter to Melincoff, under a notice that "the EEOC is closing its file on this charge for the following reason:," and utilizing almost identical language as *§ 1601.18(b)*, the reason that is checked states: "having been given thirty days in which to respond, you failed to provide information, failed to appear or be available for interviews/ conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge." (Defs.' Mot. To Dismiss, Ex. "A.") Thus, the regulations clearly anticipate the instant situation, where a claimant's charge is dismissed pursuant to *29 C.F.R. § 1601.18(b)* for failure to provide additional information. Further, in such situations, *§ 1601.28(b)(3)* clearly requires the EEOC to issue a right to sue letter to the complainant. Moreover, the dismissal notice in the letter complies with the requirements for the contents of the right-to-sue notice as specified in *29 C.F.R. § 1601.28(e)*, which states in relevant part, "the notice of right to sue shall include . . . the Commission's decision, determination, or dismissal, as appropriate." *29 C.F.R. § 1601.28(e)(4)*.

In addition, underneath the notice [*16] of closure of the EEOC file, and in further conformance with the required contents of a right-to-sue notice specified in *§ 1601.28(e)(1) & (2)*, the letter proclaims, "**NOTICE OF SUIT RIGHTS.**" (Defs.' Mot. To Dismiss, Ex. "A" (emphasis in original).) It then states:

> **Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed *WITHIN 90 DAYS* from your receipt of this Notice**; otherwise, your right to sue based on this

Case 1:07-cv-06722-RJS   Document 14-12   Filed 10/12/2007   Page 6 of 12

1998 U.S. Dist. LEXIS 5416, *16; 8 Am. Disabilities Cas. (BNA) 1642

Page 6

charge will be lost. (The time limit for filing a state claim may be different.)

(*Id.* (emphasis in original).)

Similarly, the January 9, 1997 letter from the EEOC to Melincoff, requesting more information, tends to support Melincoff's argument that he has exhausted his administrative remedies and that a right-to-sue letter is forthcoming. After acknowledging receipt of his EEOC charge, the letter states in relevant part:

> however, before the charge can be forwarded [*17] to an Enforcement Unit for investigation, we must first complete other intake processing for which we must obtain additional information from you and/or your client.
>
> In order to assist this office in obtaining that information, I have enclosed the following questionnaire(s) . . .
>
> Please have your client complete and return all questionnaires. He/she should answer all the questions to the best of his/her ability and attach extra pages if necessary.
>
> Please note that if he/she fails to return the completed questionnaire(s) to this office within 33 days from the date of this letter or fails to contact this office within that same 33-day period if there is need for further clarification or to request an extension, the EEOC will dismiss this charge for failure to cooperate. **In that event, the Charging Party will be issued a Notice of Right to Sue and will have 90 days from the date of issuance to file suit in Federal District Court.**

(Defs.' Mot. to Dismiss, Ex. "C." (emphasis added).)

Accordingly, the Court finds no ambiguity as to either the content and intent of the agency's April 11, 1997 letter or the EEOC regulations under which it was issued. The letter clearly constitutes [*18] a "notice of right to sue" issued upon the EEOC's disposition of Melincoff's charge and pursuant to *29 C.F.R. §§ 1601.18 & 1601.28*.

Thus, in the instant case, the plaintiff has met his burden of proving the existence of subject matter jurisdiction by showing that he filed an EEOC charge, received his right-to-sue letter, and then filed a timely complaint in the District Court within 90 days. In the absence of any other facts tending to show a failure to exhaust, it seems contrary to the remedial purpose of both the ADA and Title VII to allow a checked box on Melincoff's right-to-sue letter, notifying him that his file has been closed, to form the basis for dismissing plaintiff's claim for failure to exhaust administrative remedies where that same letter advised him that he had a right to sue in this Court. *See EEOC v. Commercial Office Prods., 486 U.S. 107, 124, 108 S. Ct. 1666, 1676, 100 L. Ed. 2d 96 (1988)* (stating Title VII is "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process").

Therefore, with respect to the defendants' argument that the Court lacks subject matter jurisdiction due to the plaintiff's failure to exhaust administrative [*19] remedies, the defendants' motion will be denied. The Court next addresses the defendants' second argument.

## II Timeliness of the EEOC Charge

Defendants argue second that Melincoff's complaint must be dismissed because his EEOC charge, filed some 294 days after the allegedly discriminatory firing, was untimely filed. [8] Because Melincoff never personally filed a charge with the PHRC, and because the EEOC did not dual-file or cross-file his charge with the PHRC on Melincoff's behalf, defendants argue that he is limited to the statutory 180-day filing period rather than the extended 300-day filing period available only to those claimants who also file a charge with the PHRC. Accordingly, defendants argue, as Melincoff's EEOC charge was filed well over 180 days after his termination, the filing was untimely. Plaintiff takes the position that in Pennsylvania, a deferral state, unless the claimant specifically wants to preserve his rights under the PHRA, it is not necessary for the claimant to either personally file a separate charge with the PHRC or have the EEOC dual or cross file its charge with the PHRC on his behalf. He asserts that, for a claimant who only wishes to pursue a [*20] federal cause of action, it is not necessary to have a separate charge initiated with the PHRC. Instead, the routine and automatic internal administrative transmittal of the EEOC charge to the PHRC, pursuant to a worksharing agreement, suffices to trigger the 300-day

Case 1:07-cv-06722-RJS   Document 14-12   Filed 10/12/2007   Page 7 of 12

1998 U.S. Dist. LEXIS 5416, *20; 8 Am. Disabilities Cas. (BNA) 1642

Page 7

federal filing deadline without any other action by the plaintiff. Thus, Melincoff essentially argues that in a deferral state with a worksharing agreement, federal rights are preserved so long as the claimant files a charge with the EEOC within 300 days of the last allegedly discriminatory act.

> 8  Whether the time is measured from January 18, 1996, the date of the termination letter, or from January 22, 1996, the date that plaintiff received the January 18 termination letter, is not crucial to the disposition of this motion because plaintiff is in the same position whether he filed his charge as early as 290 days or as late as 298 days after the last alleged act of discrimination.

As an initial matter, the Court notes that a motion to dismiss for [*21] failing to file a timely EEOC claim is not a jurisdictional attack, but rather, an affirmative defense more in the nature of a statute of limitations issue, subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L. Ed. 2d 234 (1982)*. Accordingly, "timeliness of exhaustion requirements are best resolved under *Rule 12(b)(6)* covering motions to dismiss for failure to state a claim." *Robinson v. Dalton, 107 F.3d 1018, 1021-22 (3d Cir. 1997)*; see also *Hornsby v. United States Postal Service, 787 F.2d 87, 89 (3d Cir. 1986)*. It follows, therefore, that the defendants' 12(b)(1) motion should be treated by the Court as a 12(b)(6) motion for failure to state a claim, with respect to the issue of timeliness of the EEOC charge.

Under *Rule 12(b)(6)* the defendant has the burden of showing that no claim has been stated. *Kehr packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)*. "In considering a *Rule 12(b)(6)* motion, the court must accept the allegations of the complaint as true." *Bishop, 864 F. Supp. at 420* (citing *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40* [*22] *L. Ed. 2d 90 (1974)*. "Dismissal of claims under *Rule 12(b)(6)* should be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957)*). Moreover, a court may properly consider undisputedly authentic documents attached to the motion papers of either party in deciding a *Rule 12(b)(6)* motion to dismiss. *In re Donald J. Trump Casino Securities Lit., 7 F.3d 357, 368 n.9 (3d Cir. 1993)*, *cert. denied, 510 U.S. 1178, 114 S. Ct. 1219, 127 L. Ed. 2d 565 (1994)*; *Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042, 114 S. Ct. 687, 126 L. Ed. 2d 655 (1994)*.

As discussed above, a plaintiff pursuing an employment discrimination claim under the ADA must comply with the filing requirements of Title VII. See *42 U.S.C. § 12117(a)* (stating that powers, remedies, and procedures of ADA shall be same as those of *42 U.S.C. § 2000e-5*). Title VII requires a timely charge of discrimination to have been filed with the EEOC before a federal [*23] court may adjudicate the claim. *42 U.S.C. § 2000e-5(e)(1)*; *Trevino-Barton v. Pittsburgh Nat'l Bank, 919 F.2d 874, 878 (3d Cir. 1990)*.

Under Title VII, a charge of employment discrimination generally must be filed with the EEOC within 180 days of the last alleged act of discrimination. *42 U.S.C. § 2000e-5(e)(1)*; *Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994)*. However, if a claimant initially files a complaint with a state or local agency with authority to adjudicate the claim, a charge can be filed with the EEOC up to 300 days after the discriminatory act. [9] *Id.* See also *Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1210 (3d Cir. 1984)* (300-day filing period applies if complainant had initiated proceedings with PHRC); *Bronze Shields, Inc. v. N.J. Dept. Of Civil Serv., 667 F.2d 1074, 1080 n.14 (3d Cir. 1981)* (300-day filing period would have applied had plaintiffs initially filed with PHRC).

> 9  In relevant part, *section 2000e-5(e)(1)* reads:
>
> A charge under this section shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged employment practice occurred....
>
> *42 U.S.C. § 2000e-5(e)(1)*.

Case 1:07-cv-06722-RJS   Document 14-12   Filed 10/12/2007   Page 8 of 12

Page 8

1998 U.S. Dist. LEXIS 5416, *23; 8 Am. Disabilities Cas. (BNA) 1642

[*24] Furthermore *section 2000e-5(c)* provides that where an alleged discriminatory employment practice has occurred in a so-called "deferral state" (a state that has its own anti-discrimination laws and enforcement agency), the deferral state has sixty days of exclusive jurisdiction over the claim, and only after the sixty days have expired or the proceedings have been "earlier terminated" can the charge be filed with the EEOC. [10] *42 U.S.C. § 2000e-5(c)*; *Trevino-Barton, 919 F.2d at 879*; *Howze, 750 F.2d at 1210*. The sixty-day period of exclusive jurisdiction is intended to "give States and localities an opportunity to combat discrimination free from premature federal intervention." *EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110, 108 S. Ct. 1666, 1669, 100 L. Ed. 2d 96 (1988)*. "It is undisputed that Pennsylvania is a deferral state within the meaning of *42 U.S.C. § 2000e-5*." *Howze, 750 F.2d at 1210*.

> 10   In relevant part, *section 2000e-5(c)* reads:
>
> > In the case of an alleged unlawful employment practice occurring in a State, ... which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice ... no charge may be filed under [this section] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under State or local law, unless such proceedings have been earlier terminated....
>
> *42 U.S.C. § 2000e-5(c)*.

[*25] Many state agencies, in order to facilitate the federal processing of charges, have entered into "worksharing agreements" with the EEOC in which the state agency agrees to waive its right to the sixty-day period of exclusive jurisdiction for certain categories of claims. *Trevino-Barton, 919 F.2d at 879*. That is the case in Pennsylvania, where the PHRC and the EEOC have entered into a "worksharing agreement." *Id*. Thus, under the worksharing agreement between the PHRC and the EEOC, "Pennsylvania has waived its statutory right to initially process discrimination claims, and hence this agreement operates to 'terminate' the PHRC proceedings with respect to those complaints that are first filed with the EEOC." *Woodson v. Scott Paper Co., 109 F.3d 913, 926 (3d Cir. 1997)* (citing *Trevino-Barton, 919 F.2d at 879*). Accordingly, "the worksharing agreement allows a plaintiff to proceed in court under Title VII without first filing with the PHRC." *109 F.3d at 926*.

In the instant case, plaintiff relies on *Woodson* for his argument that the mere existence of a worksharing agreement covering disability discrimination claims obviates the need to even file with the PHRC, while, [*26] nonetheless, affording plaintiff the extended 300-day EEOC filing deadline with respect to his federal ADA claim. However, in *Woodson*, the court held only that the worksharing agreement between the PHRC and the EEOC does not operate to automatically satisfy the PHRA's filing requirement. [11] *Id. at 916*. In the instant case, Melincoff never intended to, and is not presently asserting a PHRA claim, and, thus, the PHRA's filing requirements are irrelevant. Moreover, after Woodson was terminated from his job on January 27, 1992, for what he felt were retaliatory reasons, he filed a charge with the EEOC on July 22, 1992, or 176 days after the allegedly discriminatory conduct. *Id. at 918, 925*. Thus, Woodson filed his EEOC charge within the statutory 180-day filing period, and the timeliness of his EEOC charge was not at issue as it is in the instant case. Accordingly, the *Woodson* court did not consider whether Woodson's failure to initiate a charge with the PHRC precluded the use of the 300-day extended federal filing deadline rather than the standard 180-day deadline with respect to Woodson's EEOC charge. [12]

> 11   The Court held further that the District Court erred in finding that Woodson was excused from filing with the PHRC under the doctrine of "equitable filing." *Id. at 916*.
>
> [*27]
>
> 12   In support of his argument that he is entitled to the 300-day extended federal filing deadline, plaintiff relies on other Third Circuit cases which are not on point. For instance, in *Trevino-Barton v. Pittsburgh Nat'l. Bank, 919 F.2d 874 (3d Cir. 1990)*, the plaintiff had originally filed with the PHRC because she believed it was necessary to do so prior to filing with the EEOC. *Id. at 875*. The issue before the Court was whether an earlier filing with the PHRC affected an otherwise valid later filing with the EEOC. *Id*. The Court held

Case 1:07-cv-06722-RJS   Document 14-12   Filed 10/12/2007   Page 9 of 12

1998 U.S. Dist. LEXIS 5416, *27; 8 Am. Disabilities Cas. (BNA) 1642

Page 9

that, pursuant to the intent of the worksharing agreement, the EEOC filing was not invalidated by the plaintiff's earlier letter to the PHRC. *Id. at 880-81*. The Court had no reason to consider the applicability of the 300-day filing deadline. In *Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208 (3d Cir. 1984)*, the Court reversed the District Court's granting of summary judgment in favor of the defendant because there was a genuine issue as to whether the plaintiff's charge had been filed within the 300-day filing period. *Id. at 1211*. In *Howze*, the Court noted that, though the plaintiff did not file a charge with the PHRC, she claimed that the EEOC had, nonetheless, referred her charge to the PHRC on her behalf. *Id.* Based on the plaintiff's claim, the lower court "assumed, without deciding" that the 300-day deadline applied. *Id.* The appellate Court expressly declined to consider the issue and reversed only on whether the plaintiff had met the 300 day deadline, not whether such a deadline was applicable to her charge. Thus, neither the District nor Circuit Court addressed the specific issue of whether the 300-day deadline applied.

The defendants' reliance on "contrary" Third Circuit cases is also misplaced. In *Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994)*, the Court stated, "if the plaintiff initially filed a complaint with a state or local agency with authority to adjudicate the claim, he or she is allotted 300 days from the date of the alleged discrimination within which to file" with the EEOC. *Id. at 1385*. However, in *Oshiver*, it was undisputed that the plaintiff had timely filed with the PHRC and thus had 300 days in which to file with the EEOC. At issue was whether the 300 days began on the date of termination or on the date plaintiff claimed to have discovered that the termination had been discriminatory. *Id.* Similarly, in *Bronze Shields, Inc. v. New Jersey Dept. Of Civil Service, 667 F.2d 1074 (3d Cir. 1991)*, the Court stated, "the 180-day limit applies because all the plaintiffs initially filed charges with the EEOC. A 300-day filing period would have applied had plaintiffs initially filed with the state agency. *42 U.S.C. § 2000e-5(e)*." *Id. at 1080 n.14*. However, in *Bronze Shields*, plaintiffs had apparently conceded that their EEOC charges were subject to the 180-day filing deadline, arguing instead that their charges had been timely filed under either a continuing violation theory or equitable estoppel theory. *Id. at 1080*. Thus, neither the District Court nor the Circuit Court addressed the applicability of the 300-day deadline.

[*28] Plaintiff also cites to *EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 108 S. Ct. 1666, 100 L. Ed. 2d 96 (1988)*, in support of his argument. While not directly on point, *Commercial Office Prods.* offers persuasive guidance on the issue of whether the 300-day filing deadline should be available to Melincoff in the instant case. In *Commercial Office Prods.*, the complainant filed a charge of discrimination with the EEOC 290 days after the alleged discriminatory act. *Id. at 112-13, 108 S. Ct. at 1670*. Four days later, pursuant to a worksharing agreement, the EEOC sent a copy of the charge and a charge transmittal form to the Colorado Civil Rights Division ("CCRD"), a state agency with authority to process charges of employment discrimination. *Id.* The transmittal form stated that the EEOC would initially process the charge, pursuant to the worksharing agreement between the EEOC and the CCRD. *Id.*

The Commercial Office Prods. Court recognized two distinct issues with respect to the time limits for filing employment discrimination charges with the EEOC. *Id. at 109, 108 S. Ct. at 1668*. First the Court addressed whether a state agency's decision to waive its [*29] exclusive 60-day period for initial processing of a discrimination charge, pursuant to a worksharing agreement with the EEOC, "terminates" the agency's proceedings within the meaning of § 706(c) of Title VII, 78 Stat. 260, as amended in 1972, 86 Stat. 104, *42 U.S.C. § 2000e-5(c)*, so that the EEOC immediately may deem the charge filed.

*486 U.S. 107, at 109-10, 108 S. Ct. at 1668*. Second, the Court addressed "whether a complainant who files a discrimination charge that is untimely under state law is nonetheless entitled to the extended 300-day federal filing period of § 706(e) of Title VII." *Id. at 110, 108 S. Ct. at 1668* (citation omitted).

After holding that the CCRD's waiver of the 60-day deferral period "terminated" its proceedings for the purposes of EEOC filings pursuant to § 706 (c), the Court then held that, under Title VII, an untimely filing under

Case 1:07-cv-06722-RJS   Document 14-12   Filed 10/12/2007   Page 10 of 12

1998 U.S. Dist. LEXIS 5416, *29; 8 Am. Disabilities Cas. (BNA) 1642

Page 10

state law does not preclude the application of the extended 300-day federal filing period. *Id. at 122-23, 108 S. Ct. at 1675-76.*

The Court stated:

> the importation of state limitations periods into § 706) not only would confuse lay complainants, but would also embroil the EEOC in complicated issues of state law. [*30] In order for the EEOC to determine the timeliness of a charge filed with it between 180 and 300 days, it first would have to determine whether the charge had been timely filed under state law, because the answer to the latter question would establish which of two federal limitations period should apply. . . . the EEOC has neither the time nor the expertise to make such determinations under the varying laws of the many deferral States and has accordingly construed the extended 300-day period to be available regardless of the state filing. See *52 Fed.Reg. 10,224 (1987).*

*Id. at 124, 108 S. Ct. at 1676.* Thus, though not specifically addressed in the *Commercial Office Prods.* holding, the Court, nonetheless, both implicitly accepted the mere transmittal of the EEOC charge to the state agency, 294 days after the alleged discriminatory act, as a state filing sufficient to make available the 300-day federal filing deadline, and broadly declared that the 300-day filing period is available in a deferral state irrespective of the state filing. [13]

> 13 The Fifth, Fourth, and First Circuits also have expressly adopted the view that the mere transmittal of the EEOC charge to the respective state agency, pursuant to a worksharing agreement, is a sufficient filing with the state agency for the purpose of utilizing the 300-day federal filing deadline. In *Griffin v. City of Dallas, 26 F.3d 610 (5th Cir. 1994),* the plaintiff filed a charge with the EEOC 275 days after his allegedly discriminatory discharge but did not file a charge with the Texas Commission on Human Rights ("TCHR"). *Id. at 611.* The Court found that a "nominal filing with the proper state or local agency is all that is required" to satisfy Title VII's requirements so as to afford the complainant the 300-day filing period. *Id. at 612* (citing *Urrutia v. Valero Energy Corp., 841 F.2d 123, 125 (5th Cir. 1988)).* The Court noted further that it had decided in *Urrutia* that the "nominal filing requirement was satisfied when the EEOC transmitted a copy of the charge to the TCHR." *Id.* Accordingly, the Court held that because the worksharing agreement designated the EEOC as the TCHR's agent for the purpose of receiving charges, Griffin's charge with the EEOC satisfied both agencies requirements and afforded him the 300-day deadline. *Id.* See also *Lafort v. Russell, 1998 WL 12241, No. 96-3888, at *2 & *4 (E.D. La. Jan. 12, 1998)* (Wilkinson, M.J.) (calling case law which applies 180-day deadline for EEOC charges "outdated" and stating that 5th Circuit law is well-settled that 300-day deadline applies in a deferral state).
>
> In *Petrelle v. Weirton Steel Corp., 953 F.2d 148 (4th Cir. 1991),* the Court, after initially rejecting plaintiff's argument that the language of the worksharing agreement between the state agency and the EEOC automatically satisfied the ADEA filing requirements, found that the plaintiff had, nonetheless, established that his claim had been, in fact, transmitted to the state agency. *Id. at 149.* The Court thus held that a charge filed solely with the EEOC must be referred to the state agency before they "initiate" state proceedings, but that the referral requirement could be satisfied by the routine transmittal of the charge to the state agency by the EEOC. *Id. at 153.* Similarly, in *EEOC v. Green, 76 F.3d 19 (1st Cir. 1996),* the issue was whether the language of the workshare agreement, that the EEOC served as the agent of the state agency for the purpose of receiving charges, was sufficient to initiate the state charges for the purpose of affording the plaintiff the extended 300-day EEOC filing deadline. *Id. at 24.* In reversing the District Court's granting of summary judgment for the defendant, the Court found that there was a genuine issue as to whether the EEOC charge had been transmitted to the state agency. *Id. at 25.*

[*31] In the instant case, with regard to the worksharing agreement between the EEOC and PHRC, the Court notes initially that the PHRA does provide a

Page 11

1998 U.S. Dist. LEXIS 5416, *31; 8 Am. Disabilities Cas. (BNA) 1642

cause of action for disability discrimination. *43 P.S. § 955(a)*. Moreover, the worksharing agreement expressly covers such disability discrimination claims. *See* Worksharing Agreement Between Pennsylvania Human Relations Commission and Equal Employment Opportunity Commission For Fiscal Year 1997 ("worksharing agreement") at P I.A. The worksharing agreement states in relevant part, "in order to facilitate the assertion of employment rights, the EEOC and [PHRC] each designate the other as its agent for the purpose of receiving and drafting charges." *Id.* at P II.A. However, paragraph II.C. suggests that charges brought with the EEOC are not automatically dual-filed with the PHRC so as to preserve a claimant's rights under the PHRA. The paragraph states in relevant part, "each Agency will inform individuals of their rights to file charges directly with the other Agency and or assist any person . . . to draft a charge in a manner which will satisfy the requirements of both agencies to the extent of their common jurisdiction." *Id.* [*32] at P II.C.; *see also Petrelle, 953 F.2d at 152* (interpreting similar worksharing agreement language in same manner). Moreover, the EEOC's January 9, 1997 letter to Melincoff enclosed a form entitled "Request for EEOC to Dual File Charge with PHRC," which it requested Melincoff to fill out and return, and which Melincoff ignored. (Defs.' Mot. To Dismiss, Ex. "C.") Accordingly, Melincoff may not now pursue a claim pursuant to the PHRA. *See Woodson, 109 F.3d 913 at 916* (plaintiff may not rely upon worksharing agreement to automatically satisfy PHRA's filing requirements).

Nonetheless, it is clear that Melincoff never intended to pursue a PHRA claim, and, thus, had no reason to either personally file a separate discrimination charge with the PHRC or have the EEOC dual-file his charge with the PHRC on his behalf. Further, even if ADA charges brought initially with the EEOC are not automatically dual-filed with the PHRC (so as to initiate a PHRA claim), they are, however, automatically and routinely *transmitted* to the PHRC pursuant to the EEOC Compliance Manual. *See* EEOC Compliance Manual, No. 204, 5:0001, at 9, P 5.3 (BNA 1995) (stating procedure for using EEOC [internal] [*33] form 212-A for charge transmittal to state agency of all concurrent charges); EEOC Compliance Manual, No. 111, 5:0003, at 98, P 5.4(e)(5) (BNA 1988) (stating, ". . . if the charge is received after the 290 day, call the [state agency] and arrange for special handling to ensure return of the [administrative transmittal] form 212-A by the 300th day."); *see also* Addendum to FY98 Worksharing Agreement, at P 2 (providing guidance on use of "Request to Dual File" form and stating that if complainant fills out such "Request to Dual File" form, it should be sent to PHRC along with the required 212-A transmittal form).

In light of the persuasive guidance provided by the Supreme Court in *Commercial Office Prods.*, and in the absence of specific Third Circuit authority to the contrary, this Court agrees with the reasoning of the First, Fourth, and Fifth Circuits, that the routine administrative transmittal of the EEOC charge to the PHRC initiates state proceedings for the purposes of the 300-day federal filing deadline. *See supra* note 13. *See also Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 750-51 (7th Cir. 1995)* (stating "numerous courts have struggled with [*34] this issue and concluded, in different circumstances, that the provisions of various worksharing agreements operate to provide claimants with the benefit of the 300-day filing period").

In the instant case, neither party has addressed whether or not Melincoff's EEOC charge was administratively transmitted to the PHRC pursuant to the worksharing agreement and the EEOC Compliance Manual. Nonetheless, it has long been recognized that public officials are accredited with a presumption of regularity. Thus, "in the absence of clear evidence to the contrary, courts presume that public officials have properly discharged their official duties." *United States v. Chemical Found., Inc., 272 U.S. 1, 14-15, 47 S. Ct. 1, 6, 71 L. Ed. 131 (1926)*. The presumption is "sufficient to sustain the inference" that the agency did "whatever was appropriate" to effectuate the procedure. *R.H. Stearns Co. v. United States, 291 U.S. 54, 63, 54 S. Ct. 325, 328, 78 L. Ed. 647 (1934)*; *see also Seredinski v. Clifton Precision Prods. Co., 776 F.2d 56, 63 n.11 (3d Cir. 1985)* (applying presumption to referral of ADEA charges by EEOC to state agency).

The presumption is applicable in the instant case. As [*35] noted, the EEOC Compliance Manual requires the EEOC to transmit disability discrimination charges to the PHRC pursuant to the worksharing agreement as a matter of administrative routine. EEOC Compliance Manual, No. 204, 5:0001, at 9, P 5.3. Moreover, despite the fact that the plaintiff's charge was filed only with the EEOC, and a full 294 days after the last alleged act of discrimination, the EEOC's own actions in processing

Case 1:07-cv-06722-RJS   Document 14-12   Filed 10/12/2007   Page 12 of 12

Page 12
1998 U.S. Dist. LEXIS 5416, *35; 8 Am. Disabilities Cas. (BNA) 1642

Melincoff's charge and issuing a right-to-sue letter anyway, indicate that the EEOC apparently operates under the assumption that the 300-day federal filing deadline is available in a deferral state, regardless of the state filing. Indeed, one of the possible reasons for closing an EEOC investigation listed, but unchecked, on the EEOC's April 11, 1997 letter to Melincoff states, "we cannot investigate your charge because it was not filed within the time limit required by law." (Defs.' Mot. To Dismiss, Ex. "A.") Finally, the EEOC's acceptance of Melincoff's charge on the 294th day, conforms with the Supreme Court's persuasive *dicta* in *Commercial Office Prods.* and the law of the Fifth, Fourth, and First Circuits, whereby the mere administrative transmittal [*36] of a charge from the EEOC to the state agency pursuant to a worksharing agreement is sufficient in a deferral state to "initiate" state charges for the purposes of the 300-day Title VII deadline. *See supra* note 13.

In the instant case, as this portion of their motion has been converted into a motion pursuant to *Fed.R.Civ.P. 12(b)(6)*, defendants have the burden of showing that Melincoff has failed to state a claim. This portion of defendants' motion argues that because plaintiff did not personally file, have the EEOC dual file in his behalf, or otherwise initiate a charge with the PHRC in any way, he is precluded from availing himself of the 300-day extended federal deadline. However, as discussed above, in Pennsylvania, pursuant to EEOC internal procedure, the EEOC routinely and automatically transmits a copy of discrimination charges covered by the worksharing agreement to the PHRC. This routine transmittal, accomplished via internal administrative form 212-A, suffices to initiate state charges for the limited purpose of extending the federal deadline from 180 days to 300 days in a deferral state operating under a worksharing agreement. Thus, defendants are additionally required [*37] to show that Melincoff's EEOC charge was not automatically transmitted to the PHRC by the EEOC. As they have not offered anything to suggest that, in Melincoff's case the EEOC failed to perform its routine duty, defendants have not met their burden. Accordingly, it is presumed that Melincoff's EEOC charge, though not dual-filed with the PHRC so as to initiate a PHRA claim, was, however, transmitted to the PHRC via administrative form 212-A, pursuant to the worksharing agreement and the EEOC Compliance Manual.

Therefore, in the instant case, despite the fact that plaintiff did not ever file a separate discrimination charge with the PHRC and ignored the EEOC's offer to dual file his charge with the PHRC on his behalf, the fact that EEOC charges are routinely transmitted to the PHRC pursuant to the EEOC Compliance Manual and the worksharing agreement is sufficient to initiate state charges for the limited purpose of the 300-day EEOC deadline. Thus, plaintiff's EEOC charge, filed 294 days after his allegedly discriminatory firing, was timely filed for the purposes of his federal claim. Accordingly, defendants' Motion to dismiss count I will be denied. Moreover, as Melincoff's federal [*38] ADA claim remains intact at this point, the Court will deny defendants' motion to dismiss pursuant to *28 U.S.C. § 1367(c)* plaintiff's supplemental state law claim of count II. An appropriate order follows.

### *ORDER*

AND NOW on this 20th Day of April, 1998, in consideration of defendants' Motion to Dismiss Plaintiff's Complaint, the plaintiff's Response, and defendants' Surreply, and for the reasons stated in the accompanying memorandum, it is HEREBY ORDERED that Defendants' motion is DENIED.

BY THE COURT:

CLIFFORD SCOTT GREEN, S.J.