LEXSEE 2006 US DIST LEXIS 63032


Analysis
As of: Oct 11, 2007

**KIMBERLY OSORIO and MICHELLE JOYCE, Plaintiffs, -v- SOURCE ENTERPRISES, et al., Defendants.**

05 Civ. 10029 (JSR)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2006 U.S. Dist. LEXIS 63032*

September 1, 2006, Decided
September 5, 2006, Filed

**SUBSEQUENT HISTORY:** Motion denied by, Motion for new trial denied by *Osorio v. Source Enters., 2007 U.S. Dist. LEXIS 18725 (S.D.N.Y., Mar. 2, 2007)*

**COUNSEL:** [*1] For Kimberly Osorio, Michelle Joyce, Plaintiffs: Kenneth P. Thompson, Thompson Wigdor and Gilly, NY, NY.

For Source Enterprises, Inc., Source Entertainment, Inc., Defendants: Mercedes Colwin, Deborah Swindells Donovan, Gordon & Reees, LLP, New York, NY US.

For David Mays in his official capacity, David Mays, individual, Raymond Scott, in his official capacity also known as Benzino, Raymond Scott, individual also known as Benzino, Defendants: Scott Todd Baken, Jackson Lewis LLP, White Plains, NY; Deborah Swindells Donovan, Gordon & Reees, LLP, New York, NY US.

**JUDGES:** JED S. RAKOFF, U.S.D.J.

**OPINION BY:** JED S. RAKOFF

**OPINION**

*MEMORANDUM ORDER*

JED S. RAKOFF, U.S.D.J.

In a rather diffuse ten-count complaint, plaintiffs Kimberly Osorio and Michelle Joyce allege that their former employer, defendants Source Enterprises, Inc. and Source Entertainment, Inc. (collectively, "The Source"), as well as two of its former officers, David Mays and Raymond Scott, discriminated on the basis of gender (or aided and abetted others in so doing) in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.*, the New York State Human Rights Law, *N.Y. Exec. Law § 290 et seq.*, [*2] and the New York City Human Rights Law, N.Y. Admin. Code *§ 8-101 et seq.*. Plaintiffs also claim that some or all of the defendants retaliated against plaintiffs for complaining about the alleged discrimination, inflicted emotional distress on plaintiffs in violation of New York common law, and defamed plaintiff Osorio in violation of New York law. Following summary judgment motion practice, the Court, by Order dated August 22, 2006 (the "August 22 Order"), dismissed all of Joyce's claims against all defendants; dismissed Osorio's claims (a) against The Source for intentional infliction of emotional distress and defamation; (b) against Scott for aiding and abetting violations of New York state and local law and for intentional infliction of emotional distress; and (c) against

Case 1:07-cv-06722-RJS    Document 14-13    Filed 10/12/2007    Page 2 of 7

Page 2
2006 U.S. Dist. LEXIS 63032, *2

Mays for sexual harassment in violation of New York state and local law, for aiding and abetting violations of New York state and local law, and for intentional infliction of emotional distress. This Memorandum Order briefly states the reasons for these rulings.

The pertinent facts, either undisputed, or, where disputed, taken most favorably to the plaintiffs, are as follows. The Source, with [*3] a paid circulation of over 250,000, is said to be the premier magazine in the country devoted to issues of hip hop music and culture. It caters primarily to a young male audience, see Defendant Source's 56.1 Statement ("Def. Source St.") P 1; Plaintiffs' 56.1 Statement ("Pl. St.") P 1, and has the kind of photos to prove it. In January 2000, plaintiff Osorio was hired by the Source as an Associate Music Editor. She was subsequently promoted to the position of Music Editor in or about 2001, Executive Editor effective March 2002, and Editor-in-Chief in October 2002. Defendant Source's 56.1 Statement PP 5, 7; Pl. St. PP 5, 7. With this last promotion, Osorio became the first female Editor-in-Chief in The Source's history. Def. Source St. P 7; Pl. St. P 7. She was paid $ 130,000 and received various other benefits (e.g., the down payment for her car, a diamond gold bracelet, and a leather jacket). Def. Source St. PP 7-8; Pl. St. PP 7-8.

Nonetheless, Osorio states that her promotion to Editor-in-Chief was artificially delayed and that she was given less authority in the Editor-in-Chief position than her male predecessors. See Deposition of Kimberly Osorio dated May 26, 2006 ("Osorio [*4] Dep.") at 143-44; id. at 354-55. She also alleges that Mays and Scott repeatedly used aspects of her gender to explain their increased involvement in editorial decision making, see id. at 185-86, 347, 353. Furthermore, she states that throughout her employment at The Source, defendant Scott sexually propositioned Osorio on multiple occasions, pressured her to discuss her sex life with him, and shared the details of his own sex life with her. Osorio Dep. at 378-79, 382, 407.

In February 2005, Osorio, who has a law school degree, met with The Source's Director of Human Resources, Julie Als, to inquire about how to make a formal complaint. Shortly thereafter, Osorio sent Als a two sentence email that stated, "Julie, [a]s the head of Human Resources, I am informing you that I have been discriminated against on the basis of my gender. This unlawful discrimination must come to an end." Osorio Dep. at 300-01; see also Ex. AA, attached to Declaration of Michelle M. Le Roux sworn to August 2, 2006. After they became aware of the email, Scott and Mays called Osorio, and Scott said, "[Y]ou don't send no fuckin' e-mail like this, you better withdraw it, withdraw it, I'm telling [*5] you, Kim, withdraw it . . . ." Osorio Dep. at 313. During the conversation, Mays told her the complaint was an "assault on my company" and that he did not discriminate. Id. at 316. Shortly, thereafter, they called her again and, when she indicated that she would not withdraw the complaint, Scott terminated her. Id. at 315. Following her termination, Scott gave an interview to the hip hop website allhiphop.com and told the reporter that Osorio had tried to extort The Source. Ex. AA attached to Affidavit of Scott T. Baken, Esq. sworn to July 20, 2006.

Co-plaintiff Joyce began working for The Source as a part-time Marketing Consultant in September 2003 and was promoted to the full-time position of Vice President of Marketing in November 2003. Def. Source St. P 22; Pl. St. P 22. As Vice President of Marketing, Joyce supervised several male employees; at various times she complained about their poor work performance and their attempts to undermine her authority, but did not accuse them of discrimination. Def. Source St. P 24; Pl. St. P 24; Deposition of Michelle Joyce dated May 24, 2006 ("Joyce Dep.") at 69-72. Another male subordinate, Alvin Childs, made three sexually suggestive [*6] comments to Joyce in December 2004 and briefly touched her buttocks while taking a photo at a Holiday Party that same month, but she did not register any complaint against him. Def. Source St. P 34; Pl. St. P 34; Joyce Dep. at 184-89.

On one afternoon in late 2004, Joyce found a group of male employees watching pornography in the mailroom. She also observed pictures of women in G-strings on a cork board and on a computer screensaver in a back area where several male employees sat. Def. Source St. PP 32-33; Pl. St. PP 32-33. Joyce complained to Julie Als about the pictures in the summer of 2004, but when the Source moved offices that November and two of the male employees put similar pictures in their cubicles, Joyce did not renew her complaint. Def. Source St. P 33; Pl. St. P 33. On January 5, 2005, David Mays directed Als to terminate Joyce, purportedly because of Joyce's poor work performance and The Source's fiscal difficulties. Def. Source St. P 42; Pl. St. P 42.

Against this factual background, the Court turns,

Case 1:07-cv-06722-RJS    Document 14-13    Filed 10/12/2007    Page 3 of 7

Page 3
2006 U.S. Dist. LEXIS 63032, *6

first, to the claims of gender discrimination made by plaintiff Osorio.[1] Specifically, Osorio alleges that she was the victim of gender discrimination with respect [*7] to: (1) one of her promotions; (2) her pay and benefits; (3) her authority as Editor-in-Chief; and (4) her termination.

> 1  All parties agree that, in the context of this case, the standards for evaluating plaintiffs' claims of discrimination, harassment, and retaliation are the same under federal, state, and local law. *See* Def. Source Mem. of Law at 3; Individual Defendants Mem. of Law at 4 n.1; Plaintiffs' Mem. of Law at 24 n.7; *see also Farias v. Instructional Sys., Inc.*, 259 F.3d 91 (2d Cir. 2001). In particular, they make no claim that some very recent amendments to New York City's anti-discrimination law are of relevance here.

As to the failure to promote claim, plaintiff has utterly failed to adduce any competent evidence giving rise to the inference that the fact that she was asked to serve as Executive Editor for several months prior to being promoted to the Editor-in-Chief position was, as she claims, a result of gender discrimination. To the contrary, the fact that Osorio rose to [*8] the position of Editor-in-Chief after less than three years with The Source strongly implies the opposite. In addition, to the extent the claim is made under New York state and local law, it is barred by the applicable three-year statute of limitations. Contrary to plaintiffs' argument, an EEOC charge does not toll the time for state law claims arising from the same events, *cf. Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975), and the "continuing violation" doctrine is not here applicable because "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation," *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993).

As to the claim of disparate pay, plaintiff must show that "she was paid less than non-members of her class for work requiring substantially the same responsibility." *Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999). Here, however, plaintiff has failed to offer competent evidence from which any reasonable trier of fact could infer that either of the two individuals to which she primarily compares herself, [*9] *i.e.*, Chris White, publisher of The Source, and Jeremy Miller, the Chief Operating Officer, had substantially similar job responsibilities.

As to Osorio's claim of diminished authority, an adverse employment action is "a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). Here, all that plaintiff complains of in this respect is that other editors were involved in making editorial decisions in which she was also involved; but she has adduced no competent evidence that this resulted in a significant diminishment of her own responsibilities.

As to Osorio's claim of unlawful termination, however, there is more evidence. For example, Osorio testified that Scott "told me he was going to fire me because he needs a man to do that position." Osorio Dep. at 185-86. She also alleges that Scott and Mays both told her that "they were hiring Antoine Clarke to be the executive editor because they needed to have a man in that top position. They needed to have someone up there that had the right perspective," *id.* [*10] at 356. While defendants have put forth responsive evidence suggesting that plaintiff was terminated because of poor work performance, plaintiff has adduced sufficient evidence to support a "rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Accordingly, in the August 22 Order, the Court, while otherwise dismissing Osorio's discrimination claims, denied summary judgment on her claim of discriminatory termination.

Turning to the discrimination claims of the co-plaintiff, Ms. Joyce alleges she was subject to gender discrimination because (1) some of her male subordinates undermined her authority; (2) males were permitted to take breaks, come to work late, and engage in other behavior in which female employees could not engage; and (3) she received a lower salary and/or fewer benefits than men with lesser job responsibilities. However, there is no evidence in the record beyond conclusory speculation to suggest that any differential treatment that male employees [*11] allegedly received was because of gender.

More generally, Joyce's allegations in this regard are

Case 1:07-cv-06722-RJS    Document 14-13    Filed 10/12/2007    Page 4 of 7

Page 4
2006 U.S. Dist. LEXIS 63032, *11

vague and speculative, often based on no more than her subjective perception of "the general tone and the feeling of the office atmosphere." *See* Joyce Dep. at 80. For example, Joyce acknowledged at her deposition that she did not know the work hours of many of the male employees whom she alleged were permitted to come to work late, *see, e.g., id.* at 86-89; she just assumed they were working shorter hours (and further assumed it was the result of gender discrimination). Similarly, although Joyce complained of unequal pay, she acknowledged that she did not know the salaries and/or job responsibilities of many of the men whose salaries formed the basis for her claim in this regard. *See, e.g.,* Joyce Dep. at 75-76, 79-80. Accordingly, in the August 22 Order, the Court granted summary judgment dismissing all of plaintiff Joyce's claims of discrimination.

Turning then to plaintiffs' hostile work environment claims premised on gender harassment, a plaintiff making such a claim must show "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions [*12] of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer. The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)* (internal citation omitted).

As to plaintiff Osorio's hostile work environment claim against defendant Scott and, derivatively, defendant The Source, [2] plaintiff Osorio alleges that over the course of a single weekend Scott called her 15 times to pressure her to go to Atlantic City with him, Osorio Dep. at 203, 206-07; told her that they would be great together, *id.* at 205, 221; commented on her underwear, *id.* at 203, 209, 376; repeatedly interrogated her about her sex life and the names of her sexual partners, *id.* at 203, 214, 378-79, 381-82; accused her of having a sexual relationship with a certain rap artist and male employees she recommended for promotion, *id.* at 203, 212, 219-20; and told her about his own sexual relationships with female [*13] employees, *id.* at 205. These allegations are more than sufficient to allow a juror to reasonably conclude that the terms and conditions of plaintiffs' employment were altered by this harassing conduct. Although defendants argue, rather improbably, that these expressions of "romantic interest" do not constitute harassment, *see*

*O'Dell v. Trans World Entm't Corp., 153 F. Supp. 2d 378 (S.D.N.Y. 2001); Grossman v. The Gap, Inc., No. 96 Civ. 7063 (RPP), 1998 U.S. Dist. LEXIS 3626 (S.D.N.Y. Mar. 25, 1998); McGraw v. Wyeth-Ayerst Lab., No. 96-5780, 1997 U.S. Dist. LEXIS 20813 (E.D. Pa. 1997),* their counsel's professed inability, expressed at oral argument, *see* transcript, 8/16/06, to distinguish between romantic interest and sexual harassment speaks more to counsel's unworldliness than to any realistic defense. Accordingly, in the August 22 Order, the Court denied The Source's and Scott's summary judgment motions with respect to Osorio's harassment claim.

> 2   As The Source's Chief Brand Officer and, along with Mays, one of its primary decision-makers, *see* Osorio Dep. at 129, Scott was likely within "that class of an employer organization's officials who may be treated as the organization's proxy," *Faragher v. City of Boca Raton, 524 U.S. 775, 789, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)*; in any event, the Source does not argue that Scott's actions should not be attributed to it for the purposes of determining liability for plaintiffs' claims.

[*14] However, because Osorio has not established that co-defendant Mays was in any way responsible for the "hostile work environment," or that the actions of Scott and other male employees should be attributed to him, the Court granted his motion for summary judgment dismissing Osorio's harassment claim against him, as well as dismissing her claim that Mays aided and abetted others' violations of state and local law premised on such harassment. [3]

> 3   Independently, the Court also granted Scott's and Mays' motions for summary judgment with respect to all of plaintiffs' claims that Scott and Mays aided and abetted various violations of state and local law because liability under those provisions is designed for corporate employees who are not otherwise subject to suit under the state and local anti-discrimination laws, such as when they do not have "any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chem. Bank, 63 N.Y.2d 541, 473 N.E.2d 11, 12, 483 N.Y.S.2d 659 (N.Y. 1984).* Here, defendants Scott and Mays may be held liable, if at all, as principals.

Case 1:07-cv-06722-RJS    Document 14-13    Filed 10/12/2007    Page 5 of 7

Page 5
2006 U.S. Dist. LEXIS 63032, *14

[*15] As to plaintiff Joyce's claims of hostile work environment, her allegations consist of (a) her having once observed some lewd pictures posted in a back portion of the office and on a computer screen saver, (b) an isolated incident in which she saw male employees watching pornography in the mailroom, (c) three offensive comments allegedly made to her by co-employee Alvin Childs and his touching of her buttocks at the Christmas party, [4] and (d) what she was told by others regarding sexual harassment allegedly experienced by other female employees at the Source.

> 4 The three comments are as follows: (1) While walking behind her, he commented, "Damn, you look good in those jeans"; (2) He came into her office while she had a lollipop in her mouth and said, "Damn, I'll give you something to suck on," and (3) When she asked him for a candy cane, he replied, "I just gave it to [another female employee] but I told her she had to lick it until the white came out." However offensive some might find these comments, they were too limited in number to constitute a hostile work environment. Further, although plaintiff need not make a complaint to prevail on a hostile work environment claim, the fact that plaintiff never complained, or even asked Childs to stop, suggests that she did not "subjectively perceive that environment to be abusive." See, e.g., Alfano, 294 F.3d at 374.

[*16] As to the incidents involving Alvin Childs, they were "few in number and occurred over a short period of time." See Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987). Further, "[w]here an employee is the victim of sexual harassment . . . by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action," Petrosino v. Bell Atl., 385 F.3d 210, 225 (2d Cir. 2004), and Joyce never complained about Childs' behavior. As to the other allegations, plaintiffs have failed to adduce evidence sufficient to support a juror in reasonably finding that the pictures, the offensive screen saver, and one isolated incident of men in a mailroom watching a pornographic movie were objectionable enough and pervasive enough to create a hostile work environment, especially given that the environment at The Source -- a magazine that itself contained numerous suggestive photographs -- was hardly chaste. While a hostile work environment is never acceptable, the Court must consider "the social context" in which [*17] the behavior occurs. See Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81-82, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998); see also Harris v. Forklift Sys., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). Finally, although sexual harassment of other women can be considered in evaluating a plaintiff's "hostile work environment" claim, Joyce, whose allegations in this regard, as in others, are typically vague, has not here adduced evidence sufficient to enable a juror to reasonably find that this harassment "adversely affected the terms and conditions of her own employment." See, e.g., Leibovitz v. New York City Transit Auth., 252 F.3d 179, 189 (2d Cir. 2001). Accordingly, in the August 22 Order, the Court granted summary judgment dismissing all of Joyce's harassment claims.

Turning now to the plaintiffs' claims of retaliatory discharge, a plaintiff making such a claim must show "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998). In respect [*18] of her retaliation claims, Osorio alleges that, soon after she engaged in a conversation with the Head of Human Resources about the discrimination she felt she was experiencing and followed through with a short email, she was told by Scott and Mays that she should withdraw the complaint; when she did not, she was fired. Although defendants make some strong arguments that this was all a "set up" by Osorio in anticipation of her being fired for poor performance, it is up to a jury to resolve these conflicting interpretations. See Galdieri-Ambrosini v. National Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998). Accordingly, in its August 22 Order, the Court denied defendants' motion for summary judgment with respect to Osorio's retaliation claims.

As to Joyce, however, her only complaints were as to her subordinates' insubordination, and she never complained that their insubordination was in any way prompted by gender discrimination. See, e.g., Joyce Dep. at 52-53, 59-60, 62-63, 65-66, 69, 71-72. Furthermore, she never complained about her present claims of pay disparities. See id. at 85. Accordingly, she did not engage in protected activity that would serve [*19] as a predicate

for a retaliation claim. [5] Accordingly, the Court granted the defendants summary judgment on Joyce's retaliation claim.

> 5 The only complaint that arguably amounts to protected activity is an isolated complaint Joyce made in mid-2004 to Julie Als about some posted pictures Joyce found offensive. Joyce Dep. at 130. Joyce was not terminated until January 2005, and to establish causation based on temporal proximity alone the "temporal proximity must be very close." *Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)* (internal quotation marks omitted) (citing cases in which three and four month lapses were insufficient to establish requisite temporal proximity). Further, the record here is devoid of any evidence that Mays and Scott knew of the complaint. *See id. at 273* (noting "no indication that [the plaintiff's supervisor] even knew about the right-to-sue letter when she proposed transferring respondent"). Accordingly, the evidence is not adequate to establish a causal connection sufficient to go to a jury.

[*20] As to the claims for the intentional infliction of emotional distress under New York law, a plaintiff making such a claim must establish "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996)*. New York courts have set a very high standard for the "extreme and outrageous conduct" element, requiring conduct to "so transcend[] the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Freihofer v. Hearst Corp., 65 N.Y.2d 135, 480 N.E.2d 349, 355, 490 N.Y.S.2d 735 (N.Y. 1985)*. Even when the admissible evidence (as opposed to plaintiffs' inadmissible characterizations) is construed most favorably to plaintiffs, none of the conduct here alleged is so outrageous that it can satisfy this demanding standard. Further, while plaintiffs may have found some of the conduct offensive, there is no evidence in the record that they suffered "severe emotional distress" as a result. Accordingly, in the August 22 Order, the Court granted summary judgment to defendants dismissing plaintiffs' [*21] claims of intentional infliction of emotional distress.

Finally, as to plaintiff Osorio's claim of defamation against Scott and The Source for Scott's telling a hip hop website that Osorio had tried to extort the Source, a plaintiff bringing such a claim needs to establish that there was "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert v. Loksen, 239 F.3d 256, 265-66 (2d Cir. 2001)*.

As to the first and second requirements, although defendants argue that Scott's statement was an expression of opinion, not fact, his statement that "basically she tried to extort us to be like if you keep me on, I'll -- if you promise not to fire me or get some time [sic] of contract, then I'll take the [discrimination] complaint away" is filled with facts "capable of being proven true or false." *See Brian v. Richardson, 87 N.Y.2d 46, 660 N.E.2d 1126, 1129, 637 N.Y.S.2d 347 (N.Y. 1995)*.

As to the third requirement, defendants argue that [*22] they did not publish the comment because it was contained in a newspaper article. However, publication is a "term of art," signifying communication of the defamatory statement to a third party, *see, e.g., Ostrowe v. Lee, 256 N.Y. 36, 175 N.E. 505, 505 (N.Y. 1931)*, and the statement's inclusion in a newspaper article does not shield it from a charge of defamation. *See Hoffman v. Landers, 146 A.D.2d 744, 537 N.Y.S.2d 228, 231 (App. Div. 1989)*.

Although the fourth requirement is not challenged, as to the fifth requirement, defendants argue that Scott did not act with the requisite intent, *i.e.*, malice, [6] but a disputed question of fact exists as to whether Scott knew the statement was false or acted with reckless disregard of its falsity. *See New York Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)*.

> 6 Plaintiffs do not here dispute that Osorio is a public figure.

Finally, while defendants do not dispute the sixth requirement for purposes of this motion, they argue as to the seventh requirement [*23] that the communication is privileged under New York law because of a "common interest or duty" between Scott and the reporter sufficient to establish a privilege. *See Hoffman, 537 N.Y.S.2d at 231*. However, they have adduced no competent evidence

to support this assertion.

Accordingly, in its August 22 Order, the Court denied Scott's motion for summary judgment on this claim. However, because plaintiff had failed to establish that Scott's comment should be attributed to The Source, the Court granted its motion for summary judgment on Osorio's defamation claim. [7]

---

7  In addition to seeking summary judgment dismissing plaintiffs' various claims, defendants also request dismissal of plaintiffs' demand for punitive damages under Title VII. Punitive damages are limited to "cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Farias v. Instructional Sys.*, 259 F.3d 91, 101 (2d Cir. 2001). Here, as to Osorio's surviving claims, there remain disputed issues of fact with respect to whether defendants acted with reckless indifference to plaintiff's federally protected rights. Accordingly, plaintiff Osorio remains entitled to seek punitive damages on a reckless indifference theory.

---

[*24] Accordingly, for the foregoing reasons, the Court reconfirms its August 22 Order in all respects. (Concomitantly, the Clerk of the Court is hereby directed to close docket numbers 27 and 40.) As a result, the following claims remain to be tried: as to count 1, plaintiff Osorio's claims of discriminatory discharge and "hostile work environment" against The Source; as to count 2, Osorio's claim of retaliatory discharge against The Source; as to counts 3 and 6, Osorio's claim of discriminatory discharge against all defendants and her claim of "hostile work environment" against The Source and Scott; as to counts 4 and 7, Osorio's claim of retaliatory discharge against all defendants; and as to count 9, Osorio's claim of defamation against Scott. All other claims are dismissed with prejudice. Finally, the Court reconfirms that the trial of the remaining claims will commence, without fail, at 9 a.m. on October 10, 2006.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York

September 1, 2006