LEXSEE 2003 US DIST LEXIS 3878


Cited
As of: Oct 11, 2007

THERESA A. RICHETTS, Plaintiff, - AGAINST - JOHN ASHCROFT, et al., Defendants.

00 Civ. 1557 (JGK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 3878

March 7, 2003, Decided
March 17, 2003, Filed

**DISPOSITION:** [*1] Defendants' motion for summary judgment dismissing complaint granted.

**COUNSEL:** For Theresa A Richetts, PLAINTIFF: James C Jones, New York, NY USA.

For Janet Reno, United States Department of Justice, Federal Bureau of Prisons, New York Metropolitan Correctional Center, DEFENDANTS: Ross E Morrison, Mary Jo White, US Attorney, SDNY, New York, NY USA.

**JUDGES:** John G. Koeltl, United States District Judge.

**OPINION BY:** John G. Koeltl

**OPINION**

**OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

Plaintiff Theresa A. Richetts ("Richetts") brings this action against United States Attorney General John Ashcroft ("Ashcroft"), the United States Department of Justice ("DOJ"), and her employer, the Federal Bureau of Prisons ("BOP"), which employs her at the New York Metropolitan Correctional Center ("MCC") (collectively, "defendants"). The plaintiff, who is African American, alleges that the defendants' employee evaluation system favors white men for promotions, salary increases, and other benefits over similarly qualified women and racial minorities, and that the defendants used this system to deny the plaintiff, on the basis of her race and sex, the job performance ratings and promotion she deserved. [*2] The plaintiff alleges that these acts violate *42 U.S.C. §§ 1981 and 1983*, Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.* ("Title VII"), and the *Fifth and Fourteenth Amendments to the United States Constitution*. The plaintiff seeks promotion to the position she was allegedly denied, back pay and benefits, and damages for emotional pain and suffering.

The defendants now move for summary judgment pursuant to *Fed.R.Civ.P. 56*.

I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*; see

Case 1:07-cv-06722-RJS   Document 14-15   Filed 10/12/2007   Page 2 of 8

Page 2
2003 U.S. Dist. LEXIS 3878, *2

also *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact [*3] to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The substantive law governing the case will determine those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962)); see also [*4] *Gallo*, 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party-- Ms. Richetts in this case-- to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. See *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

II.

The following facts are undisputed except where specifically noted. Defendant MCC is a federal detention facility in New York City for persons awaiting trial and sentencing. The other defendants form a chain of command over the MCC: Attorney General Ashcroft directs the DOJ, which includes the BOP, which in turn oversees the MCC. The plaintiff began working for the BOP as a corrections officer at the MCC in 1986.

(Compl. P 6; Defs.' Rule 56.1 St. P 1.) In 1990, the plaintiff became a supervisor in the Inmate Systems Management ("ISM") department, the position she currently holds. (Pl.'s Aff. Opp'n Summ. J. ("Pl.'s [*5] Aff.") P 3; Defs.' Rule 56.1 St. P 2.) The ISM department handles inmate admissions, discharges, mail, records, and sentence computation. (Defs.' Rule 56.1 St. P 3.) In 1998-- a year of importance in this action-- the ISM department employed approximately twenty four people, of whom five were supervisors, one was the Assistant Manager, [1] and one was the Manager. (Defs.' Rule 56.1 St. PP 4, 5.)

   [1] Pursuant to a BOP national directive, the Assistant Manager position was eliminated in October 2000. (Defs.' Mem. Supp. Summ. J. at 5 n.3.)

The defendants have a policy providing for job performance reviews of most BOP employees at the MCC. On a quarterly basis, an employee's direct supervisor rates the employee on six job elements, [2] rating each element "unsatisfactory," "minimally satisfactory," "fully satisfactory," "exceeds," or "outstanding." (Pl.'s Rule 56.1 St. P 3; Defs.' Rule 56.1 St. P 7.) On an annual basis, the rater assigns the employee ratings for each of the six elements and for the year. The rater's [*6] supervisor then reviews that assessment and assigns the employee an overall rating for the employee's work that year. (Pl.'s Rule 56.1 St. P 3; Defs.' Rule 56.1 St. PP 8-10.) If the overall annual rating is "outstanding," then the employee is eligible for a Quality Step Increase ("QSI"), which advances the employee's salary to the next government pay step. An eligible employee will receive a QSI if his or her supervisor nominates the employee and the Warden of the MCC then decides to award the pay increase. (Pl.'s Mem. Opp'n Summ. J. at 6; Defs.' Rule 56.1 St. PP 26-29.) According to the plaintiff, QSIs are the "gold standard upon which all MCC promotions are based" because receiving one or more QSIs adds a substantial number of points to an employee's application for promotion. (Pl.'s Mem. Opp'n Summ. J. at 7.) The plaintiff received a QSI in 1996 and in 2001. (Pl.'s Aff. P 15; Defs.' Rule 56.1 St. P 31.)

   [2] The plaintiff's elements are: "Plans, Monitors, and Evaluates," "Implements Operations or Programs," "Maintains and Provides Expertise," "Communication," "Supervises Staff and

Inmates," and "Maintains Security of Institution." (Declaration of James C. Jones dated May 17, 2002, Exs. 6-8.)

[*7] In March 1998, the plaintiff was suspended from work for one day for allowing certain inmates who should have been kept apart to be placed in the same holding cell. (Pl.'s Aff. P 30; Declaration of James C. Jones dated May 17, 2002 ("Jones Decl."), Ex. 10.)

In April or May 1998, the plaintiff received her annual performance evaluation for the April 1, 1997 - March 31, 1998 evaluation year ("1998 evaluation"). The plaintiff received four "exceeds" and two "outstanding" ratings, with an overall "exceeds" performance rating. (Jones Decl. Ex. 9; Defs.' Rule 56.1 St. PP 14, 15.) Two of the plaintiff's fellow supervisors-- both white men-- received overall "outstanding" ratings in their 1998 evaluations. (Jones Decl. Exs. 7, 8; Defs.' Rule 56.1 St. P 16.) The plaintiff alleges that she was as well or better qualified than her white male fellow supervisors, and that her lower overall rating was based on racial and sexual discrimination. (Pl.'s Aff. P 25.)

On July 1, 1998, the plaintiff contacted an Equal Employment Opportunity ("EEO") counselor at the MCC. (Jones Decl. Ex. 15; Defs.' Rule 56.1 St. P 21.) On August 28, 1998, the plaintiff filed an administrative complaint of racial and [*8] sexual discrimination based on her rating of "exceeds" compared to the fact that two white male supervisors had received ratings of "outstanding." (Pl.'s Aff. P 6; Defs.' Rule 56.1 St. P 22.)

In October 1998, the plaintiff applied for a promotion to the then-existing Assistant Manager position in the ISM department. (Pl.'s Aff. P 31; Defs.' Rule 56.1 St. P 35.) The BOP's Northeast Regional Office in Philadelphia, Pennsylvania handled the review and selection of applicants. (Pl.'s Aff. P 32; Defs.' Rule 56.1 St. PP 34-36.) The plaintiff was denied the promotion, and apparently alleges that this denial was based on the fact that she received an "exceeds" rather than an "outstanding" rating, the defendants' alleged discriminatory practices, or some combination of both. (Pl.'s Aff. PP 32-36.)

In February 1999, the plaintiff requested that the EEO grant her complaint class certification. (Pl.'s Aff. P 7.) On November 16, 1999, the EEO denied that request but notified the plaintiff of her right to sue. [3] (Jones Decl. Ex. 2 at 2.) The plaintiff filed this action on February 29, 2000.

3 In denying the plaintiff's request for class certification, the EEO nonetheless stated that it would process Ms. Richetts's individual complaint. (Pl.'s Aff. Ex. 2 at 2.) The parties have advised the Court that no further administrative actions were taken and the defendants do not contend that the plaintiff failed to exhaust her administrative remedies by not pursuing the possibility that the EEO would rule on the plaintiff's individual complaint.

[*9] III.

The defendants first argue that they are entitled to summary judgment because the plaintiff's claims are time-barred. Although the plaintiff brings her complaint under several federal statutory and constitutional provisions, Title VII is the sole remedy for federal employees asserting employment discrimination claims. See *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834, 48 L. Ed. 2d 402, 96 S. Ct. 1961 (1976); *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996). Employees must exhaust their administrative remedies in a timely fashion prior to filing a complaint in federal court. See *Brown*, 425 U.S. at 832; *Briones*, 101 F.3d at 289. Initially, this means contacting an EEO counselor within 45 days of an allegedly discriminatory act. 29 C.F.R. § 1614.105(a)(1); see also *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001).

In this case, Ms. Richetts contacted an EEO counselor on July 1, 1998 claiming that the ratings in her 1998 evaluation were discriminatory. The plaintiff received her evaluation on April 20, 1998, which she acknowledged by signing the evaluation [*10] and writing: "Do not agree with the way the rating has been done in the department recently." (Jones Decl. Ex. 9.) On another copy of the 1998 evaluation submitted to the Court, an additional (and presumably subsequent) handwritten note of the plaintiff's reads: "5/9/98 original date." (Decl. of Ross E. Morrison Supp. Summ. J. ("Morrison Decl.") Ex. E.) It makes no difference whether the plaintiff actually received the allegedly discriminatory evaluation on April 20 or May 9 because both dates fall outside the 45 day window for contacting an EEO counselor and therefore the plaintiff's complaint with respect to her 1998 evaluation is time-barred.

The plaintiff adds, however, two more dates to the

Case 1:07-cv-06722-RJS    Document 14-15    Filed 10/12/2007    Page 4 of 8

Page 4
2003 U.S. Dist. LEXIS 3878, *10

mix, claiming that it "was around May 17, 1998, when [she] noticed the bogus evaluations, while going through staff folders[, and that it] was the early part of June 1998 when [she] discovered that the white employees received pay raises off these evaluations." (Jones Decl. Ex. 15.) The plaintiff's own submissions belie this claim. The plaintiff wrote a letter dated May 7, 1998 to "All Concerned" (ostensibly, her coworkers) outlining the defendants' allegedly discriminatory practices. [*11] (Jones Decl. Ex. 4.) In the letter, the plaintiff asserts that "Caucasians are getting the pay raises and outstanding evaluations with no real justification. Example: My evaluation in comparison to two Caucasian supervisors show [sic] that the statements made, in reference to there [sic] work performance, don't equal the ratings that they were given." (Jones Decl. Ex. 4 at 1.) This letter plainly undercuts any claim of the plaintiff's that she became aware of the defendants' alleged discrimination after May 7, 1998.

In employment discrimination actions, the statute of limitations begins to run at the time a plaintiff "knew or had reason to know of the injury serving as the basis for his claim." *Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999)* (citations omitted). The injury complained of here is the allegedly discriminatory evaluation, which the submissions show the plaintiff became aware of no later than May 7, 1998. Whatever additional evidence of alleged discrimination the plaintiff may have discovered by reviewing her coworkers' evaluations is irrelevant: a statute of limitations begins to accrue when an employee becomes aware of an allegedly discriminatory [*12] adverse employment action. See *Delaware State College v. Ricks, 449 U.S. 250, 258, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980)* ("the only alleged discrimination occurred-- and the filing limitations period therefore commenced-- at the time the [adverse employment decision] was made and communicated to [the plaintiff]."); *Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000)* ("It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct."); *Burnett v. ESL Federal Credit Union, 198 F. Supp. 2d 307, 314 (W.D.N.Y. 2002)* ("Because plaintiff knew about her 1996 performance appraisal score in early 1997, when it was issued to her, any discrimination claim [the plaintiff] had would accrue at that time.") (footnote and citations omitted).

Because the plaintiff first contacted an EEO counselor more than 45 days after she became aware of her 1998 evaluation, she failed to exhaust her administrative remedies in a timely fashion. The plaintiff's claim that the defendants discriminated on the basis of race and sex [*13] in evaluating her in 1998 is therefore time-barred. [4]

> 4 The plaintiff does not allege that, pursuant to *29 C.F.R. § 1614.105(a)(2)*, she was unaware of the 45-day timeliness requirement. Such a claim could not be made in view of the plaintiff's previous dealings with the EEO regarding the defendants' allegedly discriminatory practices. (Deposition of Theresa A. Richetts dated Aug. 16, 2001 ("Richetts Dep.") at 73-75.)

The plaintiff's claim that the defendants discriminated against her by denying her a promotion to Assistant Manager is also time-barred. The defendant became aware of the denial on October 31, 1998 at the latest. (See Deposition of Theresa A. Richetts dated Aug. 16, 2001 ("Richetts Dep.") at 108-109.) In October 1998, another person became Assistant Manager of the ISM department. (Declaration of Michael Dellamarco dated March 11, 2002 at P 2.) The plaintiff first contacted an EEO counselor regarding this matter on January 11, 1999, 72 days later. (See Richetts [*14] Dep. at 113-114; Declaration of Ross Morrison dated March 11, 2002, Ex. D.) Because the plaintiff failed to contact an EEO Counselor within 45 days of the date she became aware of her failure to be promoted to the position of Assistant Manager, that claim is also time-barred.

In response to the untimeliness of her claims, Ms. Richetts argues that the EEO's willingness to proceed with her complaints should waive the timeliness requirement. (Pl.'s Mem. Opp'n Summ. J. at 10.) However, while the EEO raised the issue of timeliness with the plaintiff, there is no evidence that the EEO waived the plaintiff's failure to consult an EEO Counselor in a timely fashion. See Jones Decl. Exs. 14-15. The right to sue letter provided to the plaintiff contains no statement that the EEO found the plaintiff's complaint timely. The Court of Appeals for the Second Circuit has concluded that "government 'agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint.'" *Belgrave v. Pena, 254 F.3d 384, 387 (2d Cir. 2001)* (quoting *Bowden v. United States, 323 U.S. App. D.C. 164, 106*

*F.3d 433, 438 (D.C. Cir. 1997)).* [*15] [5] Because the plaintiff has offered no evidence showing that the EEO made a specific finding of timeliness, her argument must fail. See *Belgrave, 254 F.3d at 387.* [6]

---

[5] The Court of Appeals also instructs that "an agency waives a timeliness objection by making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness." *Bruce v. United States Department of Justice,* 314 F.3d 71, 74 (2d Cir. 2002) (per curiam). Here, the government neither expressly found the plaintiff's complaint timely nor was faced with an EEO finding of timeliness from which to appeal. (Letter of James C. Jones dated February 7, 2003; Letter of Ross E. Morrison dated February 7, 2003.)

[6] The plaintiff has failed to show that the EEO waived her failure to consult an EEO Counselor within 45 days of the time when she became aware of her failure to be promoted to the position of Assistant Manager, and thus that claim was time-barred. Moreover, the defendants point out, and the plaintiff does not dispute, that the plaintiff failed to take any of the other required steps to exhaust her administrative remedies with respect to her promotion, such as filing an administrative claim of discrimination. See *29 C.F.R. § 1614.106.* Thus any claim concerning the plaintiff's failure to be promoted to the Assistant Manager position is also time-barred by the plaintiff's failure to exhaust her administrative remedies. See, e.g., *Brown, 425 U.S. at 832; Briones, 101 F.3d at 289.*

---

To the extent that the plaintiff's papers could be read to include challenges to her performance evaluation in 1997, the plaintiff also failed to pursue her administrative remedies. (Richetts Dep. at 66-81.) Similarly, there is no evidence that the plaintiff exhausted any administrative remedies with respect to any other performance evaluations, and the plaintiff attaches only the November 16, 1999 right to sue letter with her complaint.

[*16] The plaintiff has failed to present evidence raising a genuine issue of material fact that she exhausted her administrative remedies in a timely fashion. Because the plaintiff's claims are time-barred, the defendants' motion for summary judgment dismissing the complaint is granted.

IV.

The defendants also argue that they are entitled to summary judgment because the plaintiff has failed to produce evidence of racial or sexual discrimination.

A plaintiff in a Title VII action carries the initial burden of establishing a prima facie case of discrimination. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)); *Zimmermann v. Associates First Capital Corp.,* 251 F.3d 376, 380 (2d Cir. 2001). The burden of establishing a prima facie case is minimal. See [*17] *Zimmermann,* 251 F.3d at 381; *Collins v. New York City Transit Authority,* 305 F.3d 113, 118 (2d Cir. 2002). To establish a prima facie case of discrimination, a plaintiff must show that she (1) is a member of a protected class, (2) was qualified to hold her job, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. See *Collins,* 305 F.3d at 118 (citing *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 95 (2d Cir. 1999)); *Chambers,* 43 F.3d at 37.

If a plaintiff successfully puts forth a prima facie case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse action. *Burdine,* 450 U.S. at 252-53; see also *James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir. 2000). If the defendant articulates a legitimate reason for the decision, then the presumption of discrimination drops out and the plaintiff has an opportunity to put forth specific evidence demonstrating that the proffered reason was a mere pretext for discrimination. See *Burdine,* 450 U.S. at 252-53; [*18] *James,* 233 F.3d at 154. In determining whether the plaintiff has met this burden, a court is to use a "case by case" approach that evaluates "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case.'" *James,* 233 F.3d at 156 (quoting *Reeves,* 530 U.S. at 148-49). Although summary

judgment must be granted with caution in Title VII actions "where intent is genuinely in issue, ... summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers, 43 F.3d at 40.* See also Alleyne v. Four Seasons Hotel - New York, 2001 U.S. Dist. LEXIS 1503, No. 99 CIV. 3432 (JGK), 2001 WL 135770, at *10 (S.D.N.Y. Feb. 15, 2001), aff'd, *25 Fed. Appx. 74 (2d Cir. 2002)* (table).

A.

In this action, the plaintiff has failed to establish a prima facie case of discrimination with regard to her 1998 evaluation. The parties do not dispute that the plaintiff is a member of a protected class or that she is qualified to be a supervisor in the [*19] ISM department.

While the defendants dispute whether Ms. Richetts's 1998 evaluation constitutes an adverse employment action, there is sufficient evidence that it can construed as such. The Court of Appeals has "defined adverse employment action broadly to include 'discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001)* (quoting *Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).* The adverse action "'might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.'" *Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)* (quoting *Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)).*

Here, the defendants argue that Ms. Richetts's 1998 evaluation cannot be considered adverse because it assigned her the second-highest possible rating. But in order to be eligible for [*20] a QSI and its related salary increase and other perquisites, an MCC employee allegedly must receive the highest possible rating on the annual evaluation. The Court could not disregard an evaluation with such consequences and conclude that it was not sufficient as an element of the minimal prima facie case.

However, the plaintiff has failed to show that her 1998 evaluation was conducted under circumstances giving rise to an inference of discrimination. The Court of Appeals has observed that "there is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision." *Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996).* A variety of circumstances can give rise to such an inference, including "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus ..., preferential treatment given to employees outside the protected class ..., [or] the timing or sequence of events leading to the plaintiff's termination." *Id.* (citations omitted); see also *Gregory v. Daly, 243 F.3d 687, 695, 697 (2d Cir. 2001).*

Here, the plaintiff [*21] cites a portion of the MCC Warden's deposition testimony as allegedly direct evidence of racial and ethnic bias. The Warden stated at his deposition that "the African American component of the staff was over-represented in the recognition and awards that we gave. The most under-represented happened to be the white males." (Deposition of Dennis Hasty dated August 17, 2001 ("Hasty Dep.") at 84.) Considered on its face and in the context of the rest of the Warden's statements, the quoted testimony is insufficient to create an inference of discrimination. The statement does not reflect any effort to penalize any class of people and states that there is in fact no evidence of discrimination against persons of the plaintiff's race and sex. The plaintiff attempts to use this statement for the exact opposite of what it says. When further questioned about the apparently disproportionate number of African American employees rewarded for their work, the Warden commented that the disproportion was "not demonstrably so much that it was producing any problems within the institution, morale problems or what have you ... It's very important to base recognition on and what we compensate employees for [*22] is performance. That's what we compensate them for, not their sex or the color of their skin or what have you." (Hasty Dep. at 85, 88.) Whatever over-representation of African American employees may exist at the MCC in terms of job rewards, it would only serve to undermine the plaintiff's claim that the defendants' employee evaluation system is racially discriminatory.

The plaintiff also contends that the discretionary nature of the evaluation system allows for discriminatory animus to be injected into the rating process, and that this in fact occurred. In support of this contention, the plaintiff asserts that the ratings in her 1998 evaluation

Case 1:07-cv-06722-RJS    Document 14-15    Filed 10/12/2007    Page 7 of 8

Page 7
2003 U.S. Dist. LEXIS 3878, *22

that were lower than those of two white male coworkers were based on similar supporting remarks. Such similarities in discretionary job performance reviews are not by themselves sufficient, however, to reasonably suggest a discriminatory motive. The plaintiff has failed to adduce evidence that her performance was sufficiently similar to that of her coworkers that she should have received the same rating. Indeed, the only objective indication of a difference is that the plaintiff had been disciplined in the evaluation year while the other employees [*23] had not. The Court of Appeals has stated that when an adverse employment action "'is reasonably attributable to an honest even though partially subjective evaluation of ... qualifications, no inference of discrimination can be drawn.'" *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001) (quoting *Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980)). The plaintiff's and her coworkers' supporting remarks are not identical, and to conclude that an inference of discrimination can reasonably be drawn from their similarities would undercut the discretion that employers sensibly possess to evaluate those who work for them.

Having failed to show that her 1998 evaluation raises an inference of racial or sexual discrimination, the plaintiff has failed to present a prima facie case of discrimination and the defendants are entitled to summary judgment on this basis.

Even if the plaintiff had met this initial burden, the defendants would still be entitled to summary judgment because they have articulated legitimate, nondiscriminatory reasons explaining the plaintiff's 1998 evaluation.

The defendants offer two main explanations for the fact [*24] that the plaintiff received a lower overall rating than two of her white male coworkers. First, the defendants cite the plaintiff's one-day suspension in March 1998 while noting that her coworkers were not disciplined. Second, the defendants highlight the rating employee's belief that the coworkers worked especially well that year and his receipt of numerous compliments on their job performance from outside law enforcement agencies. The rating employee did not receive such compliments regarding the plaintiff's work. (Declaration of Robert Mayer dated March 11, 2002 at P 13.)

The plaintiff attempts to rebut these proffered reasons by repeating her conclusory assertions of discrimination and alleging that the MCC's white male employees maintained a telephonic "buddy system" by which friendly calls were placed to the MCC management on behalf of white men being considered for promotions. (Pl.'s Aff P 26.) However, the plaintiff's conclusory allegations of discrimination and her own subjective evaluations that she was better qualified than her coworkers are insufficient to demonstrate discrimination. See, e.g., *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [*25] ("[A] plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (same).

Given the totality of the circumstances, no reasonable trier of fact could conclude that the plaintiff's 1998 evaluation was the product of racial or sexual animus. See *James*, 233 F.3d at 156 (dismissing age discrimination claim where evidence was insufficient to permit reasonable trier of fact to find discrimination); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 49-50 (2d Cir. 2000) (same result as to Title VII claim); *Cooney v. Consolidated Edison*, 220 F. Supp. 2d 241, 250 (S.D.N.Y. 2002) (same result as to *Americans with Disabilities Act 2002)* claim); *Alleyne*, 2001 U.S. Dist. LEXIS 1503, 2001 WL 135770, at *13 (same result as to Title VII claim). The plaintiff has offered no evidence from which a reasonable jury could conclude that she was the victim of discrimination in connection with her 1998 evaluation. Accordingly, the defendants are entitled to summary judgment on this claim.

B.

The plaintiff has also failed to establish a prima facie case of [*26] discrimination with regard to the denial of her application to be promoted to the position of Assistant Manager at the ISM department. To make out a prima facie case of discrimination in a failure-to-promote claim, a plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job, and (4) the denial occurred under circumstances giving rise to an inference of discrimination on a basis forbidden by Title VII." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802.)). Ms. Richetts's claim again satisfies the first three elements [7] but fails on the fourth.

7 As to the second element, the parties do not

suggest that the plaintiff was unqualified for the promotion.

The BOP regional office in Philadelphia processed the applications for the Assistant Manager position in the ISM department. The plaintiff submitted her application and was given, [*27] due to past accomplishments and awards, the maximum number of extra points possible, such that any additional QSI would not have given her any additional points. (Defs.' Rule 56.1 St. P 37.) The plaintiff's one-day suspension in March 1998 was noted on her application. The regional office did not contact anyone at the MCC regarding the plaintiff's application, and ultimately did not select the plaintiff for the "best qualified" finalists list. (Pl.'s Aff. PP 31-32; Declaration of Anna Scarpone dated March 11, 2002 at PP 25-28.) The plaintiff has failed to show that the decision makers in Philadelphia were biased in any way or that any individuals at the MCC interfered with the screening in any way.

The only argument the plaintiff makes as to why denial of her promotion application might have been discriminatory is her claim that an African American male coworker had sometime earlier not been disciplined for an infraction similar to the one the plaintiff committed in March 1998. (Pl.'s Aff. PP 33-35.) However, the comparison is plainly insufficient to warrant the conclusion that the plaintiff's discipline was discriminatory, and indeed it undercuts the plaintiff's claim that there [*28] could have been any racially discriminatory reason. The Warden has discretion to determine the appropriate discipline, if any, for employee infractions. The plaintiff has failed to provide any adequate, concrete facts upon which a reasonable trier of fact could conclude that the infractions by the plaintiff and her coworker were so similar as to require either punishment for the coworker or exoneration for the plaintiff. The plaintiff has also failed to demonstrate that noting the infraction on her application was a substantial or motivating factor in denying her promotion application.

Having failed to show that her promotion denial raises an inference of racial or sexual discrimination, the plaintiff has failed to present a prima facie case of discrimination.

Summary judgment in the defendants' favor would still be appropriate even if the plaintiff had made a prima facie case because the defendants have shown a non-discriminatory basis for the denial: namely, the actions of another office removed from the plaintiff's immediate supervisors that conducted a neutral evaluation of available candidates. The plaintiff has failed to adduce any evidence that this legitimate non-discriminatory [*29] basis for the decision was in fact a pretext for discrimination. Given the plaintiff's one-day suspension and the neutral review by a different office, no reasonable jury could find that the plaintiff has presented sufficient evidence that the failure to promote her to the position of Assistant Manager was the result of any racial or sexual discrimination. The defendants are therefore entitled to summary judgment on this claim.

CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment dismissing the complaint is granted. The Court has carefully considered all the arguments presented by the parties. Any argument not expressly discussed above is either moot or without merit. The Clerk of the Court is directed to enter judgment dismissing the complaint and closing the case.

**SO ORDERED.**

**Dated: March 7, 2003**

**John G. Koeltl**

**United States District Judge**