Westlaw.

Not Reported in F.Supp.2d                                                                                             Page 1

Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Stamelman v. Fleishman-Hillard, Inc.
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Peter STAMELMAN, Plaintiff,
v.
FLEISHMAN-HILLARD, INC., Defendant.
**No. 02 Civ.8318 SAS.**

July 31, 2003.

Employee, an entertainment marketing executive, brought action for breach of contract and fraudulent inducement against company for which he had consulted and which had recruited him away from sister agency, then terminated him without cause less than one year later. Defendant moved to dismiss complaint for failure to state claim and to plead fraud with particularity. The District Court, Scheindlin, J., held that: (1) employee could not rely on oral representations and, without making allegations sufficient to overcome employment at will presumption, failed to state breach of employment contract claim; (2) employee failed to plead fraud with sufficient particularity, insofar as he did not allege minimal factual basis necessary to sufficiently plead scienter under either motive and opportunity or conscious behavior approach; and (3) employee sufficiently pled other elements of fraudulent inducement and would be granted leave to amend complaint to replead claims.

Motion granted.
West Headnotes
**[1] Corporations 101 €⇒294**

101 Corporations
   101X Officers and Agents
      101X(A) Election or Appointment, Qualification, and Tenure
         101k294 k. Removal. Most Cited Cases
Entertainment marketing executive who was terminated without cause could not rely on oral representations allegedly made during his recruitment by general manager and senior vice president in support of claim for breach of employment contract; representations were not mentioned in letter confirming details of offer, which did not contain fixed term of employment or any language limiting employer's right to terminate or modify terms of executive's employment, stated executive's title, start date, salary and benefits, and was verbally accepted without objection.

**[2] Corporations 101 €⇒319(7)**

101 Corporations
   101X Officers and Agents
      101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
         101k319 Actions Between Corporation and Its Officers or Agents
            101k319(7) k. Evidence. Most Cited Cases
Under New York law, entertainment marketing executive claiming breach of employment contract failed to overcome presumption of at-will employment by pleading that he was orally assured he would be employed for at least one year and that he terminated his previous employment in reliance on the assurance; executive did not allege that prospective employer had express written policy limiting right of termination which was incorporated into employment contract.

**[3] Fraud 184 €⇒32**

184 Fraud
   184II Actions
      184II(A) Rights of Action and Defenses
         184k32 k. Effect of Existence of Remedy by Action on Contract. Most Cited Cases
Under New York law, at-will employee who alleged representations that were collateral and extraneous to employment agreement could pursue action for fraudulent inducement.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**[4] Fraud 184 ⚖43**

184 Fraud
    184II Actions
        184II(C) Pleading
            184k43 k. Statements, Acts, or Conduct Constituting Fraud. Most Cited Cases
New York entertainment marketing executive seeking to plead claim of fraudulent inducement sufficiently alleged representations of existing fact by alleging that, at time prospective employer made future promises, it "knew them to be false." Fed.Rules Civ.Proc. Rule 9(b), 28 U.S.C.A.

**[5] Fraud 184 ⚖42**

184 Fraud
    184II Actions
        184II(C) Pleading
            184k42 k. Intent. Most Cited Cases
New York entertainment marketing executive who argued he was fraudulently induced to work for company failed to allege minimal factual basis necessary to sufficiently plead scienter under motive and opportunity approach; executive provided no facts in support of company's alleged fraudulent motive to use his "Hollywood contacts and network for its financial advantage, and then discard" him. Fed.Rules Civ.Proc. Rule 9(b), 28 U.S.C.A.

**[6] Fraud 184 ⚖42**

184 Fraud
    184II Actions
        184II(C) Pleading
            184k42 k. Intent. Most Cited Cases
New York entertainment marketing executive who argued he was fraudulently induced to work for company failed to allege minimal factual basis necessary to sufficiently plead scienter under conscious behavior approach; facts submitted as " clear circumstantial evidence of conscious misbehavior and recklessness with regard to the truth" were merely recitation of representations made by general manager and vice president that never materialized, whereas executive had to allege specific facts showing intent not to honor obligations at time statements were made. Fed.Rules Civ.Proc. Rule 9(b), 28 U.S.C.A.

**[7] Fraud 184 ⚖46**

184 Fraud
    184II Actions
        184II(C) Pleading
            184k46 k. Reliance and Inducement and Action Thereon. Most Cited Cases
New York entertainment marketing executive sufficiently pled reliance element of fraudulent inducement claim in connection with prospective employer's oral representations; though employer alleged that general manager statement that employment would begin upon operating board's approval put executive on notice the representations were contingent, manager allegedly also sent executive e-mail on day of offer letter indicating that representations were approved by board, and while representations were not included in offer letter, neither were they explicitly excluded therefrom. Fed.Rules Civ.Proc. Rule 9(b), 28 U.S.C.A.

**[8] Fraud 184 ⚖47**

184 Fraud
    184II Actions
        184II(C) Pleading
            184k47 k. Damage from Fraud. Most Cited Cases
New York entertainment marketing executive sufficiently pled damages element of fraudulent inducement claim against employer; executive requested compensatory damages of $1 million and punitive damages of $9 million for loss of business and diminution of earning capacity resulting from damage to his career development and advancement incurred during employment as result of lack of staff, budget, introductions, and eventually full time status. Fed.Rules Civ.Proc. Rule 9(b), 28 U.S.C.A.

**[9] Federal Civil Procedure 170A ⚖839.1**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(E) Amendments
            170Ak839 Complaint
                170Ak839.1 k. In General. Most Cited

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 3
Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Cases

**Federal Civil Procedure 170A ⇐1838**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1837 Effect
                    170Ak1838 k. Pleading Over. Most Cited Cases
New York entertainment marketing executive would be granted leave to amend claims for breach of employment contract and fraudulent inducement; it was possible, though highly doubtful, that executive could satisfy remaining prongs of test for overcoming presumption of at-will employment, and executive asserted he could plead fraud with greater particularity. Fed.Rules Civ.Proc. Rules 9(b), 15(a), 28 U.S.C.A.

Ramon A. Pagan, The Law Offices of Neal Brickman, New York, NY, for Plaintiff.
A. Michael Weber, Christina L. Feege, Littler Mendelson, P.C., New York, NY, for Defendant.

SCHEINDLIN, J.
*1 Peter Stamelman brings this action for breach of contract and fraudulent inducement against Fleishman-Hillard, Inc. ("Fleishman"). Fleishman now moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and in the alternative, failure to plead fraud with particularity pursuant to Rule 9(b). For the reasons stated below, Fleishman's motion is granted.

I. BACKGROUND

Peter Stamelman is a resident of New York. Complaint ("Compl.") ¶ 2. Fleishman is incorporated in and has its principal place of business in Missouri. *Id.* ¶ 3. Stamelman has worked in the entertainment industry for over twenty years as an agent and television network executive for various entities. *Id.* ¶ 5. In 2000, Stamelman was employed as Vice President of the International Business Development division at the TBWA Entertainment Company ("TBWA") in New York.*Id.* ¶ 6. During 2000 and 2001, Stamelman consulted on several projects for Fleishman, a sister agency of TBWA. *Id.* ¶¶ 7-8.In 2001, Peter Verrengia, the general manager at the time for Fleishman's New York office, began to recruit Stamelman for a position at Fleishman. *Id.* ¶¶ 9-10.During negotiations, Stamelman informed Verrengia that he wished to build an entertainment practice. *Id.* ¶ 11.Verrengia replied that Fleishman was planning to buttress its consumer marketing practice with an entertainment marketing group and could provide Stamelman with a significant role in its development. *Id.* ¶ 12.Verrengia referred Stamelman to Nancy Seliger, the Senior Vice President and Senior Partner at the time. *Id.* ¶ 13.

On May 16, 2001, Stamelman and Seliger met for lunch to discuss the possibility of employment. *Id.* ¶ 14.Stamelman stated that the development of an entertainment marketing practice would require internal referrals of existing Fleishman clients, a staff and travel budget, introductions to existing Fleishman clients, and at least one year for development. *Id.* ¶ 15.Seliger assured Stamelman that Fleishman would meet all of these requirements. *Id.* ¶ 16.After the lunch, Verrengia informed Stamelman that his employment at Fleishman could begin shortly, contingent on the operating board's approval. *Id.* ¶ 17.

On May 30, 2001, Stamelman terminated his employment at TBWA. *Id.* ¶ 18.On June 15, 2001, Verrengia sent an email to Stamelman stating, " [e]xcitement is building here about the skills and experience you'll bring to help us develop this area of practice ."*Id.* ¶ 19.On the same day, Verrengia sent a letter to Stamelman setting forth the terms of employment, including a start date of June 19, 2001, the title of Senior Vice President of the Marketing Communications group, an annual salary of $150,000, and his eligibility to participate in the employee benefits plan. *Id.* ¶ 20; 6/15/01 Offer of Employment Letter from Verrengia to Stamelman (" Offer Letter"), Ex. A to Compl. The oral representations previously made by Verrengia and Stamelman were not mentioned in the Offer Letter.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 4
Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Stamelman verbally accepted the offer and began working at Fleishman on June 19, 2001. *Id.* ¶ 21.

*2 Over the course of his eleven-month employment, Stamelman was not introduced to any of Fleishman's existing clients. *Id.* ¶ 24. By October 2001, Fleishman eliminated all travel expenses relating to the entertainment marketing group unless paid for by the client, and by November 15, 2001, Stamelman was reduced to a part-time employee and received a forty percent cut in salary. *Id.* ¶¶ 25-26. Despite his often praised performance and assurances from Fleishman that he would be restored to his former position and provided with his previously promised requirements, Stamelman was terminated without cause on May 28, 2002. *Id.* ¶¶ 27-29.

## II. LEGAL STANDARD

"Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " [FN1] *Swierkiewicz v. Sorema, N. A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Thus, a plaintiff need only plead " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [FN2] *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Rule 8(a)(2)). A plaintiff need not, in other words, plead the elements of a claim. *See Initial Public Offerings,* 241 F.Supp.2d at 323 (" Rule 8(a) does not require plaintiffs to plead the legal theory, facts or elements underlying their claim.").

> FN1. Although the substantive law of New York governs the claims at issue here, federal procedural law applies. *See generally, Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (explaining that procedural requirements in federal court are governed by federal, not state, procedural law).

> FN2. Because general accusations of fraud are thought to be too amorphous to provide a defendant with sufficient notice to permit a response, fraud claims are subject to the heightened pleading standard of Rule 9(b), which requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b); *see In re Initial Public Offerings Sec. Litig.,* 241 F.Supp.2d 281, 325 (S.D.N.Y.2003).

At the motion to dismiss stage, the issue " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." ' *Phelps v. Kapnolas,* 308 F.3d 180, 184-85 (2d Cir.2002) (per curiam) (quoting *Chance v.. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)). Therefore, the task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Pierce v. Marano,* No. 01 Civ. 3410, 2002 WL 1858772, at *3 (S.D.N.Y. Aug.13, 2002) (internal quotation marks and citation omitted). When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). Although the plaintiff's allegations are taken as true, the claim may still fail as a matter of law if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief or if the claim is not legally feasible. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 158 (2d Cir.2003). Courts may not consider matters outside the pleadings but may consider documents referenced in the pleadings or documents that are integral to the pleadings. *See Chambers,* 282 F.3d at 152-53.

## III. BREACH OF CONTRACT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

### A. Employment At-Will

*3 Under New York law, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party."*Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919 (1987)."The terms of an at-will employee's employment may be modified at any time."*Kempf v. Mitsui Plastics, Inc.,* No. 96 Civ. 1106, 1996 WL 673812, at *6 (S.D.N.Y. Nov. 20, 1996)."The employee's only option is to terminate the relationship; by continuing to remain as an employee, the employee will be deemed to have ratified the new relationship."*Id.* (citation omitted). However, an employee may rebut the presumption of at-will employment and recover under a breach of contract claim by proving that " the employer made the employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting the employment."*Id.* (citing *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 465-66, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982) ). A limitation by express agreement may exist where an employee was induced to leave his prior employment by the assurance that his new employer would not discharge him without cause, the assurance is incorporated into the employment application, and the employment is subject to the provisions of a personnel handbook or manual which provides that dismissal will be for just and sufficient cause only. *Seeid.*

### B. Stamelman Fails to State a Claim for Breach of Contract

#### 1. Fixed Term of Employment

[1] The Offer Letter, which Stamelman concedes he verbally accepted without objection, constitutes an employment agreement between the parties. The Offer Letter states, in relevant part:
This letter confirms the details of our offer as follows: Your start date will be Tuesday, June 19, 2001. You will join us as a Senior Vice President in the Marketing Communications group in the New York office. You will be eligible to participate in the [Fleishman] Incentive Compensation Plan for 2002. You will receive a base salary of $6,250 per semi-monthly pay period, annualized at $150,000. You will be eligible to participate in the [Fleishman] employee benefits plan.... Please let me know if you have any questions or concerns regarding the above information.... Please sign this letter of acceptance and return a copy to my office. Let me know if you have any questions or concerns regarding the above information.

Offer Letter (emphasis added). The Offer Letter does not contain a fixed term of employment of one year or any language limiting Fleishman's right to terminate or modify the terms of Stamelman's employment.

Stamelman argues that his employment was governed by the terms of the Offer Letter *and* the representations made by Fleishman. *See* Plaintiff's Memorandum in Opposition to Motion to Dismiss (" Pl.Mem.") at 15. This argument flies in the face of well-settled law. "[A] contract which appears complete on its face is an integrated agreement as a matter of law."*Stroll v. Epstein,* 818 F.Supp. 640, 645 (S.D.N.Y.), *aff'd,*9 F.3d 1537 (2d Cir.1993). As such, evidence of a prior oral agreement that modifies the terms of the agreement is excluded by the parol evidence rule. *Seeid.*A contract may be found integrated when it completely "embod[ies] the rights and obligations of the parties."*Id.* A letter of confirmation indicating the prospective employee's title, including a geographic specification, salary, start date and benefits may be considered complete on its face. *SeeKempf,* 1996 WL 673812, at *7. Accordingly, the Offer Letter, which "confirm[s] the details of [Fleishman's] offer, " states Stamelman's employee title, start date, salary and benefits, and was verbally accepted without objection, expresses the terms of the parties' agreement and is complete on its face. Therefore, I conclude, as a matter of law, that Stamelman cannot rely on any oral representations in support of his breach of contract claim.

#### 2. Employment At-Will Presumption

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06722-RJS    Document 14-16    Filed 10/12/2007    Page 6 of 10    Page 7 of 11

Not Reported in F.Supp.2d                                                                                            Page 6
Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*4 [2] Stamelman further argues that despite the lack of an express term of fixed employment in the Offer Letter, he is entitled to recover for breach of contract because he left his former employer, accepted employment with Fleishman and remained with Fleishman even after he was relegated to part-time status, all in reliance on Fleishman's representations. *See* Pl. Mem. at 14-15. Stamelman contends that as such, he overcomes the employment at-will presumption.

In *Weiner v. McGraw-Hill,* the New York Court of Appeals set the standard for overcoming the presumption of at-will employment. *See* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441. *Weiner* was a breach of contract action brought by an employee who (1) was orally assured that the prospective employer only fired for just cause; (2) signed an employment application that incorporated the oral assurance; (3) rejected other offers of employment in reliance on the assurance; and (4) was instructed to proceed in strict compliance with the express employer policy in the personnel handbook that employees be discharged only for just cause. *See id.* at 465-66, 457 N.Y.S.2d 193, 443 N.E.2d 441. The court held that the presence of these four elements was sufficient to show an express agreement to alter the employee's at-will status and permitted the employee to pursue an action for breach of contract and reinstated the trial court's order denying defendant's motion to dismiss. *See id.* at 460-67, 457 N.Y.S.2d 193, 443 N.E.2d 441.

Stamelman's pleading satisfies only two prongs of the *Weiner* test: (1) that he was orally assured that he would be employed for at least one year; and (2) terminated his previous employment in reliance on the assurance. *See* Compl. ¶¶ 15-16, 35. Without allegations satisfying the other *Weiner* elements, namely an express written policy limiting the employer's right of termination that is incorporated into the employment contract, Stamelman fails to allege enough to rebut the employment at-will presumption. *See Ligaya v. American Friends of Hebrew Univ., Inc.,* No. 96 Civ. 240, 1998 WL 146227, at *5 (S.D.N.Y. Mar. 25, 1998) (granting employer's motion to dismiss breach of contract claim because employee failed to show express limitation on the employer's right to discharge).

Furthermore, "general assurances of future employment will not transform an employment at will to a contract of permanent employment."*Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 234 (S.D.N.Y.1989) (granting defendant's motion to dismiss on grounds that there was no modification of at-will status, despite assurance that "you will not be terminated; there is nothing to worry about, we will find jobs for everybody").

The rule that employment is presumed to be at-will is deeply ingrained in New York law. *See Horn v. New York Times,* 100 N.Y.2d 85, 90-91, 760 N.Y.S.2d 378, 790 N.E.2d 753 (2003). Though *Weiner* recognized an exception to this rule, subsequent courts have refused to make further exceptions. *See id.* at 91-93, 760 N.Y.S.2d 378, 790 N.E.2d 753 (collecting cases) (quoting *Murphy,* 58 N.Y.2d at 304-05, 461 N.Y.S.2d 232, 448 N.E.2d 86 ("[U]nder New York law ... absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.")). Therefore, without making allegations sufficient to overcome the employment at-will presumption, Stamelman fails to state a claim for breach of contract. Fleishman's motion to dismiss the breach of contract claim is granted.

### IV. FRAUDULENT INDUCEMENT

#### A. Pleading Fraud

*5 [3] As a threshold matter, Fleishman argues that Stamelman's fraudulent inducement claim is a tort claim for wrongful discharge in disguise. It is well settled that "because at-will employees 'may be freely terminated ... at any time for any reason,' they can neither challenge their termination in a contract action nor 'bootstrap' themselves around this bar by alleging that the firing was in some way tortious."*Stewart v. Jackson & Nash,* 976 F.2d 86, 88 (2d Cir.1992) (quoting *Murphy v. American Home Prod. Corp.,* 58 N.Y.2d 293, 300, 461

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 7
Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

N.Y.S.2d 232, 448 N.E.2d 86 (1983)). As a result, an at-will employee cannot state a fraud claim based on facts arising out of his termination or the employer's failure to perform terms of the employment agreement. Nonetheless, Stamelman alleges eight representations that were not part of the terms of the employment agreement as stated in the Offer Letter:

(a) that [Fleishman] was seeking to create and develop an entertainment marketing practice to buttress its existing consumer marketing practice; (b) that [Fleishman] would allow plaintiff at least one year to develop this entertainment marketing practice; (c) that [Fleishman] would use its best efforts to provide plaintiff's entertainment marketing practice with "buy-in" from other [Fleishman] offices, which served as gatekeepers for then existing [Fleishman] clients; (d) that [Fleishman] would introduce plaintiff to existing [Fleishman] clients on a regular basis; (e) that [Fleishman] would provide plaintiff with adequate support staff and travel budget to create and develop a profitable entertainment marketing practice; (f) that [Fleishman] would provide plaintiff with an adequate travel budget to allow plaintiff to personally meet with potential clients; (g) that [Fleishman] would instruct its regional offices to assist in the creation of an entertainment practice; and (h) that [Fleishman's] regional offices had all been briefed on, and that they had agreed to support, the entertainment practice.

Compl. ¶ 32. Because Stamelman alleges representations that were collateral and extraneous to the employment agreement, he may pursue an action for fraudulent inducement. *See Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 20 (2d Cir.1996).

In order to prove fraudulent inducement under New York law, Stamelman must show (1) a representation of a material fact (2) falsity (3) scienter (4) reasonable reliance and (5) injury. *See id.* at 19 (quotation marks and citation omitted). In order to plead fraud, Stamelman must comply with Rule 9(b), which states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."Fed.R.Civ.P. 9(b) . The Second Circuit has explained its interpretation of Rule 9(b) as follows:

To pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation. Although scienter need not be alleged with great specificity, there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a strong inference of fraudulent intent.

*6 *Ouaknine v. MacFarlane,* 897 F.2d 75, 78-80 (2d Cir.1990) (quotation marks and citations omitted). A "strong inference of fraudulent intent," in turn, can be pled in one of two ways:First, the plaintiff may allege a motive for committing fraud and a clear opportunity [FN3] for doing so. Second, where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

> FN3. The usual finding of clear opportunity arises when the defendant is already well positioned to carry out the fraudulent transaction, such as when he possesses the necessary trust and authority. *SeePowers v. British Vita, P.L.C.,* 57 F.3d 176, 185 (2d Cir.1995).

*Powers,* 57 F.3d at 184 (citations, quotation marks and alterations omitted).[FN4]

> FN4. Although this recitation of the pleading standard for scienter is most familiar in the context of securities fraud, *see e.g.,Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), it applies with equal force whenever fraudulent intent must be pled under Rule 9(b), *see e.g.,Ouaknine,* 897 F.2d at 79-80.

B. Stamelman Fails to Plead Fraud with Sufficient Particularity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 8
Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

### 1. Representations of Existing Fact

[4] Stamelman properly alleges representations of existing fact, as opposed to mere promises of future action which only give rise to a breach of contract claim. *SeeStewart,* 976 F.2d at 86 (quotations and citations omitted). Though all but one of the alleged representations appear to be future promises because of the use of the phrase "Fleishman *would...*" (the exception is the representation that Fleishman's regional offices had been briefed on and had agreed to support the entertainment practice), this Circuit has held that:

[w]hile [m]ere promissory statements as to what will be done in the future are not actionable, ... it is settled that, *if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of material existing fact* upon which an action for recision [based on fraudulent inducement] may be predicated.

*Stewart,* 976 F.2d at 89 (quoting *Sabo v. Delman,* 3 N.Y.2d 155, 160, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957) (emphasis added)) (stating that plaintiff's allegation that defendant, at the time it made a future promise, "knew it did not intend" to fulfill it, makes the alleged representation an allegation of present fact which gives rise to a claim of fraudulent inducement); *see alsoDeerfield Commun. v. Chesebrough-Pond's,* 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986) (stating that plaintiff alleges present fact where it claims defendant made a promise with the undisclosed present intention of not performing it). Therefore, Stamelman's allegation that Fleishman, at the time it made the future promises, "knew them to be false," renders those representations allegations of existing fact.

### 2. Scienter

[5] Stamelman fails to allege the minimal factual basis necessary to sufficiently plead scienter. Under the motive and opportunity approach, Stamelman contends that Fleishman's fraudulent motive was to use his "Hollywood contacts and network for its financial advantage, and then discard" him. Compl. ¶ 23. Stamelman does not explicitly state Fleishman's opportunity to act on this motive but presumably, as an international public relations firm and as Stamelman's employer, Fleishman had access to Stamelman's contacts. However, Stamelman provides no facts in support of this alleged motive. He does not allege, for example, that Fleishman benefitted from its use of his contacts or that Fleishman retained his contacts subsequent to his termination. Moreover, this Circuit has held that a generalized motive that does not result in concrete benefits to the defendant is insufficient to plead scienter. *SeeChill v. General Elec. Co.,* 101 F.3d 263, 268 (2d Cir.1996) (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 813-14 (2d Cir.1996) (finding allegation that defendants were motivated by a desire to maintain the company's credit rating insufficient to plead scienter) and *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir.1995) (finding allegation that defendants were motivated to defraud the public because an inflated stock price would increase their compensation insufficient to plead scienter)).

*7 [6] Stamelman also attempts to plead scienter under the conscious behavior approach, but once again, his allegations are inadequate. The facts submitted as "clear circumstantial evidence of conscious misbehavior and recklessness with regard to the truth" are merely a recitation of the representations made by Seliger and Verrengia that never materialized. *See* Pl. Mem. at 8. However, where "the alleged misrepresentation concerns future conduct, the defrauded party must allege specific facts showing that the promisor intended not to honor her obligations at the time she made the statement."*SNCB Corporate Fin. Ltd. v. Schuster,* 877 F.Supp. 820, 826 (S.D.N.Y.1994) (citing *National Westminster Bank v. Ross,* 130 B.R. 656, 664 (S.D.N.Y.1991), *aff'd sub nom., Yaeger v. National Westminster,* 962 F.2d 1 (2d Cir.1992)). The defrauded party may not satisfy this requirement simply by showing that the future event never occurred. *Seeid.*Stamelman alleges no other facts to support an inference of scienter, and thus, his claim for fraudulent inducement fails.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 9

Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

### 3. Reliance

[7] Stamelman sufficiently pleads reliance. In a fraud action, a trier of fact must ultimately find that the reliance was reasonable. See *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). However, "[w]hether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss."*Doehla v. Wathne Ltd., Inc.*, No. 98 Civ. 6087, 1999 WL 566311, at *10 (S.D.N.Y., Aug.3, 1999) (citation omitted).

Fleishman relies on two propositions to argue that Stamelman's reliance was unreasonable as a matter of law. Both arguments are unavailing. Fleishman cites the proposition that "[w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance."*Hyosung Am., Inc. v. Sumagh Textile Co. Ltd.*, 137 F.3d 75, 78 (2d Cir.1998) (quotation marks and citation omitted). However, the *Hyosung* court reversed the district court's dismissal of the plaintiff's fraud claim on the grounds that defendant failed to show that "plaintiff was placed on guard or practically faced with the facts" of the truth of the representations on which it relied. *Id.* Fleishman argues that Verrengia's statement that employment would begin upon the operating board's approval put Stamelman on notice that the representations were contingent. *See* Defendant's Memorandum in Support of Motion to Dismiss at 12. However, Stamelman alleges that on the day Verrengia sent the Offer Letter, he also sent an email to Stamelman stating, "[e]xcitement is building here about the skills and experience you'll bring to help us develop this area of practice." Compl. ¶ 19. Whether Stamelman acted reasonably in relying upon this statement that the representations were approved by the Fleishman operating board and were included in the terms of his employment is a determination of fact, not law.

*8 Fleishman also cites the proposition that "as a matter of law, [the plaintiff is] not entitled to rely on a representation flatly contradicting the express terms" of a contract. *Robert J. McRell Assocs., Inc. v. Insurance Co. of N. Am.*, 677 F.Supp. 721, 731 (S.D.N.Y.1987). The court in *McRell Assocs.* found that reliance was unreasonable as a matter of law because of a merger clause in the agreement that contained language nullifying all prior oral or written agreements with respect to the subject matter of that agreement. *See id.* The facts are clearly different in this case. The representations are not included in the Offer Letter, but are not explicitly excluded. There is no direct contradiction between the two. In sum, Fleishman has not shown that Stamelman will be unable to offer evidence, consistent with the allegations, that would permit him to pursue this claim. As a result, Stamelman's alleged reliance was not unreasonable as a matter of law.

### 4. Damages

[8] Stamelman sufficiently pleads damages. In a f raud action, "the true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out-of-pocket' rule.... Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."*Lama Holding*, 88 N.Y.2d at 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (internal citations omitted). Stamelman asserts that as a result of Fleishman's fraudulent inducement, he "suffered damages, including, but not limited to, loss of business and a diminution of his earnings and earning capacity" and requests compensatory damages in the amount of $1,000,000 and punitive damages in the amount of $9,000,000. Compl. ¶ 36. Stamelman claims that his losses stem from damage to his career development and advancement incurred during his employment with Fleishman as a result of his lack of staff, budget, introductions, and eventually, full time status. *See* Pl. Mem. at 12. Stamelman adequately alleges a causal connection between Verrengia and Seliger's representations and the resulting injury and may claim compensatory damages for these out-of-pocket losses.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 10
Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Under New York law, punitive damages are available in a tort action where "the wrongdoing is intentional or deliberate, has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in such conscious disregard of the rights of another that it is deemed willful and wanton." *Swersky v. Dreyer & Traub,* 219 A.D.2d 321, 643 N.Y.S.2d 33, 38 (1st Dep't 1996) (citing *Prozeralik v. Capital Cities Communications, Inc.,* 82 N.Y.2d 466, 479, 605 N.Y.S.2d 218, 626 N.E.2d 34 (1993) (citation omitted)). Because Stamelman alleges a fraudulent motive, his pleading for punitive damages survives the motion to dismiss stage, although this issue may well be revisited at summary judgment.

### V. LEAVE TO AMEND

[9] When a cause of action is dismissed because of pleading deficiencies, the usual remedy is to permit a plaintiff to amend his complaint. *See* Fed.R.Civ.P. 15(a) ("[L]eave [to amend] shall be freely given when justice so requires."); *see also Foman v. Davis,* 371 U.S. 178, 183, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (stating that refusal to grant leave to amend without reason is an abuse of discretion and inconsistent with the spirit of the Rules). The policy of granting free leave to amend is especially appropriate in the context of claims dismissed under Rule 9(b) because the law favors resolving disputes on their merits. *See Acito,* 47 F.3d at 54-55; *Luce v. Edelstein,* 802 F.2d 49, 56-57 (2d Cir.1986).

*9 It is possible, although it appears highly doubtful, that Stamelman can yet make sufficient allegations to satisfy all four prongs of the *Weiner* test. In addition, Stamelman asserts that he can plead fraud with greater particularity. *See* Pl. Mem. at 13. Accordingly, Stamelman is granted leave to amend his complaint to re-plead these claims. Any such amended complaint must be served within thirty (30) days of receipt of this Opinion.

### VI. CONCLUSION

For the reasons stated above, Fleishman's motion is granted. Stamelman's claims for breach of contract and fraudulent inducement are dismissed without prejudice with leave to amend. Should Stamelman timely file an amended pleading, a conference is scheduled for September 2, 2003, at 4:00 p.m. The Clerk of the Court is directed to close this motion.

S.D.N.Y.,2003.
Stamelman v. Fleishman-Hillard, Inc.
Not Reported in F.Supp.2d, 2003 WL 21782645 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.