# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

and EEOC

State or local Agency, if any

NAME (Indicate Mr., Ms., Mrs.)
**Ms. Gina Esposito**

HOME TELEPHONE (Include Area Code)
**(201) 438-4825**

STREET ADDRESS
**131 Livingston Avenue**

CITY, STATE AND ZIP CODE
**Lyndhurst, NJ 07071**

DATE OF BIRTH
**11/4/54**

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

NAME
**Deutsche Bank AG**

NUMBER OF EMPLOYEES, MEMBERS
**500+**

TELEPHONE (Include Area Code)
**(212) 469-8000**

STREET ADDRESS
**31 West 52nd Street**

CITY, STATE AND ZIP CODE
**New York, NY 10019**

COUNTY
**New York**

NAME

TELEPHONE NUMBER (Include Area Code)

STREET ADDRESS

CITY, STATE AND ZIP CODE

COUNTY

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ AGE
☒ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA) **June 1999**   LATEST (ALL) **May 3, 2001**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

please see attached.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

*Gina Esposito*

I declare under penalty of perjury that the foregoing is true and correct.

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)

*Gina Esposito*

EEOC FORM 5 (Test 10/94)

*Beverly Hartstein*

Sworn Before Me This 6th day of Feb. 2002

BEVERLY HARTSTEIN
Notary Public, State of New York
No. 24-4872993
Qualified in Kings County
Commission Expires Oct. 6,
2002

# CHARGE OF DISCRIMINATION

## Gina Esposito v. Deutsche Bank AG

1.      I am 47 years old.  My date of birth is November 4, 1954.  I was employed by Deutsche Bank AG ("Deutsche Bank), from June 7, 1999 through May 3, 2001.  I was hired by Bernadette Whitaker, then Director of Human Resources Shared Services, and I worked in Deutsche Bank's Human Resources department as an Assistant Vice President/Relocation Manager.

2.      Throughout the course of my employment with Deutsche Bank, I was qualified for the position I held and I always performed my duties in a professional and competent manner.

3.      Beginning in approximately June 1999, I was supervised by John Dall.  Dall is several years younger than I am and is now about 40 years old.

4.      Prior to my termination, John Dall hired two younger people in my department who initially held the same position I did as Assistant Vice President.  Both of my younger colleagues lacked any substantial management experience; one, Joanne Passiatore was under 30, and the other, Dan Richards, was about 32.

5.      A few days after he became my supervisor in June 1999, Dall began verbally abusing me.  He made it known that he did not want me in his department by telling me that "you don't have your feet in too deep yet; why don't you consider leaving?"  His abuse was berating, hostile, and frequent, continuing throughout the period of my employment with Deutsche Bank.  I believe that Dall engaged in this and other conduct as part of a campaign to force me to resign, and I believe his actions were motivated by age bias.

6.      Dall's language reflected his age bias.  When an employee in her 50's left the Human Resources department, Dall said this was just as well because she was "older" and "resistant to change".  He also told me, on a separate occasion, that I was "resistant to change".

7.      On one occasion, I complained to Dall that one of my staff members, a woman, appeared to be sexually harassing male employees.  Dall refused to offer assistance, and I then discussed the problem with Leslie Garfield, who provided Human Resources support to our department.  When Dall found out that I had complained again about the sexual harassment, he retaliated against me by screaming at me and warning me never to report any problems to Garfield again (even though Garfield was responsible for human resources issues in my department).  He told me "Don't you dare ever speak to Leslie about anything.  I don't ever want to see you in her office or hear from anyone that you've been in there."  He also berated me on a daily basis about my staff person, who ultimately resigned (Dall's abuse continued after her resignation).  Dall also retaliated against me for having complained about my staff member's conduct when Dall completed my performance evaluation for 2000, and when he gave me a lower bonus and raise than my younger co-workers, as discussed below.

8.      Dall continued to verbally abuse me, and I reported this abuse to Garfield,

who discussed my complaint with Dall. When Dall learned I had complained to Garfield about his abuse, he was extremely angry and hostile, and again told me I could not discuss problems with Garfield.

9.     On one occasion, Dall berated me in front of Garfield, telling me I had mishandled a conversation with my staff member related to her behavior. Garfield told Dall that I had conducted myself in an excellent and professional manner and acted appropriately in reporting what I believed to be sexual harassment engaged in by my staff member.

10.    Dall treated my younger co-workers more favorably than me, giving them larger raises than I received, as well as larger bonuses and promotions, although I was more experienced, worked much longer hours than either, and performed as well as or better than either of my younger peers.

11.    Upon information and belief, in 2001, Passiatore and Richards received bonuses of $55,000. I received a bonus of $30,000 in 2001. Upon information and belief, Passiatore and Richards received salary increases of $20,000 each in 2001, compared with my $3,000 salary increase. Dall promoted both Passiatore and Richards to Vice President in 2001; Dall did not promote me. Dall informed me that Don Jones, the head of Human Resources, had mandated a 4-6% salary increase for all Human Resources employees, yet my increase was only 3.75% while Passiatore and Richards each received 23% salary increases.

12.    In April 2001, I discussed Passiatore's and Richards' promotions with Dall. He told me Deutsche Bank's policy is that promotions are based on what an employee's future holds, not past performance or merit. I reasonably understood this to relate to the fact that my co-workers are substantially younger than I am and therefore had, in his biased view, a better future than I did. Dall also told me that my co-workers' jobs were more important than mine, although each of us had held the same title prior to their promotions and had the same responsibilities. During my discussion with Dall, I asked him whether there was any chance I would be promoted in the future. Dall said he did not know. When I asked him why I should stay with Deutsche Bank if I had no chance of advancement, he offered nothing to indicate I was incorrect in believing I had no chance of advancement.

13.    Based on Dall's actions and behavior, including but not limited to his harassment, retaliation and indication that I lacked a future at the firm, I reasonably concluded that (a) I had no reasonable expectation of career advancement with Deutche Bank, and (b) I had no reasonable expectation of fair treatment from Dall. I was thus compelled to resign from Deutsche Bank, effective May 3, 2001.

14.    Upon information and belief, since my resignation, my job duties have been assumed by employees who are younger than I am.

15.    I believe that my age was a substantial motivating factor behind the adverse actions described here, including John Dall's verbal abuse, the firm's failure to promote me, the determination to pay me less than my younger peers, and my constructive discharge.

16.    I also believe that Dall retaliated against me for reporting what I reasonably believed to be sexual harassment by my staff member.

17.    Based upon the foregoing, I believe that Deutsche Bank willfully discriminated against me because of my age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, and retaliated against me for having engaged in protected activity under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended. As a result of this discrimination and retaliation, I have suffered stress, anguish, humiliation, and loss of compensation, and I request an award of front and back wages and benefits, compensatory and punitive damages, liquidated damages, attorneys' fees, costs, and an order directing Deutsche Bank to cease and desist from its discriminatory practices, together with such further and additional relief as the Commission deems just and proper.

18.    I provide the foregoing information in order to assert my rights under the ADEA and Title VII and to satisfy all procedural prerequisites to the commencement of a civil action in the event that this Charge is not resolved by conciliation, conference, and persuasion. Nothing in this Charge is intended to constitute a waiver of any right to seek judicial relief under state or local law with respect to the conduct complained of hereinabove.

19.    I will advise the EEOC of any change in my address and telephone number, and I will cooperate fully in the proper processing of, and investigation into, this Charge. Please direct all communications and inquiries regarding this matter to Laurence S. Moy, Esq. of Liddle & Robinson, L.L.P., 685 Third Avenue, New York, New York 10017, (212) 687-8500.

**FedEx** Express · *USA Airbill*

FedEx Tracking Number 8__ _587104402

**Sender's Copy**

**From** Please print and press hard.

Date 2/7/02

Sender's FedEx Account Number

Sender's Name Chris Edelson    Phone ( 212 ) 687-8500

Company Liddle + Robinson

Address 685 Third Avenue 27th Flr.

City New York    State NY    ZIP 10017

**Your Internal Billing Reference**
First 24 characters will appear on invoice.

**To**

Recipient's Name U.S. EEOC (Equal Employment Opportunity Commission)    Phone ( )

Company U.S. EEOC NY District Office

Address 201 Varick Street
To "HOLD" at FedEx location, print FedEx address.    We cannot deliver to P.O. boxes or P.O. ZIP codes.
Room 1009

City New York    State NY    ZIP 10014

**Try online shipping at fedex.com**

By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.

**Questions? Visit our Web site at fedex.com**
or call 1.800.Go.FedEx® 800.463.3339.

**4a Express Package Service** *Packages up to 150 lbs.*

☑ FedEx Priority Overnight
Next business morning

☐ FedEx Standard Overnight
Next business afternoon

☐ FedEx First Overnight
Earliest next business morning delivery to select locations

☐ FedEx 2Day
Second business day

☐ FedEx Express Saver
Third business day

☐ NEW FedEx Extra Hours
Later drop-off with next business afternoon delivery for select locations

**4b Express Freight Service** *Delivery commitment may be later in some areas.*

☐ FedEx 1Day Freight*
☐ FedEx 2Day Freight
Second day

☐ FedEx 3Day Freight
Third business day
*Call for Confirmation.

**5 Packaging**    *Declared value limit $500*

☐ FedEx Envelope*
☑ FedEx Pak*
☐ Other Pkg.

**6 Special Handling** *Include FedEx address in Section 3.*

☐ SATURDAY Delivery
☐ HOLD Weekday
☐ HOLD Saturday

Does this shipment contain dangerous goods?
One box must be checked.

☐ No    ☐ Yes As per attached    ☐ Yes Shipper's Declaration not required    ☐ Dry Ice
☐ Cargo Aircraft Only

**7 Payment** *Bill to:*

☑ Sender    ☐ Recipient    ☐ Third Party    ☐ Credit Card    ☐ Cash/Check

Total Packages 1    Total Weight    Total Declared Value $ .00    $15.25

**8 Release Signature** *Sign to authorize delivery without obtaining signature.*

446



# O'MELVENY & MYERS LLP

LOS ANGELES
CENTURY CITY
IRVINE
NEWPORT BEACH
SAN FRANCISCO
TYSONS CORNER

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

TELEPHONE  (212) 326-2000
FACSIMILE  (212) 326-2061
INTERNET: www.omm.com

WASHINGTON, D.C.
HONG KONG
LONDON
SHANGHAI
TOKYO

April 30, 2002

OUR FILE NUMBER
212,400-087
855077

WRITER'S DIRECT DIAL
212-326-2080

WRITER'S E-MAIL ADDRESS
ssteinberg@omm.com

**BY FEDERAL EXPRESS**

Ms. Stella Yamada
Investigator
Equal Employment Opportunity Commission
New York District Office
201 Varick Street, Room 1009
New York, NY 10014

        Re:   *Gina Esposito v. Deutsche Bank AG*
              *EEOC Charge No. 160A200619*

Dear Ms. Yamada:

        We submit this position statement on behalf of Deutsche Bank AG ("Deutsche Bank" or the "Bank") in connection with the above-referenced matter, a charge of discrimination brought by Gina Esposito ("Esposito"), a former employee in the Bank's Human Resources Department who quit her job on May 3, 2001. In her charge, Esposito alleges violations of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act ("Title VII"). Specifically, Esposito claims the Bank failed to promote her because of her age, paid her less than younger employees doing substantially the same work, subjected her to a hostile work environment, constructively discharged her, and retaliated against her for having complained about another employee's conduct in the workplace. As explained more fully below, all of Esposito's allegations of discrimination and retaliation are without merit and should be dismissed.[1]

        There is no evidence that the Bank engaged in any unlawful conduct. In fact, Esposito was treated fairly and consistently throughout her employment at the Bank. She simply was not an employee whose performance warranted a promotion or a substantial salary increase. Rather, she was an average performer who struggled with certain job responsibilities and had a poor managerial style. Given these facts, Esposito cannot establish a prima facie case under either the ADEA or Title VII. In any event, even if Esposito could state a prima facie case, the Bank had

---

[1]  This position statement is being provided to the EEOC on a confidential basis. Deutsche Bank respectfully requests, therefore, that it only be used for the purpose of the EEOC's investigation of the above charge and that it not be disclosed to any person or entity other than the EEOC and its investigators.

O'MELVENY & MYERS LLP
Ms. Stella Yamada, April 30, 2002 - Page 2

legitimate, nondiscriminatory reasons for all of its actions, and Esposito cannot establish any evidence of pretext.

# FACTUAL BACKGROUND

## A.    The Parties

### 1.    Deutsche Bank

Deutsche Bank is an international financial services provider with more than 98,000 employees worldwide. Deutsche Bank provides equal employment opportunities to all applicants and employees without regard to race, color, religion, sex, national origin, age, disability, marital status, sexual orientation, or status as a veteran. The Bank also has adopted a policy of "zero tolerance" with respect to harassment and discrimination. It provides a written policy instructing employees on how to report an incident of harassment or discrimination and states that the Bank will conduct an investigation and determine what, if any, disciplinary action is appropriate. Moreover, the Bank prohibits retaliation against an employee for filing a complaint under its policy or assisting in a complaint investigation.[2] Significantly, even though she now claims that she was the victim of discrimination and that she was subjected to a hostile work environment, Esposito never used the Bank's procedures to make any complaints while was employed by the Bank.

The Bank has an extensive Human Resources Department responsible for managing all aspects of the employer-employee relationship. The employees who work in the Human Resources Department are responsible for a variety of tasks, including, but not limited to, recruiting and hiring employees; relocating employees to work in different cities, both domestically and internationally; overseeing the performance evaluation process; and managing compensation adjustments and processing promotions.

Since the Human Resources Department has responsibility for so many different tasks, it is divided into smaller sections. John Dall ("Dall") is the supervisor of one of these smaller sections. Dall reports to Bernadette Whitaker ("Whitaker"), the Director of Human Resources, Shared Services, and Dall's direct reports during Esposito's tenure at the Bank included Esposito, Joanne Passiatore ("Passiatore"),[3] and Dan Richards ("Richards"). As described in greater detail below, although Esposito, Passiatore, and Richards all reported directly to Dall, they each performed different functions requiring different skills. Despite the fact that Esposito, Passiatore, and Richards performed different functions requiring different skills, Esposito seeks to compare herself to Passiatore and Richards and, in fact, bases her entire charge on her claim that Dall favored Passiatore and Richards over her.

---

[2] Copies of these policies are attached as Exhibit A.

[3] Joanne Passiatore also goes by the name Joanne Scaturo.

O'MELVENY & MYERS LLP
Ms. Stella Yamada, April 30, 2002 • Page 3

### 2.      Gina Esposito's employment history

Esposito was hired by Deutsche Bank on June 7, 1999 – when she was 44 years old – as an Assistant Vice President/Relocation Manager in the Human Resources Department at a starting base salary of $75,000. Dall extended the offer of employment to Esposito and became Esposito's direct supervisor. While Dall made the decision to hire Esposito, she claims that once she was employed he began to subject her to a hostile work environment because of her age.

As a Relocation Manager, Esposito was responsible for managing domestic relocations only. Her responsibilities included counseling employees about the Bank's relocation policies, helping those employees contact outside vendors to assist with their relocation needs, and settling account balances with outside vendors and processing reimbursements for the employees' out-of-pocket expenses. Esposito had limited relocation experience prior to her arrival at the Bank. She had done some relocation consulting work for the Bank while she was working for Arthur Andersen, but did not have a substantial background in this area. While Esposito satisfactorily performed the "customer service" aspects of her job, i.e., dealing with the employees who were relocating, she struggled with the "financial" part of her job, i.e., account reconciliation and management. This part of her job is important because without proper account reconciliation and management, the Bank cannot monitor costs and outstanding balances.

Esposito's 2000 performance evaluation clearly reflects this dichotomy. Although Esposito received an overall rating of "3" (an average rating),[4] Dall also emphasized that Esposito struggled with the financial components of her job. For example, with regard to the objective of reconciling outstanding balances in certain accounts as prescribed by an internal audit report, Dall noted that Esposito failed to meet the deadline set for completing the reconciliation project by stating "Gina has not delivered on this commitment. She underestimated the complexity of the task and did not give this a high priority on her list of objectives. To date I am not fully aware of how we stand in terms of the reconciliation's completion." In addition, Dall stated on the evaluation that Esposito "needs to focus more on solutions than she does on complaints. Her complaints have gotten to the level that it is difficult for me to discuss anything strategic with her."[5]

Moreover, Dall was dissatisfied with Esposito's managerial style. For example, there was a point in time when Esposito believed that one of her staff members was being too friendly with other employees on the telephone. Esposito was concerned that other employees might

---

[4] The scale used for the performance reviews is as follows:
      1 = Exceptional performer – typically 5-10% of total population
      2 = High achiever – performance consistently exceeds expectations
      3 = Fully meets and, at times, exceeds expectations of the role; a valued team member
      4 = Generally unsatisfactory performance with scope for improvement in some areas
      U = Unsatisfactory performer – consult with [Human Resources] prior to discussion with employee

[5] A copy of Esposito's 2000 performance review is attached as Exhibit B.

O'MELVENY & MYERS LLP
Ms. Stella Yamada, April 30, 2002 - Page 4

perceive that behavior as sexual harassment. Rather than discuss this conduct with her direct supervisor, Dall, Esposito bypassed Dall altogether and spoke with one of the other Human Resources professionals about her concerns. Esposito did not bypass Dall pursuant to the Deutsche Bank policy that allows employees to complain about discrimination or harassment to someone other than their direct supervisor when the direct supervisor is the alleged wrongdoer. Esposito simply bypassed Dall because she did not want to involve him. As Esposito's supervisor (and the member of management ultimately responsible for the conduct of Esposito's subordinates), Dall was upset by the fact that Esposito did not raise the issue directly with him so that he could be involved in the decision about what actions should be taken to counsel the employee. However, Dall simply told Esposito that he thought she should have raised the issue with him first. He did not yell at her or reprimand her about her conduct. Notably, the employee in question eventually quit because of the treatment she received at the hands of Esposito.

The Bank eventually began to consider outsourcing the domestic relocation function. While no decision on this issue was made before Esposito's resignation, management had considered continuing Esposito's employment despite the outsourcing so that she could coordinate the relationship between the Bank and the vendor. Indeed, Esposito's claims of discrimination are belied by the fact that despite Esposito's mediocre performance, the Bank did not consider terminating her when it was planning to outsource the domestic relocation function.

3.    **Joanne Passiatore's employment history**

Passiatore was hired by Deutsche Bank on June 21, 1999 – when she was 29 years old – as an Assistant Vice President in the Human Resources Department at a starting base salary of $80,000. Like Esposito, Passiatore reported directly to Dall. Passiatore's position focused on tax issues for employees who were being paid on international payrolls. Understanding and dealing with these international tax issues requires a great deal of technical tax knowledge and an understanding of international tax issues. Passiatore was hired for her highly-specialized position based on her prior work history and international tax skill set. She had previously worked for several companies in tax-related positions – most recently for Salomon Smith Barney in its International Tax Department. Passiatore has never been responsible for or in any way involved with any aspects of domestic employee relocations.

Passiatore's 2000 performance evaluation indicates that she is an excellent performer who is highly-competent in the field of international taxation and who takes initiative and follows through on her plans. Passiatore received an overall rating of "2" (the second highest available rating), and Dall noted that Passiatore frequently crafted proposals for improving operations and handling consolidations while giving proper consideration to operational needs in other departments that would be affected by her proposals and desired changes. In fact, Passiatore received exceptionally high marks in the areas of "Performance & results orientation" and "Innovation and change."[6]

---

[6] A copy of Passiatore's 2000 performance evaluation is attached as Exhibit C.

As a result of Passiatore's specialized skill set, her willingness to take initiative and see tasks through to completion, and her overall performance, Passiatore was promoted to Vice President on April 1, 2001. Although the promotion involved a change in corporate title, Passiatore continued with the same responsibilities she had as an Assistant Vice President, and she continued to report to Dall. Passiatore is still employed by the Bank.

### 4.   Dan Richards's employment history

Richards was hired by Deutsche Bank on July 21, 1999 – when he was 32 years old – as an Assistant Vice President in the Human Resources Department at a starting base salary of $80,000. Like Esposito and Passiatore, Richards also reported directly to Dall. Richards's position focused on <u>international</u> employee relocations – a relocation function more complex than Esposito's domestic relocation function. The responsibility for international relocations included responsibility for dealing with the Bank's international policies and procedures concerning employee assignments and payroll transfer issues, along with the "simpler" tasks of managing housing and schooling arrangements for the employee and his or her family. Richards was hired for this position based on his knowledge of tax laws and regulations. He had previously worked for several companies where he developed this skill set – including PricewaterhouseCoopers, where he worked as a Manager in its tax department in London.

Richards's 2000 performance evaluation indicates that he is an excellent performer who volunteers to help develop new plans and programs and who actively participates in setting and meeting goals for new operational functions. Richards received an overall rating of "2," and Dall noted that he had received much positive feedback about Richards from a global team of Deutsche Bank professionals with whom Richards worked to develop a set of standard procedures. Richards's performance was further praised by Dall through the high marks Dall gave Richards in the areas of "Customer focus," "Teamwork/global effectiveness," and "Integrity and trust."[7]

As a result of Richards's specialized skill set and his high quality performance, Richards was promoted to Vice President on April 1, 2001. Like Passiatore, although Richards's promotion involved a change in corporate title, he continued with the same responsibilities he had as an Assistant Vice President, and he continued to report to Dall. Richards is also still employed by the Bank.

### DISCUSSION

On February 8, 2002, Esposito filed the present charge of discrimination with the EEOC. In her charge, Esposito makes the following allegations: (1) she was passed over for promotions and received smaller pay increases than younger employees because of her age; (2) she was subjected to a hostile work environment and was constructively discharged as a result of comments by Dall; and (3) Dall retaliated against her after she complained about alleged

---

[7] A copy of Richards's 2000 performance evaluation is attached as Exhibit D.

O'MELVENY & MYERS LLP
Ms. Stella Yamada, April 30, 2002 - Page 6

misconduct by a member of her staff to another member of the Human Resources Department
instead of to him. For the reasons stated below, all of Esposito's claims are completely without
merit and her charge should be dismissed in its entirety.

## A.   Esposito's Age Discrimination Claims (*i.e.*, Failure To Promote And Unequal Pay) Are Meritless

The essence of Esposito's age discrimination claims is that she was paid less than two
younger employees, Passiatore and Richards, and that she was passed over for promotions in
favor of those two employees. As a threshold matter, Esposito's claims are significantly
undercut by the fact that at no time did she complain to anyone that she felt she was being
discriminated against on the basis of her age. See, e.g., Graham v. Rosemount Inc., 40
F.Supp.2d 1093, 1098-99 (D. Minn. 1999) (finding that plaintiff's failure to complain about age
discrimination during her employment weakened any inference of discrimination); Roytar v.
Union Bank of Switzerland, 852 F. Supp. 180, 185 (S.D.N.Y. 1994) (same). Moreover, and as
explained below, Esposito did not receive a promotion or more significant raises because she did
not deserve them. She was an average employee who the Bank had no obligation to advance just
because she was over 40. See Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982) ("The
ADEA does not require an employer to accord special treatment to employees over forty years of
age."); see also Lewis v. Kmart Corp., 180 F.3d 166, 172 (4th Cir. 1999) (stating that although
the ADEA prohibits preferential treatment of younger employees at the expense of older
employees based on age, it does not sanction preferential treatment of older employees).

### 1.   Failure to promote

To state a prima facie case of discriminatory failure to promote, Esposito must show that:
(1) she is a member of a protected class; (2) she was qualified for the job for which she applied;
(3) she was denied the job; and (4) the denial occurred under circumstances giving rise to an
inference of discrimination. See Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000).
Esposito's claim should be dismissed because she cannot state a prima facie case, because
Deutsche Bank had legitimate, nondiscriminatory reasons for its actions, and because Esposito
has offered no evidence of pretext.

Esposito cannot state a prima facie case because she cannot satisfy the second element –
i.e., that she was qualified for the job for which she applied. As explained in greater detail
above, Passiatore and Richards were better performers and had more expertise and experience
than Esposito. While Passiatore and Richards had significant tax-related prior work experience
and had developed the skills necessary for their specialized positions, Esposito was hired for a
less specialized position that required a less specialized skill set. Simply put, Deutsche Bank
believed that Passiatore and Richards were more qualified and more deserving of the promotion
to Vice President than Esposito was. The wisdom behind Bank's decision may not now be
second-guessed, and Esposito's conclusory allegations that she was qualified for a promotion to
Vice President are insufficient to state a prima facie case. See Mark v. Mount Sinai Hosp., 85
F.Supp.2d 252, 261 (S.D.N.Y. 2000) (granting defendants' motion for summary judgment where
plaintiff "failed to offer more than conclusory allegations to show that she was qualified for the

O'MELVENY & MYERS LLP
Ms. Stella Yamada, April 30, 2002 - Page 7

position"); Orisek v. American Inst. of Aeronautics and Astronautics, 938 F. Supp. 185, 192 (S.D.N.Y. 1996) (stating that in the failure to promote context, courts are "not permitted to second-guess the wisdom of ... [the employer's] selection").

Indeed, Esposito was struggling to succeed in the position she did hold. As explained above, while Esposito did a decent job with the "customer service" aspects of her job, she struggled with the "financial" aspects of her position and was not considered a good manager. Esposito's struggles in these areas are evidence of the fact that she was not qualified for a promotion. Moreover, even if Esposito now claims she was doing a perfectly good job, her own assessment of her performance fails to establish the second element of her prima facie case. See Brundage v. National Broadcasting Co., No. 90 Civ. 1730, 1994 WL 68502, *16 (S.D.N.Y. Mar. 2, 1994) (holding that plaintiff's stated disagreement with his performance appraisals and his contention that his work was satisfactory did not establish a prima facie case, which required plaintiff to show that he was satisfying his employer's legitimate expectations).

In any event, even if Esposito could state a prima facie case, Deutsche Bank had legitimate, nondiscriminatory reasons for its actions sufficient to rebut the prima facie case, and Esposito has offered no evidence of pretext. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (holding that if the employer articulates a legitimate, nondiscriminatory reason for its challenged action, then plaintiff must come forward with evidence demonstrating that the reason is pretextual and that her protected trait was the real reason for the action). Specifically, the Bank decided to promote Passiatore and Richards for the reasons outlined above – i.e., Passiatore and Richards had more technical and better-developed skill sets while Esposito struggled with the financial aspects of her job, she was not considered a good manager, and she did not take initiative on new projects or abide by deadlines set for satisfying certain performance objectives. Esposito's mediocre job performance relative to the performance of other employees unquestionably constitutes a legitimate, nondiscriminatory reason for the Bank's refusal to promote her. See Evans v. Port Authority of New York and New Jersey, No. 00 Civ. 5753, 2002 WL 518640, *17 (S.D.N.Y. Apr. 5, 2002); see also Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (recognizing that job performance and relative qualifications are "widely recognized as valid, nondiscriminatory bases for any adverse employment decision").

In addition to the fact that Esposito cannot base her claim on her own assessment of her performance, Esposito cannot satisfy her burden of showing that the Bank's proffered reasons in support of its decisions were pretextual by relying on her own perception of her qualifications. See, e.g., Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996) (affirming summary judgment for defendant where plaintiff based her failure to promote claim solely on her own perception of her ability and qualifications, where the facts supported the decision at issue); Terry v. United States, No. 98 Civ. 8249, 2000 WL 204552, *5 (S.D.N.Y. Feb. 18, 2000) (granting summary judgment on plaintiff's failure to promote claim where plaintiff relied on his subjective belief about the superiority of his qualifications to show pretext); Cardozo v. Healthfirst, Inc., No. 98 Civ. 3050, 1999 WL 782546, *6 (S.D.N.Y. Sept. 30, 1999) (same);

Owens v. Waldorf-Astoria Corp., No. 92 Civ. 4561, 1997 WL 251556, *3 (S.D.N.Y. May 13, 1997) (same).

For these reasons, Esposito's failure to promote claim should be dismissed.

### 2.    Unequal pay

To state a prima facie case of unequal pay under Title VII, Esposito must show that (1) she is a member of a protected class; and (2) she was paid less than non-members of her class for work requiring substantially the same responsibility. See Belfi v. Prendergast, 191 F.3d 129, 139 (2d Cir. 1999). In addition, Esposito must also produce evidence of discriminatory animus. See Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995).

Esposito cannot state a prima facie case because she was not paid less than non-members of her class for work requiring substantially the same responsibility. Although Esposito's salary was approximately $5,000 less than the salary earned by Passiatore and Richards before their promotions, neither Passiatore nor Richards was employed in a position similar to the position Esposito held. Passiatore worked with international payroll issues, and Richards worked with international employee relocations. Both of their positions required technical tax skills, while Esposito's position did not. For this reason alone, Esposito cannot use either of their compensation rates as the basis for an unequal pay claim. See, e.g., Wright v. Milton Paper Co., No. 99 CV 5724, 2002 WL 482536, *8-9 (E.D.N.Y. Mar. 26, 2002) (granting defendant's motion for summary judgment on unequal pay claim where plaintiff's job responsibilities were not substantially similar to those employees with whom she compared herself); Cruse v. G & J USA Publ'g, 96 F.Supp.2d 320, 326-27 (S.D.N.Y. 2000) (same).

In any event, even if Esposito could state a prima facie case, Deutsche Bank had legitimate, nondiscriminatory reasons for this disparity. Specifically, while it is true that Passiatore's and Richards's salaries were higher than Esposito's, both Passiatore and Richards were hired with more specialized skills and experience than Esposito. Moreover, Esposito's allegation that Passiatore and Richards received annual increases that were higher than her annual increases because they were younger lacks merit. Passiatore's and Richards's salary increases were higher than Esposito's for one legitimate, nondiscriminatory reason – they were top rated performers who had exhibited an ability to lead by example. See Sobol v. Kidder, Peabody & Co., Inc., 49 F.Supp.2d 208, 220 (S.D.N.Y. 1999) (stating that performance disparities is a legitimate, nondiscriminatory reason for pay differentials).

For these reasons, Esposito's unequal pay claim should be dismissed.

### B.    Esposito's Hostile Work Environment and Constructive Discharge Claims Are Meritless

Esposito alleges that she was subjected to a series of age-based comments that created a hostile work environment and forced her to resign. Neither Esposito's allegation that she was

subjected to a hostile work environment nor her allegation that she was constructively discharged has any merit.

To state a prima facie case of hostile work environment, Esposito must establish that her work environment was permeated with "discriminatory intimidation, ridicule and insult" that was "sufficiently severe or pervasive so as to alter the conditions of [her] employment." Meritor Savings Bank v. Vinson, 477 U.S. 57, 65, 67 (1986) (cited by Nacinovich v. Tullett & Tokoyo Forex, Inc., No. 107778/96, 1998 WL 1050971, *3 (N.Y. Sup. Ct. May 18, 1998)). Moreover, isolated acts or occasional incidents are insufficient to state a prima facie case. See Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992); Engstrom v. Kinney Sys., Inc., 661 N.Y.S.2d 610, 613 (N.Y. App. Div. 1997). By any measure, Esposito's claim falls far short of meeting this standard.

The only comments Esposito specifically alleges in her charge in support of her claim that she was subjected to a hostile work environment based on her age are: (1) an alleged comment by Dall in June 1999 – "You don't have your feet in too deep yet; why don't you consider leaving"; (2) an alleged comment by Dall when an employee in her 50's left the Bank that it was just as well that the employee left because she was older and resistant to change; (3) an alleged comment by Dall that Esposito should not seek assistance from another member of the Human Resources Department; and (4) an alleged comment by Dall that Esposito had mishandled a conversation with one of her staff members. Even if all of these comments were made – a fact that the Bank does not admit and indeed disputes – Esposito cannot state a claim of hostile work environment for several reasons.

First, the overwhelming majority of the alleged comments had nothing whatsoever to do with age. As such, Esposito cannot establish that she was subjected to a hostile work environment because of her age. Second, even assuming, arguendo, that the comments identified by Esposito in her charge were made, four isolated comments made over an extended period of time certainly do not render the work environment "permeated" with "discriminatory intimidation, ridicule, and insult" as is required to state a prima facie case. See Kotcher, 957 F.2d at 62. Finally, Esposito's conclusory assertion that Dall engaged in an ongoing campaign of abuse is insufficient to satisfy her burden. See Sinopoli v. Regula, No. 97-7229, 1997 WL 624987, *2 (2d Cir. Oct. 9, 1997).

Esposito's constructive discharge claim fails for similar reasons. In order to state a claim of constructive discharge, Esposito must show that the Bank intentionally created an intolerable atmosphere in the workplace that forced her to quit involuntarily. See Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996). In general, working conditions are sufficiently intolerable if they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987). Esposito has not, and cannot, satisfy this standard. It is well settled that scrutiny of job performance and denials of promotions and raises do not give rise to a claim of constructive discharge. See Spense v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993) ("constructive discharge cannot be proven merely by evidence that an employee disagreed with the employer's

O'MELVENY & MYERS LLP
Ms. Stella Yamada, April 30, 2002 - Page 10

criticisms of the quality of his work, or did not receive a raise, ...."); see also Ternullo v. Reno, 8 F.Supp.2d 186, 193 (N.D.N.Y. 1998).

For these reasons, Esposito's hostile work environment and constructive discharge claims should be dismissed.

C.    **Esposito's Retaliation Claim Is Meritless**

Esposito alleges that she was retaliated against by Dall after she complained to another member of the Human Resources Department about another employee's conduct in the workplace. Specifically, she alleges that Dall yelled at her, gave her a lower performance evaluation, and gave her a lower bonus and raise. Once again, Esposito fails to satisfy the applicable legal standard.

To state a prima facie case of retaliation under Title VII, Esposito must show: (1) that she participated in a protected activity known to Deutsche Bank; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. See McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001); Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996); Kotcher, 957 F.2d at 64. Esposito's claim should be dismissed for the same reasons her other allegations should be dismissed – i.e., she cannot state a prima facie case, the Bank had legitimate, nondiscriminatory reasons for its actions, and Esposito has offered no evidence of pretext.

Specifically, Esposito cannot state a prima facie case of retaliation because she cannot satisfy the second or third elements. First, being yelled at by a supervisor (assuming this allegation were true – a fact the Bank denies) and criticism of an employee's performance (even through a performance evaluation) are not adverse employment actions sufficient to satisfy the second element of the prima facie case. See, e.g., Katz v. Beth Israel Med. Ctr., No. 95 Civ. 7183, 2001 WL 11064, *14 (S.D.N.Y. Jan. 4, 2001) ("Being yelled at, receiving unfair criticism, ... do not rise to the level of adverse employment actions ...."); Pellei v. International Planned Parenthood Fed'n/Western Hemisphere Region, Inc., No. 96 CIV, 7014, 1999 WL 787753, *12 (S.D.N.Y. Sept. 30, 1999) (stating that negative performance evaluations do not constitute adverse employment actions). Moreover, and in any event, Esposito cannot show, nor has she alleged other than in conclusory fashion, that a causal connection exists between her alleged protected activity and any alleged adverse employment action.

Nevertheless, even if Esposito could state a prima facie case of retaliation, Deutsche Bank had legitimate, nondiscriminatory reasons for its decisions, and Esposito has offered no evidence that such reasons were a pretext. See Kotcher, 957 F.2d at 64-65. As explained in greater detail above, Esposito was not promoted and received lower compensation adjustments than several younger employees because of her inferior performance.

For these reasons, Esposito's retaliation claim should be dismissed.

O'MELVENY & MYERS LLP
Ms. Stella Yamada, April 30, 2002 - Page 11

*      *      *

We hope and trust that the foregoing answers any questions you may have regarding Esposito's allegations. To the extent that you have further questions or need any additional information, however, please feel free to contact me at your convenience.

Very truly yours,

Shari P. Steinberg
for O'MELVENY & MYERS LLP

cc:    Cliff Fonstein, Esq.

CHAO & EDELSON L.L.C.
230 Park Avenue
New York, N.Y. 10169-0069

Telephone: (212) 867-4754
Facsimile: (212) 867-4755

February 25, 2005

Ms. Esther Gutierrez
Investigator
United States
Equal Employment Opportunity Commission
33 Whitehall Street, 5th floor
New York, NY 10004

Re:     *Gina Esposito v. Deutsche Bank AG – EEOC Charge No. 160-A2-00619*

Dear Ms. Gutierrez:

This will constitute charging party Gina Esposito's reply to respondent's position statement in the above-referenced charge.[1]  This statement will serve to reaffirm the charge of discrimination that was filed with your office on February 6, 2002 alleging violations of Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act ("Title VII"), and unlawful retaliation. Ms. Esposito claims that Deutsche Bank AG ("The Bank") failed to promote her due to age discrimination, paid her less than younger employees to do substantially the same work, subjected her to a hostile work environment, constructively discharged her, and retaliated against her for complaining about what she reasonably believed to be a subordinate's discriminatory harassment.

Specifically, in 2001, Joanne Passiatore ("Passiatore") and Dan Richards ("Richards"), fellow, younger[2] managers of Ms. Esposito's in the International Services Department, received bonuses of $55,000 and salary increases of $20,000 (23%) each. In contrast, Esposito received a bonus of $30,000 and an increase of $3,000 (3.75%). John

---

[1] Although the position statement was filed quite some time ago, charging party only recently became aware of it.

[2] Ms. Esposito is 50 years old.  Ms. Passiatore is about 34 and Mr. Richards is believed to be 37 years old.

Dall ("Dall"), Department Supervisor, promoted both Passiatore and Richards to Vice President in April 2001 while Esposito was not promoted. Even after Passiatore's and Richards' promotions, all three managers continued to perform similar functions as they had when hired.

The Bank, in its position statement, claims that charging party cannot establish a prima facie case under either the ADEA or Title VII, and that the Bank had legitimate, nondiscriminatory reasons for all of its actions. Respondent states that the Bank had legitimate reasons for the disparity of treatment among the Managers because Esposito allegedly had limited experience, handled only domestic relocations, did not have technical tax skills, struggled with parts of her job, and had problems with her management style. Each of these statements is incorrect.

Esposito maintains that she encountered discriminatory treatment conducted by her supervisor, Dall, that her avenues of redress were limited, and lastly, that she was constructively discharged as the working conditions were so intolerable that a reasonable person in her position would have felt compelled to resign.

Dall's discriminatory comments were berating, hostile, frequent, severe, and pervasive. Shortly after Dall assumed his managerial position, he told Esposito that she "didn't have her feet in too deep yet" and asked why she didn't consider leaving, despite the facts that Esposito had worked with the Bank for a year and a half as a consultant in Expatriate Outsourcing and received two excellent appraisals, in April 1998 and April 1999. When a colleague in her 50's left the Human Resources Department, Dall said that this was just as well because she too was "older" and "resistant to change". When Esposito reasonably believed that one of her subordinates was acting in a sexually harassing manner that potentially created an intimidating and offensive working environment counter to corporate policy (and to law), she reported her concerns to Dall. Dall responded, "you hired her and she is your problem". When Esposito followed corporate procedure by meeting with the Human Resources Manager, Leslie Garfield, to obtain guidance regarding the situation, Dall berated Esposito by stating "don't you dare ever speak to Leslie about anything. I don't ever want to see you in her office or hear from anyone that you have been in there". Dall created an atmosphere that was discriminatory, foreclosed avenues to report said discrimination, retaliated against Esposito when she reported discrimination to others, and constructively discharged Esposito by creating intolerable work conditions.

## FACTUAL BACKGROUND

1. <u>Managers' Background</u> –

Prior to joining the Bank, Esposito had worked with Arthur Andersen as the department administrator in its tax department. Her functions included working with client budgets, staffing for international services, and maintaining the tax library. Esposito worked as a consultant with the Bank from March 1998- June 1999 in International Relocations as a Global Relocation Coordinator. She reported to two senior

consultants who in turn reported to Bernadette Whitaker ("Whitaker"), the Director of Human Resources, Shared Services. Whitaker agreed to hire Esposito as a full time employee pending the appointment of a department head, John Dall ("Dall").

In June 1999, Dall met with Esposito and told her she would be paid a base salary of $75,000. At the time, Esposito was 44 years old (Dall is younger than she). Respondent's position statement incorrectly identifies Dall as hiring Esposito, when in fact Whitaker had agreed to hire Esposito and Dall merely carried out his immediate supervisor's direction to instate Esposito.

Dall did bring in two former colleagues of his, Passiatore and Richards, to complete the management team of this newly organized department. There were no internal postings or interviews conducted for these positions. Passiatore was about 29 years old and Richards about 32 at the time.

Previously, Passiatore had worked for Salomon Smith Barney in the International Tax Department as a payroll clerk earning approximately $60,000. Dall also worked at Salomon Smith Barney. Respondent states, "Passiatore was hired for her highly-specialized position based on her prior work history and international tax skill set." However, Passiatore's background was as a payroll clerk, which undercuts the proposition that she had developed an international tax skill set.

All three managers, Esposito, Passiatore, and Richards were hired at similar salary levels and at the same grade. (Esposito at $75,000 and Passiatore and Richards at $80,000 each).

2.    Management Experience –

Charging Party believes both Passiatore and Richards lacked any prior management experience in their former capacities. However, Esposito had management experience at Arthur Andersen and had supervised three employees at the Bank; Jessica Mailman (an Arthur Andersen staff person working as a consultant for the Bank), Sharon Lutzi, a relocation coordinator and Kathyrn Baldwin, a relocation assistant. Esposito was also involved in hiring two of these employees. On the other hand, Passiatore and Richards only supervised one person each before their 2001 promotion.

3.    Job Responsibilities -

Respondent states that both Passiatore and Richards were strategic in their positions and therefore were entitled to promotion over Esposito. "Passiatore crafted proposals for improving operations and handling consolidations and that Richards develops new plans and programs/participates in setting and meeting goals for new operational functions." However, Esposito also submitted numerous proposals to restructure the relocation department but never received any feedback. These proposals were totally ignored by her supervisor, Dall.

Esposito received praise for her work. In Esposito's 2000 appraisal Dall states that, "Esposito was experiencing several problems with the outsource of the expense management. She approached me about bringing the responsibility in house based on her assessment that the work could be done better and more effectively by her team...Gina worked very hard and even weekends to implement. In so much as she accomplished what she set out to do she did a great job." In the same appraisal Dall writes that, "Esposito has done an excellent job with the initiatives of switching the corporate temp housing vendor and domestic national provider. She works extremely well with vendors in outlining acceptable performance, negotiating fee arrangements, and setting up the billing process. I have heard numerous compliments on the temp housing selection and coordination of Esposito." Regarding the consolidation of vendor billing Dall stated that, "Esposito has worked with the vendors to adapt their invoicing in a manner that would add value to the Bank. She accomplished this project expertly and should be applauded for the improvement that will benefit the function in the future as well as in the current situation." It was stated that Richards developed a new set of standard procedures, but Esposito did likewise by revising the policy of domestic relocation guidelines.

Respondent states that promotions were warranted for Passiatore and Richards because "their positions required technical tax skills, while Esposito's did not. Passiatore worked with international pay issues and Richards worked with international employee relocations." However, Esposito's position also required knowledge of tax issues; for instance, she was responsible for reporting various taxable/nontaxable expenses and for providing information contained in year-end W-2s (which were then issues by the payroll department). Esposito's predecessor (Jeanne Cooney) reported some of these expenses incorrectly, giving employees a double benefit of a deduction on personal taxes as well as a reimbursed corporate benefit. Esposito attended a Hessel seminar and thereafter she used tax relocation software to prevent double deductions from occurring. Employee expenses regarding taxable versus non-taxable itemizations were coded and sent to payroll. Esposito's responsibilities included reporting, consistent with legal requirements/IRS, all relocation costs to payroll at year end for inclusion on W-2 forms.

It was stated in respondent's position statement that Richards' responsibility was for international relocations concerning international policies and procedures as well as simpler tasks of managing housing and school arrangements. However, Esposito also had responsibility for international relocations and did not only work on domestic relocations as stated in respondent's statement. The department was International Services and Esposito had responsibility for planning and managing Domestic and International relocations of Inpatriates, ISE's, Expatriates and new hires.

4. Appraisals -

Respondent claims there is a discrepancy in performance appraisals since both Passitore and Richards received a rating of 2 "High Achiever – performance consistently exceeds expectations" while Esposito received a 3 "Fully meets and, at times, exceeds expectations of the role; a valued team member". Respondent's statement acknowledges that Esposito satisfactorily performed the customer service aspects of her job but claims

Ms. Esther Gutierrez                     – 5 –                     February 25, 2005

she struggled with the "financial" part of her job. However, as previously stated Esposito ran the tax relocation software and submitted information to payroll in a timely manner. Esposito had additional responsibility for clearing up years of backlogged expenses, a responsibility her counterparts did not have. Also, prior to the acquisition of Bankers Trust, Esposito was responsible for the payment of all relocation bills (including writing checks and maintaining and balancing a checking account), reconciling accounts, uploading information to the general ledgers, and paying and tracking contingent signing bonuses to new hires, none of which were duties of her counterparts. As stated by respondent, a rating of 3 cannot be viewed as "average" when equated with "Fully meets and, at times, exceeds expectations of the role; a valued team member". In addition, Esposito believes the ratings themselves were discriminatory as she was not fully credited for the work she performed.

### CONCLUSION

The Bank failed to promote Esposito due to age discrimination, paid her less than younger employees to do substantially the same work, subjected her to a hostile work environment, constructively discharged her, and retaliated against her for complaining about what she reasonably believed to be discrimination. The Bank did not have legitimate reasons for the disparity of treatment. Esposito had comparable prior experience, handled both international and domestic relocations, had responsibility for tax issues, her management style was professional, and lastly, did not struggle with the financial aspects of her job but had added responsibilities that other managers did not have.

If you have further questions, or require additional information, please feel free to contact me.

Very truly yours,

Christopher P. Edelson