J. Patrick DeLince
DELINCE LAW PLLC
44 Wall Street, 10th Floor
NewYork, New York 10005
Tel: 212 710-9512
Fax: 212 710-9513
jpd@delincelaw.com
Attorneys for Plaintiff

<table>
<tr><td colspan="2" align="center"><strong>IN THE UNITED STATES DISTRICT COURT<br>FOR THE SOUTHERN DISTRICT OF NEW YORK</strong></td></tr>
</table>

| | |
|---|---|
| GINA ESPOSITO,<br><br>      Plaintiff,<br><br>     -against-<br><br>DEUTSCHE BANK AG,<br><br>      Defendant. | **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**<br><br><br><br>Case No. 07 CV 6722 (KMK) (AJP) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT

J. Patrick DeLince
DELINCE LAW PLLC
(Bar Roll No. JD5795)
44 Wall Street, 10th Floor
New York, New York 10005
Tel: 212 710-9512
Fax: 212 710-9513
Attorneys for Defendants

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

**NATURE OF ACTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### ARGUMENT

**I.     THE COMPLAINT STATES A CLAIM FOR FAILURE TO PROMOTE,
        UNEQUAL PAY, AND RETALIATION IN ADDITION TO HOSTILE
        WORKPLACE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**II.    GINA ESPOSITO'S STATE AND CITY CLAIMS ARE NOT TIME-
        BARRED BECAUSE SHE FILED A TIMELY COMPLAINT WITH THE
        EEOC AND THE STATE AND CITY STATUTES ARE TOLLED PENDING
        AN EEOC INVESTIGATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**III.   GINA ESPOSITO'S FEDERAL ADEA & VII RETAILITORY CLAIMS ARE
        NOT TIME-BARRED BECAUSE THE DISCRETE ACTS FALL WITHIN
        THE 300 DAY WINDOW AND ANY PREVIOUS ACTS ARE EVIDENCE
        OF A HOSTILE WORK PLACE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## **TABLE OF AUTHORITIES**

### Supreme Court of the United States

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) …...........................................6

Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980) ……………………………..16

Ledbetter v. Goodyear Tire & Rubber Co., 127 Sup. Ct. 2162 (2007) ……………...........17

### Circuit Court of Appeals

Harris v. City of N.Y, 186 F.3d 243, 248 n.3 (2d Cir. 1999) …………………………… 12

### District Courts

Aukstolis v. AHEPA, 2007 Dist. LEXIS 32984 (Dist. Conn, 2007) …………………….13

Berkoski v. Ashland Regional Medical Center, 951 F. Supp. 544 (Mid. D. PA 1997)…13

Kearny v. ABN Ambro, Inc., No. 04 Civ. 06885, 2006 U.S. Dist. LEXIS 56705
(S.D.N.Y. Aug 10, 2006) …………………………………………………………………… 12

Kelley v. Camolaur, 1990 U.S. Dist. LEXIS 8797 (W. D. Miss. 1990) ……………….. 13

Lee v. Overseas Shipholding Group, Inc., 2001 WL 849747, at *8 (S.D.N.Y. July 30,
2001) …………………………………………………………………………………..9, 11

Ochei v. Coler/Goldwater Memorial Hospital, 2006 WL 2589202 (S.D.N.Y., 2006) … 8

Sharpe v. American Express Co., 689 F. Supp. 294, 297-299 (S.D.N.Y. 1988) … ……16

Solon v. Kaplan, 2001 U.S. Dist. LEXIS 1384, (N.D. Ill. 2001) ………………….. …..13

Sundaram v. Brookhaven National Labratories, 424 F. Supp. 2d 545 (E.D.N.Y. 2006) …
……………………………………………………………………………………………… 10,11

Wells Fargo v. Lehman, 799 So. 2d 252 (Ct. of App. FL, 3rd Dist. 2001) ……………… 13

### New York State

Farrugia v. North Shore University Hosp., 820 N.Y.S.2d.718 (N.Y.S.Ct., 2006) ……. 8

Jordan v. Bates Advertising Holdings, Inc., 11 Misc. 3d 764, 816 N.Y.S. 310 (N.Y.S.Ct, 2006) …………………………………………………………………………….. 8

Leavy v. New York City Transit Auth., 814 N.Y.S.2d 891 (Sup. 2006) …………….. 10

Martinez-Tolentino v. Buffalo State College, 715 N.Y.S. 2d 554, 277 A.D.2d 899 (4th Dep't 2000) …………………………………………………………………………. 9
10,11

## Congressional Bills

"Fair Pay Restoration Act," S. 1843 IS (110th Congress, 1st Session) ……………….. 15

## New York State Law

New York State Executive Law §290 et seq. …………….……………………………… 7

## New York City Law

New York Administrative Code §8-101 et seq., N.Y.C. Local Law No. 85 of 2005 …..7

## Law Review Articles

Gurian, Craig, A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights Law, 33 Fordham Urban Law J. 255 [2006] ………………………8

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

**NATURE OF ACTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## ARGUMENT

I.    **THE COMPLAINT STATES A CLAIM FOR FAILURE TO PROMOTE, UNEQUAL PAY, AND RETALIATION IN ADDITION TO HOSTILE WORKPLACE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   **GINA ESPOSITO'S STATE AND CITY CLAIMS ARE NOT TIME-BARRED BECAUSE SHE FILED A TIMELY COMPLAINT WITH THE EEOC AND THE STATE AND CITY STATUTES ARE TOLLED PENDING AN EEOC INVESTIGATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  **GINA ESPOSITO'S FEDERAL ADEA & VII RETAILITORY CLAIMS ARE NOT TIME-BARRED BECAUSE THE DISCRETE ACTS FALL WITHIN THE 300 DAY WINDOW AND ANY PREVIOUS ACTS ARE EVIDENCE OF A HOSTILE WORK PLACE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

## NATURE OF ACTION

DEUTSCHE BANK AG ("DEUTSCHE BANK"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeks partial dismissal of certain factual allegations contained in plaintiff's Complaint, which DEUTSCHE BANK claims fails to state a claim upon which relief may be granted; namely, three alleged acts contained in paragraphs 71, 75 and 78 of the Complaint. Those paragraphs refer to actions involving a certain bonus pay and a conversation GINA ESPOSITO had with John Dall, her supervisor, concerning advancement at DEUTSCHE BANK. Further, DEUTSCHE BANK seeks to dismiss GINA ESPOSITO's New York State Human Rights Law ("State Law") and New York City Human Rights ("City Law") claims.

In 1999, GINA ESPOSITO was hired as an Assistant Vice-President/Relocation Manager in DEUTSCHE BANK's International Service Department, within its Human Resources Department, which was managed by a newly installed manager, John Dall. From the very beginning of her employment within the International Service Department, John Dall commenced, as more fully described in the Complaint, an unceasing discriminatory campaign of "gaslighting" GINA ESPOSITO with respect to her age and in retaliation for her having reporting a potential harassment issue concerning a female subordinate towards male colleagues.

DEUTSCHE BANK asserts in its motion that the discrete acts referenced above occurred before April 14, 2001 (300 days before filing her charge with the EEOC) and, therefore, GINA ESPOSITO's failure to promote, compensation and retaliation claims are time-barred under Federal, State, and City Laws, although DEUTSCHE BANK concedes that her hostile work environment claims survive.

GINA ESPOSITO rejects DEUTSCE BANK's assertions and argues that the statutes of limitation on her State and City Law claims were tolled pursuant to the language of the statutes, decisional law interpreting such statutes, her reasonable expectations in filing her charge with the EEOC and for purposes of judicial economy. Further, GINA ESPOSITO rejects the assertion that her disparity in compensation, failure to promote and retaliation claims are time-barred. It is important to highlight that there are two factual acts of unequal compensation: 1) bonus pay received by her colleagues and 2) promotion pay increases received by her colleagues. As to the former, GINA ESPOSITO is unable to pin-point the exact date upon which she leaned about the bonuses, however believes it to be in April 2001, and as to the latter, she definitively would not have become aware of salary increases prior to learning about her colleagues promotion on April 18, 2001. Further, the knowledge that GINA ESPOSITO gained after the 18th of April also triggers her failure to promote and retaliation claims; and, therefore, those claims survive.

THE COMPLAINT

GINA ESPOSITO sets forth in her Complaint, filed on July 26, 2007, three causes action against DEUTSCHE BANK: (1) an Age Discrimination Claim under federal (ADEA) , New York State and City statutes, (2) a Failure to Promote Claim  under federal (ADEA), New York State and City Statutes, and (3) a Hostile Work Environment Claim under Federal (ADEA & Title VII), New York State and City Statutes.

In 1999, after having successfully worked for DEUTSCHE BANK as an outsourced consultant, GINA ESPOSITO was hired and placed by Director HR Shared Services, Bernadette Whitaker, as a full-time permanent employee with the title of

2

Assistant Vice President/Relocation Manager (Complaint ¶¶ 3, 21–31). This position was within DEUTSCHE BANK's newly staffed International Services Department, which was to be headed by John Dall (Complaint ¶¶ 32–33).

Throughout the entire period of her full-time permanent employment, that is from June 7, 1999 to May 3, 2001, GINA ESPOSITO was subjected to and experienced a hostile work environment at the hands of John Dall, who targeted her based on her age and who retaliated against her for reports made to Human Resources concerning a sexual harassment issue (Complaint ¶¶ 2, 20, 34, 60–65). Practically from the inception of her full-time employment at DEUTSCHE BANK, John Dall engaged in, what the Complaint more fully describes as "gaslighting" warfare. As the result of John Dall's actions, GINA ESPOSITO's work environment became ever increasingly more intolerable as John Dall engaged in both subtle and overt abuse in an attempt to hinder and diminish GINA ESPOSITO's work and, thereby, compel her to resign (Complaint ¶¶ 5, 35–83, 67–68).

In its Memorandum in Support of its Motion, DEUTSCHE BANK cites specific discrete acts alleged in the Complaint, which it claims are time-barred, concerning bonus increases received by GINA ESPOSITO's coworkers (Complaint ¶ 71) and a conversation that GINA ESPOSITO had with John Dall which left her with little hope for a meaningful professional future at DEUTSCHE BANK (Complaint ¶¶ 75, 78), as follows:

> 71.    Upon information and belief, Joanne Passiatore and Dan Richards each received salary increases of $20,000 each in 2001, whereas GINA Esposito received a salary increase of only $3,000 for that same year.

> 75.    In April 2001, GINA ESPOSITO discussed the promotions of Joanne Passiatore and Dan Richards with John Dall. He advised her that DEUTSCHE BANK's policy with regard to promotions was

based on future holds, not past performance or merit. GINA ESPOSITO reasonably understood this to mean, coming as it did from John Dall, that younger workers had a better future at DEUTSCHE BANK than did older workers.

78    Although GINA ESPOSITO inquired of John Dall regarding the possibility of future promotions for her at DEUTSCHE BANK, John Dall offered her no encouragement or hope that she would ever be promoted. Instead, Dall confirmed GINA ESPOSITO's belief that she would never be given any opportunity for advancement within DEUTSCHE BANK.

The retaliation claim under TitleVII stems from events beginning in August 2000, when GINA ESPOSITO approached John Dall to speak with him concerning behavior that she reasonably perceived to constitute sexual harassment by a female staff member against a male employee (Complaint ¶¶ 6, 60). John Dall was dismissive, told her she was exaggerating the situation and that, in any event, the problem was exclusively hers because she had hired the female employee in question (Complaint ¶¶ 6, 61). Thereafter, GINA ESPOSITO twice consulted with the newly installed responsible staff member in the Human Resources Department her concerns regarding the potential sexual harassment claim situation in her department and John Dall's reaction to her expressed concerns (Complaint ¶¶ 62–65). After each instance in which GINA ESPOSITO consulted with Human Resources staff, John Dall directed that GINA ESPOSITO have no further communication with the HR person concerning the issue and, in fact, GINA ESPOSITO felt physically threatened during the course of John Dall's second warning (Complaint ¶ 65). The discrete act supporting her retaliation and failure to promote claims occurred when John Dall promoted her coworkers and left GINA ESPOSITO behind. This discrete act was communicated to GINA ESPOSITO on April 18th, 2001, when the

promotions of her younger colleagues, as well as her non-promotion by default, were officially announced (Complaint ¶¶ 75, 76 ,78).

By May 2001, the conditions of her employment had become so intolerable that, under extreme duress, GINA ESPOSITO involuntarily terminated her employment with DEUTSCHE BANK, effective May 3, 2001.

GINA ESPOSITO filed her Charge of Discrimination with the EEOC on February 8, 2001. The Complaint states the filing date as February 6, 2001, which is an error that needs to be corrected (See, ¶ 88, Plaintiff's Exhibit C).[1] The EEOC sent GINA ESPOSITO a Right to Sue Notice on April 03, 2007.  In the six year interim, the EEOC left GINA ESPOSITO in a state of administrative limbo as a result of her case being considered for inclusion into a national age discrimination pattern and practice investigation against DEUSTSCHE BANK.

---

[1] The date of the 6th was initially noted in the Complaint since our office did not have a copy of the EEOC stamped copy. After a review of the file we noticed that the charge was mailed by FEDEX on Sunday the 7th and was received by the EEOC on the 8th.

## I.    THE COMPLAINT STATES A CLAIM FOR FAILURE TO PROMOTE AND UNEQUAL PAY, IN ADDITION TO RETALIATION AND HOSTILE WORKPLACE.

The Complaint adequately sets forth claims for failure to promote, unequal pay, and retaliation. In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court re-articulated the standard of review in a Rule 12(b)(6) motion to dismiss; however, the Court did not establish any significant changes in the ways in which pleadings are to be drafted. A complaint must set forth facts that possess enough "heft" to demonstrate that the pleader is entitled to relief. *Id.* at 1966. A pleading must give the defendant fair notice of the nature of the claims asserted and the facts upon the claims are based. *Id.* at 1965. In the instant case, the plaintiff has filed and served a detailed and extensive Complaint and, if all of the facts contained therein are taken as true, as they must be, the Complaint has set forth facts which, when proven, will entitled GINA ESPOSITO to relief. As will be further detailed, the only discrete act that *might* have preceded the April 14, 2001 date is GINA ESPOSITO's discovery of year-end bonus increases for her colleagues that were inferior to hers. She was "communicated" this information while paging through a bonus log. She is unable to pin-point the exact date of discovery, however believes it to be in April 2001. It is submitted that since this act is near to the other protected discrete acts (April 14, 2001) that discovery be permitted to proceed before the Court considers dismissal. Thus, DEUTSCHE BANK's motion should be not granted and DESUTSCHE BANK should be permitted to renew its application by way of motion for summary judgment post discovery.

**II.   GINA ESPOSITO'S STATE AND CITY CLAIMS ARE NOT TIME-BARRED BECAUSE SHE FILED A TIMELY COMPLAINT WITH THE EEOC; THEREFORE, THE STATE AND CITY STATUTES ARE TOLLED PENDING AN EEOC INVESTIGATION.**

When GINA ESPOSITO filed her Charge with the EEOC, she filled out a pre-printed EEOC form entitled *Charge of Discrimination* (the "Charge"), which stated in bold-face lettering above the place reserved for her signature, the following:

> "I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of may a charge in accordance with their procedures."

Thus, it is fair to suggest that GINA ESPOSITO assumed her EEOC Charge would be filed not only with EEOC but, also, with all appropriate State and City agencies. GINA ESPOSITO would not reasonably have assumed in signing the Charge form which contained the above-referenced bold type-face statement that she was signing and submitting some sort of imaginary or fictional filing with respect to her State and City Law protected statutory claims.

Aside from her reasonable expectations based upon the wording of the EEOC Charge form, GINA ESPOSITO asserts that the EEOC filing should be practically and logically interpreted as tolling the statutes of limitations on her State and City Law protection claims based on the statutes in question, authoritative New York case law interpreting the same and for reasons of judicial economy of resources.

In addition to her federal claims, GINA ESPOSITO brings claims under both the discrimination provisions of New York State Executive Law §290 *et seq.* and New York Administrative Code §8-101 *et seq.* Both the State and City discrimination laws enjoy a three-year statute of limitation (see, §214 (2) and §8-502 (d), respectively). In its motion

pursuant to Rule 12(b)(6), DEUTSCHE BANK seeks to dismiss GINA ESPOSITO's

State and City Law claims.

While DEUTSCHE BANK correctly asserts that claims arising under NYSHRL

and the NYCHRL are governed by a three-year statute of limitation, which is measured

from the filing of the action in court, it ignores the tolling provisions of the statutes. In

particular, section 8-502 (d) of the City Laws provide that upon the filing of a complaint

with the city commission on human rights or the state division of human rights, the

statute of limitation is tolled, as follows:

> § 8-502 (d) Civil action by persons aggrieved by unlawful discrimin-
> atory practices.
>
> d. A civil action commenced under this section must be commenced
> within three years after the alleged unlawful discriminatory practice
> or act of discriminatory harassment or violence as set forth in
> chapter six of this title occurred. Upon the filing of a complaint with
> the city commission on human rights or the state division of human
> rights and during the pendency of such complaint and any court
> proceeding for review of the dismissal of such complaint, such three
> year limitations period shall be <u>tolled.</u> *Emphasis added*[2]

---

[2] Although section 8-502 was not addressed in the recent amendments of the New York City
discrimination laws, it is worth noting that on October 3, 2005, the New York City Council
passed N.Y.C. Local Law No. 85 of 2005 (the "Restoration Act"), which sought to address
judicial failings in the interpretation of the discriminatory provisions under the City Human
Rights Laws. The Restoration Act sets forth in clear and unambiguous language that the
discrimination laws of the City were not to be strapped to the federal court's interpretations of
federal discrimination laws. The construction provisions of the law state that the Restoration Act
is to be "construed liberally for the accomplishment of the uniquely broad and remedial purposes
thereof, regardless of whether the federal or New York State civil or human rights laws, including
those laws with provisions comparably-worded to provisions of this title, have been so
construed." N.Y.C. Local Law No. 85 of 2005; *see also* Gurian, Craig, *A Return to Eyes on the
Prize: Litigating Under the Restored New York City Human Rights Law,* 33 Fordham Urban L. J.
255 [2006]. Over the past two years, both federal and state courts have taken notice and
acknowledged the wishes of the New York City Council. *See Farrugia v. North Shore
Univ.Hosp.,* 820 N.Y.S.2d.718 (N.Y. Sup. Ct. 2006) and *Jordan v. Bates Adver. Holdings, Inc.,* 11
Misc. 3d 764, 816 N.Y.S.2d 310 (N.Y. Sup.Ct 2006), the New York City Human Rights law was
intended to be more protective than its State and federal counterparts. *See also Ochei v.
Coler/Goldwater Memorial Hosp.,* 2006 WL 2589202 (S.D.N.Y. 2006), in which the court held
that New York City law is to be construed independently from identical provisions of New York
State law and federal law.

The New York State Human Rights Law also provides for a three-year statute of limitation. C.P.L.R. 214(2) provides that for actions which predicate liability on a statute, there exists a three-year statute of limitations. However, the three-year statute of limitations period shall be tolled during any period during which a governmental commission is investigating a claimed violation of such relevant statute. *Martinez-Tolentino v. Buffalo State Coll.*, 715 N.Y.S. 2d 554, 277 A.D.2d 899 (4th Dep't 2000).

Furthermore, the EEOC and the City and State agencies have entered into what is known as a Worksharing Agreement (the "Agreement").[3] For example, the current Agreement between the EEOC and the New York State Division of Human Rights facilitates the assertion of employment rights because the filing of a complaint with one investigative agency automatically initiates the proceedings in the other, as follows:

> Charges that are timely received in the New York State Division of Human Rights, whether in person or by mail, and jurisdictional with the EEOC will be *automatically dual-filed with the EEOC and vice versa.* The date the charge was received will be the date of filing. (emphasis added).

*See* DEUTSCHE BANK's Exhibit D regarding Section II, B of the Agreement.

Both New York Federal and State cases have interpreted this automatic dual-filing as tolling their respective statutes of limitations. *See Lee v. Overseas Shipholding Group, Inc.*, 2001 WL 849747, at *8 (S.D.N.Y. July 30, 2001) (NYSHRL and NYCHRL are each governed by a three-year statute of limitations and the statutes of limitations are

---

[3] DEUTSCHE BANK provides an extensive analysis of the Agreement, by way of section 706(c) and (e); however, it fails to demonstrate that there are any prohibitions under New York federal, state or local laws prohibiting the interpretation of the Agreement as accomplishing the state and local administrative filing requirements for purposes of "comity and efficiency." Further, DEUTSCHE BANK concedes that there are no Second Circuit cases interpreting the interplay between the Agreement and the State and City statutes.

tolled during the period in which a complaint is filed with the New York State Division of Human Rights or with the EEOC) (citations omitted)..

In *Sundaram v. Brookhaven Nat'l Labs*, 424 F. Supp. 2d 545 (E.D.N.Y. 2006), the court determined that although the three-year statute of limitations is applicable to the Human Rights Law, the statute of limitations is tolled during the pendency of any complaint that is filed with the New York Department of Human Rights. Furthermore, "because complaints filed with the EEOC are deemed constructively filed with the NYDHR, the (New York State and City) statute(s) (are) also tolled during the pendency of a claim filed with the EEOC." *Id.* at 565. In *Sundaram*, the court determined that as the result of the tolling provisions of New York law, the New York statutes of limitations are tolled from the time an individual files a complaint with the EEOC until the EEOC issues a right to sue. *Id.* at 566. *See also Leavy v. New York City Transit Auth.*, 814 N.Y.S.2d 891 (N.Y. Sup. Ct. 2006) (stating that it is well-settled that the three-year statute of limitations for a claim under Executive Law 296 is tolled during the pendency of a complaint filed with the EEOC).

In *Martinez-Tolentino v. Buffalo State Coll.*, 715 N.Y.S. 2d 554, 277 A.D.2d 899 (4th Dep't 2000), the appellate court held that the filing with the EEOC tolled NYSHRL:

> The ADA has a 300-day Statute of Limitations *(see, 42 USC § 2000e-5 [e] [1])*, and the Human Rights Law has a three-year Statute of Limitations *(see, CPLR 214 [2])*. Because the Statute of Limitations for the Human Rights Law is tolled during the pendency of a complaint filed with the New York State Division of Human Rights *(see, Penman v Pan Am. World Airways, 69 NY2d 989)*, the limitations' period was tolled beginning May 28, 1998, the date on which plaintiff filed his complaint with the Equal Employment Opportunity Commission (EEOC) *(see, CPLR 204 [a]; Sunshine v Long Is. Univ., 862 F Supp 26, 30* [charge filed with EEOC is deemed filed with State Division of Human Rights]). [***3]

Because complaints filed with the EEOC are deemed constructively to be cross-filed with the NYSDHR and NYCDHR, the statute is also tolled during the pendency of a claim filed with the EEOC. (*Sundaram v. Brookhaven Nat'l Labs*, CV-94-2330 (NG)(VVP) (E.D.N.Y. January 19, 2006), citing *Lee v. Overseas Shipholding Group, Inc.*, 2001 U.S. Dist. LEXIS 10622, No. 00 Civ. 9682 (DLC), 2001 WL 849747, *8 (S.D.N.Y. July 30, 2001) [**32] ; *Martinez-Tolentino v. Buffalo State Coll.*, 277 A.D.2d 899, 899, 715 N.Y.S.2d 554, 555 (4th Dep't 2000). In distinguishing the above line of interpretative cases, DEUTSCHE BANK suggests, without any basis for its assertions, that those cases involved instances in which there was both a physical filing at the EEOC and the state agency. We were unable to find such facts in our reading of those decisions.

If DEUTSCHE BANK's argument is extended to its logical conclusion, DEUTSCHE BANK is essentially suggesting that GINA ESPOSITO should have run out and separately and simultaneously filed the same Charge with the New York State and local agencies or run out to file in New York Supreme Court. As is confirmed by the Affidavit of Joseph Alvarado, the EEOC State and Local Program Manager, one of the purposes of the dual-filing is to prevent a claimant from filing with two or more agencies while one agency is already investigating a claim (*See*, Affidavits of Joseph Alvarado, attached as GINA ESPOSITO's Exhibit B). Thus, had GINA ESPOSITO filed a claim with the State or City agency while her claim was pending at the EEOC, the IMS system would have detected that she was a double dipper claimant and rejected her new filing. Alternatively, it is suggested that GINA ESPOSITO should have commenced an action for discrimination in state court, while the EEOC was still investigating her Charge claims, in order to preserve her protections under State and City Law; this, despite the

fact that she would have had to commence another separate action in federal court after the EEOC had finally issued a Right to Sue letter. Such procedural gymnastics are costly and impractical, not only for a person filing a charge but, also, in terms of the preservation of scarce judicial resources.

Defendant DEUTSCHE BANK contends that *Kearny v. ABN Ambro, Inc.*, No. 04 Civ. 06885, 2006 U.S. Dist. LEXIS 56705 (S.D.N.Y. Aug 10, 2006) "is directly on point." (DEUTSCHE BANK's Memo of Law at 14)  In fact, we do not dispute that *Kearny* controls this matter as to its present disposition.  In *Kearny*, the court refused to grant a defense motion to dismiss City and State claims as time-barred because plaintiff filed a timely claim with the EEOC and contemporaneously requested that the EEOC forward said claim to the NYSDHR.  Subsequently, the EEOC failed to forward the claims.  Noting that plaintiff specifically requested that the EEOC claims be forwarded to the state and local human rights agencies, and that courts do not usually punish litigants for EEOC mistakes, *Harris v. City of N.Y.*, 186 F.3d 243, 248 n.3 (2d Cir. 1999), the court refused to dismiss the plaintiff's City and State claims until it could be determined if it was the EEOC or the plaintiff who was responsible for the administrative breakdown. Similarly, in the case at bar, GINA ESPOSITO requested that the EEOC file the charge with the applicable city and state agencies by signing the Discrimination Charge; therefore, as in *Kearny*, her claims should survive a defense motion to dismiss pending discovery as to why the EEOC failed to forward the Charge to the NYCDHR and NYSDHR.

DEUTSCHE BANK relies heavily on a Northern District of Illinois case to support its position, while dismissing the authoritative and governing New York State and federal

court cases, discussed above, as to the appropriate interpretation of the issue of the tolling

of New York state and City statutes of limitation. Specifically, DEUTSCHE BANK

contends that *Solon v. Kaplan*, 2001 U.S. Dist. LEXIS 1384, (N.D. Ill.) is "instructive." [4]

However, the Illinois statute at issue in *Solon*, the Illinois Human Rights Act, gave the

Illinois Human Rights Commission *exclusive* jurisdiction over requests for relief under

the Illinois Human Rights Act. Since, in *Solon*, the plaintiff sought relief under the

Illinois Human Rights Act, filed a claim with the EEOC, but failed to file a claim with

the Illinois Human Rights Commission, plaintiff's state law claims were dismissed.

However, in the case at bar neither the NYSDHR nor the NYCDHR vests exclusive

jurisdiction to investigate claims in one specific agency. Rather, the New York laws

permit any appropriate agency to review any federal, city or state claim. Thus, when

GINA ESPOSITO filed her claim with the EEOC, she left open the possibility of

receiving relief under both of the applicable laws. Hence, *Solon* is inapplicable.

Thus, it is GINA ESPOSITO's position that her EEOC  Charge filing tolled her

State and City Law claims based on her reasonable expectations that by her signing and

filing the EEOC pre-printed Charge form, her claim would be filed with the EEOC's

State and City counterparts. Her assumption and expectation were reasonable based upon

---

[4] Defendant selectively proffers the case law of a sister jurisdiction that does not give weight to a Worksharing Agreement between the EEOC and similar state agencies. Other jurisdictions that have entered into worksharing agreements treat dual filings as substantive filings rather than merely as a formality that satisfies administrative exhaustion requirements for federal claims. *See, e.g,. Aukstolis v. AHEPA*, 2007 Dist. LEXIS 32984 (Dist. Conn, 2007) claimant must show existence of worksharing agreement in effect at the time the claim is filed for the court to consider its effect, *Kelley v. Camolaur*, 1990 U.S. Dist. LEXIS 8797 (W. D. Miss. 1990) wherein the court found that given the worksharing agreement and claimant's request for dual filing by checking off a box on the charge form the court would deem the charge timely filed with the EEOC, *Berkoski v. Ashland Regional Medical Center*, 951 F. Supp. 544 (M..D. Pa. 1997) appropriate steps taken by the claimant to ensure dual filing constitute dual filing even if actual filing occurs between the agencies outside of the charging window, and *Wells Fargo v. Lehman*, 799 So. 2d 252 (Fla. Dist. Ct. App. , 3rd Dist. 2001) the court found an agency's agreement to dual file constitutes dual filing even where the agency fails to dual file.

the wording of the State and City statutes and the general remedial policies of those laws, the existing authoritative cases interpreting those statutes and the overriding concerns of judicial economy of scarce resources.

### III.    GINA ESPOSITO'S FEDERAL ADEA AND TITLE VII CLAIMS ARE NOT TIME-BARRED BECAUSE THE DISCRETE ACTS FALL WITHIN THE 300-DAY WINDOW.

First, we note that after reviewing DEUTSCHE BANK's Exhibit A, which contains a stamped copy evidencing receipt, on February 8, 2002, of the GINA ESPOSITO's Charge and having also reviewed the office file, we realized that, in fact, her Charge was send via Federal Express on Sunday, February 7, 2002.  Therefore, paragraph 85 of GINA ESPOSITO's Complaint should be amended to reflect the above-referenced correct dates.

Turning now the instant issue, and applying a recently decided case, GINA ESPOSITO's claims may be viewed as two distinct branches, as set forth in her Complaint. The first branch consists of the discrete acts which form the bases of her of failure to promote, unequal pay and retaliation claims. The second branch is comprised of the totality of the facts and circumstances which, together, form the foundation of her hostile workplace claim.  Her hostile workplace claim is *not* at issue in this Motion.

Thus, for purposes of GINA ESPOSITO's first branch of claims, applying the Court's interpretation, as set forth in *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2171 (2007)[5], the discrete acts complained of by GINA ESPOSITO are timely with respect to acts that occurred prior to April 14, *2001* (that is, 300 days from the filing

---

[5] The May 29, 2007 U.S. Supreme Court decision in *Ledbetter* and its narrow impairment of statutory protections against discrimination has caused a firestorm of criticism by legal scholars resulting in the passage by the House of Representatives the Ledbetter Fair Pay Act of 2007 (S. 1843). It is expected the U.S. Senate will take up passage of its version of the bill shortly. Perhaps heeding Justice Ginsburg's call, "the legislature [should] act to correct [the] Court's parsimonious reading of Title VII,"  These bills, if enacted, would overrule the central holding of *Ledbetter* and make any discrimination-based paycheck actionable even if the paycheck was not delivered with discriminatory intent, provided that the paycheck was the result of a facially neutral but nevertheless discriminatory policy regardless of whether or not the policy was adopted within the charging period.

of EEOC Charge). Therefore, since all of the discrete acts at issue were communicated to plaintiff after April 14, *2001* and, as such, were timely made.

The discrete acts, which consist of DEUTSCHE BANK's failure to promote, unequal pay and retaliation against GINA ESPOSITO occurred when DEUTSCHE BANK communicated to GINA ESPOSITO that she had not been promoted. *Ledbetter* at 2171. Ambiguous statements by an employer concerning an employee's status with respect to a particular position with the company are not sufficient to satisfy the notice requirement. *See, Sharpe v. American Express Co.*, 689 F. Supp. 294, 297–299 (S.D.N.Y. 1988) in which plaintiff had notice that his position would be terminated when the company unequivocally informed him of such termination). DEUTSCHE BANK contends that "Ms. Esposito concedes that the statute of limitations on her failure to promote claim began to run when she *understood* she was not going to be promoted." (Defense Motion at 17). This is a misstatement of the caselaw. Instead, it is GINA ESPOSITO's position that that the statute of limitations began to run when DEUTSCHE BANK decided not to promote her and *unequivocally communicated* that fact to her. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980).

The discrete act upon which GINA ESPOSITO's *failure to promote* claim is based occurred after April 14, 2001. Her suspicions regarding the promotions of her younger co-workers within her group, and her own lack of a promotion, were, in part, confirmed on April 16, 2001. Prior to the April 16, 2001, GINA ESPOSITO assumed that she was not being promoted—but this fact remained unconfirmed, officially, by her employer— despite her having had a "sneaking suspicion" that her younger colleagues might be promoted. The promotion of her colleagues is a necessary element in the nexus between

her failure to promote and equal pay claims. But for her colleagues being promoted in her stead, those claims would have been more difficult to demonstrate. By April 16, 2001, much to her consternation, it was officially confirmed to her that not only was she not being promoted but, also, that her younger colleagues were, in fact, being promoted. Specifically, on April 16, 2001 a colleague forwarded to GINA ESPOSITO an invitation to a gathering on scheduled for April 18, 2001, being organized by Global Partnership Network for Woman and which congratulated the women listed on the email regarding their promotion. Joanne Passiatore was one of the women whose names was listed on that email. It was not until April 18, 2001 that the office staff was officially notified of the promotions, including that of Dan Richards, as set forth in paragraph 81 of GINA ESPOSITO's Complaint. April 18, 2001 is also the marker date for the retaliation claim, because it was the fact of her non-promotion and the promotion of her younger colleagues that demonstrated John Dall's retaliatory acts against her for her having twice discussed a sexual harassment matter with the a Human Resources Department representative.

Thus, it was only on April 18th, 2001 that GINA ESPOSITO officially learned that both her colleagues had been promoted and surmised that they had also received substantially larger bonuses and salary increases as a result of the promotions. Accordingly, even applying the controversial *Ledbetter* ruling, although the decision to pay GINA ESPOSITO less than her younger colleagues was made outside the charging window, this fact was not communicated to her until, at the very earliest, April 16, 2001. Therefore, the act of implementing unequal pay occurred, for charging purposes, after April 14, 2001. *Ledbetter*, at 2173–74 fn 3.

The only discrete acts that GINA ESPOSITO has been unable pinpoint precisely in terms of an exact date are those involving when she acquired knowledge of the disparities in employee bonuses (Complaint ¶¶ 70–73). GINA ESPOSITO is unable to remember the precise date on which she obtained confirmation, but she does recall that she acquired such knowledge by reviewing a bonus chart in or about April 2001. GINA ESPOSITO acquired knowledge of disparity in yearly bonus increases in April 2001—this time period is sufficiently near the occurrence of other discrete acts that, and without contradictatory evidence, should not be dismissed pursuant to a Rule 12(b)(6) motion. Instead, arugments should be better renewed after further discovery by way of a motion for summary judgment.

Finally, GINA ESPOSITO requests permission to amend her Complaint to incorporate the following factual allegations into her Complaint in order to cure some of DEUTSCHE BANK's objections concerning the timing and sequence of the knowledge she acquired:

- Set forth a time-frame in paragraphs 70 and 71 which state that in or about April 2001, GINA ESPOSITO became aware that she had received bonuses that were inferior to those received by her younger colleagues (See, ¶ 70, Plaintiff's Exhibit C ).

- Clarify ¶ 75 to state that during GINA ESPOSITO and John Dall's conversation no mention were made of Joanne Passiatore or Dan Richards promotions. Instead the conversation dealth was speculative on promotions for the department in general (See, ¶ 75, Plaintiff's Exhibit C ).

- Insert an new paragraph before paragraph 81, which states that GINA ESPOSITO first learned that Joanne Passiatore had received a promotion on April 16, 2001 when a colleague forwarded to GINA ESPOSITO an invitation to a gathering scheduled to take place on April 18, 2001 and organized by Global Partnership Network for Woman to celebrate the named women who had been promoted (See, ¶ 81, Plaintiff's Exhibit C ).

- Add ¶ ¶ 83 and 84 to clarify her knowledge of the promotions and retaliation and failure to promotion issues (See, ¶ ¶ 83 and 84, Plaintiff's Exhibit C ).

\

## CONCLUSION

For the foregoing reasons, DEUTSCHE BANK's Motion for Partial Dismissal of

GINA ESPOSITO's claims for compensation, failure to promote and retaliation, as well

as her State and City claims, should not be dismissed as time-barred.

Dated: November 6, 2007
      New York, New York      By:_____
                                J. Patrick DeLince
                                (Bar Roll No. JD5795)
                                DELINCE & CLYNE
                                44 Wall Street, 10th Floor
                                NewYork, New York 10005
                                Tel: 212 710-9512
                                Fax: 212 710-9513

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing

MEMORANDUM OF LAW was served by electronically filing the foregoing with the

Clerk of the District Court using the CM/ECF system on November 6, 2007 and also

courtesy copies by FEDEX to Honorable Richard J. Sullivan and the Honorable Andrew

J. Peck, and upon the following:

> Cliff Fonstein Esq.
> Joanne Seltzer, Esq.
> Sidley Austin LLP
> 787 Seventh Avenue
> New York, New York 10019

Dated:  November 6, 2007

> s/ J. Patrick DeLince
> J. Patrick DeLince
> (Bar Roll No. JD5795)
> DELINCE & CLYNE
> 44 Wall Street, 10th Floor
> NewYork, New York 10005
> Tel: 212 710-9512
> Fax: 212 710-9513