2006 NY Slip Op 50177U, *; 11 Misc. 3d 1052A, **;
814 N.Y.S.2d 891, ***; 2006 N.Y. Misc. LEXIS 242

[*1] Robert Leavy, Plaintiff, against New York City Transit Authority, David Sierra, Randall Richardson, and Sheila Hutson, in their official and personal capacities, Defendants.

39917/04

SUPREME COURT OF NEW YORK, KINGS COUNTY

2006 NY Slip Op 50177U; 11 Misc. 3d 1052A; 814 N.Y.S.2d 891; 2006 N.Y. Misc. LEXIS 242; 235 N.Y.L.J. 38

January 27, 2006, Decided

**NOTICE:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS

**PRIOR HISTORY:** Leavy v. N.Y. City Transit Auth., 145 Fed. Appx. 707, 2005 U.S. App. LEXIS 22226 (2005)

**CORE TERMS:** station, supervisor, transferred, promotion, job action, racial discrimination, assigned, federal action, new position, managerial, inasmuch, supervisory, retaliation, manager, pretext, salary, evidence to support, non-discriminatory, discriminatory, commencement, materially, undisputed, tickets, tolled, deposition, subjected, male, job performance, chain of command, adverse change

**HEADNOTES**

[**1052A] [***891] Civil Rights--Discrimination in Employment--Race. Executive Law--§ 296 (Unlawful discriminatory practices).

**JUDGES:** Mark I. Partnow, J.

**OPINION BY:** Mark I. Partnow

**OPINION**

Mark I. Partnow, J.

Upon the foregoing papers, defendants New York City Transit Authority (NYCTA), David Sierra, Randall Richardson, and Sheila Hutson (collectively, defendants) move for an order, pursuant to CPLR 3211 and 3212, dismissing plaintiff Robert Leavy's complaint.

Plaintiff Robert Leavy, a white male, has been employed by defendant New York City Transit Authority, Department of Stations, since 1981. In 1986, plaintiff was promoted to the position of Station Supervisor, Level II. In or about 1997, plaintiff was assigned to the "Ticket Unit" located at the Hoyt/Schermerhorn station in Brooklyn and worked Monday to Friday, 8 a.m. to 4 p.m.. Beverly Martin, an African American woman, also served as a Level II Supervisor at this station. Shortly after plaintiff was posted to the Hoyt/Schermerhorn

station, defendants Randall Richardson and Sheila Hutson, both of whom are African Americans, were assigned to Superintendent positions at said station and plaintiff reported to these individuals. In May 1999, William Bonner, an African American male, was assigned to the Hoyt/Schermerhorn station as the third Level II supervisor at this location.

[*2] In or about December 1998, plaintiff was one of 20 candidates who applied for a promotion to the position of Manager of Traffic Checking in the NYCTA's Operations Planning Division. However, this position was ultimately awarded to Robert Fuller, an African American male. According to plaintiff's deposition testimony, after Mr. Fuller was promoted, plaintiff was informed by George Carpentieri, who interviewed plaintiff for the managerial position, that he believed that plaintiff was the "best qualified" for the job but that "we got word from upstairs that they were going to hire another minority." [1] In addition, in 2000, plaintiff unsuccessfully applied for a promotion to the position of Deputy Director within the Operations Planning Division.

**FOOTNOTES**

[1] Plaintiff testified that Mr. Carpentieri told him this information during a chance encounter on the street.

In January 2000, defendant David Sierra, a General Superintendent with NYCTA, directed Richardson and Hutson to select one of the three Level II Supervisors assigned to the Hoyt/Schermerhorn station for transfer to NYCTA's "Command Center." On February 16, 2000, plaintiff was informed by Richardson and Hutson that he had been selected for this transfer. The new position would require plaintiff to work on weekends and holidays. On March 2, 2000, plaintiff filed an internal race discrimination complaint with the Metropolitan Transit Authority's Division of Equal Employment Opportunity (MTA EEO). While this complaint was pending, plaintiff's transfer was postponed and ultimately, plaintiff was never transferred to the Command Center. The MTA EEO subsequently concluded that there was no reasonable cause to conclude that plaintiff had been subjected to racial discrimination. In June 2000, plaintiff was transferred from the Hoyt/Schermerhorn station to serve in a supervisory position in "the field" or on "the road." The hours for this new position were Tuesday through Saturday from 9:00 a.m. to 5:00 p.m.. Although plaintiff's salary remained the same, plaintiff paid approximately $55 to $60 dollars a month in union dues which he did not pay in his previous position because the new position was a non-confidential union position. Three months after plaintiff's transfer, another Level II Supervisor was assigned to the Hoyt/Schermerhorn station. In or about March of 2001, plaintiff transferred from this field position to a confidential position with the same work schedule as he had while working at the Hoyt/Schermerhorn station.

On March 1, 2001, plaintiff filed a racial discrimination complaint with the United States Equal Employment Opportunity Commission (EEOC) which referenced his June 2000 transfer and his unsuccessful applications for promotion in 1998 and 2000. In a written determination dated January 28, 2002, EEOC found that there was sufficient evidence to support plaintiff's claim that he was subjected to racial bias in violation of Title VII of the Civil Rights Act of 1964 (Title VII) when he was transferred away from the Hoyt/Schermerhorn station in June 2000. In a May 21, 2002 letter, the United States Justice Department, Civil Rights Division (DOJ) notified plaintiff that the DOJ would not file suit against NYCTA and that plaintiff had a right to institute a civil action against NYCTA under Title VII.

On August 19, 2002, plaintiff commenced a racial discrimination action against NYCTA, Sierra, Richardson, and Hutson by filing a complaint in the United States District Court, Eastern District of New York (the federal action). Specifically, plaintiff alleged that these defendants violated Title VII, Executive Law § 296, and New York City Administrative Code §

8-107 by: (1) denying him a promotion in 1998 and 2000 based upon race; (2) deciding to transfer him in February 2000 and actually transferring him in June 2000; and (3) [*3] retaliating against him based upon his filing of a complaint with the MTA EEO. Subsequently, discovery was conducted in the federal action, all of the relevant parties were deposed, and the defendants moved for summary judgement dismissing the complaint. In a memorandum and order dated November 2, 2004, Hon Sterling Johnson, Jr., granted the defendants' motion with respect to the Title VII claims and declined to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Accordingly, plaintiff's Executive Law § 296 and New York City Administrative Code § 8-107 claims were dismissed without prejudice to the commencement of a state court action under these provisions. In dismissing plaintiff's Title VII claim, Judge Johnson found that said claim was untimely inasmuch as plaintiff filed his complaint with the EEOC more than 300 days after the discriminatory conduct allegedly took place. [2]

**FOOTNOTES**

[2] Judge Johnson's decision was affirmed by the United States Court of Appeals, Second Circuit.

By summons and complaint dated December 7, 2004, plaintiff commenced the instant action against defendants. The complaint is virtually identical to the complaint in the federal action except that it omits the Title VII claims. Defendants now move to dismiss the complaint based upon evidence obtained in the federal action.

As an initial matter, defendants argue that any discrimination claims based upon NYCTA's failure to promote plaintiff in December 1998 are time barred inasmuch as such claims accrued more than three years prior to the commencement of the federal action. In any event, defendants argue that there is no merit to such claims since Fuller was more qualified than plaintiff for the managerial position in the Traffic Checking Operations. In support of this claim, defendants point out that Fuller had worked in this department for almost ten years and had been an Assistant Field Manager in Traffic Checking Operations for two years. In addition, defendants maintain that the alleged statements made by George Carpentieri regarding this promotion constitute inadmissible hearsay evidence. Defendants also argue that there is no basis for plaintiff's claim that their failure to promote him in 2000 was based upon discriminatory motives. In particular, defendants argue that plaintiff was not qualified for the position of Deputy Director of Operations Planning, which was many titles higher in the chain of command than a Level II Supervisor.

Defendants argue that plaintiff's transfer from the Hoyt/Schermerhorn station may not form the basis for any illegal discrimination claims inasmuch as this transfer did not constitute an adverse job action. In particular, defendants note that, although a decision was made in February 2000 to transfer plaintiff to the Command Center, this transfer never actually occurred. Furthermore, defendants point out that plaintiff's transfer to a supervisory position in the field in June 2000 did not entail any reduction in salary or managerial responsibilities and only resulted in a slight change to his work schedule.

In any event, defendants maintain that, even if plaintiff's June 2000 transfer did constitute an adverse job action, it may not form the basis for any racial discrimination or retaliation claim under Executive Law § 296 because NYCTA had legitimate non-discriminatory reasons for transferring plaintiff. In support of this argument, defendants note that there was a shortage of supervisory personnel at the Command Center and that plaintiff was the most logical choice for this transfer since, with the advent of the Metrocard, plaintiff's main responsibility at the Hoyt/Schermerhorn station (i.e. the use of paper tickets) declined substantially and, unlike plaintiff, both Bonner and Martin were able to work flexible

schedules.

[*4] Defendants also claim that there is no basis for plaintiff's retaliation claim because the "harassment" that plaintiff was allegedly subjected to after the filing of the complaint with the MTA EEO consisted of legitimate work-related discussions between plaintiff and his supervisors (Richardson and Hutson). In this regard, defendants assert that plaintiff was criticized for permitting the distribution of inaccurate service change posters, losing 20,000 paper tickets, and failing to forward an approved leave request to timekeeping. According to defendants, these criticisms were justified and had nothing to do with plaintiff's race or his filing of the complaint with the MTA EEO.

Finally, defendants argue that there is no basis for plaintiff's claim under New York City Administrative Code § 8-107, because, under Public Authorities Law § 1266 (8), Title 8 of the Administrative Code of the City of New York does not apply to NYCTA or its employees.

In opposition to defendants' motion, plaintiff initially argues that those claims based upon the December 1998 promotion denial are not time-barred because his filing of a complaint with the EEOC on March 1, 2001 tolled the three-year statute of limitations. Plaintiff further argues that there is ample evidence to support his claim that NYCTA's decision to promote Fuller instead of plaintiff was based upon plaintiff's race. Specifically, plaintiff notes that Fuller had less than 10 years overall experience as a NYCTA employee and less than two years experience as an assistant manager in Traffic Checking Operations. In contrast, plaintiff had 17 years experience with NYCTA, and held supervisory positions for 13 of those years. In addition, plaintiff maintains that Carpentieri's statement regarding plaintiff being the most qualified for the job is admissible evidence inasmuch as Carpentieri was the head of the Traffic Checking department and interviewed plaintiff for the position. Accordingly, plaintiff reasons that Carpentieri had speaking authority for NYCTA and his statement constitutes an admission.

Turning to his transfer from the Hoyt/Schermerhorn station in June 2000, plaintiff maintains that there is an issue of fact as to whether this action was taken because of his race. In support of this argument, plaintiff notes that the EEOC has already determined that there is sufficient evidence to support plaintiff's claim that this transfer was motivated by race. In addition, plaintiff points out that three months after his transfer, another minority Level II supervisor was assigned to the Hoyt/Schermerhorn station. Plaintiff also notes several inconsistencies in the explanations given by defendants for the transfer. In particular, in the proceedings before the EEOC, Richardson submitted an affidavit stating that plaintiff was transferred as part of a reorganization which reduced the staff assigned to the Department of Stations. However, at his deposition in the federal action, Richardson testified that plaintiff was transferred because Sierra needed an additional supervisor for the Command Center. Richardson also testified that plaintiff was transferred to "the road" because he refused to go to the Command Center, which refusal caused a supervisor from "the road" to be transferred to the Command Center. However, at his deposition, Sierra testified that plaintiff was transferred to "the road" because "Mr. Leavy did not want to work within [the Department of Stations] needs, so the only recourse that we had was to move him out and bring somebody else in there that could do it." This latter testimony, in turn, conflicts with a June 25, 2001 letter NYCTA submitted to the EEOC, which states that plaintiff's transfer was not related to his job performance. Finally, plaintiff argues that his June 2000 transfer did constitute an adverse employment action since his new position was a less desirable non-confidential one that required him to pay approximately $ 60 a month in union dues and only provided for a 30 minute lunch break instead of the one hour break he enjoyed while working at the Hoyt/Schermerhorn station.

[*5] Executive Law § 296 (1)(a) provides, in pertinent part, that, "it shall be an unlawful discrimination practice: for an employer . . . because of the . . . race . . . of any individual to . . . discriminate against such individual in compensation or in terms, conditions or

privileges of employment." Plaintiffs claiming discrimination under the statute "bear the initial burden of establishing a prima facie case of discrimination by demonstrating, by a preponderance of the evidence, that they are members of the class protected by the statute, that they were qualified for their positions and that they . . . suffered . . . adverse employment action under circumstances giving rise to an inference of discrimination" (*Mete v New York State Off. Of Mental Retardation and Dev. Disabilities*, 21 AD3d 288, 290, 800 N.Y.S.2d 161 [2005]). When a defendant demonstrates the absence of a prima facie case of discrimination under Executive Law § 296 and that it had a facially valid, independent, and nondiscriminatory reason for the questioned conduct, the burden shifts to the plaintiff "to raise a material issue of fact with respect to whether the claimed reason for the [questioned conduct] . . . was, in reality, merely a pretext for illegal discrimination" (*Jordan v American Intl. Gp., Inc.*, 283 A.D.2d 611, 612, 725 N.Y.S.2d 232 [2002]).

Turning first to defendants' argument that plaintiff's claims concerning their refusal to promote him in December 1998 are time-barred, the court finds such contention to be without merit. It is well-settled that the three-year Statute of Limitations for a claim under Executive Law § 296 is tolled during the pendency of a complaint filed with the EEOC (*Martinez-Tolentino v Buffalo State College*, 277 A.D.2d 899, 715 N.Y.S.2d 554 [2000]). Here, plaintiff filed a complaint with the EEOC on March 1, 2001, less than three years after he was denied the promotion to Manager of Traffic Checking in December 1998. Defendants have failed to cite any authority for the proposition that the Statute of Limitations was not tolled in this case because the Federal Court ultimately determined that plaintiff's EEOC complaint was untimely. In fact, the tolling of the Statute of Limitations is based upon Executive Law § 297 (9), which provides a stay by prohibiting the commencement of a suit while an administrative proceeding is pending (*Matter of Pan Am. World Airways v New York State Human Rights App. Bd.*, 61 N.Y.2d 542, 549, 463 N.E.2d 597, 475 N.Y.S.2d 256 [1984]). Notably, this provision states that where the administrative proceeding is dismissed "on the grounds of untimeliness . . . [the plaintiff] shall maintain all rights to bring suit as if no [administrative] complaint had been filed" (Executive Law § 297 [9]).

However, examining the merits of plaintiff's claim, the court finds that defendants have demonstrated that NYCTA had a valid, non-discriminatory reason for promoting Fuller instead of plaintiff. In particular, Fuller had approximately 10 years of experience working in the Traffic Checking Department, two of which were in a managerial capacity. In contrast, plaintiff had no experience working in the Traffic Checking Department, having spent his entire career working in the Stations Department. Moreover, the statement allegedly made by Carpentieri to plaintiff that certain unnamed NYCTA officials "upstairs" indicated that they were going to hire a minority for the position is insufficient to demonstrate that the proffered reason for promoting Fuller was a mere pretext for racial discrimination. Assuming that Carpentieri was an agent of NYCTA for matters related to the promotion, there is still no basis for allowing in the hearsay statement of the unnamed NYCTA officials (*Quinn v 1649 Restaurant Corp.*, 18 AD3d 281, 795 N.Y.S.2d 19 [2005]). Accordingly, NYCTA's failure to promote plaintiff in December 1998 may not serve as the basis for plaintiff's Executive Law § 296 claim.

With respect to NYCTA's failure to promote plaintiff to the position of Deputy Director within the Operations Planning Division in 2000, defendants have offered a legitimate non-discriminatory reason for this action. Specifically, the position was several [*6] grades higher up the chain of command than a Level II Supervisor and plaintiff was not qualified for the position. Plaintiff has not even attempted to show that this reason was a pretext for racial discrimination. Consequently, NYCTA's failure to promote plaintiff in 2000 may not serve as the basis for plaintiff's Executive Law § 296 claim.

Turning to plaintiff's claim that he was illegally discriminated against when defendants decided to transfer him to the Command Center in February 2000, and actually transferred him to "the road" in June 2000, the court must first address the issue of whether this conduct

Get a Document - by Citation - 2006 NY Slip Op 50177U
Case 1:07-cv-00722-RJS Document 10-17 Filed 11/06/2007 Page 6 of 7
Page 6 of 7

constituted adverse job actions under Executive Law § 296. "An adverse employment action requires a materially adverse change in the terms and conditions of employment. To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices'" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 306, 819 N.E.2d 998, 786 N.Y.S.2d 382 [2004], quoting *Galabya v New York City Bd. Of Educ.*, 202 F.3d 636, 640 [2d Cir. 2000]).

Although a decision was made to transfer plaintiff to the Command Center in February 2000, it is undisputed that this transfer never took place. Accordingly, this decision did not constitute the type of adverse employment action which will support an Executive Law § 296 claim. Furthermore, the court finds that plaintiff's transfer to "the road" for a nine month period beginning in June 2000 did not constitute an adverse job action for purposes of Executive Law § 296. It is undisputed that plaintiff retained managerial responsibilities, as well as the same title and salary grade after he was transferred. While it is clear that plaintiff preferred not be transferred and the new position required that plaintiff work a slightly different schedule and pay union dues, these factors are insufficient to establish that the transfer was an adverse job action.

In any event, even if the June 2000 transfer were deemed to be an adverse job action, there is no evidence that the transfer was motivated by racial animus toward plaintiff. While Richardson did give somewhat inconsistent explanations for plaintiff's transfer, it is undisputed that Richardson and Hutson's supervisor (Sierra) directed them to select one of the Level II supervisors at the Hoyt/Schermerhorn station for transfer in January 2000 and that Richardson attempted to convince Sierra not to carry out this transfer. Moreover, defendants have established that Richardson and Hutson had legitimate nondiscriminatory reasons for selecting plaintiff for transfer instead of Bonner or Martin inasmuch as plaintiff's responsibilities had decreased with the advent of the Metrocard and, unlike plaintiff, Bonner and Martin were able to work flexible hours. With respect to Sierra, there is no evidence that his decision to transfer one of the Level II supervisors from the Hoyt/Schermerhorn station was a pretext for racial discrimination against plaintiff. [3] Instead, it is clear that Sierra's decision was based upon legitimate manpower needs. Under the circumstances, plaintiff's transfer from the Hoyt/Schermerhorn station in June 2000 did not constitute a violation of Executive Law § 296.

**FOOTNOTES**

[3] While it is true that the EEOC determined that there was sufficient evidence to support plaintiff's claim that he was subject to racial bias when he was transferred in June 2000, this court is not bound by said determination.

Turning to plaintiff's claim that he was retaliated against after filing a complaint with the MTA EEO, a retaliation claim requires a showing that an employee suffered an adverse [*7] employment action while engaged in a protected activity, and that there was a causal connection between the protected activity and the adverse employment action (*Rastogi v New York State Off. of Mental Health*, 21 AD3d 886, 887, 800 N.Y.S.2d 509 [2005]). Here, Richardson and Hutson's mere criticism of plaintiff following the filing of the MTA EEO complaint did not constitute an adverse job action. Furthermore, there is no evidence that these criticisms were connected to plaintiff's filing of a complaint with the MTA EEO. Rather, it is clear that they were related to job performance matters. Accordingly, there is no basis for plaintiff's retaliation claim.

With respect to plaintiff's claims under New York City Administrative Code § 8-107, "the human rights provisions of the New York City Administrative Code mirror the provisions of the Executive Law and should therefore be analyzed according to the same standards" (*Forrest*, 3 NY3d 295 at 305 n 3). The court has already determined that there is no basis for plaintiff's claims under Executive Law § 296. Consequently, plaintiff's claims under the New York City Human Rights Law must be dismissed as well.

In summary, defendants' motion for summary judgment dismissing plaintiff's complaint is granted.

This constitutes the decision, order, and judgment of the court.

Service: **Get by LEXSEE®**
Citation: **814 N.Y.S.2d 891**
View: **Full**
Date/Time: Friday, November 2, 2007 - 4:15 PM EDT

* Signal Legend:
- ● - Warning: Negative treatment is indicated
- ■ - Questioned: Validity questioned by citing refs
- ▲ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.