Westlaw.

Not Reported in F.Supp.2d                                                     Page 1
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

HEconomou v. Caldera
S.D.N.Y.,2000.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Constantine ECONOMOU, Plaintiff,
v.
Louis CALDERA, Jr., Secretary of the United States
Department of the Army, Defendant.
No. 99 Civ. 12117 AJP.

Dec. 18, 2000.

OPINION AND ORDER

PECK, Magistrate J.
*1 Plaintiff Constantine Economou brings this action
pursuant to Title VII, the Age Discrimination in
Employment Act ("ADEA"), and the Rehabilitation
Act. Economou claims that he was discriminated
against due to his age (sixty-nine at the time of his
termination), national origin (Greek), and disability
(carpal tunnel syndrome), and retaliated against due
to his prior complaints of discrimination, when he
was: (1) removed from employment with the United
States Army Corps of Engineers (the "Army Corps"
or "Army") on December 19, 1997; (2) subjected to
discriminatory and retaliatory investigations during
his employment; (3) denied reasonable
accommodation for his disability; (4) denied training
given to similarly situated employees; and (5) denied
a performance rating in 1997 and the resulting
monetary award associated with his work
performance.

The parties have consented to decision of this action
by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).
(SeeDkt. No. 8 .)

The Army has moved pursuant to Fed.R.Civ.P. 15 to
amend its answer to assert Economou's failure to
exhaust administrative remedies as an affirmative
defense. The Army also has moved for summary
judgment on the grounds that: (1) Economou failed to
exhaust fully his administrative remedies on his
discriminatory and retaliatory removal claims; (2) the
investigations about which Economou complains
were not adverse employment actions within the
meaning of the discrimination laws; (3) Economou
was offered reasonable accommodation for his
disability; (4) Economou did not exhaust his denial of

training claim; and (5) Economou has not established
a prima facie case of discrimination or retaliation
with respect to his 1997 performance rating, and
moreover, cannot establish that the Army's proffered
reason for denying the performance rating was a
pretext for unlawful discrimination or retaliation.

For the reasons set forth below, the Army's answer is
deemed amended to assert the affirmative defense of
failure to exhaust with respect to Economou's
removal claim and the Army's summary judgment
motion is: (1) granted on Economou's discriminatory
and retaliatory removal claim; (2) granted on
Economou's claim alleging discriminatory and
retaliatory investigations; (3) granted on Economou's
claim that he was denied reasonable accommodation;
(4) denied with respect to Economou's failure to train
claim; and (5) granted on Economou's denial of
performance rating claim.

FACTS

Economou's Employment with the Army Corps of
Engineers

Economou is a seventy-one-year-old Greek-
American and trained professional engineer.
(Economou & Army Exs. A: Am. Compl. ¶¶ 7, 9; FN1
Army Ex. Q: Economou Dep. at 36-37.) Economou
was the Chief of the Army Corps' Construction
Division in the New York District from November 5,
1992 until his termination on December 19, 1997.
(Am. Compl. ¶ 10; Economou Dep. at 37.) He was
responsible for supervising six unit chiefs and
approximately sixty other employees. (Economou
Dep. at 24-25.)

> FN1. References to "Army Ex." and
> "Economou Ex." refer to the exhibits
> attached to the 9/1/00 Declaration of
> Assistant United States Attorney Ramon
> Reyes, Jr. and the 9/14/00 Declaration of
> Economou's counsel Joseph A. Turco,
> respectively.

*2 Economou's supervisor was Colonel Gary
Thomas, Commander of the Army Corps' New York
District. (See Economou Dep. at 27; Am. Compl. ¶
10.) The New York District is within the Army

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Corps' North Atlantic Division ("NAD"), headed by Major General Milton Hunter. (Am.Compl.¶ 13.)

During his tenure with the Army Corps, Economou filed numerous formal EEO complaints. (*See* Army Ex. U at 1.)

*Economou's Disability and Requests for Accommodation*

1. *1994 Events*

Economou was diagnosed with carpal tunnel syndrome in 1992 or 1993. (Army Ex. Q: Economou Dep. at 74.) According to Economou, he first requested accommodation for his carpal tunnel in approximately May 1994 from Col. York, who was his immediate supervisor at the time. (*Id.* at 26, 75-76.)Economou told Col. York that he "would be able to work" but that "you have to understand I can't use the computer, the P.C. There has to be a way that we can do it without, you know, manipulating my fingers, getting me into big trouble."(*Id.* at 77.)Economou suggested a voice recognition program for his computer. (*Id.* at 78.)

Diane Deptula, Personnel Management Specialist of the Human Resources Department, Army Corps, New York District, stated that in response to a June 17, 1994 injury compensation claim by Economou, Economou was placed on extended paid medical leave from June 9, 1994 to June 25, 1995. (*See* 9/22/00 Deptula Aff. ¶¶ 1-2.)

It is undisputed that Economou did not again request accommodation until September 1997, and then did so at his lawyer's suggestion. (9/22/00 Deptula Aff. ¶ 3; Army Ex. Q: Economou Dep. at 78-79, 116-17.)

2. *1997 Events*

The undisputed evidence shows that on September 8, 1997, at approximately 8:15 a.m., Economou submitted an Application for Leave from September 2 to October 8, 1997 to Major John D. Lock, Deputy Commander of Military Programs. (*See* Army Ex. H at 1-2: 9/8/97 Lock Memorandum ¶ 1; Army Ex. H at 4-6: 9/8/00 Economou Application for Leave.) Economou's Application for Leave was accompanied by notes from two doctors, Dr. Nicholas Roditis and Dr. Donald Holzer. (Army Ex. H at 5-6.) Dr. Roditis wrote that Economou was being treated for bilateral

carpal tunnel syndrome and that it was recommended that he "refrain from excessive computer use." (*Id.* at 5.) Dr. Holzer wrote that Economou was under his care for carpal tunnel syndrome and that due "to permanent nerve damage on both hands he is not able to use his hands for computer operations [and] is totally disabled until October 8, 1997."(*Id.* at 6.)

According to Major Lock, after conferring with the Human Resources Department, he informed Economou that his Application for Leave was denied, since carpal tunnel syndrome did not require absence from work. (*See* Army Ex. H: Lock Mem. ¶ ¶ 4, 6, 8-9.) Rather, Major Lock informed Economou that the Army Corps would provide Economou with accommodations for his carpal tunnel syndrome which would enable him to work, *i.e.,*"a secretary could be made available to him to type or write, word recognition software could be purchased allowing him to 'speak' to his computer which would do the typing, or a tape recorder could be provided and his notes transcribed by a secretary."(*Id.* ¶¶ 6, 9.) Major Lock informed Economou that he could not approve his request for sick leave on the information Economou had provided but that "[i]f he were to obtain more specific details from his physician, [Lock] would reconsider his request."(*Id.* ¶ 9.) Major Lock informed Col. Thomas of his decision to deny sick leave, and Col. Thomas concurred. (*Id.* ¶ 13.)

*3 Economou subsequently submitted a September 8, 1997 letter from Dr. Roditis stating that Economou was "treated for Bilateral Carpal Tunnel Syndrome from September 2-5, 1997. He was totally incapacitated and was advised to rest, take the medication and not to report to work for the period indicated."(Army Ex. I: 9/8/97 Dr. Roditis Letter.)

On September 17, 1997, Col. Thomas requested that Dr. Holzer provide "more specific medical documentation" regarding Economou's carpal tunnel syndrome and its effects on his ability to work. (Army Ex. J: 9/17/97 Thomas Letter to Dr. Holzer.) Col. Thomas noted that on September 9, 1997, Economou had "submitted another statement which was added to your original note which states: 'Because Mr. Economou is under medication, he is not allowed to be physically in the work place for the duration indicated above.' " (*Id.*) Col. Thomas noted that it was the Army Corps' policy to return employees to light duty or regular duty upon an employee's partial recovery and ability to perform limited duties. (*Id.*) Col. Thomas provided

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

Economou's job description and informed Dr. Holzer that Economou could utilize the services of a Management Support Assistant and Secretary to assist him and that Economou did "not need to operate a computer" to carry out his duties. (*Id.*)

On October 14, 1997, Economou submitted a second Application for Leave, this time seeking leave from October 14 to November 15, 1997. (Army Ex. K: 10/14/97 Request for Leave.) Accompanying the application was the same September 5, 1997 letter from Dr. Holzer that Economou had submitted with his first application indicating that Economou was "totally disabled until October 8, 1997" but containing an additional paragraph (presumably the September 9 statement referred to above), stating: "Because Mr. Economou is under medication, he is not allowed to be physically in the workplace for the duration indicated above."(*Id.* at 3.)

On October 23, 1997, Col. Thomas again wrote to Dr. Holzer requesting "additional medical documentation for Mr. Constantine Economou."(Army Ex. L: 10/23/97 Thomas Letter to Dr. Holzer.) Col. Thomas noted that Economou had submitted a second letter from Dr. Holzer which stated that: Economou was under his care for carpal tunnel syndrome; "[d]ue to permanent nerve damage on both hands, [Economou] is not to use his hands for computer operations"; Economou "is totally disabled until November 15, 1997"; and "[b]ecause Mr. Economou is under medication, he is not allowed to be physically in the workplace for the duration indicated."(*Id.*) Col. Thomas again informed Dr. Holzer that Economou's carpal tunnel syndrome "can easily be accommodated and he will not have to operate a computer."(*Id.*) Finally, Col. Thomas asked Dr. Holzer to "be specific about what medication Mr. Economou is taking that precludes him from performing the duties of the position to which he is currently detailed" and to provide information to that effect by October 31, 1997. (*Id.*)

*4 On November 15, 1997, Economou faxed to Col. Thomas another note from Dr. Holzer and an Application for Leave from November 17 to December 10, 1997. (Army Ex. M: 11/15/97 Request for Leave.) Dr. Holzer's note is virtually identical to the two prior notes, except with respect to the date through which Economou was totally disabled-December 10, 1997. (*Id.* at 2.)

On November 24, 1997, Col. Thomas wrote Dr.

Holzer a third letter in which he again requested additional medical documentation. (Army Ex. N: 11/24/97 Thomas Letter to Dr. Holzer.) Once again, Col. Thomas informed Dr. Holzer that Economou's condition "can easily be accommodated and he will not have to operate a computer."(*Id.*) Again, Col. Thomas asked Dr. Holzer to "be specific about what medication Mr. Economou is taking that precludes him from performing the duties of the position to which he is currently detailed" and provide information to that effect by November 28, 1997. (*Id.*) There is no indication that any such information was provided. Economou did, however, send a December 5, 1997 letter to the Chief of Human Resources, requesting that an attached December 1, 1997 medical statement from Dr. Holzer-asserting that "Mr. Constantine Economou has permanent nerve damage in both hands due to Carpal Tunnel Syndrome. He is permanently handicapped and is not allowed to work on any computer (key boards) that involves the use of his hands"-be "entered permanently in my official Personnel File."(Army Ex. O: 12/5/97 Economou Letter to Chief of Human Resources.)

*Col. Thomas's Alleged Denial of Economou's Requests for Training*

Economou testified that in 1996, on the morning before he was scheduled to take a leadership course which all other division chiefs had attended, the course coordinator e-mailed him that Col. Thomas had deleted his name from the list of authorized attendees. (Army Ex. Q: Economou Dep. at 80-81, 86.) Economou called Col. Thomas, who told Economou that "he was saving money that he needed"; Economou complained that not going to the course "disadvantaged [his] promotional abilities," to which Col. Thomas responded "you can't go any higher from where you are."(*Id.* at 81-82.)

Economou also testified that in "[t]he beginning of '97" Col. Thomas did not approve Economou's request to attend a management course. (*Id.* at 83-84.)[FN2]

FN2. Col. Thomas testified that the only training he recalled Economou specifically requesting was the District's LEAD (Leadership, Education And Development) Course. (Army Ex. I: Thomas Dep. at 30.) According to Col. Thomas, he told Economou that the course was designed for

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

"fairly junior employees"-*i.e.*,"sort of mid-grade people who might be coming into a leadership or supervisory position for the first time in their career"-and, as such, was inappropriate for Economou who was "the highest-ranking civilian individual that we had in the district."(*Id.* at 30-31 .)Col. Thomas claims that he recommended Economou take a higher level course called Organizational Management for Executives and that he "would be glad to send him to that course instead."(*Id.* at 31;*see also id.* at 74-77; Economou Ex. Q: Thomas Resp. to Interrog. No. 22(i).)

*Alleged Investigations of Economou*

Col. Thomas testified that in the summer of 1996, it came to his attention that there were individuals within the District who had relatives working within their chain of command. (Army Ex. T: Thomas Dep. at 85-87.) As a result, Col. Thomas "established a policy for the next year that the district would take great pains not to have that problem [*i.e.*, nepotism] reoccur."(*Id.* at 87.)However, "[a]s the summer hiring began for the summer hire program for the next year, it came to [Col. Thomas]s attention that a number of the managers in the district were not following [his] guidance and ... were either intervening or giving the appearance to intervene in the hiring of their children." (*Id.*) Col. Thomas believed that Economou was one of those managers. (*Id.* at 87-88.)Col. Thomas requested that an officer from outside the District be appointed to investigate the 1997 summer hire program. (*Id.* at 88, 99; Army Ex. R: 6/10/97 Memorandum of Appointment.) Economou testified that he was not disciplined, demoted or reprimanded in any way as a result of the Summer Hire Program investigation, but that he was "maligned." (Army Ex. Q: Economou Dep. at 53-54.)

**\*5** Economou also complains about what he called a "lot of secret investigations that [he] was never privy to."(Economou Dep. at 50-53.) Economou testified that in April or May 1997, Col. Thomas told Economou that he was being investigated. (*Id.* at 51-52.)Economou was unable to provide specifics regarding these "secret investigations." (*Id.* at 52-53.)When asked whether he knew the results of those investigations, Economou replied, "I don't, that's why I call them secret."(*Id.* at 53.)When asked whether any actions were taken against him as a result of these investigations, Economou replied that Col.

Thomas "took actions which were very peculiar in itself. For instance, he would not talk to me, he would not acknowledge me in the presence of other supervisors.... He would ignore me [and r]efuse to see me in an office on regular business."(Economou Dep. at 58.) In addition, Col. Thomas sent Economou e-mails which Economou described as "in itself demeaning." (*Id.*) There is no evidence in the record as to the contents of those e-mails.

In addition, Economou complains that Col. Thomas "directed [Economou] to have a sign-in and sign-out book" (Economou Dep. at 54), and
[W]hat he would do, Colonel Thomas, he would come in the morning very early, I was coming in at the time around 7:30 a.m .... he would come in before that, and check to see when did I sign it, what time did I sign in. He did that over and over and over to the extent that my employees started asking questions, what is going on. Then he would ask my secretary where is he and oftentimes the secretary told him he is inside or he is in the men's room or wherever I was or talking to this individual. He would write down notes and this kept going on and on and on.

(*Id.* at 55.)

According to Economou, Col. Thomas's scrutiny of his comings and goings started in 1996 and continued for at least a year. (Economou Dep. at 57.) When asked whether Col. Thomas took any action against him "as a result of this ... investigation of, when you came in and when you left and where you were," Economou replied "No." (*Id.*)

Finally, Economou complains of self-investigations he was required to conduct:
[W]hen a project was complete [Col. Thomas and General Hunter] would require me to run an investigation to see why it took so many days to complete. Every time there was an accident on the job, they required me to have a whole investigation so this investigation was an ongoing basis. The purpose of this investigation was to portray an idea to everybody that upper management had something against me in the bureaucracy, it translated.

(Economou Dep. at 44-45.) Economou was unable to do provide specifics regarding these self-investigations (*id.* at 45-46) and there is no additional mention of them in the parties' briefs. (*See* Army

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

Reply Br. at 6.)

*Economou's Removal from the Army Corps*

On December 19, 1997, Economou was removed from employment with the Army Corps. (*See* Army & Economou Ex. B: 12/17/97 Army Corps Notice of Decision.) The reason given for Economou's removal was that he made false and fraudulent statements, *i.e.,* overstated and altered receipts for taxi expenses, on three travel reimbursement vouchers in July 1996, October 1996, and June 1997. (*Seeid.* ¶¶ 2, 3, 6, 9, 14, 18, 24.)

*6 Col. Thomas testified that "[a]s the approving official for the travel vouchers for the senior managers, either myself or Colonel Hough would review them for general compliance with form and the nature of the travel to make sure that it had been conducted properly before approving them for-so the individuals could be paid."(Army Ex. T: Thomas Dep. at 51-52.) Col. Thomas testified that there were three things that stood out in Economou's travel claim: (1) the "large number of taxi receipts," (2) a memorandum from Economou's secretary explaining why Economou had stayed at a hotel different than the conference hotel; and (3) "it was pretty apparent that some or most of [the taxi receipts] had been doctored."(*Id.* at 52.)

Col. Thomas denied paying any special attention to Economou's receipts as a result of Economou's EEO complaints and stated that he reviewed his subordinates' submissions with equal scrutiny but that "when there's two different colors of ink on a taxi receipt with the dollar amounts, that's not a subtle finding. That stands out."(*Id.* at 53.)

After discovering the alleged irregularities on July 1, 1997, Col. Thomas contacted Gary L. Kehoe, the Division's Chief of Security and Law Enforcement. (*Seeid.* at 56; Army Ex. V: 8/20/97 Kehoe Memorandum at 1.) On August 20, 1997, Kehoe issued a memorandum to the "Commander, New York District," outlining an investigation of Economou's conduct. (*See* Army Ex. V: Kehoe Mem.)

On August 26, 1997, Col. Thomas issued a "Proposed Removal" notice to Economou based on the above-described conduct. (*See* Army Ex C: 8/26/97 Proposed Removal.) Economou was

temporarily relieved of his duties and detailed as the Special Assistant to the Deputy Commander, Military Works. (*Id.* ¶ 6.) Economou was offered the opportunity to make a written and/or oral reply to the charges in the Proposed Removal, and to review the investigative materials on which the Proposed Removal was based. (*Id.* ¶ 7; Army Ex. B: 12/17/97 Notice of Decision ¶ 2.) On October 10, 1997, Economou and his attorney Alan Serrins made an oral response to the deciding official-Colonel George Clarke, NAD Deputy Commander-in which Economou offered an explanation for each of the alleged irregularities. (Army Ex. D: Memorandum for Record summarizing 10/10/97 oral presentation.) A memorandum summarizing the oral presentation was provided to Serrins on or about November 19, 1997. (*Id.* at 5.)

On December 17, 1997, Col. Clarke determined that Economou had "misrepresented the amounts of taxi fares on the three vouchers identified in the District's proposal letter" and that Economou should be removed from the Army Corps. (Army Ex. B: 12/27/97 Notice of Decision ¶¶ 2, 24-25.) Col. Clarke balanced Economou's twenty-nine years of satisfactory service to the Army Corps and the absence of past discipline with (1) the nature and seriousness of Economou's misconduct; (2) his high level within the Army Corps; (3) the lack of trust and confidence his misconduct created within the Army Corps; (4) the Army's discipline policy and Table of Penalties; and (5) the lack of potential for Economou's rehabilitation and found that removal was appropriate. (*Id.* ¶ 25.)

*7 The Notice of Decision advised Economou about his appeal right as follows:

26. You may appeal under statutory appellate procedures by filing a notice of appeal, in writing, to the Merit Systems Protection Board.... Any appeal must be filed during the period beginning with the day after the effective date of the action but no later than thirty (30) days after the effective date. An appeal to the Merit Systems Protection Board must be in writing and state the reasons for contesting this action. If you appeal, the Merit Systems Protection Board will review the decision and all findings in connection with the removal. A copy of the Merit Systems Protection Board's rules and regulation and a copy of the Board's appeal form is attached to this letter.

27. If you believe this action is discriminatory, based on your race, religion, color, sex, age, national origin,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 6

physical or mental handicap, you have the right to seek assistance from the New York District Equal Employment Opportunity Office (EEO).... The EEO staff will explain the procedures of the EEO Program and your rights.

(*Id.* ¶¶ 26-27.)

Economou was terminated effective December 19, 1997. (*Id.* ¶ 2.)

*Economou Was Not Given A 1996-97 Performance Rating*

Prior to his removal, Economou's annual performance evaluation for 1996-97 came due. (*See, e.g.,* Army Ex. T: Thomas Dep. at 37; Economou Ex. Q: Thomas Resp. to Interrog. No. 22(f).) According to Col. Thomas, he did not evaluate Economou for the 1996-97 period because in September-October 1997, Amy Cardone, the Chief of Human Resources, "advised [him] that there was no requirement to do a performance appraisal on someone who is being proposed for removal."(Thomas Dep. at 37-38, 40; *see* Thomas Resp. to Interrog. No. 22(f).)

*Economou's 1997-98 Agency EEO Complaints*

1. *February 2, 1997 Formal EEO Complaint*

On February 2, 1997, Economou filed a formal agency EEO complaint alleging retaliation. (*See* Economou Ex. P: 2/2/97 EEO Compl.) Specifically, Economou challenged the process by which he and the supervisors working under him had been evaluated during the 1995-1996 rating period, alleged that he was denied training given to similarly situated employees and that he was unfairly denied performance awards. (*Id.* at 4-5.)

2. *August 11, 1997 Formal EEO Complaints*

On August 11, 1997, Economou filed two formal agency EEO complaints. (*See* Army Ex. A: Am. Compl. Exs. A and C.) In the first, Economou alleged that Maj. Gen. Hunter retaliated against him for his prior EEO activity when he "leveled premeditated procurement of investigations against [Economou] in order to malign, tarnish, and undermine [Economou's] reputation."(Am. Compl. Ex. A at 3.) In the second, Economou alleged that Col. Thomas retaliated against him when he (1) "initiated improper

exercise of influence against [Economou]" by collaborating with Maj. Gen. Hunter to "promote intentional and premeditated affliction [sic] of emotional distress against [Economou]"; (2) leveled premeditated procurement of investigations against [Economou], in order to malign and tarnish [Economou's] reputation"; and (3) "interfere[d] on an ongoing basis with [Economou's] supervisory duties and authorities as specified in his job description, and ha[d] literally stripped [Economou] of [his] supervisory authority to supervise his subordinates."(Am. Compl. Ex. C at 3-4.)

3. *October 4, 1997 Formal EEO Complaint*

**\*8** On October 4, 1997, Economou filed a formal agency EEO complaint of national origin discrimination and retaliation for his prior EEO activity, complaining of: (1) "disparaging and belittling" treatment and harassment by Col. Thomas; (2) Economou's reassignment to a non-supervisory position with unspecified duties; (3) his proposed removal; (4) the removal of his authority to supervise Area Offices of the Construction Division; (5) improper surveillance; and (6) discrimination because he is Greek. (Economou Ex. M: 10/4/97 EEO Compl.)

4. *Economou's Informal Communications with the EEO in Early January 1998*

Economou alleges that:
On January 7, 1998, I telephoned Joanne Close, EEO Manager of the North Atlantic Division indicating that I was forwarding a request for an EEO counselor to conduct a new inquiry into a retaliatory charge I was filing stemming from my removal from my position effective December 19, 1997. The following day, Ms. Close received my complaint which identified two primary issues, the removal and the alleged failure to provide reasonable accommodation for my disability-Carpal Tunnel Syndrome.

(9/14/00 Economou Aff. ¶ 7.)

Economou sent a certified letter (which he also faxed) to Close dated January 8, 1998, which reads:
SUBJECT: REQUEST FOR ASSIGNMENT OF EEO COUNSELOR.
Dear Ms. Close:
In accordance with our telephone conversation of 7 January 1998, *I wish to be assigned an EEO*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*counselor, to counsel me on the EEO precomplaint given below.*During our telephone conversation you advised me to *submit my EEO precomplaint to you and you were to provide me with a counselor* after consulting with a higher authority.

Allegation 1: On 19 December 1997, I was wrongfully terminated from Federal employment on pretextual charges leveled against me by Col Gary Thomas, Commander N.Y. District Corps of Engineers and my immediate supervisor, in collaboration with Col George Clarke, Deputy Commander NAD. I allege, this action was in retaliation for having previously engaged in protected EEO activity. I became reasonably aware of this on 8 December 1997.

Allegation 2: Col Thomas has denied my 1997 performance evaluation rating (TAPES) and as a result he has denied my performance award for the same period. I have received disparate treatment as compared with similarly situated New York District employees in retaliation for having been engaged in EEO protected activity. I became reasonably aware of this on 15 December 1997.

Allegation 3: I have been denied reasonable accommodation in the work place for being handicapped, in violation of the Americans with Disabilities Act, as a means of retaliation for having been engaged in EEO protected activity. I became reasonably aware of this on 15 December 1997.

In conclusion:

• I have been wrongfully discharged from Federal employment in retaliation for having previously engaged in EEO protected activity.

• I have been denied my performance evaluation and performance award for the rating period June 1996-1997 in retaliation for my previous EEO activity.

**\*9** • I have been denied reasonable accommodation for being handicapped as a means of retaliation for my previous EEO activity.

(Army Ex. P, emphasis added.)

### 5. *March 5, 1998 Formal EEO Complaint*

On March 5, 1998, Economou filed another agency EEO complaint, alleging that he had been discriminated against based on his national origin (Greek), physical disability (carpal tunnel syndrome), and age (sixty-nine) and that he had been retaliated against because of his prior EEO activity. (Economou Ex. I.) Specifically, Economou complained of three separate incidents of alleged discrimination and retaliation: (1) on December 19, 1997, retaliation

when he "was wrongfully terminated from Federal employment on pretextual charges leveled against [him] by Col. Thomas ... and [his] immediate supervisor, in collaboration with Col. George Clarke, Deputy Commander NAD"; (2) retaliation when Col. Thomas denied him his 1997 performance rating and the resulting performance award; and (3) the denial of reasonable accommodation for his alleged disability. (*Id.* at 4.)

### *Economou's Merit Systems Protection Board Appeal*

On January 14, 1998, Economou filed a "mixed case" appeal to the Merit Systems Protection Board ("MSPB"),[FN3] challenging his removal from the Army Corps. (Economou Ex. D: MSPB Appeal; *see* Economou & Army 56.1 Stmts. ¶ 1.) In his mixed-case appeal, Economou alleged that the Army Corps committed harmful procedural errors related to the oral presentation to Col. Clarke, namely: (1) not allowing a stenographer to record the proceeding; (2) presenting him with a dossier which included all his prior EEO complaints, and a complete "profile" of him, which resembled "more a police file rather than a case file"; and (3) Col. Clarke "made distrustful, threatening and provocative statements against [Economou], and did not maintain a judicial calm."(MSPB Appeal ¶ 30(b); *see* Army & Economou 56.1 Stmts. ¶ 2.) Economou also claimed that his removal violated Title VII because it was in retaliation for his prior EEO activity. (MSPB Appeal ¶¶ 27, 31(b); *see* Army & Economou 56.1 Stmts. ¶ 3.) Economou further alleged that he believed his removal was retaliatory because he had "been discriminated and retaliated on an ongoing basis."(MSPB Appeal ¶ 32(a); *see* Army & Economou 56.1 Stmts. ¶ 3.)

> FN3. Under the Civil Service Reform Act ("CSRA"), the MSPB is authorized to review adverse employment actions which fall into one of five categories: a removal, a suspension for more than 14 days, a reduction in grade, a reduction in pay or a furlough of 30 days or less. 5 U.S.C. § 7512(1)-(5); 5 U.S.C. § 7513; 5 C.F.R. § 1201.3. The Board also has pendent jurisdiction over discrimination claims brought in connection with an adverse action reviewable by it, *i.e .* it has jurisdiction over so-called "mixed case appeals." 5 U.S.C. § 7702(a)(1); 29 C.F.R. § 1614.302. The Court of Appeals for the Federal Circuit has

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

exclusive jurisdiction over all final orders and decisions of the MSPB, except for final orders with respect to "mixed case appeals," over which the federal district courts have exclusive jurisdiction. *See,e.g.,Downey v. Runyon,* 160 F.3d 139, 143-44 & n. 1 (2d Cir.1999); 5 U.S.C. § 7703(b).

On the application form, Economou answered yes to the question "Have you filed a formal discrimination complaint with your agency or any other agency concerning the matter which you are seeking to appeal?" and indicated the agency EEO as the "place filed" and January 8, 1998 as the "date filed," but also indicated that "at present, the case is in the precomplaint stage."(MSPB Appeal ¶ 32(b)-(c).)

On January 20, 1998, the MSPB issued an Order to Show Cause noting that it "may not have jurisdiction to decide [Economou's] appeal at this time."(Economou Ex. E: 1/20/98 Order to Show Cause at 1.) The MSPB explained that "when an appellant has previously filed a formal discrimination complaint concerning the identical matter appealed to the Board, the petition to the Board is premature until either thirty days after resolution of the discrimination complaint or 120 days after the filing of the complaint."(*Id.*) The MSPB stated that Economou bore the burden of proving that the MSPB had jurisdiction over the mixed case appeal and ordered him "to file evidence and argument to prove that this action is within the Board's jurisdiction ... within 15 calendar days of the date of [the] Order."(*Id.* at 2.)

*\*10* On February 10, 1998, Economou replied to the Order to Show Cause:
[P]lease be advised that I concur with your opinions regarding my appeal case.
Presently, I am pursuing this case through the EEOC avenue. I may, after resolution of this case by the EEOC, return my appeal to the U.S. MSPB for action.

(Economou Ex. F: 2/10/98 Reply to Order to Show Cause.)

On March 2, 1998, MSPB Administrative Law Judge ("ALJ") Farnes issued an Order stating that after receipt of Economou's February 10 submission, the Army Corps had informed the MSPB that Economou's January 8, 1998 EEO complaint only

was an informal complaint and that "[i]t is unclear whether the appellant [Economou] has since filed a formal discrimination complaint, or whether the appellant wishes to have his appeal dismissed without prejudice pending his pursuit of a complaint with EEO"; the MSPB scheduled a telephone conference to resolve the matter. (*See* Economou Ex. G: 3/3/98 MSPB Order at 1.)

Economou submitted a March 6, 1998 letter, stamped received by the MSPB on March 10, 1998:
As directed by Administrative Judge Milagros Farnes during the tele-conference of 6 March 1998, I submit two enclosures (Exhibits 1 and 2) of two formal EEO formal [sic] complaints; Exhibit 1 contains my formal EEO complaint dated 4 October 1997 and Exhibit 2 contains my formal complaint of 5 March 1998, as evidence of having filed formal EEO complaints.
Because I allege, that I was wrongfully terminated from federal service as retaliation for having been engaged in protected EEO activity as stated in the two exhibits, it is my wish to stay with the EEO process.

(Economou Ex. J: 3/6/98 Letter)

On April 1, 1998, the MSPB issued an Initial Decision on Economou's "mixed case" appeal. (*See* Economou Ex. K: 4/1/98 MSPB Initial Decision.) The MSPB ruled that it had jurisdiction over the appeal. (*Id.* at 1.) It further noted that "[d]uring a telephonic conference held on April 1, 1998, [Economou] informed [the MSPB] that he was withdrawing his appeal.... Therefore, because the appeal has been withdrawn, the matter is dismissed from further consideration."(*Id.*) The Initial Decision became final on May 6, 1998.(*Id.* at 2.)

*The Army's Decision with Respect to Economou's October 4, 1997 EEO Complaint and Economou's EEOC Appeal*

By decision dated February 19, 1998, the Army EEO found that allegation 2 of Economou's October 4, 1997 complaint (reassignment to a non-supervisor position with unspecified duties) was an integral part of the proposed removal action (allegation 3) and dismissed allegations 2 and 3 on the ground that they would be investigated in a subsequently filed complaint regarding Economou's removal. (*See* Economou Ex. H: 3/8/99 EEOC Appeal Decision at 1.) [FN4] In addition, the Army dismissed allegations 1,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 9

4 and 5 (complaining of "disparaging and belittling" treatment by Col. Thomas, the removal of Economou's authority to supervise Area Offices of the Construction Division, and improper surveillance, respectively) on the grounds that they were not raised with the EEO counselor and that they lacked specificity even though the agency had requested additional information from Economou's attorney. (*Seeid.*)

> FN4. A copy of the Army EEO decision is not included in the record before the Court, but is summarized in the EEOC decision on appeal, Economou Ex. H.

*11 Economou appealed to the EEOC and by decision dated May 28, 1999, the EEOC reinstated allegations 1, 4 and 5, finding that the Army's dismissal was not supported by the record, and reinstated allegation 2, finding that it could not be determined prior to an investigation whether allegation 2 was "part and parcel" of the proposed removal. (*Id.* at 2-3.)The EEOC further found that the Army should combine allegations 2 and 4 if, upon investigation, it determined that they referred to the same agency action. (*Id.* at 3.) Finally, the EEOC affirmed the Army's dismissal of allegation 3 finding that "the agency correctly treated the appellant's proposed removal as subsumed in the removal action that is the subject of a separate complaint."(*Id.*)

In November 1999, the EEOC responded to a request by Economou's counsel and informed him that since 180 days had passed from the filing of Economou's EEOC complaint, he was free to file an action in federal court. (Economou Ex. T: EEOC 11/4/99 Letter to Alan Serrins.) The EEOC also deemed Economou's EEOC complaint withdrawn in favor of a federal court action. (*Id.*)

*The Present Federal Lawsuit*

Economou filed the present action in this Court on December 17, 1999. (Dkt. No. 1.) On April 14, 2000, he filed an amended complaint (Dkt. No. 6 & Economou Ex. A: Am. Compl.), alleging that he was discriminated against based on his national origin (Greek), age (sixty-nine at the time) and disability (carpal tunnel syndrome) and was retaliated against because of his prior EEO activity when: (1) his employment with the Army Corps was terminated on December 19, 1997 (Am.Compl.¶¶ 10-12); (2) he

was subjected to discriminatory and retaliatory "investigations" during his employment with the Army Corps (*id.* ¶ 13); (3) he was denied reasonable accommodation for his disability (*id.* ¶ 14); (4) he was denied training given to similarly situated supervisors (*id.* ¶ 15); and (5) he was denied a performance rating in 1997 and the alleged resulting monetary award associated with his work performance (*id.* ¶ 16). The Amended Complaint asserted claims under Title VII (*id.* ¶¶ 18-19), the ADEA (*id.* ¶¶ 20-21), and the Rehabilitation Act (*id.* ¶¶ 22-23.)

The Army answered the amended complaint on May 17, 2000, without raising an affirmative defense of failure to exhaust administrative remedies. (Dkt. No. 7, & Army Ex. W.) The Army, however, raised the defense at the May 30, 2000 status conference. (Dkt. No. 9 & Economou Ex. L: 5/30/00 Conf. Tr. at 4-5.) The Army also referred to the defense in a letter to Economou's counsel on May 31, 2000. (Army Ex. Y: 5/31/00 Letter from AUSA Ramon Reyes to Joseph Turco.) The Army again raised the defense in its August 11, 2000 pre-motion letter to the Court. (Army Ex. Z: 8/11/00 Pre-Motion Letter.) On August 30, 2000, Economou's counsel informed the Army that pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, he objected to the Army's reliance on the defense in support of its motion for summary judgment because the Army had not raised it in its answer. (*See* Army Ex. AA.) [FN5] The Army's present motion to amend its answer and for summary judgment followed. (Dkt.Nos.15-20.)

> FN5. That letter states as follows:
> In anticipation of the Army's forthcoming Motion for Summary Judgment, and pursuant to our August 30, 2000 telephone conversation and other conversations we had last month, I would like to bring to your attention Fed.R.Civ.P. 8(c) which states that a responsive pleading "shall set forth ... any ... matter constituting an avoidance or affirmative defense."You may or may not have realized that a motion for summary judgment brought on grounds that the plaintiff has failed to exhaust his administrative remedies is not of a jurisdictional nature. Thus, such an affirmative defense would necessarily have to be preserved in a responsive pleading or is waived. Since the Army has failed to preserve this affirmative defense in its

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 10

Answer, it is, therefore, precluded from making a summary judgment motion based on such a defense.

A proper motion to be made would be to move the court to amend the Army's Answer to include a new affirmative defense, not a motion for summary judgment on a waived affirmative defense; the Army has not made such a motion. By means of this correspondence, I hereby put you on notice that to make such an improper motion may be in violation of Fed.R.Civ.P. 11.

(*Id.*)

*ANALYSIS*

I. *SUMMARY JUDGMENT STANDARDS IN EMPLOYMENT DISCRIMINATION CASES*

**\*12** Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forth with if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991).[FN6]

> FN6. *See also, e.g., Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000); *Cobian v. New York City,* 99 Civ. 10533, 2000 WL 1782744 at *7 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.); *Austin v. Ford Models, Inc.,* 95 Civ. 3731, 2000 WL 1752966 at *6 (S.D.N.Y. Nov. 29, 2000) (Peck, M.J.); *Johns-Davila v. City of New York,* 99 Civ. 1885, 2000 WL 1725418 at *3 (S.D.N.Y. Nov. 20, 2000) (Peck, M.J.); *Carbonell v. Goord,* 99 Civ. 3208, 2000 WL 760751 at *4 (S.D.N.Y. June 13, 2000) (Peck, M.J.); *Greenfield v. City of New York,* 99 Civ. 2330, 2000 WL 124992 at *3 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d 343, 352 (S.D.N.Y.1999) (Wood, D.J. & Peck, M.J.); *Douglas v. Victor Capital Group,* 21 F.Supp.2d 379, 387 (S.D.N.Y.1998) (Stein, D.J. & Peck, M.J.); *Hernandez v. New York City Law Dep't Corp. Counsel,* 94 Civ. 9042, 1997 WL 27047 at *6 (S.D.N.Y. Jan. 23, 1997) (Peck, M.J.).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment-here, defendants. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994).[FN7] The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552-53.[FN8]

> FN7. *See also, e.g., Cobian v. New York City,* 2000 WL 1782744 at *7; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *6; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *3; *Carbonell v. Goord,* 2000 WL 760751 at *4; *Greenfield v. City of New York,* 2000 WL 124992 at *3; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 352; *Douglas v. Victor Capital Group,* 21 F.Supp.2d at 387; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *6.

> FN8. *See also, e.g., Cobian v. New York City,* 2000 WL 1782744 at *7; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *6; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *3; *Carbonell v. Goord,* 2000 WL 760751 at *4.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).[FN9] Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587, 106 S.Ct. at 1356.[FN10]

> FN9. *See also, e.g., Cobian v. New York City,* 2000 WL 1782744 at *7; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *6; *Johns-Davila v. City of New York,* 2000 WL

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

1725418 at *3; *Carbonell v. Goord,* 2000 WL 760751 at *4.

FN10.*See also,e.g.,Weinstock v. Columbia Univ.,* 224 F .3d at 41 (At summary judgment, "[t]he time has come ... 'to put up or shut up' "); *Cobian v. New York City,* 2000 WL 1782744 at *7; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *6; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *3; *Carbonell v. Goord,* 2000 WL 760751 at *4.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."*Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513.[FN11]The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. *See,e.g.,Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,*484 U.S. 977, 108 S.Ct. 489 (1987).[FN12]"If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."*Chambers v. TRM,* 43 F.3d at 37.[FN13]

FN11.*See also,e.g.,Chambers v. TRM,* 43 F.3d at 36;*Gallo v. Prudential,* 22 F.3d at 1223;*Cobian v. New York City,* 2000 WL 1782744 at *7; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *3; *Carbonell v. Goord,* 2000 WL 760751 at *4; *Greenfield v. City of New York,* 2000 WL 124992 at *4; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 353;*Douglas v. Victor Capital Group,* 21 F.Supp.2d at 387;*Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *6.

FN12.*Accord,e.g.,Cobian v. New York City,* 2000 WL 1782744 at *7; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *3; *Carbonell v. Goord,* 2000 WL 760751 at *4; *Greenfield v. City of New York,* 2000 WL 124992 at *4; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at

353;*Douglas v. Victor Capital Group,* 21 F.Supp.2d at 388;*Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7.

FN13.*Accord,e.g.,Cobian v. New York City,* 2000 WL 1782744 at *7; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *4; *Carbonell v. Goord,* 2000 WL 760751 at *5; *Greenfield v. City of New York,* 2000 WL 124992 at *4; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 353;*Douglas v. Victor Capital Group,* 21 F.Supp.2d at 387;*Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. *See,e.g.,Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,*480 U.S. 932, 1907 S.Ct. 1570 (1987).[FN14] To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *See,e.g.,Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.[FN15] While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment [,][f]actual disputes that are irrelevant or unnecessary will not be counted."*Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510 (citations omitted).[FN16]

FN14.*Accord,e.g.,Cobian v. New York City,* 2000 WL 1782744 at *7; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *4; *Carbonell v. Goord,* 2000 WL 760751 at *5; *Greenfield v. City of New York,* 2000 WL 124992 at *4; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 353;*Douglas v. Victor Capital Group,* 21 F.Supp.2d at 387.

FN15.*Accord,e.g.,Cobian v. New York City,* 2000 WL 1782744 at *7; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *4; *Carbonell v. Goord,* 2000 WL 760751 at *5; *Greenfield v. City of New York,* 2000 WL 124992 at *4; *Weber v.*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 12

*Parfums Givenchy, Inc.,* 49 F.Supp.2d at 353;*Douglas v. Victor Capital Group,* 21 F.Supp.2d at 387.

FN16.*See also,e.g.,Knight v. United States Fire Ins. Co* ., 804 F.2d at 11-12;*Cobian v. New York City,* 2000 WL 1782744 at *7; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *4; *Carbonell v. Goord,* 2000 WL 760751 at *5; *Greenfield v. City of New York,* 2000 WL 124992 at *4; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 353;*Douglas v. Victor Capital Group,* 21 F.Supp.2d at 387.

*13 When a case turns on the intent of one party, as employment discrimination claims often do, a "trial court must be cautious about granting summary judgment."*Gallo v. Prudential,* 22 F.3d at 1224.FN17Because the employer rarely leaves direct evidence of its discriminatory intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions. *E.g.,Gallo v. Prudential,* 22 F.3d at 1224.FN18"[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.... There must either be a lack of evidence in support of the plaintiff's position ... or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error."*Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 54 (2d Cir.1998).FN19 Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer. *E.g.,Budde v. H & K Distrib. Co.,* No. 99-9449, 216 F.3d 1071 (table), 2000 WL 900204 at *1 (2d Cir. June 29, 2000); *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997); *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995).FN20 In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."*Stern v. Trustees of Columbia Univ.,* 131 F.3d at 312;*see,e.g.,Schnabel v. Abramson,* 232 F.3d 83, 90-91 (2d Cir.2000); *Weinstock v. Columbia Univ.,* 224

F.3d at 42 (The question on summary judgment is "whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, '[i]t is not enough ... to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination."); *Fisher v. Vassar College,* 114 F.3d 1332, 1339 (2d Cir.1997) (en banc), *cert. denied,*118 S.Ct. 851 (1998); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996) (plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge' ").FN21 Indeed, the Second Circuit "went out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.' "*Weinstock v. Columbia Univ.,* 224 F.3d at 41.

FN17.*Accord,e.g.,Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) ("in an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment"); *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir.1997) ("caution must be exercised in granting summary judgment where motive is genuinely in issue"); *Cardozo v. Healthfirst Inc.,* 98 Civ. 3050, 1999 WL 782546 at *1-2 (S.D.N.Y. Sept. 30, 1999); *see also,e.g.,Chambers v. TRM,* 43 F.3d at 40;*Cobian v. New York City,* 2000 WL 1782744 at *8; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *4; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 353;*Douglas v. Victor Capital Group,* 21 F.Supp.2d at 388;*Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7.

FN18.*See also,e.g.,Cobian v. New York City,* 2000 WL 1782744 at *8; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *4; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 353;*Douglas v. Victor Capital Group,* 21 F.Supp.2d at 388;*Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

FN19.*Accord,e.g.,Cobian v. New York City,* 2000 WL 1782744 at *8; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *4; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 354.

FN20.*See also,e.g.,Cobian v. New York City,* 2000 WL 1782744 at *8; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Johns-Davila v. City of New York,* 2000 WL 1725418 at *4; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 354;*Douglas v. Victor Capital Group,* 21 F.Supp.2d at 388;*Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7; *Engelmann v. National Broad. Co.,* 94 Civ. 5616, 1996 WL 76107 at *7 (S.D.N.Y. Feb. 22, 1996).

FN21.*See also,e.g.,Budde v. H & K Distrib. Co.,* 2000 WL 900204 at *1; *Cobian v. New York City,* 2000 WL 1782744 at *8; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *7; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 354;*Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7; *Scaria v. Rubin,* 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), *aff'd,*117 F.3d 652, 654 (2d Cir.1997).

## II. *THE ARMY'S MOTION TO AMEND IS GRANTED AND THE ANSWER IS DEEMED AMENDED TO ASSERT THE DEFENSE OF FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES WITH RESPECT TO ECONOMOU'S DISCRIMINATORY AND RETALIATORY REMOVAL CLAIMS*

*14 The Army has moved to amend its answer to assert Economou's failure to exhaust administrative remedies as an affirmative defense. (*See,e.g.,*Dkt. No. 15: Notice of Motion; Dkt. No. 18: Army Br. at 10-12; Dkt. No. 20: Army Reply Br. at 1-3.)

This Court's Opinion in *Turkenitz v. Metromotion* discusses the law concerning proposed amendments to pleadings after the close of discovery:
Rule 15(a) of the Federal Rules of Civil Procedure instructs that "leave [to amend] shall be freely given when justice so requires."

Analysis of any motion to amend starts with the Supreme Court's decision in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227 (1962):
Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'
*Id.* at 182,83 S.Ct. at 230 (citations omitted).
" 'Prejudice to the opposing party if the motion is granted has been described as the most important reason for denying a motion to amend. Prejudice may be found, for example, when the amendment is sought after discovery has been closed.... Undue delay [and] bad faith ... are other reasons for denying a motion to amend." ' *Berman v. Parco,* 96 Civ. 0375, 1997 WL 726414 at *22 [, 986 F.Supp. 195] (S.D.N.Y. Nov. 19, 1997) (Peck, M.J.), quoting 1 M. Silberberg, *Civil Practice in the Southern District of New York* § 6.26, citing *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987); *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981); *Bymoen v. Herzog, Heine, Geduld, Inc.,* 88 Civ. 1796, 1991 WL 95387 at *1-2 (S.D.N.Y. May 28, 1991); *Priestley v. American Airlines, Inc.,* 89 Civ. 8265, 1991 WL 64459 at *2 (S.D.N.Y. April 12, 1991) ("Insofar as the proposed claim is not predicated on facts learned after the pleading stage of the litigation, the resulting delay is not excusable.... Undue prejudice warrants denial of leave to amend where the proposed claim will significantly increase the scope of discovery when the case is ready for trial.").
" 'Delay in seeking leave to amend a pleading is generally not, in and of itself, a reason to deny a motion to amend. However, the Court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.... Leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgement, particularly when the new claim could have been

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

raised earlier." ' *Berman v. Parco*, 1997 WL 726414 at '22, quoting 1 M. Silberberg, *Civil Practice in the Southern District of New York* § 6.26, citing, *inter alia, Bymoen v. Herzog, Heine, Geduld, Inc.,* 1991 WL 95387, and *Priestley v. American Airlines Inc.,* 1991 WL 64459.

**\*15** For further discussion of the issues of prejudice and undue delay, *see generally* 6 Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2d* §§ 1487-88 ("Perhaps the most important factor listed by the [Supreme] Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading.... [A]lthough delay alone may not result in a denial of leave to amend, some courts have held that leave may be withheld if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them."); 3 James Moore, *Moore's Federal Practice* § 15.15[1]-[3] (3d ed.1997).

*Turkenitz v. Metromotion, Inc.,* 97 Civ. 2513, 1997 WL 773713 at '8-9 (S.D.N.Y. Dec. 12, 1997) (Peck, M.J.); *accord,e.g .,Schnepf v. Siegel,* 98 Civ. 1255, 1998 WL 474132 at '1-2 (S.D.N.Y. July 11, 1998) (Peck, M.J.)

Here, on May 30, 2000-less than two weeks after the Army filed its answer on May 17, 2000-defense counsel informed Economou's attorney in open court that the Army was considering moving to dismiss on the grounds of failure to exhaust. (Dkt. No. 9 & Economou Ex. L: 5/30/00 Conf. Tr. at 4-5.) In addition, defense counsel raised the issue with Economou's counsel the day after the conference (*see* Army Ex. Y: 5/31/00 Letter from Reyes to Turco) and subsequently. (*See* Army Ex. Z: 8/11/00 Pre-Motion Letter; *see also* Army Ex. AA: 8/30/00 Letter from Turco to Reyes, quoted at fn. 5 above, indicating that the defense also was discussed in several conversations; Dkt. No. 14: Economou Br. at 8, conceding that issue was "mentioned informally and intermittently throughout this litigation.") Economou alleges a lack of good faith on the Army's part and claims that the Army's "repeated failure to amend the answer, and/or make a dispositive motion on such grounds lulled plaintiff into the belief that such a defense-although mentioned informally and intermittently throughout this litigation-was nothing more than an idle threat."(Economou Br. at 8.) As a result, Economou contends, he did not conduct discovery on the failure to exhaust administrative

remedies defense and "should not now be unduly prejudiced and disadvantaged by the amendment of defendant's answer on the eve of summary judgment when discovery has been closed."(*Id.* at 8-9.)

This Court finds no evidence of bad faith on the part of defense counsel. As for prejudice, Economou has not identified, nor can the Court surmise, what additional discovery would be needed concerning exhaustion. Economou not only had knowledge of the facts upon which the defense is based, but also, due to the defense's various communications, notice of the possibility-indeed probability-that the Army would assert the defense. *See,e.g.,Monahan v. New York City Dep't of Corrs.,* 214 F.3d 275, 284 (2d Cir.) (affirming district court's consideration of affirmative defense of resjudicata first raised in summary judgment motion where "[d]efendants' untimely amendment did not unfairly surprise plaintiffs or impede the fair prosecution of their claims") (citing *Han v. Mobil Oil Corp.,* 73 F.3d 872, 877-78 (9th Cir.1995) (fact that plaintiff had information giving rise to defense weighs against claim of prejudice from the delay)), *cert. denied,* No. 00-370, 2000 WL 1337454 (Dec. 4, 2000); *Block v. First Blood Assoc .,* 988 F.2d 344, 349-51 (2d Cir.1993) (affirming district court's consideration of affirmative defense of statute of limitations first raised in summary judgment motion where plaintiffs did not show bad faith or prejudice); *Stewart v. Chicago,* No. 92 C 4919, 1994 WL 46672 at '1 (N.D.Ill. Feb. 14, 1994) (permitting amendment of answer to include affirmative defense first raised in summary judgment motion; "the fact that discovery had already closed is irrelevant because in this case the defense requires no additional discovery"); *Steinberg v. Columbia Pictures Indus., Inc.,* 663 F.Supp. 706, 715 (S.D.N.Y.1987) (" '[A]bsent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." '). Accordingly, the Army's motion to amend is granted and the answer is deemed amended to assert the affirmative defense of failure to exhaust administrative remedies with respect to Economou's removal claim.

### III. *ECONOMOU DID NOT EXHAUST HIS DISCRIMINATORY AND RETALIATORY REMOVAL CLAIMS*

#### A. *The Legal Standard*

**\*16** Title VII, the ADEA and the Rehabilitation Act

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

require a litigant to exhaust administrative remedies as a prerequisite to access to the federal courts. See,e.g.,Boos v. Runyon, 201 F.3d 178, 181 (2d Cir.2000) (Rehabilitation Act); Briones v. Runyon, 101 F.3d 287, 289 (2d Cir.1996) (Title VII and ADEA).[FN22]

> FN22. An exception is that a federal employee who is claiming discrimination under the ADEA may proceed directly to federal court after providing the EEOC at least thirty days' notice of his intent to do so. See 29 U.S.C. § 633a(c), (d). However, where, as here, a federal employee has initiated the administrative process on an ADEA claim, he is required to exhaust it. See,e.g.,Briones v. Runyon, 101 F.3d at 289;Bornholdt v. Brady, 869 F.2d 57, 62-64 (2d Cir.1989).

A federal employee seeking review of a major personnel action based on procedural errors and unlawful discrimination must exhaust his administrative remedies either by filing a "mixed case complaint" with his agency's EEO office or by filing a "mixed case appeal" with the MSPB, but not both. See 29 C.F.R. § 1614.302(b); [FN23] see also,e.g.,Downey v. Runyon, 160 F.3d 139, 141-42 (2d Cir.1999) ("The Civil Service Reform Act ('CSRA') provides two paths toward redress for [federal] employees who allege that an adverse employment action was wholly or partly based on prohibited discrimination. CSRA provides that aggrieved employees may either bring a 'mixed complaint' before the [federal agency]'s Equal Employment Office ('EEO'), or a 'mixed appeal' before the MSPB."); Bornholdt v. Brady, 869 F.2d at 62 ("EEOC regulations governing equal employment in the federal government ... provide that a claim of discrimination or reprisal may be pursued either before an equal opportunity agency created by the employing agency ('agency EEO') or before MSPB, but not before both simultaneously."); German v. Pena, 88 F.Supp.2d 222, 225 (S.D . N.Y.2000); Shaishaa v. Walker, 98 Civ. 3281,1999 WL 144517 at *2-4 (S.D.N.Y. March 16, 1999); Khalfani v. Secretary, Dep't of Veterans Affairs, Nos. 93-CV-5374, 94-CV-0644, 94-CV-5720, 1998 WL 765128 at *5,*6 (E.D.N.Y. July 21, 1998)."The MSPB and the EEO each have jurisdiction to hear 'mixed case' claims, or those actions by aggrieved [federal] employees challenging termination allegedly based on both discriminatory and non-discriminatory but impermissible conduct.... Once an employee has chosen the agency in which he wishes to adjudicate his claims, he is required to bring all claims relevant to his discharge in that proceeding."German v. Pena, 88 F.Supp.2d at 225."[W]hichever is filed first shall be considered an election to proceed in that forum" and thereafter, the employee is precluded from availing himself of the other option. 29 C.F.R. § 1614.302(b); Bornholdt v. Brady, 869 F.2d at 62 ("The claimant is deemed to have elected to proceed in whichever forum he has filed first."); German v. Pena, 88 F.Supp.2d at 225;Shaishaa v. Walker, 1999 WL 144517 at *4; Khalfani v. Secretary, Dep't of Veterans Affairs, 1998 WL 765128 at *5 ("Once employees have chosen one remedy, they are thereafter precluded from availing themselves of the other.").

> FN23.Section 1614.302(b) provides:
> (b) Election.An aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB pursuant to 5 CFR 1201.151, but not both. An agency shall inform every employee who is the subject of an action that is appealable to the MSPB and who has either orally or in writing raised the issue of discrimination during the processing of the action of the right to file either a mixed case complaint with the agency or to file a mixed case appeal with the MSPB. The person shall be advised that he or she may not initially file both a mixed case complaint and an appeal on the same matter and that whichever is filed first shall be considered an election to proceed in that forum.If a person files a mixed case appeal with the MSPB instead of a mixed case complaint and the MSPB dismisses the appeal for jurisdictional reasons, the agency shall promptly notify the individual in writing of the right to contact an EEO counselor within 45 days of receipt of this notice and to file an EEO complaint, subject to § 1614.107. The date on which the person filed his or her appeal with MSPB shall be deemed to be the date of initial contact with the counselor.
> Id. (emphasis added).

Once an employee chooses to file a MSPB "mixed case appeal," he must exhaust the remedy completely before seeking redress in federal court.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*See,e.g.,McAdams v. Reno,* 64 F.3d 1137, 1142 (8th Cir.1995); *Bornholdt v. Brady,* 869 F.2d at 63-64;*German v. Pena,* 88 F.Supp.2d at 225. Should the employee voluntarily withdraw his MSPB complaint prior to a final decision on the merits, he will be precluded from raising those claims in a subsequent discrimination action in federal court. *See,e.g.,Wrenn v. Secretary, Dep't of Veterans Affairs,* 918 F.2d 1073, 1078 (2d Cir.1990) ("[a]llowing a plaintiff to abandon the administrative remedies he has initiated [under the ADEA] would tend to frustrate the ability of the agency to deal with complaints"), *cert. denied,*499 U.S. 877, 111 S.Ct. 1625 (1991); *Bornholdt v. Brady,* 869 F.2d at 64 (plaintiff "having commenced the [MSPB] review of his reprisal claim but having abandoned a final administrative decision on the merits, he cannot now obtain a judicial resolution of the merits of that claim"); *Doe v. Odili Tech., Inc.,* No. 3:96CV1957, 1997 WL 317316 at *3 (D.Conn.1997) ("A request to withdraw charges 'whether mistaken or otherwise,' when granted, removes jurisdiction from the court.").[FN24]

> FN24.*See also,e.g.,Baber v. Runyon,* 97 Civ. 4798, 1998 WL 912065 at *5 (S.D.N.Y. Dec. 30, 1998) (citing *Rivera v. United States Postal Service,* 830 F.2d 1037, 1039 (9th Cir.1987) ("To withdraw is to abandon one's claim, to fail to exhaust one's remedies."), *cert. denied,*486 U.S. 1009, 108 S.Ct. 1737 (1988)); *Tsai v. Helfer,* 940 F.Supp. 597, 602 (S.D.N.Y.1996); *Brown v. City of New York,* 869 F.Supp. 158, 170 (S.D.N.Y.1994); *Lawrence v. Baker,* No. 85-CV-434, 1991 WL 148286 at *18 n. 47 (N.D.N.Y. July 25, 1991), *aff'd,*963 F.2d 1522 (2d Cir.), *cert. denied,*506 U.S. 889, 113 S.Ct. 254 (1992).

### B. *Economou Failed to Exhaust His Administrative Remedies on His Removal Claims*

*17 On January 14, 1998, Economou filed an appeal with the MSPB challenging his removal from the Army Corps. (Economou Ex. D: MSPB Appeal; *see also* Economou & Army 56.1 Stmts. ¶ 1.) Economou claimed that (i) the Army Corps committed procedural errors in connection with his December 19,1997 termination; and (ii) his removal violated Title VII because he had been "discriminated and retaliated on an ongoing basis" and "the agency retaliated against [him] for having engaged in protected EEO activity."(MSPB Appeal ¶¶ 27, 30(b),

31(b), 32(a); *see* Economou & Army 56.1 Stmts. ¶¶ 3-4.) Thus, because Economou raised both discrimination claims and procedural errors in his MSPB appeal, it was a "mixed case appeal." *See,e.g.,*29 C.F.R. § 1614.302(a)(2).[FN25]

> FN25."A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age."29 C.F.R. § 1614.302(a)(2).

The Army argues that because Economou did not file a formal complaint with the Army's EEO office concerning his removal until March 5, 1998, *i.e.,* after he had filed his January 14, 1998 MSPB mixed case appeal, his filing with the MSPB constituted an election to proceed in that forum with respect to all aspects of his removal claim (including his claim of discrimination and retaliation) and he was required to exhaust the MSPB appeal process before seeking redress in this Court concerning his removal. (Army Br. at 12-13; Army Reply Br. at 4.) The Army further contends that by voluntarily withdrawing his MSPB mixed case appeal on April 1, 1998, "Economou abandoned his termination claims in the MSPB mixed case appeal process and he cannot now pursue those claims in this Court."(Army Br. at 15.)

Economou disputes the Army's contention that he did not file a formal complaint with the EEO concerning his removal until after he had already filed his MSPB mixed case appeal:
Plaintiff did file a formal complaint with the U.S. Corps. of Engineers Equal Employment Opportunity (EEO) Office concerning his proposed removal from service on October 4, 1997; and later on January 5[sic], 1998, he amended the formal EEO complaint to include the allegations of actual removal-effective December 19, 1997. The agency EEO officer dismissed plaintiff's formal complaint on February 19, 1998 ..., plaintiff appealed EEO's final decision [and][u]pon appeal to the EEOC, EEOC reinstated the complaint which is the basis of the present case before the Court.

(Economou 56.1 Stmt. ¶ 4.)

Economou also argues that the "MSPB improperly invoked jurisdiction to dismiss the case with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

prejudice "because" [b]eginning in early February, 1998, through April, 1998, plaintiff repeatedly urged MSPB Judge Farnes not to consider his appeal [and] stated numerous times that he wanted to pursue his retaliatory removal complaint through the EEO process."(Economou 56.1 Stmt. ¶ 5.) In sum, Economou argues that his "[March 5, 1998] EEO formal filing, prior to the April 1 MSPB Order asserting jurisdiction-in addition to the pending EEOC appeal-precluded the MSPB from asserting jurisdiction."(Economou Br. at 13.)

*18 Economou's reliance on his March 5, 1998 formal agency EEO complaint is misplaced because it was filed after his January 14, 1998 MSPB appeal. As a matter of law, as between a formal EEO complaint and an MSPB appeal, "[w]hichever remedy is filed first shall be considered an election to proceed in that forum" and thereafter the plaintiff is precluded from availing himself of the other forum. 29 C.F.R. § 1614.302(b); see cases cited at pages 35-37 above. Thus, the fact that Economou "wanted to pursue his retaliatory removal complaint through the EEO process" (Economou 56 .1 Stmt. ¶ 5) is irrelevant, as is the fact that it was not until April 1, 1998 that the MSPB announced that it had jurisdiction.

Economou's reliance on his October 4, 1997 formal EEO complaint is also misplaced. "If, following [an EEO] complaint on a proposal, the complainant files an appeal with the MSPB on the subsequent Army decision resulting from that proposal, the EEO officer will cancel the [EEO] complaint on the proposal."32 C.F.R. § 588.46(f)(2) (1997-98); accord,e.g.,Mills v. Pena, Agency No. 92-0206, 1994 WL 741561 at *3 (E.E.O.C. Oct. 12, 1994). Thus, Economou's filing of the prior October 4, 1997 formal EEO complaint with respect to his proposed removal, rather than his actual removal, did not divest the MSPB of jurisdiction over his mixed case appeal regarding his subsequent actual removal. See,e.g.,Yartzoff v. EPA, 34 M.S.P.R. 105, 107 (M.S.P.B.1987) ("Unlike the filing of an EEO complaint with respect to a removal action, the filing of an EEO complaint with respect to a proposal to remove does not affect the [MSPB]'s jurisdiction, unless there is a clear showing that the parties intended the complaint to include the removal action."); Jordan-Berry v. Department of Interior, 32 M .S.P.R. 412, 414 (M.S.P.B.1987) ("appellant's action in initially filing a formal discrimination complaint [about proposed removal] did not divest the [MSPB] of jurisdiction" over appeal from

removal); Coleman v. Department of Treasury, 22 M.S.P.R. 519, 520-21 (M.S.P.B.1984).

To the extent Economou relies on his purported January 1998 amendment of the October 4, 1997 EEO complaint to include allegations of actual removal (see Economou 56.1 Stmt. ¶ 4; Economou Br. at 10-11), Economou admitted in his MSPB appeal form that his EEO complaint regarding his removal was "in the precomplaint stage" (Economou Ex. D: MSPB Appeal ¶ 32(b).) See,e.g.,Proud v. United States, 872 F.2d 1066, 1068 (D.C.Cir.1989) (initiation of pre-complaint proceedings insufficient to constitute an election); German v. Pena, 88 F.Supp.2d at 225 ("Regardless of the precomplaint procedures plaintiff undertook, it is uncontested that he filed his EEO complaint one month after he filed his MSPB complaint. By filing a formal complaint with the MSPB first, plaintiff elected to pursue all of his claims for wrongful termination in that forum.")

*19 Nonetheless, Economou asserts by affidavit that: On January 7, 1998, I telephoned Joanne Close, EEO Manager of the North Atlantic Division indicating that I was forwarding a request for an EEO counselor to conduct a new inquiry into a retaliatory charge I was filing stemming from my removal from my position effective December 19, 1997. The following day, Ms. Close received my complaint which identified two primary issues, the removal and the alleged failure to provide reasonable accommodation for my disability-Carpal Tunnel Syndrome.

See,e.g., Economou 9/14/00 Aff. ¶ 7.)

In the absence of evidence to the contrary, the Court assumes Economou is referring to his January 8, 1998 EEO request for counseling, Army Ex. P. That request, however, makes no reference to and gives no indication that it should be considered an amendment to the October 4, 1997 complaint, or in any other way indicates that it is a formal EEO complaint. (See Army Ex. P, quoted at pages 16-17 above).[FN26]

> FN26. To the extent that Economou might be referring to some other document, he has not provided the Court with a copy or detailed description of the document, and neither the EEO nor the EEOC considered any such submission to be an amendment of the October 4, 1997 complaint. On February 19, 1998, the EEO dismissed Economou's

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

proposed removal claim on the basis that it would be investigated in a subsequently filed complaint regarding Economou's actual removal and the EEOC affirmed that decision.

In sum, having filed a mixed case appeal with the MSPB on January 14, 1998 before filing a formal agency EEO complaint concerning his actual removal, and having abandoned the MSPB appeal process on April 1, 1998 (Economou Ex. K: 4/1/98 MSPB Initial Decision),[FN27] Economou's claims are barred from Court review. *See,e.g.,Bornholdt v. Brady,* 869 F.2d 57, 64 (2d Cir.1989); *see also* cases cited at pages 35-37 above.

> FN27. Economou disputes defendant's assertion in its Rule 56.1 Stmt. (¶ 5) that "On April 1, 1998, Economou voluntarily withdrew from further consideration his mixed case appeal pending before the MSPB." (*See* Economou 56.1 Stmt. ¶ 4.) However, Economou offers no evidence to support this denial and refute the evidence in the record that "[d]uring a telephonic conference held on April 1, 1998, [Economou] informed [the MSPB] that he was withdrawing his appeal." (Economou Ex. K: 4/1/98 MSPB Initial Decision at 1.) *See,e.g.,Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) ("The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful.") (internal quotations omitted); *Bellsouth Telecomm. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996) (" '[A]n adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion [for summary judgment] must set forth "concrete particulars." ...It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts ....." ') (alterations in original).

### C. Economou Is Not Entitled to Equitable Relief From the Administrative Exhaustion Requirement

Economou argues that "[u]nder the rather unusual circumstances of this case," he is entitled to equitable relief from the administrative exhaustion

requirement. (*See* Dkt. No. 14: Economou Br. at 13-15.)

As the Supreme Court stated in the Title VII context in *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457 (1990), "[f]ederal courts have typically extended equitable relief only sparingly."Normally, equitable relief is available only when the plaintiff's failure to comply with administrative requirements "is someone else's fault." *Dillard v. Runyon,* 928 F.Supp. 1316, 1325 (S.D.N.Y.1996), *aff'd mem.,*108 F.3d 169 (2d Cir.1997).[FN28]

> FN28.*Accord,e.g.,Gannon v. Apfel,* No. CV 97-3920, 1999 WL 1288953 at *5 (E.D.N.Y. Nov. 5, 1999); *Cordero v. Heyman,* 97 Civ. 0435, 1998 WL 730558 at *3 (S.D.N.Y. Oct. 19, 1998); *see,e.g.,South v. Saab Cars USA, Inc.,* 28 F.3d 9, 11 (2d Cir.1994) (equitable relief available, for example, "where affirmative misconduct on the part of the defendant may have lulled plaintiff into inaction").

Equitable relief is particularly inappropriate where the plaintiff was represented by counsel during the relevant period. *SeeKeyse v. California Tex. Oil Corp.,* 590 F.2d 45, 47 (2d Cir.1978) (per curiam); *Smith v. American President Lines Ltd.,* 571 F.2d 102, 109-10 (2d Cir.1978) (once a claimant consults an attorney he has "access to a means of acquiring knowledge of his rights and responsibilities"); *Lynk v. Henderson,* 98 Civ.2086, 2000 WL 178859 at *7 (S.D.N.Y. Feb. 15, 2000); *McCain v. Eaton Corp.,* No. CV 88-3309, 1990 WL 127583 at *4 (E.D.N.Y. Aug. 29, 1990); *Cole v. CBS, Inc.,* 634 F.Supp. 1558, 1564 (S.D.N.Y.1986).[FN29]

> FN29.*See also,e.g.,Irwin v. Dep't of Veterans Affairs,* 498 U.S. at 96, 111 S.Ct. at 457-58 (equitable tolling not warranted where plaintiff's attorney was out of the office when EEOC notice arrived); *South v. Saab Cars USA, Inc.,* 28 F.3d at 12 ("lack of due diligence on the part of plaintiff's attorney is insufficient to justify" equitable relief).

Economou contends that he was "initially misled by the Army as to the proper administrative course his complaints should take."(Economou Br. at 12.) He

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

argues that relying on information contained in the December 19, 1997 Notice of Decision informing him of his removal, he "decided that he should file with the MSPB in order to best protect his right to appellate review, as well as amend his formal proposed removal complaint with the EEO to include his actual removal."(*Id.* at 10.)Economou cites the following language from the notice in support of his argument:

**\*20** You may appeal under statutory appellate procedures by filing a notice of appeal ... to the Merit Systems Protection Board. If you appeal, the Merit Systems Protection Board will review the decision and all findings in connection with the removal.... If you believe this action is discriminatory, ... you have the right to seek assistance from the [EEO].

(*Id.,* quoting Army Ex. B: 2/19/97 Notice of Decision.)

While the December 19, 1997 Notice of Decision may not have described the interplay between the EEO and the MSPB, it was not misleading and does not warrant equitable relief. *See,e.g.,Long v. Frank,* 22 F.3d 54, 59 (2d Cir.1994) (equitable relief not warranted where "[t]he ambiguity of the EEOC notice does not ... amount to affirmative misconduct on the government's part aimed at causing [plaintiff] to forgo his legal rights."), *cert. denied,*513 U.S. 1128, 115 S.Ct. 938 (1995); *Martin v. Reno,* 96 Civ. 7646, 1999 WL 527932 at *9 (S.D.N.Y. July 22, 1999)* ("The opposing party is not required to guide a plaintiff through the complexities of litigation, he only must refrain from affirmative misconduct that denies a plaintiff ... legal rights. The responsibility to enforce those rights is the plaintiff's."); *Charlotten v. May Dep't Stores Co.,* 97 Civ. 8962, 1998 WL 635547 at *3 (S.D.N.Y. Sept. 16, 1998)* (Equitable relief "is inapposite in this context since there is no evidence that any government official or defendant affirmatively misled the plaintiff."); *Dillard v. Runyon,* 928 F. Supp at 1326. This is particularly so given that Economou was represented by his current counsel at least as early as August 29, 1997, long before he filed his MSPB appeal. (*See* Reyes Suppl. Decl. Ex. A: 8/29/97 Memorandum, indicating that Allan Serrins would be representing Economou at hearing concerning proposed removal.)

Accordingly, because Economou did not pursue his discrimination and retaliation claims concerning his termination before the MSPB, and equitable relief from the administrative exhaustion requirement is not warranted, the Court will not consider Economou's discriminatory and retaliatory termination claims.

## IV. *THE INVESTIGATIONS ABOUT WHICH ECONOMOU COMPLAINS ARE NOT "ADVERSE EMPLOYMENT ACTIONS"*

To establish a prima facie case of national origin, age, or disability discrimination, or retaliation, with respect to the investigation about which he complains, Economou must show, *inter alia,* that those investigations constituted adverse employment actions within the meaning of the discrimination statutes. *See,e.g.,Cobian v. New York City,* 99 Civ. 10533, 2000 WL 1782744 at *15,*16 (S.D.N.Y. Dec. 6, 2000)* (Peck, M.J.), *citing inter alia,Reeves v. Sanderson Plumbing Prods, Inc,* 120 S.Ct. 2097, 2106 (2000); *Weinstock v. Columbia Univ.,* 224 F .3d 33, 42 (2d Cir.2000); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995); *Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998).

**\*21** As the Second Circuit has observed, while adverse employment action is not defined solely in terms of job termination or reduction in wages and benefits, " 'not every unpleasant matter short of [discharge or demotion] creates a cause of action." ' *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997) (brackets in original); *accord,e.g.,Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996) ("While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action" under Title VII.); *Spohn v. West,* 00 Civ. 0735, 2000 WL 1459981 at *5 (S.D.N.Y. Oct. 2, 2000)* (Peck, M.J.). Rather, a plaintiff must establish that he has suffered a " 'materially adverse change in the terms and conditions of employment." ' *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.), *cert. denied,*522 U.S. 997, 118 S.Ct. 563 (1997); *see also,e.g.,Spohn v. West,* 2000 WL 1459981 at *5.

Economou complains of the following: he was investigated with respect to his involvement in the summer hire program (*see* Army Ex. Q: Economou Dep. at 53-54); he was the subject of a "lot of secret investigations that [he] was never privy to"(*id.* at 50-53); Col. Thomas scrutinized his comings and goings (*id.* at 54-55); and he was made to conduct investigations of his own projects (*id.* at 44-46).*See* pages 9-11 above. Economou, however, has come forward with no evidence that he was adversely

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

affected by any of these investigations-indeed, he admitted that he was not disciplined in any way as a result of the investigation into the summer hire program (*id.* at 53-54) and that no action was taken against him as a result of Col. Thomas's scrutiny of his whereabouts (*id.* at 57).[FN30]

> FN30. The Court disregards as conclusory the assertion in Economou's Rule 56.1 Statement that "All of the investigations of which the Complainant complained resulted directly in plaintiff's removal."(*See* Economou 56.1 Stmt. ¶ 8.)

Courts in this Circuit have held that investigations alone are not adverse employment actions. *See,e.g.,Yerdon v. Henry,* 91 F.3d 370, 378 (2d Cir.1996) (employee cannot be adversely affected by charges of wrongdoing in the workplace unless the charges are decided against him); *Cahill v. O'Donnell,* 75 F.Supp.2d 264, 274 (S.D.N.Y.1999) (charge of gender discrimination against plaintiff and resulting investigation did not constitute adverse employment action where plaintiff did not produce evidence that charges were improperly brought and charges did not result in disciplinary action or other job consequences); *Garcia v. West,* 98 Civ. 3905, 1999 WL 782563 at *4 (S.D.N.Y. Sept. 30, 1999) (plaintiff failed to establish prima facie case of retaliation with respect to drug diversion investigation where "no disciplinary or other type of action was ever taken against Plaintiff as a result of the investigation"); *NiCastro v. Runyon,* 60 F.Supp.2d 181, 186 (S.D.N.Y.1999) ( "many of the actions complained of by plaintiff, such as scrutiny from his supervisors that he deemed excessive [and] requiring documentation for sick leave ... do not constitute 'adverse employment actions' and so cannot be the basis of any claim of Title VII retaliation"); *Boylan v. Arruda,* 42 F.Supp.2d 352, 357 (S.D.N.Y.1999) ("simply undergoing an investigation is not sufficient to constitute 'adverse employment action' ").[FN31]

> FN31. Moreover, Economou's conclusory assertions that he was "maligned" as a result of the investigation into the summer hire program (Economou Dep. at 53-54) and "ignore[d]" as a result of Col. Thomas's alleged "secret investigations" (*id.* at 57) do not convert those investigations into adverse employment actions. *See,e.g.,Sinopoli v. Regula,* No. 97-7229, 125 F.3d 844 (table),

1997 WL 624987 at *2 (2d Cir. Oct. 9, 1997) (Plaintiff's "statement that he was 'often' ridiculed is conclusory, and is not otherwise supported in the record. It thus may not be taken into account on summary judgment."); *Cobian v. New York City,* 2000 WL 1782744 at *19 & n. 40 (conclusory allegations of discrimination insufficient to defeat summary judgment) (citing cases).

**\*22** Accordingly, the Army is granted summary judgment on Economou's claims with respect to allegedly discriminatory and retaliatory investigations.[FN32]

> FN32. In his amended complaint, Economou alleges that he was subjected to investigations "designed by Col. Thomas and M.G. Hunter to create an abusive, hostile and stressful environment for plaintiff."(Am.Compl.¶ 13.) Any hostile work environment claim, however, is deemed abandoned since Economou has not addressed the claim anywhere in his opposition papers. *See,e.g.,Blumenthal v. Sea Hotel Co., LLC,* 99 Civ. 4881, 2000 WL 1349249 at *4 (S.D.N.Y. Sept. 19, 2000) (Peck, M.J.); *Douglas v. Victor Capital Group,* 21 F.Supp.2d 379, 393 (S.D.N.Y.1998) (Stein, D.J. & Peck, M.J.) ( & cases cited therein). Indeed, the Court notes that Economou's opposition brief does not address the Army's motion for summary judgment on Economou's investigations claim at all.

## V. *ECONOMOU WAS OFFERED REASONABLE ACCOMMODATION FOR HIS DISABILITY*

To establish a prima facie case of discrimination based on an employer's failure to accommodate an employee's disability under the Rehabilitation Act (or the Americans with Disabilities Act), "an employee bears the burden of demonstrating that: (1) he was an 'individual who has a disability' within the meaning of the statute; (2) the employer had notice of his disability; (3) he could perform the essential functions of the job with reasonable accommodation; and (4) the employer refused to make such accommodation."*Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 332 (2d Cir.2000); *see,e.g.,Stone v. City of Mount Vernon,* 118 F.3d 92, 96-97 (2d Cir.1997), *cert. denied,* 522 U.S. 1112, 118 S.Ct.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

1044 (1998); *Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 6 (2d Cir.1999); *Lyons v. Legal Aid Soc'y,* 68 F.3d 1512, 1515 (2d Cir.1995).[FN33]

FN33.*See also,e.g.,Wheeler v. Corporation Counsel of N.Y.C.,* 93 Civ. 5184, 2000 WL 1760947 at \*10 (S.D.N.Y. Nov. 30, 2000); *Menes v. CUNY Univ.,* 92 F.Supp.2d 294, 302 (S.D.N.Y.2000); *Wilson v. Consolidated Edison Co.,* 96 Civ. 7546, 2000 WL 335733 at \*8 (S.D.N.Y. March 30, 2000).

The Army concedes that Economou is an individual with a disability within the meaning of the Rehabilitation Act, that it had notice of that disability, and that Economou, with reasonable accommodation, was otherwise qualified to perform the essential functions of his position. (*See* Army Br. at 19 n. 7.)

As for Economou's claim that he was denied reasonable accommodation by Col. York in 1994, it is undisputed that Economou was placed on extended paid medical leave from June 9, 1994 to June 25, 1995 apparently as a result of an unrelated on-the-job injury. (*See* 9/22/00 Deptula Aff. ¶¶ 1-2.) It is also undisputed that Economou never requested any further accommodation when he returned from that leave, until September 1997. (9/22/00 Deptula Aff. ¶ 3; Army Ex. Q: Economou Dep. at 78-79, 116-17.) Because Economou never requested any accommodation on his return, the Army is entitled to summary judgment on Economou's Rehabilitation Act claim with respect to the 1994 events. *See* cases cited at pages 52-53 below.[FN34]

FN34. In any event, two additional and independent reasons exist for dismissing Economou's Rehabilitation Act claim with respect to the events of 1994. First, Economou's alleged request and the Army's alleged denial of accommodation in 1994 when *Col. York* was Economou's supervisor is outside the scope of this action since the amended complaint alleges only that *Col. Thomas* denied Economou reasonable accommodation. (Economou Ex. A: Am. Compl. ¶ 14.) Second, Economou has not alleged, and there is no indication in the record, that he has exhausted his administrative remedies with respect to any reasonable accommodation claim arising in 1994. *See,e.g.,*29 C.F.R. § 1614.105(a)(1) &

regulations cited at pages 54-55 below (requiring federal employee to, *inter alia,* consult with an agency EEO counselor within forty-five days of an alleged discriminatory act).

As for Economou's claim that he was denied reasonable accommodation by Col. Thomas in 1997, the only evidence in the record of any requests for accommodation during Thomas's tenure is the series of requests for leave which Economou made beginning in September 1997. (*See,e.g.,* Army Exs. H at 4-6, K, M; *see also* discussion at pages 4-8 above.) The undisputed evidence shows that within two hours of Economou's initial Application for Sick Leave on September 8, 1997 for the period September 2 through October 8, 1997, Economou was informed that the Army Corps would accommodate him by: (1) making a secretary available to him to type or write, (2) purchasing word recognition software which would enable him to "speak" to his computer which would then write for him, or (3) providing him with a tape recorder on which he could record notes which would then be transcribed by his secretary. (*See* Army Ex. H at 1: Lock Mem. ¶¶ 6, 9.)

\*23 These accommodations were reasonable under the circumstances because they would have enabled Economou to "refrain from excessive computer use" and would have eliminated the need for Economou "to use his hands for computer operations," as prohibited by Dr. Holzer and Dr. Roditis.[FN35]*See,e.g.,*42 U.S.C. § 12111(9) ("The term 'reasonable accommodation' may include ... job restructuring, ... acquisition or modification of equipment or devices, ... the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."); 29 C.F.R. § 1630.2(o)(ii) (examples of reasonable accommodation include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position"); *Wernick v. Federal Reserve Bank,* 91 F.3d 379, 384 (2d Cir.1996) (providing employee with ergonomic furniture constituted reasonable accommodation)."There is no provision requiring the employer to take account of the disabled individual's preferences in choosing the means of accommodation."*Fink v. New York City Dep't of Personnel,* 855 F.Supp. 68, 72 (S.D.N.Y.1994),

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06722-RJS    Document 20-4    Filed 11/16/2007    Page 22 of 28

Not Reported in F.Supp.2d                                                Page 22
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

aff'd, 53 F.3d 565 (2d Cir.1995); see also, e.g., Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir.1996) ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation."); Querry v. Messar, 14 F.Supp.2d 437, 445 (S.D.N.Y.1998) ("An employer need only offer a 'reasonable accommodation'; it need not provide the employee with the accommodation of her choice."); Katz v. Metropolitan Life Ins. Co ., 95 Civ. 10075, 1998 WL 132945 at *5 (S.D.N.Y. March 20, 1998); Kemer v. Johnson, 900 F.Supp. 677, 686 (S.D.N.Y.1995) ("Once a reasonable accommodation has been made, a defendant has fulfilled its obligation to make an accommodation."), aff'd mem.,101 F.3d 683 (2d Cir.), cert. denied,519 U.S. 985, 117 S.Ct. 441 (1996); Nelson v. Ryan, 860 F.Supp. 76, 81 (W.D.N.Y.1994) ("The ultimate inquiry is not whether a plaintiff's actual request for accommodation is allowed, but whether the accommodation offered to the plaintiff was, in fact, reasonable.").

> FN35. Indeed, they included the accommodation that Economou had requested in 1994: a voice recognition program for his computer. (Army Ex. Q: Economou Dep. at 78.)

When Economou subsequently submitted a doctor's note stating that Economou was "totally incapacitated" and could not work at all due to medication (see Army Ex. I: 9/8/97 Letter from Dr. Roditis), it was reasonable for the Army to request further documentation to determine whether Economou's absence from work would be justified. See, e.g., Jackan v. New York State Dep't of Labor, 205 F.3d 562, 566 (2d Cir.) (federal regulations interpreting the Rehabilitation Act envision an "interactive process" by which employers and employees work together to assess whether employee's disability can be reasonably accommodated) (citing 29 C.F.R. § 1630.2(o)(3) ("This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations.")), cert. denied,121 S.Ct. 314 (2000); Shelton v. General Elec. Aerospace Div., No. 95-CV-112, 1998 WL 187413 at *9 (N.D.N.Y. April 14, 1998) (Pooler, D.J.) (an "employer may require an employee to provide documentation of her need for an accommodation if the need is not obvious") (citing 29 C.F.R. pt. 1630.9, app. at 362); Sidor v.

Reno, 95 Civ. 9588, 1997 WL 582846 at *6 (S.D .N.Y. Sept. 19, 1997) ("Once ... a request for accommodation is made, 'the responsibility for fashioning a reasonable accommodation is shared between the employee and the employer." '). Economou, however, never submitted any further information, but instead continued to submit requests for sick leaves accompanied by notes from Dr. Holzer with the same cursory explanation that "[b]ecause Mr. Economou is under medication, he is not allowed to be physically in the work place for the duration indicated above." (See Army Ex. J; Army Ex. K at 3; Army Ex. M at 2).

*24 As the Seventh Circuit stated in an ADA case:
Once an employer knows of an employee's disability and the employee has requested reasonable accommodations, the ADA and its implementing regulations require that the parties engage in an interactive process to determine what precise accommodations are necessary. In this case, the interactive process broke down.... Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the break down. But where, as here, the employer does not obstruct the process, but instead makes reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed, ADA liability simply does not follow.

Beck v. University of Wisc. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir.1996); see also, e.g., Templeton v. Neodata Servs. Inc., 162 F.3d 617, 619 (10th Cir.1998) ("the employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation"); Steffes v. Stepan Co., 144 F.3d 1070, 1073 (7th Cir.1998) ("Because [plaintiff] failed to hold up her end of the interactive process by clarifying the extent of her medical restrictions, [her employer] cannot be held liable for failing to provide reasonable accommodations.").

Because Economou was responsible for a breakdown in the interactive process and failed to show that his requests for sick leave were reasonable under the circumstances, the Army is granted summary judgment on Economou's reasonable accommodation claim.

VI. ECONOMOU EXHAUSTED HIS DENIAL OF TRAINING CLAIM; SUMMARY JUDGMENT IS

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*DENIED*

The Army has moved for summary judgment on Economou's denial of training claim solely on the ground of failure to exhaust administrative remedies. (*See* Army Br. at 30; Army Reply Br. at 10.)

As discussed in Point III.A of this Opinion, a plaintiff claiming discrimination under Title VII, the ADEA and the Rehabilitation Act generally must exhaust administrative remedies before bringing suit in federal court. *See, e.g., Briones v. Runyon,* 101 F.3d 287, 289 (2d Cir.1996), and cases cited in Point III.A above.

EEOC regulations require an aggrieved federal employee to first consult with an agency EEO counselor within forty-five days of the alleged discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1). The employee must then file an EEO complaint with "the agency that allegedly discriminated against the complainant." *Id.* § 1614.106. Within ninety days of that agency's final decision, or after 180 days have passed from the filing of the complaint if no final decision has been rendered, the complainant may file suit in federal court. *See id.* § 1614.407; *see also, e.g.,* 42 U.S.C. § 2000e-16(c); (Title VII); 29 U.S.C. § 794a(a)(1) (administrative procedures set forth in 42 U.S.C. § 2000e-16 apply to federal employees seeking relief under Rehabilitation Act); 29 C.F.R. 1614.407; *Brown v. General Servs. Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967 (1976) ("[T]he complainant may file a civil action if, after 180 days from the filing of the charge ..., the agency ... has not taken final action."); *Boos v. Runyon,* 201 F.3d 178, 181 (2d Cir.2000); *Wrenn v. Secretary, Dep't of Veterans Affairs,* 918 F.2d 1073, 1077 (2d Cir.1990), *cert. denied,* 499 U.S. 977, 111 S.Ct. 1625 (1991); *Taylor v. Henderson,* 99 F.Supp.2d 434, 437 (S.D.N.Y.2000) (Peck, M.J.) ("A government employee can sue his employing agency for discrimination in federal court within 90 days of final agency action or after 180 days have passed from the filing of the formal agency EEO complaint without a final agency decision.").

*\*25* In its brief, the Army-referencing the two August 11, 1997 EEO complaints and the March 5, 1998 EEO complaints - argued that "it is undisputed that Economou did not raise the claim that he was denied training opportunities in any of the three EEO complaints which form the basis of this lawsuit."(Army Br. at 27, citing Army 56.1 Stmt. ¶

22, citing Am. Compl. Exs. A-C.) In response, Economou has submitted a copy of a February 2, 1997 formal EEO complaint alleging, *inter alia,* that in retaliation for his prior EEO activity, he was denied training given to similarly situated employees. (*See* Economou Ex. P: 2/2/97 EEO Compl.; *see also* Economou Br. at 19; Economou 56.1 Stmt. ¶ 22.) While it would have been better if Economou had cited his February 2, 1997 EEO complaint in the "Exhaustion of Administrative Remedies" section of his amended complaint, he was not required to do so.[FN36]

> FN36. As for defense counsel's argument that Economou should be precluded from relying on the February 2, 1997 EEO complaint because it was not produced during discovery (*see* Army Reply Br. at 1; Reyes Suppl. Decl. ¶ 2), the Army has not established that the document was within the scope of any of its document requests. If the Army had done so, the Court would have excluded the document and granted the Army's summary judgment motion on this claim.

Accordingly, because at the time Economou filed this lawsuit, more than 180 days had passed since Economou filed his February 2, 1997 formal agency EEO complaint with respect to his denial of training/retaliation claim, that claim has been exhausted and defendant's summary judgment motion with respect to that claim is denied.

Since the Army has not moved for summary judgment with respect to this claim on the merits or any other basis, the claim will proceed to trial. The Joint Pretrial Order is due thirty days from the date of this Opinion.

VII. *ECONOMOU HAS FAILED TO SHOW THAT THE ARMY'S PROFFERED LEGITIMATE NONDISCRIMINATORY REASON FOR DENYING HIM A 1997 PERFORMANCE EVALUATION WAS A PRETEXT FOR RETALIATION*

Economou claims that Col. Thomas retaliated against him for his EEO activity by denying him a 1996-1997 performance rating and the monetary award that would have resulted from a positive evaluation. (*See* Economou Ex. A: Am. Compl. ¶ 16; Economou Br. at 16-18.) The Army has moved for summary

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

judgment on the grounds that Economou has not established a prima facie case with respect to the denial, but that even if Economou has established a prima facie case, the Army has articulated a legitimate nondiscriminatory and nonpretextual reason for withholding the evaluation. (Army Br. at 23-27; Army Reply Br. at 8-9.)

### A. *Applicable Legal Standards*

Retaliation claims under the discrimination statutes are governed by the *McDonnell Douglas* burden-shifting analysis. *See, e.g., Sotolongo v. New York City Transit Auth.,* No. 99-9195, 216 F.3d 1073 (table), 2000 WL 777958 at *2-3 (2d Cir. June 15, 2000) (retaliation claim under Title VII and ADEA); *Sutherland v. New York State Dep't of Law,* No. 99-9086, 216 F.3d 1073 (table), 2000 WL 730413 at *3 (2d Cir. June 2, 2000) (Rehabilitation Act standards are same as ADA standards); *Silk v. City of Chicago,* 194 F.3d 788, 798 & n. 7, 799-803 (7th Cir.1999) (Rehabilitation Act); *Adeniji v. Administration for Children's Servs.,* 43 F.Supp.2d 407, 428 (S.D.N.Y.) (Wood, D.J. & Peck, M.J.) (Title VII retaliation) (citing *Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998)), *aff'd mem.,* 201 F.3d 430 (2d Cir.1999).

**\*26** Under the *McDonnell Douglas* burden-shifting analysis, the plaintiff has the burden at the outset of "proving by the preponderance of the evidence a prima facie case of discrimination."*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093 (1981); *see, e.g., Reeves v. Sanderson Plumbing,* 120 S.Ct. 2097, 2106 (2000); *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 310, 116 S.Ct. 1307, 1309 (1996); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2746-47 (1993); *McDonnell Douglas v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824.[FN37]Establishment of a prima facie case " 'in effect creates a presumption that the employer unlawfully discriminated against the employee.' " *St. Mary's v. Hicks,* 509 U.S. at 506, 113 S.Ct. at 2747 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094).[FN38]

> FN37.*See also, e.g., Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000); *Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir.1998); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994); *Cobian v. New York City,* 99 Civ. 10533, 2000 WL 1782744 at *11 (S.D.N.Y. Dec. 6, 2000)

(Peck, M.J.); *Austin v. Ford Models, Inc.,* 98 Civ. 3731, 2000 WL 1752966 at *8 (S.D.N.Y. Nov. 29, 2000) (Peck, M.J.); *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d 343, 354 (S.D.N.Y.1999) (Wood, D.J. & Peck, M.J.); *Lediju v. New York City Dep't of Sanitation,* 173 F.R.D. 105, 113-14 (S.D.N.Y.1997) (Leisure, D.J. & Peck, M.J.); *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *12; *Burger v. Litton,* 91 Civ. 0918, 1996 WL 421449 at *8 (S.D.N.Y. April 25, 1996) (Peck, M.J.), *report & rec. adopted,* 1996 WL 609421 (S.D.N.Y. Oct. 22, 1996) (Knapp, D.J.).

> FN38.*See also, e.g., Scaria v. Rubin,* 117 F.3d 652, 654 (2d Cir.1997); *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir.1997) (en banc), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851 (1998); *Cobian v. New York City,* 2000 WL 1782744 at *11; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *8; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 355; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *12; *Burger v. Litton,* 1996 WL 421449 at *8.

Once a plaintiff claiming employment discrimination has established a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its employment decision. *E.g., Reeves v. Sanderson Plumbing,* 120 S.Ct. at 2106; *O'Connor v. Consolidated Coin,* 517 U.S. at 310; 116 S.Ct. at 1309; *St. Mary's v. Hicks,* 509 U.S. at 506-07, 113 S.Ct. at 2747; *Texas v. Burdine,* 450 U.S. at 253-54, 101 S.Ct. at 1093-94; *McDonnell Douglas v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824.[FN39]The burden on the defendant at this phase is one of production rather than persuasion. *E.g., Reeves v. Sanderson Plumbing,* 120 S.Ct. at 2106; *St. Mary's v. Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747; *Texas v. Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096.[FN40]

> FN39.*See also, e.g., Schnabel v. Abramson,* 232 F.3d at 87; *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000); *Austin v. Ford Models, Inc.,* 149 F.3d at 152; *Stein v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997); *Scaria v. Rubin,* 117 F.3d at 654; *Fisher v. Vassar College,* 114 F.3d at 1335; *Chambers v. TRM,* 43 F.3d at 38; *Cobian v. New York City,* 2000 WL

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

1782744 at *11; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *8; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 355-56; *Lediju v. New York City Dep't of Sanitation,* 173 F.R.D. at 114; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *12; *Burger v. Litton,* 1996 WL 421449 at *8.

FN40. *See also,e.g., Austin v. Ford Models, Inc.,* 149 F.3d at 153; *Scaria v. Rubin,* 117 F.3d at 654; *Fisher v. Vassar College,* 114 F.3d at 1335; *Cobian v. New York City,* 2000 WL 1782744 at *11; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *8; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 356; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *12; *Burger v. Litton,* 1996 WL 421449 at *8.

"Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case." *Fisher v. Vassar College,* 114 F.3d at 1335-36; *accord,e.g., Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 356. " 'It is important to note ... that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." " ' *Fisher v. Vassar College,* 114 F.3d at 1335 (quoting *St. Mary's v. Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747); *accord,e.g., Reeves v. Sanderson Plumbing,* 120 S.Ct. at 2106; *Cobian v. New York City,* 2000 WL 1782744 at *11; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *9; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp.2d at 3562.

If the defendant articulates a non-discriminatory reason, the *McDonnell Douglas* burden-shifting framework drops out of the picture. *E.g., Reeves v. Sanderson Plumbing,* 120 S.Ct. at 2106; *St. Mary's v. Hicks,* 509 U.S. at 510, 113 S.Ct. at 2749; *Texas v. Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093-94.[FN41] "Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, ... the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual.' " ' *Reeves v. Sanderson Plumbing,* 120 S.Ct. at 2106 (quoting *Texas v. Burdine,* 450 U.S. at 255 n. 10, 101

S.Ct. at 1095 n. 10); *accord,e.g., Cobian v. New York City,* 2000 WL 1782744 at *12; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *9.

FN41. *See also,e.g., Weinstock v. Columbia Univ.,* 224 F.3d at 42; *Scaria v. Rubin,* 117 F.3d at 654; *Fisher v. Vassar College,* 114 F.3d at 1336; *Cobian v. New York City,* 2000 WL 1782744 at *12; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *9; *Weber v. Parfums Givenchy, Inc.,* 49 F.Supp. at 356.

*27 Just last term, the Supreme Court clarified the standard at this stage of the *McDonnell Douglas* analysis:

[I]n *St. Mary's Honor Center,...* we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct." In other words, "[i]t is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."

In reaching this conclusion, however, we reasoned that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation....

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, *a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

liability.Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50 [or Rule 56], and we have reiterated that trial courts should not " 'treat discrimination differently from other ultimate questions of fact.' "
***28***Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves v. Sanderson Plumbing,* 120 S.Ct. at 2108-09 (emphasis added & citations omitted); *accord,e.g.,Cobian v. New York City,* 2000 WL 1782744 at *12-13; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *9-10.

After *Reeves,* the Second Circuit has made clear that merely proving a prima facie case and disproving the employer's explanation for its conduct at the third step of the *McDonnell Douglas* analysis will not preclude summary judgment in all cases; rather, a case-by-case analysis is necessary:
In examining the impact of *Reeves* on our precedents, we conclude that *Reeves* prevents courts from imposing a per se rule requiring in all instances that an ADEA claimant offer more than a prima facie case and evidence of pretext.... But the converse is not true; following *Reeves,*we decline to hold that no ADEA defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext. Rather, we hold that the Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy

his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."

*Schnabel v. Abramson,* 232 F.3d at 90 (emphasis added); *accord,e.g.,James v. New York Racing Ass'n,* No. 00-7040, 2000 WL 1752908 at *4-6 (2d Cir. Nov. 29, 2000).[FN42]

> FN42.*See also,e.g.,Weinstock v. Columbia Univ.,* 224 F .3d at 42 ("In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."); *Cobian v. New York City,* 2000 WL 1782744 at *13; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *10; *Connell v. Consolidated Edison Co.,* 109 F.Supp.2d 202, 207-08 (S.D.N.Y.2000) (Chin, D.J.) ("The key is whether there is sufficient evidence in the record-whether it consists of just the prima facie case and proof of pretext alone or those items together with additional evidence-to support an inference of discrimination.").

Indeed, the Second Circuit and the District Court decisions within the Circuit continue to grant summary judgment to defendants in appropriate cases at the final *McDonnell Douglas* step, even after *Reeves.*[FN43]

> FN43.*E.g.,James v. New York Racing Ass'n,* 2000 WL 1752908 at *7; *Cobian v. New York City,* 2000 WL 1782744 at *13; *Austin v. Ford Models, Inc.,* 2000 WL 1752966 at *12-15; *Trezza v. Dilenschneider Group,* 99 Civ. 0185, 2000 WL 1702029 at *5-6 (S.D.N.Y. Nov. 14, 2000); *Faldetta v. Lockheed Martin Corp.,* 98 Civ. 2614, 2000 WL 1682759 at *8-11 (S.D.N.Y. Nov. 9, 2000); *Chudnovsky v. Prudential Sec., Inc.,* 98 Civ. 7753, 2000 WL 1576876 at *8 (S.D.N.Y. Oct. 23, 2000); *Cousins v. Howell Corp.,* 113 F.Supp.2d 262, 268-69 (D.Conn.2000); *Ekwegbalu v. Central Parking Sys.,* 97 Civ. 9477, 2000 WL 1371335 at *3-4 (S.D.N.Y. Sept. 22, 2000); *Connell v. Consolidated Edison Co.,* 109 F.Supp. at 208-11;*Lenhoff v. Getty,* 97 Civ. 9458, 2000 WL 977900 at *5-6 (S.D.N.Y. July 17, 2000); *Campbell v. Alliance Nat'l Inc.,* 107 F.Supp.2d 234, 251 & n. 12

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

(S.D.N.Y.2000).

The Court therefore turns to the *McDonnell Douglas* analysis of Economou's performance evaluation claim and evidence.

## B. *Application of the Legal Standards to Economou's Performance Evaluation Claim*

Because the denial of his 1996-97 performance rating in the fall of 1997 followed closely on the heels of his August 11, 1997 EEO complaint against Col. Thomas, the Court assumes without deciding that Economou has established a prima facie case with respect to the denial of his performance rating. *See, e.g., Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998) (causal connection satisfied where adverse action took place shortly after protected activity); *see also, e.g., Christian v. Henderson,* 98 Civ. 3467, 2000 WL 534518 at *5, 8 (S.D.N.Y. May 3, 2000) (causal connection satisfied where, at time of adverse action, plaintiff had several outstanding EEO complaints).

*29 Under *McDonnell Douglas,* the burden shifts to the Army to produce evidence of non-discriminatory non-retaliatory reasons for its actions. *See* cases cited at pages 58-59 above. Col. Thomas testified that he was advised by the Chief of Human Resources that a rating was not required because the removal process for Economou had already begun by the end of the rating period. (*See* Economou Ex. Q: Thomas Resp. to Interrog. No. 22(f); Army Ex. T: Thomas Dep. at 37-38; Army 56.1 Stmt. ¶¶ 19-20.) The Army points to Army Regulation 690-400, Total Army Performance Evaluation System, Chapter 4302, Appendix A. (*See* Army 56.1 Stmt. ¶ 20; Army Br. at 26; Army Ex. S.) Section 1.c.(2)(d) of that Appendix provides that a performance rating may be delayed where the "Ratee is in a notice period for proposed disciplinary or adverse action based upon an offense that, if sustained, will have direct impact on the performance appraisal."(Army Ex. S: Army Reg. 690-400, Total Performance Evaluation System, Chapter 4302, Appendix A § 1.c.(2)(d) .) The undisputed evidence is that Economou's 1997 evaluation ordinarily would have been prepared in late 1997 (*see, e.g.,* Army Ex. T: Thomas Dep. at 40; *see also, e.g.,* Economou Br. at 17), after the August 26, 1997 Notice of Proposed Removal had been issued, and that the charges contained in the Notice pertained to conduct committed during the rating period (*see, e.g.,* Thomas Dep. at 40; Army Ex. C:

8/26/97 Notice of Proposed Removal).

Economou attempts to rebut the defendant's nonretaliatory reason in two ways. First, Economou asserts that "Col. Thomas' failure to complete Form 7222-1 in the beginning of the rating period is evidence that he never had intentions of rating plaintiff."(Economou 56.1 Stmt. ¶ 18.) However, the only record cite Economou provides in support of this assertion is to "Exhibit S" which contains the regulations governing the Total Army Performance System and there is no further mention of this argument in Economou's brief. Although Economou does not provide pincites, section 1-5 of the TAPES describes DA Form 7222-1 as the form on which "written performance plans which document expectations" are to be recorded. Col. Thomas alleged in response to Economou's Interrogatory No. 22(d) that he did not prepare a 7222-1 Form for the 1996-97 rating period because "Mr. Economou's rater would have been responsible for the preparation of the form" (Economou Ex. Q: Thomas Resp. to Interrog. No. 22(d)), and at his deposition, Col. Thomas testified that Economou's rater was Col. Hough (*see* Army Ex. T: Thomas Dep. at 36-37). As Economou does not point to any evidence to refute Col. Thomas's proffered reason for not filling out the 7222-1 form, the fact that Col. Thomas did not fill out the form will not defeat summary judgment.

Second, Economou argues that there exist genuine issues of material fact as to whether Economou's investigation for fraud was in itself retaliatory and discriminatory. (*See* Economou Br. at 18.) However, Economou has not cited any evidence in support of this argument. (*See id.*)Economou does, however, cite a list of chiefs in the New York District who were not being investigated for fraud in support of his assertion in his Rule 56.1 Statement that "Plaintiff was treated differently than other similarly situated employees in that no other employees were investigated for fraud as a pretext for removal."(*See* Economou 56.1 Stmt. ¶ 16, citing Economou Ex. R.) In the absence of evidence that employees who engaged in conduct similar to Economou's–*i.e.,* submitting apparently fraudulent travel vouchers– were not investigated, the fact that other employees were not being investigated for fraud is irrelevant. *See, e.g., Graham v. Long Island R.R.,* 220 F .3d 34, 39 (2d Cir.2000) ("the plaintiff must show [he] was 'similarly situated in all material respects' to the individuals with whom [he] seeks to compare [him]self") (quoting *Shumway v. United Parcel Serv.,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 28

*Inc.,* 118 F.3d 60, 64 (2d Cir.1997)); *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 95 (2d Cir.1999); *Alston v. New York City Transit Auth.,* 97 Civ. 1080, 1999 WL 540442 at \*6 (S.D.N.Y. July 26, 1999) ("[Plaintiff]'s inability to demonstrate that other employees who engaged in conduct similar to that of [plaintiff]'s were treated more favorably than he was counsels in favor of granting defendant's motion."), *aff'd mem.,* 208 F.3d 202 (2d Cir.2000); *Tramble v. Columbia Univ.,* 97 Civ. 1271, 1999 WL 61826 at \*6 (S.D.N.Y. Feb. 10, 2000); *Ponticelli v. Zurich American Ins. Group,* 16 F.Supp.2d 414, 427 (S.D.N.Y.1998) (granting summary judgment where female plaintiff alleging gender discrimination "has not pointed to a single similarly situated male who, for example, was believed to have forged signatures ..., who received different treatment").

**\*30** Accordingly, the Army is granted summary judgment on Economou's performance evaluation claim.

### CONCLUSION

For the reasons set forth above, the Army's summary judgment motion is granted on Economou's: discriminatory and retaliatory removal claim, discriminatory and retaliatory investigations claim, reasonable accommodation claim, and denial of performance rating claim. The Army's summary judgment motion is denied on Economou's failure to train claim.

With respect to Economou's surviving failure to train claim, the parties are to file a Joint Proposed Pretrial Order, in conformance with the "Individual Rules and Practices of Magistrate Judge Andrew J. Peck," by January 19, 2001, and are to call my chambers on receipt of this Opinion to schedule a trial date.

SO ORDERED.

S.D.N.Y.,2000.
Economou v. Caldera
Not Reported in F.Supp.2d, 2000 WL 1844773 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.