LEXSEE 1990 U.S. DIST. LEXIS 8797

**VALERIE KELLEY, Plaintiff, v. CAMOLAUR, INC. d/b/a TACO BELL, et al., Defendants**

No. 89-0844-CV-W-9

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI, WESTERN DIVISION

1990 U.S. Dist. LEXIS 8797

July 11, 1990
July 11, 1990, Filed

**JUDGES:** [*1] D. Brook Bartlett, United States District Judge.

**OPINION BY:** BARTLETT

**OPINION**

*ORDER SETTING HEARING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF PLAINTIFF'S COMPLAINT*

On September 7, 1989, plaintiff Valerie Kelley filed an 11 count Complaint against Camolaur, Inc. d/b/a Taco Bell, Jimmie D. Carter and Steven Luther. Count II of plaintiff's Complaint is a claim for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* The other ten counts are pendent state claims. On January 16, 1990, plaintiff voluntarily dismissed the pendent state claims. Defendants Camolaur and Carter have moved for summary judgment on Count II arguing that plaintiff failed to file a timely charge with the Equal Employment Opportunity Commission (EEOC) and is thereby barred from bringing her claim in federal court.

On January 19, 1990, I issued an order requiring the parties to respond to certain questions pertaining to whether plaintiff filed a timely charge with the EEOC. The parties filed further suggestions in response to the January 19, 1990, order.

I. *Undisputed Facts*

Plaintiff was terminated on January 30, 1988, and filed a dual charge with the Missouri Human [*2] Rights Commission (MHRC) and the EEOC on November 25, 1988, 299 days after the date of her termination.

In effect at the time plaintiff filed her dual charge was a "Work-Sharing Agreement" between the EEOC and the MCHR. *See* stipulation contained in January 12, 1990, letter from plaintiff's attorney to the court. The Agreement expressly provides for "dual filing" with both agencies: "In order to facilitate the assertion of employment rights (under dual filing) the EEOC and the MCHR each designate the other as its agent for the purpose of receiving charges." Agreement at para. 11.

A. The Agreement further states in paras. 11. E. and F:

E. The delegation of authority to receive charges contained in paragraph 11(A) does not include the right of one agency to determine the jurisdiction of the other agency over a charge, however, this does not preclude one agency from determining if the basis of the charge is covered by the other. Specifically where MCHR is presented with a charge more than 180 days old, but less than 300 days, it will take the charge and waive jurisdiction immediately to EEOC for it to process.

F. Dually filed charges shall be received, maintained and processed [*3] by EEOC and MCHR in such a manner that they constitute a common workload of both agencies, either of which may proceed on such charges at any time if this WSA should be amended.

On January 18, 1989, Alvin A. Plummer, Executive Director of the MCHR, wrote to plaintiff stating: "This Agency has completed its investigation of the above-captioned complaint. Based on the evidence found during investigation, the Executive Director has rendered a decision of No Jurisdiction."

II. *Standard for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); *Inland Oil and* [*4] *Transport Co. v. United States*, 600 F.2d 725, 727-28 (8th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir. 1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir. 1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 106 S.Ct. 2548, 2555 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir. 1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, [*5] the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. Id. A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. 2505, 2510 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." Id. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 106 S.Ct. [*6] 1348, 1356 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 2512.

III. *Discussion*

In *EEOC v. Commercial Office Products Co.*, 108 S.Ct. 1666, 1668-69 (1988), the Court described the time limit provisions in Title VII:

The time limit provisions in Title VII as interpreted by this Court establish the following procedures for filing discrimination charges with the EEOC. As a general rule, a complainant must file a discrimination charge with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice. § 706(e), 42 U.S.C. § 2000e-5(e). If a complainant initially institutes proceedings with a state

or local agency with authority to grant or seek relief from the practice charged, [*7] the time limit for filing with the EEOC is extended to 300 days. *Ibid.*

In order to give States and localities an opportunity to combat discrimination free from premature federal intervention, the Act provides that no charge may be filed with the EEOC until 60 days have elapsed from the initial filing of the charge with an authorized state or local agency, unless that agency's proceedings 'have been earlier terminated.' Section 706(c), 42 U.S.C. § 2000e-5(c). . . . In light of the 60-day deferral period, a complainant must file a charge with the appropriate state or local agency, or have the EEOC refer the charge to that agency, within 240 days of the alleged discriminatory event in order to ensure that it may be filed with the EEOC within the 300-day limit. See *Mohasco Corp. v. Silver,* 447 U.S. 807, 814 n.16 (1980). If the complainant does not file within 240 days, the charge still may be timely filed with the EEOC if the state or local agency terminates its proceedings before 300 days. See *ibid.*

The central question in this case is whether a state agency's waiver of the 60-day deferral period, pursuant to a worksharing agreement with the EEOC, constitutes a

'termination' [*8] of its proceedings so as to permit the EEOC to deem a charge filed and to begin to process it immediately.

The Supreme Court deferred to the "EEOC's contention that a state agency 'terminates' its proceedings when it declares that it will not proceed, if it does so at all, for a specified interval of time." Id. at 1671.

Because the Colorado Civil Rights Division had "waived its right to initial processing" even though it has "retained jurisdiction to and on the charge after the conclusion of the EEOC's proceedings," the Court concluded that the state agency's proceedings had been "terminated" within the 300 day limit and, therefore, the charge was timely filed. Id. at 1671 and 1676.

Here, plaintiff contends that the MCHR "terminated" its processing of plaintiff's claim immediately upon filing because paragraph II. E. of the Agreement provides that: "Where the MCHR is presented with a charge more than 180 days old, but less than 300 days, it will take the charge and waive jurisdiction immediately to EEOC for it to process." Plaintiff acknowledges that the MCHR might have done "some processing" of plaintiff's claim in the period immediately after it was filed as evidenced by the January [*9] 18, 1989, letter from the Executive Director of MCHR referring to the completion of MCHR's investigation. Nevertheless, plaintiff asserts that "the fact that the state agency may have done some processing of the claim is irrelevant" in light of the "termination" created by the Agreement's jurisdictional waiver provision.

In support of its position, plaintiff relies on *Griffen v. Air Products & Chemicals, Inc.*, 883 F.2d 940, 944 (11th Cir. 1989). In *Griffen*, plaintiff filed his charge 300 days after the last alleged act of discrimination. Under a Work-Sharing Agreement between the Florida Commission on Human Relations (FCHR) and the EEOC, the FCHR waived exclusive jurisdiction over plaintiff's charge on the date it was filed. Despite this waiver, the FCHR processed plaintiff's claim. The court held that "the EEOC-FCHR worksharing agreement created an instantaneous 'constructive termination'" of the state proceedings enabling the charge to be immediately filed with the EEOC in compliance with § 706(c). Id. at 943.

I believe *Griffen* did not apply properly the Supreme Court's definition of "terminate" as set forth in *Commercial Office Products*. The state agency in Florida [*10] did not declare that it would not proceed to process the charge "for a specified interval of time." Therefore, plaintiff's reliance on the "constructive termination" theory in *Griffen* is not persuasive.

In the instant case, whether the MCHR has declared "that it will not proceed, if it does so at all, for a specified interval of time" is unclear. In para. II. A. of the Work Sharing Agreement, "the EEOC and MCHR each designate the other as its agent for the purpose of receiving charges." In para. II. E. of the Agreement, "where MCHR is presented with a charge more than 180 days old but less than 300 days, it will take the charge and waive jurisdiction immediately to the EEOC for it to process." Was it the intent of the parties to the Work Sharing Agreement to assign this type of claim to the EEOC for initial processing? Paragraph II. E. states that MCHR waives jurisdiction to the EEOC for it "to process." Paragraph III. C. states in part: "The charges assigned to the EEOC for initial processing are specified in para. III(E) below." The type of charge referred in para. II. E. is not listed in para. III. E. If the "to process" language in para. II. E. does not mean initial processing, [*11] what does it mean? Does either "to process" or "initial processing" mean that the MCHR has agreed not to proceed with the charge for a specified period of time? Are the terms "to process" and "initial processing" terms of art so that if MCHR has waived its right "to process" or to "initially process" it has in effect agreed not to proceed with the charge *for a specified period of time?*

If the proper interpretation of those paragraphs of the Work Sharing Agreement is that the MCHR has waived its right to proceed with the charge for a specified period of time, what is the effect of the first sentence of III. F. -- "[n]otwithstanding the provisions of paragraph para. III (D) and (E), either agency may request or grant a wavier of the right to initially process any charge?" Does this mean that the MCHR has not waived its right to proceed with the charge for a specified period of time because it can initially process the charge whenever it desires?

Finally, did the MCHR proceed to process this charge immediately without waiting the specified time provided by the Work Sharing Agreement (if any specified time is provided)? When did the investigation commence referred to in the January [*12] 18, 1989, letter from the MCHR?

These same questions in more abbreviated form were the subject of my January 19, 1990, order. In response, plaintiff chose to rely exclusively on *Griffen*. One last opportunity will be afforded plaintiff to carry her burden of satisfying me that jurisdiction exists.

A hearing will be held at which the parties shall present whatever facts and law are relevant to resolving the question whether MCHR agreed to not proceed with processing plaintiff's charge for a "specified interval of time" and whether, in fact, MCHR did not proceed with processing plaintiff's charge for the "specified interval of time."

For the reasons stated in this opinion, it is hereby ORDERED that a hearing will be held on defendants'

Motion for Summary Judgment on Count II of plaintiff's Complaint at 9:30 a.m. on October 9, 1990, in Courtroom 3, United States Courthouse, 811 Grand Avenue, Kansas City, Missouri, at which time the parties shall present any additional facts and law on 1) whether MCHR agreed not to proceed with processing plaintiff's charge for a "specified interval of time;" 2) whether MCHR, in fact, did not proceed with processing plaintiff's charge for the "specified [*13] interval of time;" and 3) the specific questions raised in this opinion.