Westlaw.

Not Reported in F.Supp.2d                                                                                       Page 1
Not Reported in F.Supp.2d, 2000 WL 178859 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Lynk v. Henderson
S.D.N.Y.,2000.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Samuel G. LYNK, Plaintiff,
v.
William HENDERSON, Postmaster General of the United States Postal Service, Pamela Smith-Watson, Leon Yeserski, and John Condiles, Defendants.
No. 98 Civ.2086(MGC).

Feb. 15, 2000.

Samuel G. Lynk, Brooklyn, New York, Plaintiff, pro se.
Mary Jo White, United States Attorney for the Southern District of New York, New York, New York, By: Ramon E. Reyes, Jr., Assistant United States Attorney, for Defendants.

*OPINION*
CEDARBAUM, J.

*1 Plaintiff Samuel G. Lynk brought two actions pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. They were consolidated under the present docket number by order dated May 21, 1998. Plaintiff claims that defendants Pamela Smith-Watson, Leon Yeserski, and John Condiles discriminated against him during his employment with the United States Postal Service. He complains about two incidents in particular. First, he complains that he was issued a Letter of Warning in Lieu of a 14 Day Suspension because of his race and gender and in retaliation for prior EEO activity. Second, he complains that he was constructively discharged from the Postal Service in 1996 because of his race and gender and in retaliation for prior EEO activity.

Defendants move to dismiss the amended complaint as against the individual defendants for failure to state a claim pursuant to Rule 12(b)(1) because the individual defendants are not proper parties to this Title VII action, and move for summary judgment pursuant to Fed.R.Civ.P. 56 on the remaining claims.

UNDISPUTED FACTS

Plaintiff began working for the United States Postal Service in New York City on March 23, 1991, when he transferred from Chicago, Illinois to the West Village Postal Station. On November 13, 1992, plaintiff filed a charge with the EEO alleging that his manager at the West Village Postal Station and another employee had discriminated against him. Plaintiff withdrew that EEO charge on November 24, 1992.

On July 12, 1993, plaintiff was promoted to a full-time letter carrier position and transferred to the Peter Stuyvesant Postal Station. Leon Yeserski and Pamela Smith-Watson were plaintiff's immediate supervisors at the Peter Stuyvesant Postal Station. John Condiles, the Customer Service Manager, was plaintiff's second-level supervisor.

The events relevant to plaintiff's first claim took place in 1995. On June 16, 1995, Condiles canceled the rest days scheduled for July 3, 1995 and July 5, 1995 for all letter carriers at the Peter Stuyvesant Postal Station. A rest day is a day of the week when a letter carrier is not scheduled to work. The letter carriers, including plaintiff, were notified of this cancellation by a notice posted at the station. (Def.Ex. D.) Plaintiff had been scheduled for a rest day on July 5, 1995. Despite the posted notice canceling all rest days for July 5, 1995, plaintiff did not report for duty on that day. Plaintiff does not deny that he was aware of the cancellation of rest days. On July 14, 1995, Smith-Watson issued plaintiff a Letter of Warning in Lieu of a 14 Day Suspension. Condiles signed the Letter of Warning as a concurring party. The Letter of Warning charged plaintiff with "Failure to Follow the Instructions of Your Station Manager" and "Being Absent Without Leave" ("AWOL"). (Def.Ex. G.) Smith-Watson also issued a Letter of Warning on July 17, 1995 to a Caucasian man for being AWOL on July 3, 1995 in violation of the same cancellation of rest days.

*2 Plaintiff filed a formal discrimination complaint in response to the Letter of Warning. He claimed the Letter of Warning was issued to him because of his gender and race. He further claimed that the Letter of Warning was issued in retaliation for his EEO activity in 1992.

Plaintiff's second claim is for constructive discharge. On October 21, 1996, all letter carriers at the Peter

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06722-RJS   Document 20-8   Filed 11/16/2007   Page 2 of 5

Not Reported in F.Supp.2d                                           Page 2
Not Reported in F.Supp.2d, 2000 WL 178859 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Stuyvesant Postal Station were notified that rest days were canceled for November 12, 1996. Plaintiff failed to report for duty on November 12, 1996, although he did call the Peter Stuyvesant Station "as a courtesy call." He was informed that he was required to submit "administratively acceptable evidence" of his need for absence, but did not do so. On November 26, 1996, plaintiff was issued a Notice of Removal charging him with being "Absent without Leave" and with "Failure to Comply with the Rules and Regulations Governing Absences."(Def.Ex. J.)

On December 13, 1996, plaintiff submitted a resignation form in which he stated that he was resigning under "duress and stress" because of "unfair labor practices, constant harassment and threats of discipline."(Pl.Ex. C. at 187.) Plaintiff claims that this resignation was a constructive discharge. Plaintiff did not seek EEO counseling on his constructive discharge claim until September 10, 1997, nine months later. On October 6, 1997, the Postal Service issued a final agency decision dismissing Plaintiff's second EEO complaint on the ground that plaintiff's failure to seek EEO counseling within the required 45-day period made his allegations untimely. (Def.Ex. N.)

DISCUSSION

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); see alsoCelotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The judge's role in summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding whether a genuine issue exists, a court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party."In re Chateaugay Corp., 10 F.3d 944, 957 (2d Cir.1993). Nonetheless, "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

I. Motion to Dismiss the Individual Defendants

*3 The individual defendants are improper parties to this action. In a Title VII action by a postal employee only "the head of the department, agency, or unit, as appropriate, shall be the defendant."42 U.S.C. § 2000e-16(c). A Title VII action may not be brought against the lower level employees of a federal agency. Drayton v. Veterans Admin., 654 F.Supp. 558, 562 (S.D.N.Y.1987). Accordingly, defendants' motion to dismiss this action as against Pamela Smith-Watson, Leon Yeserski, and John Condiles is granted.

II. Motion for Summary Judgment

A. The Letter of Warning

Plaintiff cannot establish a prima facie case of race or gender discrimination. The elements of a prima facie case of race or gender discrimination are (1) that plaintiff is a member of a protected class, (2) that plaintiff was qualified for his position, (3) that plaintiff was subjected to an adverse employment action, and (4) that the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of race or gender. SeeSt. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2747-48, 125 L.Ed.2d 407 (1993).

Plaintiff, an African-American male, is a member of a protected class. Defendants do not contend that plaintiff was not qualified to be a letter carrier or that the Letter of Warning is not an adverse employment action. It is the fourth factor on which plaintiff's claim founders.

Proof that the Letter of Warning was issued under circumstances that give rise to an inference of either race or gender discrimination requires either direct evidence of discriminatory intent on the part of plaintiff's supervisors or circumstantial evidence of such intent, that is, that a similarly situated female or non-African-American employee was treated differently from plaintiff. In her affidavit, Smith-Watson, an African-American female, stated that she "had issued discipline for AWOL" to five other Peter Stuyvesant Station employees: two black female

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

employees, two Hispanic female employees, and one Hispanic male employee. Additionally, she issued a Letter of Warning for AWOL to a Caucasian male during the same holiday period that she issued the Letter of Warning to plaintiff.

Other employees who were absent without leave were similarly disciplined. These employees were of different races and both genders. These circumstances do not give rise to an inference of discrimination based on either race or gender. Plaintiff has provided no evidence that the Letter of Warning was issued to him by an African-American female supervisor because of his race or gender.

Plaintiff also cannot establish a prima facie case of retaliation. The elements of a prima facie case of retaliation are (1) that plaintiff was engaged in a protected activity, (2) that the employer was aware of that activity, (3) that plaintiff suffered an adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action. Reed v. Lawrence, 95 F.3d 1170, 1178 (2d Cir.1996).

*4 In his complaint, plaintiff alleges that his supervisors retaliated against him for several actions including a November 1992 petition drive which he orchestrated to protest a six day workweek; his 1992 EEO complaint; his refusal to work overtime on his scheduled days off; and a 1995 petition drive to protest the cancellation of rest days.

Plaintiff may only maintain a claim for retaliation in response to "protected activity." "Protected activity" "refers to action taken to protest or oppose statutorily prohibited discrimination."Cruz v. Coach Stores, Inc., ___ F.3d ___, No. 98-9654, 2000 WL 122117 (2d Cir. Jan. 20, 2000). Protected activity is activity directed against violations of Title VII. Plaintiff's petition drives in opposition to a six day workweek and the cancellation of rest days are not protected activities. Even if plaintiff's justification for his actions is correct, that the Postal Service could not under its labor agreements impose a six day workweek or cancel rest days in the manner in which it did, the actions plaintiff protested did not violate Title VII. Only plaintiff's 1992 EEO complaint is protected activity.

Plaintiff alleges that defendants were aware of his 1992 EEO activity and retaliated against him in 1995 for this activity by issuing the Letter of Warning. In their affidavits both Smith-Watson and Condiles state that they were not aware of plaintiff's prior EEO activity. Plaintiff provides no evidence from which an inference may be drawn that either of his supervisors knew about the employment discrimination complaint he had made three years earlier against employees at another postal station. Because plaintiff cannot establish this element of his prima facie case of discrimination based on retaliation, that portion of his claim should be dismissed. SeeLundy v. OOCL (USA), Inc., No. 97 Civ. 3899, 1999 WL 58676, at *3 (S.D.N.Y. Feb. 4, 1999).

Plaintiff also cannot provide any evidence of the fourth element of his prima facie case of retaliation. Plaintiff might provide circumstantial evidence of the causation element with proof that the Letter of Warning followed his EEO activity within a short period of time or that other employees who engaged in similar activity were treated differently. Johnson v. Palma, 931 F.2d 203, 207 (2d Cir.1991). Plaintiff has provided no such proof. It is not reasonable to infer that three years after plaintiff made an EEO complaint against persons at a different postal station, two supervisors chose to issue a Letter of Warning to punish plaintiff for that complaint.

Even if plaintiff could present a prima facie case of either discrimination or retaliation, he cannot satisfy his ultimate burden of proving that the legitimate, nondiscriminatory reason proffered by defendant was a mere pretext for discriminatory or retaliatory action. Plaintiff must produce "sufficient evidence to support a rational finding that ... more likely than not [discrimination] was the real reason" for the issuance of the Letter of Warning. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir.1996) (quotingWoroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir.1994)).

*5 The Postal Service has offered a legitimate, nondiscriminatory, nonretaliatory reason for the issuance of the Letter of Warning, the fact that plaintiff failed to follow the instructions of his station manager and was AWOL on July 5, 1995 in violation of the order canceling rest days. Postal Service guidelines provide for such discipline. Plaintiff complains that the cancellation was in violation of rules for assigning overtime, but this does not establish discrimination of any kind. Rest days were canceled for all employees regardless of their race or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 178859 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

gender. Plaintiff was required by Postal Service guidelines to comply with his supervisor's directive and contest the cancellation after the fact. (Pl.Ex. A., Postal Service Employee Labor Relations Manual § 666.51.) The fact that he was punished for not doing so does not show that his supervisors discriminated or retaliated against him.

Plaintiff cannot meet his burden of proof. At summary judgment plaintiff must come forward with more than conclusory allegations that defendants had "a personal vendetta against" him, or that they "conspired" to retaliate against him. (Pl. 56.1 Stmt. ¶¶ 34, 36.) The evidence plaintiff has proffered reveals his displeasure with the manner in which his supervisors treated employees. Plaintiff provides evidence that he was denied leave without pay and sick leave, and that he was assigned to a difficult mail delivery route. This evidence, however, does not show that any of the defendants intentionally discriminated against plaintiff because of either his race or his gender. It also does not show that they retaliated against him.

In fact, plaintiff proffers evidence that working conditions at the Peter Stuyvesant station were generally unsatisfactory to many employees of different genders and races. Thirty-five employees signed a letter dated March 1, 1995 naming Leon Yeserski the "catalyst of confusion" and alleging, among other things, that personnel documents including sick-leave or annual-leave forms had been altered, that false charges had been made against employees, that letter carriers were forced to work beyond their normal capacity, that improper disciplinary procedures had been brought against employees and that management had blatantly lied about labor laws. Of the thirty-five employees who signed the letter ten were African-American, eight were Caucasian, six were Hispanic, and two were Asian. Twenty-three were men, and four were women. The race and gender of the other nine persons are not in the record. (Pl.Ex. C. at 79-84.)

B. The Constructive Discharge Claim

A postal employee may only sue his employer pursuant to Title VII if he first exhausts his administrative remedies in a timely manner. *Briones v. Runyon*, 101 F.3d 287, 289-90 (2d Cir.1996). In order to exhaust administrative remedies a federal employee must comply with EEOC regulations. *Dillard v. Runyon*, 928 F.Supp. 1316, 1323 (S.D.N.Y.1996), aff'd, 108 F.3d 1369 (2d Cir.1997). The applicable regulation requires an employee of a federal agency to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).

*6 Plaintiff did not seek EEO counseling within 45 days of receiving the Notice of Removal about which he complains. He was presented with the Notice of Removal on November 26, 1996. Thus, the 45-day time period expired on January 10, 1997. Plaintiff did not seek EEO counseling until September 10, 1997, more than 270 days after he received the Notice of Removal.

Plaintiff clearly failed to meet the required deadline for meeting with an EEO counselor. However, this time limitation is "analogous to a statute of limitations and is, therefore, subject to waiver, estoppel, and equitable tolling." *Briones*, 101 F.3d at 290. The doctrine of equitable tolling has been applied, for example, when the claimant's failure to meet deadlines resulted from his adversary's misconduct, when the claimant received inadequate notice, when the claimant actively pursued his judicial remedies during the prescribed time period, and when the court has led the claimant to believe that he has done all that is required. *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11-12 (2d Cir.1994).

None of these circumstances is present in this case. On December 5, 1996, within the 45-day period, plaintiff's former counsel wrote to the administrative law judge before whom plaintiff's first EEO action was pending to request that plaintiff's EEO complaint be amended to include the constructive discharge claim. (Pl.Ex. D. at 7.) This letter indicated that the Postal Service's Agency Representative had agreed that "it would make the most sense to hear the new claims at the same time" as the claim based on the Letter of Warning. (*Id.*)

Neither party has presented any evidence of Judge Martinson's response to this request. It was apparently denied before March 27, 1997 when plaintiff sent a letter to Victor Olmo, a Senior EEO Specialist, requesting an investigation of his constructive discharge claim. In that letter, plaintiff referred to his request to amend the prior complaint and explains that it was denied "due to the lack of an investigation."(Pl.Ex. D. at 9.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 178859 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

Plaintiff does not explain why he failed to seek EEO counseling before September 10, 1997. Plaintiff bears the burden of proving that the time limitation should be extended in this case. *Barnell v. Paine Webber Jackson & Curtis, Inc.,* 577 F.Supp. 976, 978 (S.D.N.Y.1984). He has demonstrated his familiarity with the 45-day requirement by complying with it in the past and, in fact, accuses defendants of "spacing" their discriminatory actions in such a way as to prevent him from complaining about a pattern of discrimination. (Compl. at 8.) In the absence of any such explanation from plaintiff, it is inappropriate to toll the 45-day time limit, which must be strictly construed. *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1994) (holding that courts must strictly adhere to Title VII's procedural requirements and stating that these requirements "are not to be disregarded by courts out of a vague sympathy for particular litigants").

*7 Furthermore, the Second Circuit has held that equitable tolling is inappropriate if the plaintiff was represented by counsel during the applicable time period. *Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47 (2d Cir.1978). Plaintiff was represented by counsel until January 10, 1997, when he advised his lawyer that he planned to proceed *pro se.* A lack of diligence on the part of plaintiff's attorney does not justify equitable tolling of the 45-day time limit. *Saab Cars,* 28 F.3d at 12. Thus, plaintiff has failed to exhaust his administrative remedies, and his claim based on constructive discharge cannot succeed.

In any event, plaintiff's claim fails on the merits.

Plaintiff alleges that he was constructively discharged because of his race and gender and in retaliation for his EEO activity. There is no need to rehearse the failings of plaintiff's prima facie cases of discrimination and retaliation because as with plaintiff's first claim, plaintiff proffers no evidence that the legitimate nondiscriminatory and nonretaliatory reason submitted by the Postal Service is a pretext for discrimination or retaliation. *See Norton v. Sam's Club,* 145 F.3d 114, 118 (2d Cir.1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases.... [T]he plaintiff has the ultimate burden of persuasion.").

The Notice of Removal stated, and plaintiff does not dispute, that plaintiff failed to report for work as scheduled on November 12, 1996. Given plaintiff's history of disciplinary action, including the Letter of Warning that is the subject of plaintiff's first claim, the decision was made to remove plaintiff from postal employment. (Pl.Ex. C. at 182, 185-86.) Just as with the Letter of Warning, plaintiff proffers no evidence that a similarly situated female or nonminority employee was treated differently. Instead, he proffers proof of disputes with the Postal Service about his family leave, his vacation time, the length and difficulty of his mail route, and the manner in which his supervisors canceled rest days. (Pl.Ex. C. at 161-64, 167-74, 122-28, 175-81.) None of these incidents shows that plaintiff was discriminated against because of his race or gender. At best they show that plaintiff and the Postal Service disagreed about the administration of scheduling and benefits for all employees.

Plaintiff similarly provides no evidence to support a retaliation claim. There is no evidence that plaintiff's failure to appear for a scheduled shift was used as a pretext for removing him from the Postal Service because he was pursuing an EEO complaint. Since plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552, that is, that the Notice of Removal was issued because of his race or gender or in retaliation for his EEO activity, summary judgment is appropriate.

CONCLUSION

*8 For the foregoing reasons, defendants' motion to dismiss the complaint against Smith-Watson, Yeserski, and Condiles and for summary judgment on the claim against the Postmaster General is granted. Accordingly, this action is dismissed.

SO ORDERED.

S.D.N.Y.,2000.
Lynk v. Henderson
Not Reported in F.Supp.2d, 2000 WL 178859 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.