UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

N⁰ 07 Civ. 6722 (RJS)

———————————

GINA ESPOSITO,

Plaintiff,

VERSUS

DEUTSCHE BANK AG,

Defendant.

———————————

MEMORANDUM AND ORDER
December 15, 2008

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiff Gina Esposito brings this employment discrimination suit against Defendant Deutsche Bank AG ("DB") for alleged violations under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101 *et seq.*

Specifically, Plaintiff alleges that, over the course of her employment at DB, her supervisor created a hostile work environment, discriminated against her because of her age, and retaliated against her because she had raised certain concerns regarding another employee with DB's Human Resources ("HR") Department. Plaintiff seeks compensatory and punitive damages, attorney's fees, placement in the same position she would have been in absent DB's discrimination, and injunctive relief prohibiting DB from acting in a discriminatory manner towards other employees.

Before the Court is DB's motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss as time-barred Plaintiff's state law claims as well as her

ADEA and Title VII claims relating to her 2000 bonus, her 2001 salary, and DB's alleged failure to promote.[1]  (DB Reply at 1.) Also before the Court is Plaintiff's motion to amend her Complaint.

For the reasons set forth below, DB's motion to dismiss is denied, and Plaintiff's motion to amend is granted.

I. BACKGROUND

A. Facts[2]

Plaintiff Gina Esposito was hired as an Assistant Vice President in the International Services Department of DB in June of 1999. (AC ¶¶ 31-32.) At the time of her hiring, Plaintiff was 44 years old. (Id. ¶ 20.) Almost immediately upon the commencement of her employment, Plaintiff's supervisor, John Dall ("Dall"), began a campaign to discourage Plaintiff from remaining in her position in his department. (Id. ¶ 4.) Dall verbally abused Plaintiff, at times reprimanding her in front of other employees and questioning the decisions she made. (Id. ¶ 36.)

Dall also made comments that reflected a bias against older employees. (Id. ¶¶ 37-40.) Specifically, at the time of the departure of a DB employee in her 50s, Dall made comments to the effect that the departure redounded to the benefit of DB, as the employee was "older" and "resistant to change." (Id. ¶ 38.) Dall also informed Plaintiff that *she* was "resistant to change," a phrase Plaintiff interpreted as a euphemism for "too old." (Id. ¶¶ 39-40.)

At the same time, Dall attempted to "turn his department into one comprised of a young team." (Id. ¶ 41.) Dall hired two younger employees, Joanne Passiatore ("Passiatore") and Dan Richards ("Richards"), both under the age of 35, into the department as Assistant Vice Presidents, the same position held by Plaintiff, despite the fact that Plaintiff had more experience and greater responsibilities. (Id. ¶¶ 42, 47-52, 58-59.) Plaintiff herself was the only management-level employee in the department over 40 years of age. (Id. ¶ 45.) Further, Dall invited Plaintiff's younger colleagues to socialize outside of the workplace, but never invited Plaintiff. (Id. ¶ 44.)

In August of 2000, Plaintiff approached Dall and apprised him of her belief that one of her staff members was harassing other employees. (Id. ¶ 60.) When Dall failed to offer assistance, Plaintiff sought guidance from a member of DB's HR Department, Leslie Garfield ("Garfield"). (Id. ¶¶ 61-62.) Upon learning of Plaintiff's discussion with HR, Dall cautioned Plaintiff never to mention the harassment again. (Id. ¶ 63.) In November of that same year, Plaintiff again raised with Garfield the issue of possible harassment by one of her staff members, as well as Dall's "constant berating" of Plaintiff over the issue and her fears that Dall would retaliate against her as a result of her discussions with HR. (Id. ¶ 64.) When Dall discovered that Plaintiff had spoken with Garfield a second time, he confronted Plaintiff in a manner that she found physically

---

[1] As described above, Plaintiff also asserts a claim under ADEA and Title VII for a hostile work environment. That claim is not being challenged by DB on this motion.

[2] The following facts are taken from the proposed amended complaint ("AC"); the Court will recite only those facts necessary to resolve the instant motion. The Court will assume these allegations to be true for the purpose of deciding Defendant's motion, and will construe them in the light most favorable to Plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

threatening. (*Id.* ¶ 65.) After this confrontation, Plaintiff's work environment worsened as Dall retaliated against her for her discussions with HR. (*Id.* ¶ 66.)

In January of 2001, Plaintiff received a bonus of $30,000 and a salary increase of $3,000. (*Id.* ¶ ¶ 70, 71.) In April of 2001, Plaintiff met with Dall to discuss promotions within the department. (*Id.* ¶ 75.) At that time, Dall made no mention of the promotions of Passiatore or Richards, but, based on Dall's comments, Plaintiff understood that younger workers were more favorably viewed. (*Id.* ¶ 75-76.) In response to Plaintiff's inquiries regarding the possibility of promotion, Dall "confirmed [Plaintiff's] belief that she would *never* be given any opportunity for advancement" at DB. (*Id.* ¶ 78 (emphasis in original).)

On April 16, 2001, Plaintiff received an e-mail invitation for a gathering celebrating the promotion of female employees of DB, including Passiatore. (*Id.* ¶ 81.) On April 18, 2001, Plaintiff "noticed" that both Passiatore and Richards had been promoted. (*Id.* ¶ 82.) Plaintiff assumed that, as a result of the promotions, Passiatore and Richards had received bonuses and raises larger than her own — an assumption that proved to be accurate. (*Id.* ¶ 83.) Thus, though HR mandated 4%-6% salary increases for all HR employees, Plaintiff received a salary increase of only $3,000, or 3.75%, while Passiatore and Richards each received increases of $20,000. (*Id.* ¶¶ 71, 73.) Similarly, whereas Plaintiff received a bonus of $30,000, Passiatore and Richards received bonuses of $55,000. (*Id.* ¶ 70.)

Despite the differences in compensation, all three continued to perform the same duties as before. (*Id.* ¶ 74.) Thus, though Plaintiff had more experience and greater responsibility than her younger co-workers, Passiatore and Richards were more highly compensated. (*Id.* ¶¶ 42, 47-52, 58-59, 74.) As a result of Dall's behavior and her realization that she had no future at DB, Plaintiff resigned from DB effective May 3, 2001. (*Id.* ¶ 85.)

On February 8, 2002, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id*. ¶ 88.) On April 30, 2007, the EEOC issued to Plaintiff a Notice of Right to Sue. (*Id*. ¶ 89.) The instant suit followed.

B. Procedural History

Plaintiff filed her complaint on July 26, 2007, alleging age discrimination under ADEA, NYSHRL, and NYCHRL; failure to promote in violation of ADEA, NYSHRL, and NYCHRL; a hostile work environment, in violation of ADEA, Title VII, NYSHRL, and NYCHRL; and retaliation for reporting a potentially unlawful employment practice, in violation of Title VII, NYSHRL, and NYCHRL. (*Id.* ¶¶ 93, 100, 107, 114.)

On September 4, 2007, the case was reassigned from the Honorable Kenneth M. Karas to the undersigned. On October 12, 2007, DB moved for dismissal of all of Plaintiff's state law claims, on the grounds that they are barred by the applicable three-year statute of limitations, as well as for dismissal of Plaintiff's federal claims related to her bonus and salary as well as the failure to promote. (Def.'s Mem. at 1-2.) On

November 6, 2007, Plaintiff opposed and requested leave to amend the Complaint. (Pl.'s Mem. at 2, 18-19.)

## II. MOTION TO AMEND

Rule 15(a)(2) of the Federal Rules of Civil Procedure requires that this Court "freely give leave [to amend] when justice so requires." Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Thus, "[l]eave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2007); *see also Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile.").

Here, DB's principal challenge to the proposed amendments is that of futility. The futility of an amendment is assessed under the standard for a Rule 12(b)(6) motion to dismiss. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."). Because, for the reasons described *infra*, the Court finds the proposed amendments would survive a motion to dismiss, and because DB's statute of limitations arguments are equally applicable to Plaintiff's claims as amended,

the Court will construe DB's motion as a motion to dismiss the AC.

## III. MOTION TO DISMISS

### A. Standard of Review

When considering a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, the Court must accept all well-pleaded allegations contained in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

A plaintiff need not include "heightened fact pleading of specifics" to survive a Rule 12(b)(6) motion, "but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974 (holding that the "[f]actual allegations" alleged "must be enough to raise a right to relief above the speculative level"). A plaintiff thus must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). In the context of motions to dismiss on the grounds of the affirmative defense of statute of limitations, it is well settled that such motions may be granted only "if the defense appears on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citing *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)).

B. Claims Brought Under NYSHRL and NYCHRL

Plaintiff asserts claims for age discrimination, failure to promote, and retaliation under NYSHRL and NYCHRL. (AC ¶¶ 93, 100, 114.) Each of these statutes prohibits age discrimination as well as retaliation for engaging in protected activity (N.Y. Exec. Law § 296(a), (e) (McKinney's 2008), N.Y. City Admin. Code § 8-107(1)(a) , (7) (McKinney's 2008)), and are governed by a three-year statute of limitations (N.Y. C.P.L.R. § 214(2) (McKinney's 2008) and N.Y. City Admin. Code § 8-502(d) (McKinney's 2008)). *See also Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (three-year statute of limitations applicable to claims under the NYSHRL); *Whaley v. City Univ. of New York*, 555 F. Supp. 2d 381, 401 (S.D.N.Y. 2008) (three-year statute of limitations applicable to claims under the NYCHRL).

Both the state and city laws contain tolling provisions providing that the statutes of limitations on claims under NYSHRL and NYCHRL are tolled during the pendency of a complaint with the New York State Department of Human Rights ("SDHR"). N.Y. Exec. Law § 297(9) (McKinney's 2008) (providing that, where a complaint is filed with the State Department of Human Rights and dismissed on the grounds of administrative convenience, the statute of limitations begins to run from the date of the dismissal); N.Y. City Admin. Code § 8-502(d) ("Upon the filing of a complaint with the city commission on human rights or the state division of human rights and during the pendency of such complaint and any court proceeding for review of the dismissal of such complaint, such three year limitations period shall be tolled."). Thus, the limitations period on claims asserted under NYSHRL and NYCHRL does not begin to run until a charge is no longer pending with the SDHR.

DB argues that Plaintiff's claims under NYSHRL and NYCHRL must be dismissed as time-barred because Plaintiff did not file her original Complaint until July 26, 2007, more than three years after the acts alleged in the Complaint. (Def.'s Mem. at 1.) DB asserts that Plaintiff is not entitled to any sort of tolling of the statute of limitations on her state and city claims because, for tolling to apply, Plaintiff must have filed her charge directly with the SDHR, or the EEOC must have *actually* forwarded Plaintiff's charge to the SDHR for administrative processing. (*Id.*) Defendant further contends that any reliance by Plaintiff on a Work-Sharing Agreement ("WSA") between the EEOC and the SDHR is misguided, as the dual-filing provisions referenced in the WSA pertain only to certain filing requirements mandated by Sections 706(c) and 706(e) of Title VII, 42 U.S.C. §§2000e-5(c), 2000e-5(e) (Def.'s Mem. at 7-12.).[3]

---

[3] Section 706(c) provides that "[i]n the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice . . . no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law." 42 U.S.C. § 2000e-5(c). Section 706(e) provides that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge . . . except that in a case of an unlawful employment practice with

Plaintiff argues in response that the statute of limitations on her NYSHRL and NYCHRL claims was tolled during the pendency of the EEOC's investigation of her claim. (Pl.'s Mem. at 8-9.) Plaintiff contends that the provisions of the WSA provide that filing with either the EEOC or the SDHR functioned to "automatically initiate[] proceedings with the other," and thus that, when she filed her charge with the EEOC, due to the operation of the WSA's automatic filing provisions, her claim was thereby filed with the SDHR. (*Id.* at 9-11.) Thus, Plaintiff claims, the state and city tolling provisions were triggered.

The instant complaint was filed July 26, 2007. Accordingly, any NYSHRL and NYCHRL claims stemming from acts that occurred prior to July 26, 2004 are time-barred unless the statute of limitations was tolled by law. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) ("[Plaintiff's] cause of action under New York's Human Rights Law is governed by a three-year statute of limitations, measured from the filing of the action in court.") Specifically, Plaintiff resigned her employment with DB effective May 3, 2001. (*Id.* ¶ 85.) The last act on which any claims are predicated, then, occurred no later than, if not before, May 3, 2001. It is thus indisputable that, in the absence of some sort of tolling of the statute of limitations, Plaintiff's NYSHRL and NYCHRL claims are untimely.

Although the Second Circuit has yet to definitively opine on the issue of whether the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims asserted under NYSHRL and NYCHRL,[4] numerous courts in this Circuit have held that the three-year statute of limitations applicable to claims under NYSHRL and NYCHRL "is tolled during the period in which a complaint is filed . . . with the EEOC." *Lee v. Overseas Shipping Corp.*, No. 00 Civ. 9682 (DLC), 2001 WL 849747, at *8 (S.D.N.Y. July 30, 2001); *see also Ritterband v. Hempstead Union Free School Dist.*, No. 06 Civ. 6628 (DRH) (ETB), 2008 WL 3887605, at *9 n.9 (E.D.N.Y. Aug. 20, 2008) (noting that the statute of limitations on plaintiff's NYSHRL claims was stayed during the pendency of plaintiff's EEOC claim); *Siddiqi v. New York City Health & Hosp. Corp.*, No. 07 Civ. 2740 (CM) (RLE), 2008 WL 3833869, at *18 (S.D.N.Y. Aug. 12, 2008) (noting that the statute of limitations on NYSHRL and NYCHRL claims "is tolled during the period in which a complaint is filed with the EEOC"); *Sundaram v. Brookhaven Nat. Labs.*, 424 F. Supp. 2d 545, 565 (E.D.N.Y. 2006) (noting that because "complaints filed with the EEOC are deemed constructively to be cross-filed with the

---

respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law." 42 U.S.C. § 2000e-5(e).

[4] One summary order issued by the Second Circuit indicates it may not. *See Deng v. Aramark Educ. Group*, No. 04 Civ. 5670, 2006 WL 1049073, at *1 (2d Cir. Apr. 19, 2006) (unpublished summary order) (affirming dismissal of state law claims).

NYDHR, the statute [of limitations on plaintiff's NYSHR claims] is also tolled during the pendency of a claim filed with the EEOC").

Here, the terms of the WSA[5] are consistent with such an interpretation. Section IIC of the WSA, for example, states that "[c]harges that are received by the [SDHR] . . . and jurisdictional with the EEOC and timely filed by the charging party . . . will automatically be dual-filed with the EEOC and visa or versa." (WSA ¶ IIC.) This provision is separate and distinct from the provision on which DB relies for the proposition that the dual-filing is only a fiction for the purposes of Title VII; thus, adopting DB's interpretation would render one of the two provisions redundant. (*See id.* ¶ IIA.)

The Court thus finds that the statute of limitations on Plaintiff's NYSHRL and NYCHRL claims was tolled by virtue of Plaintiff's filing of her complaint with the EEOC. Accordingly, DB's motion to dismiss Plaintiff's state and city law claims is denied.

C. Claims Brought Under ADEA and Title VII

In addition to her state and city law claims, Plaintiff has also asserted federal law claims under ADEA and Title VII. In essence, Plaintiff claims that DB discriminated against her on the basis of her age, in violation of ADEA, and retaliated against her for engaging in protected activity, in violation of Title VII, in three instances: in making promotion decisions, in making salary decisions, and in making bonus decisions. (AC ¶¶ 7, 10-11, 70-73, 82, 92-93, 99-100, 113-114.)

1. Statute of Limitations Under Federal Law

ADEA and Title VII both require that a plaintiff file a charge with the EEOC prior to filing suit in federal court. *See* 29 U.S.C. § 626(d), 42 U.S.C. § 2000e-5(e) & (f); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Under both Title VII and ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter.").

Title VII and ADEA mandate that a charge of discrimination be filed with the EEOC no later than 180 days from the date of the alleged discrimination. 42 U.S.C. § 2000e-5(e), 29 U.S.C. § 626(d)(1). Because the State of New York has its own agency empowered to investigate discrimination claims, however, the period of time to file a charge with the EEOC is extended to 300 days. *Harris v. City of New York*, 186 F.3d

---

[5] A copy of the WSA is attached as Exhibit D to the Affirmation of Joanne Seltzer in support of DB's motion. Because the Second Circuit has held that a WSA has the same impact on litigants "as a statute or regulation," the Court takes judicial notice of the WSA at issue here. *See Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 and n.5 (2d Cir. 1996) (noting that the WSA between the EEOC and SDHR "operates pursuant to and in the manner of a governmental regulation"); *see also Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (judicial notice of prison regulations proper on a motion to dismiss). To the extent the parties have attached to their papers extrinsic documents not integral to the complaint or otherwise proper for consideration on a 12(b)(6) motion to dismiss, the Court declines to consider them.

243, 247 n.2 (2d Cir. 1999) ("Because the existence of its State Division of Human Rights . . . makes New York a so-called deferral state for Title VII . . . purposes, the seminal teaching of *Mohasco Corp. v. Silver*, 447 U.S. 807, 816-17 (1980) calls for application of the 300-day rule."); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (applying 300-day filing deadline to claims filed under ADEA). These statutorily-mandated filing deadlines act as a statute of limitations; thus, claims will be "barred by the failure to file a timely charge." *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004).

Plaintiff filed her charge with the EEOC on February 8, 2002. (AC ¶ 88.) Thus, any discrete discriminatory acts occurring before April 14, 2001 fall outside of the 300-day filing period, and, consequently, are untimely. It is well settled that acts such as "termination, failure to promote, denial of transfer, or refusal to hire" are "discrete acts," and that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Decisions regarding compensation are similarly considered to be discrete acts. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S. Ct. 2162, 2175-76 (2007).

The Supreme Court has held that the limitations period begins to run "at the time the . . . [discriminatory] decision was made and communicated" to Plaintiff. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). In other words, the cause of action for any single discrete act "accrue[s] . . . when [Plaintiff] knew or had reason to know of the injury serving as the basis for [her] claim." *Harris*, 186 F.3d at 247. The Second Circuit has held that the limitations period "commence[s] upon the employer's commission of the discriminatory act and [is] not tolled or delayed pending the employee's realization that the conduct was discriminatory unless the employee was actively misled by his employer [or] . . . he was prevented in some extraordinary way from exercising his rights." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985). One such "extraordinary" circumstance permitting tolling or delay "might exist if the employee could show that it would have been impossible for a reasonably prudent person to learn that [the adverse employment action] was discriminatory." *Id.*

2. Analysis

Plaintiff, in essence, has complained of three discrete discriminatory or retaliatory acts: the awarding of her bonus for the year 2000, the raise she was given for the year 2001, and the failure to promote her. The question before the Court, then, is when Plaintiff reasonably "knew or had reason to know" that she had been injured. *Harris*, 186 F.3d at 247.

DB argues that the statute of limitations on Plaintiff's claims began to run when she learned of the amount of *her* own bonus and raise and when Dall communicated to her that she would not be promoted. (Def.'s Mem. at 16-19.) Thus, because Plaintiff learned of her 2000 bonus in January of 2001, and, logically, must have learned of her 2001 salary in early 2001, those claims are time-barred. (*Id.* at 19.) Similarly, DB contends that Plaintiff learned of Passiatore's and Richards's promotions before April 14, 2001, thus

8

making her failure to promote claim time-barred as well. (*Id.* at 18.)

Plaintiff argues in response that the relevant event is not when she learned of her own bonus and raise, but rather, when she learned of Passiatore's and Richards's compensation, and thus became aware of the disparity. (Pl.'s Mem. at 16.) Specifically, Plaintiff argues that she first learned of the promotions of Passiatore and Richards, and assumed they had received larger bonuses and raises, on April 18, 2008, when the official announcement of promotions was issued, but in any event no earlier than April 16, 2008, when an e-mail mentioning Passiatore's promotion was forwarded to her. (*Id.* at 16-17.) Thus, Plaintiff argues, all three claims are timely.

### a. 2000 Bonus and 2001 Raise

Based on the facts alleged in the AC, Plaintiff's causes of action relating to the 2001 salary decision and 2000 bonus are not time-barred on their face.

DB correctly notes that, by January 2001, Plaintiff was aware that her bonus would be $30,000. DB also asserts, and Plaintiff does not deny, that her 2001 salary logically was communicated to her, at the very latest, some time before April 14, 2001. Plaintiff also concedes that she knew the head of HR had mandated 4-6% raises for all HR employees. These facts alone, however, are not sufficient to begin the running of the limitations period. The limitations period begins to run, instead, when Plaintiff "knew or had reason to know" that she had suffered an adverse employment action. *Harris*, 186 F.3d at 247. Unlike a demotion, which is overtly adverse, the compensation decisions affecting Plaintiff are only adverse when viewed in light of facts demonstrating her compensation was disparate or below a set benchmark.

As a preliminary matter, Plaintiff does not state in the AC when Dall communicated to her the 4-6% salary increase "mandate." Though a raise slightly below the mandated raise, as Plaintiff received, might have been sufficient to alert her that she had suffered an adverse action as to her salary, absent some indication that the conversation occurred before April 14, 2001, the Court will not, on a motion to dismiss, construe the undated allegation against her.

Thus, though Plaintiff knew of DB's decision to award her a $30,000 bonus and $3,000 raise prior to April 14, 2001, it was not until the time at which she learned that Passiatore and Richards received greater salary increases and higher bonuses that Plaintiff "knew or had reason to know of the injury serving as the basis for [her] claim" — namely, the fact that she had received significantly less in compensation than her younger co-workers. *Harris*, 186 F.3d at 247. Only when confronted with some basis for comparison would a "reasonably prudent person" in Plaintiff's circumstances realize that DB's compensation decision was an adverse action.

Because the salary and bonus claims are not time-barred on the face of the AC, DB's motion to dismiss as to these claims is denied.

9

b. Failure to Promote

The AC alleges that in April 2001, Plaintiff had a "speculative" discussion with Dall regarding promotion of Plaintiff, Passiatore, and Richards. (AC ¶ 75.) At that time, Dall made comments leading Plaintiff to understand that younger employees had more promotional opportunities at DB than older employees. (*Id.* ¶ 75.) In that same conversation, Dall made comments to the effect that he valued Plaintiff's younger co-workers more highly than he valued Plaintiff. (*Id.* ¶ 76.) Plaintiff also alleges that, at some indeterminate time, when she discussed with Dall the possibility of her promotion, Dall "confirmed [her] belief that she would *never* be given the opportunity for advancement" at DB. (*Id.* ¶ 78 (emphasis in original).)

However, it is not clear from these allegations that Plaintiff's failure to promote claim is time-barred on its face. Courts in this Circuit have held that an employee has notice of a failure to promote, and as a consequence the failure to promote cause of action accrues, when "the position is filled to the exclusion of the plaintiff." *Samuel v. Merrill Lynch Pierce Fenner & Smith*, 771 F. Supp. 47, 49 (S.D.N.Y. 1991); *see also Pellei v. Int'l Planned Parenthood Federation/Western Hemisphere Region, Inc.*, No. 96 Civ. 7014 (WHP), 1999 WL 787753, at *6 (S.D.N.Y. Sept. 30, 1999) (holding that a plaintiff's cause of action on a claim of failure to promote "accrued on the date those positions were filled"). The AC alleges that Plaintiff first learned of Passiatore's promotion on April 16, 2001, and that official confirmation of Passiatore's and Richards's promotions was communicated to her on April 18, 2001. Assuming, as the Court must, the truth of the facts alleged in the Complaint, Plaintiff's failure to promote claim is not time-barred on its face.

Accordingly, DB's motion to dismiss the failure to promote claim is denied.

IV. CONCLUSION

For the foregoing reasons, DB's motion to dismiss the Complaint is denied, and Plaintiff's motion to amend is granted.

The Clerk of the Court is directed to terminate the motion docketed as Document No. 12. Plaintiff is directed to file her Amended Complaint, consistent with this Order, within thirty days of the date of this Order.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: December 15, 2008
New York, New York

\*\*\*

Plaintiff Gina Esposito is represented by J. Patrick DeLince, DeLince Law PLLC, 44 Wall Street, 10th Floor, New York, NY, 10005. Defendant Deutsche Bank AG is represented by Cliff Fonstein and Joanne Seltzer, Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019.

b. Failure to Promote

The AC alleges that in April 2001, Plaintiff had a "speculative" discussion with Dall regarding promotion of Plaintiff, Passiatore, and Richards. (AC ¶ 75.) At that time, Dall made comments leading Plaintiff to understand that younger employees had more promotional opportunities at DB than older employees. (*Id.* ¶ 75.) In that same conversation, Dall made comments to the effect that he valued Plaintiff's younger co-workers more highly than he valued Plaintiff. (*Id.* ¶ 76.) Plaintiff also alleges that, at some indeterminate time, when she discussed with Dall the possibility of her promotion, Dall "confirmed [her] belief that she would *never* be given the opportunity for advancement" at DB. (*Id.* ¶ 78 (emphasis in original).)

However, it is not clear from these allegations that Plaintiff's failure to promote claim is time-barred on its face. Courts in this Circuit have held that an employee has notice of a failure to promote, and as a consequence the failure to promote cause of action accrues, when "the position is filled to the exclusion of the plaintiff." *Samuel v. Merrill Lynch Pierce Fenner & Smith*, 771 F. Supp. 47, 49 (S.D.N.Y. 1991); *see also Pellei v. Int'l Planned Parenthood Federation/Western Hemisphere Region, Inc.*, No. 96 Civ. 7014 (WHP), 1999 WL 787753, at *6 (S.D.N.Y. Sept. 30, 1999) (holding that a plaintiff's cause of action on a claim of failure to promote "accrued on the date those positions were filled"). The AC alleges that Plaintiff first learned of Passiatore's promotion on April 16, 2001, and that official confirmation of Passiatore's and Richards's promotions was communicated to her on April 18, 2001. Assuming, as the Court must, the truth of the facts alleged in the Complaint, Plaintiff's failure to promote claim is not time-barred on its face.

Accordingly, DB's motion to dismiss the failure to promote claim is denied.

IV. CONCLUSION

For the foregoing reasons, DB's motion to dismiss the Complaint is denied, and Plaintiff's motion to amend is granted.

The Clerk of the Court is directed to terminate the motion docketed as Document No. 12. Plaintiff is directed to file her Amended Complaint, consistent with this Order, within thirty days of the date of this Order.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: December 15, 2008
New York, New York

\*\*\*

Plaintiff Gina Esposito is represented by J. Patrick DeLince, DeLince Law PLLC, 44 Wall Street, 10th Floor, New York, NY, 10005. Defendant Deutsche Bank AG is represented by Cliff Fonstein and Joanne Seltzer, Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019.